# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION



|  |  |  |
|---|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _4:07CV34-M-B_ |
| XM SATELLITE RADIO INC., and SIRIUS SATELLITE RADIO INC., | § § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Surfer Internet Broadcasting of Mississippi, LLC ("Plaintiff" or "Surfer"), by and through its undersigned counsel, files this Original Complaint against XM Satellite Radio Inc. and Sirius Satellite Radio Inc. (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1.      This is a patent infringement action to stop each Defendant's infringement of Surfer's United States Patent No. 6,766,376 entitled "Streaming Media Buffering System" (the "'376 patent"; a copy of which is attached hereto as Exhibit A). Surfer is the assignee of the '376 patent. Surfer seeks injunctive relief and monetary damages.

## PARTIES

2.      Plaintiff Surfer Internet Broadcasting of Mississippi, LLC is a limited liability company organized and existing under the laws of the State of Mississippi. Surfer maintains its principal place of business at 800 Highway 1 South, Suite B-23, Greenville, Mississippi 38701. Surfer is the assignee of all rights, title, and interest in and to the '376 patent, including the right to sue for infringement and recover past damages.

3.      Defendant XM Satellite Radio Inc. ("XM Radio") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1500 Eckington Place, Northeast, Washington, D.C. 20002.  XM Radio may be served via its registered agent for the service of process, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201.

4.      Defendant Sirius Satellite Radio Inc. ("Sirius") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1221 Avenue of the Americas, 36th Floor, New York, New York 10020.  Sirius may be served via its registered agent for the service of process, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

## JURISDICTION AND VENUE

5.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

6.      The Court has personal jurisdiction over each Defendant because: each Defendant has minimum contacts within the State of Mississippi and the Northern District of Mississippi; each Defendant has purposefully availed itself of the privileges of conducting business in the State of Mississippi and in the Northern District of Mississippi; each Defendant has sought protection and benefit from the laws of the State of Mississippi; each Defendant regularly conducts business within the State of Mississippi and within the Northern District of Mississippi; and Plaintiff's causes of action arise directly from Defendants' business contacts and other activities in the State of Mississippi and in the Northern District of Mississippi.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                              **PAGE 2**

7.     More specifically, each Defendant, directly and/or through intermediaries, ships, distributes, offers for sale, sells, and/or advertises (including the provision of an interactive web page) its products and services in the United States, the State of Mississippi, and the Northern District of Mississippi.  Upon information and belief, each Defendant, through their respective Internet radio services, has committed patent infringement in the State of Mississippi and in the Northern District of Mississippi, has contributed to patent infringement in the State of Mississippi and in the Northern District of Mississippi, and/or has induced others to commit patent infringement in the State of Mississippi and in the Northern District of Mississippi.  Each Defendant's Internet radio service solicits customers in the State of Mississippi and in the Northern District of Mississippi.  Each Defendant has many paying subscribers who are residents of the State of Mississippi and the Northern District of Mississippi and who each use respective Defendant's Internet services in the State of Mississippi and in the Northern District of Mississippi.

8.     Venue is proper in the Northern District of Mississippi pursuant to 28 U.S.C. §§ 1391 and 1400(b).

### COUNT I – PATENT INFRINGEMENT

9.     United States Patent No. 6,766,376, entitled "Streaming Media Buffering System," was duly and legally issued by the United States Patent and Trademark Office on July 20, 2004 after full and fair examination.  Surfer is the assignee of all rights, title, and interest in and to the '376 patent, and possesses all rights of recovery under the '376 patent, including the right to sue for infringement and recover past damages.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                            **PAGE 3**

10.     Each Defendant provides Internet radio services and maintains an Internet radio website. XM Radio's Internet radio website may be found at http://www.xmradio.com/. Sirius' Internet radio website may be found at http://www.sirius.com/.

11.     Upon information and belief, each Defendant maintains an Internet radio website that has infringed and is infringing the '376 patent. Upon information and belief, each Defendant has also induced infringement and contributed to infringement of the '376 patent by others.

12.     Each Defendant's aforesaid activities have been without authority and/or license from Surfer.

13.     Surfer is entitled to recover from the Defendants the damages sustained by Surfer as a result of the Defendants' wrongful acts in an amount subject to proof at trial.

14.     Upon information and belief, each Defendant's infringement of the '376 patent is willful and deliberate. Upon information and belief, each Defendant's inducement and contributory infringement of the '376 patent is willful and deliberate. As a result, Surfer is entitled to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

15.     Defendants' infringement of Surfer's exclusive rights under the '376 patent will continue to damage Surfer, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

16.     Plaintiff demands a trial by jury on all issues.

PLAINTIFF'S ORIGINAL COMPLAINT                                      PAGE 4

## PRAYER FOR RELIEF

Plaintiff Surfer Internet Broadcasting of Mississippi, LLC respectfully requests the following relief:

A.  An adjudication that the Defendants have infringed and continue to infringe claims of the '376 patent;

B.  An award to Surfer of damages adequate to compensate Surfer for the Defendants' acts of infringement together with prejudgment interest;

C.  An award of Surfer's enhanced damages, up to and including trebling of Surfer's damages pursuant to 35 U.S.C. § 284, for the Defendants' willful infringement;

D.  An award of Surfer's costs of suit and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 due to the exceptional nature of this case, or as otherwise permitted by law;

E.  A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Defendants from further acts of (1) infringement, (2) contributory infringement, and (3) active infringement with respect to the claims of the '376 patent; and

F.  Any further relief that this Court deems just and proper.

**RESPECTFULLY SUBMITTED** on this the 27th day of February, 2007.

**J. KIRKHAM POVALL**
Lead Attorney
State Bar No. 4459
E-mail: jkpovall@bellsouth.net
**S. TODD JEFFREYS**
State Bar No. 100042
E-mail: stjeffreys@bellsouth.net
**POVALL & JEFFREYS, P.A.**
215 North Pearman Avenue
P. O. Drawer 1199
Cleveland, Mississippi 38732
Telephone:     (662) 843-9948
Facsimile:     (662) 842-9957

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    **PAGE 5**

# EXHIBIT A



US006766376B2

(12) **United States Patent** (10) Patent No.: **US 6,766,376 B2**
Price (45) Date of Patent: **Jul. 20, 2004**

(54) **STREAMING MEDIA BUFFERING SYSTEM**

(75) Inventor: **Harold Edward Price**, Bethel Park, PA (US)

(73) Assignee: **SN Acquisition, L.L.C**, Flanders, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 524 days.

(21) Appl. No.: **09/819,337**

(22) Filed: **Mar. 28, 2001**

(65) **Prior Publication Data**

US 2002/0143973 A1 Oct. 3, 2002

**Related U.S. Application Data**

(60) Provisional application No. 60/231,997, filed on Sep. 12, 2000.

(51) Int. Cl.[7] ................................................. **G06F 15/16**
(52) U.S. Cl. ............................. **709/231**; 709/203; 710/52
(58) Field of Search ................................. 709/231, 203, 709/217–219, 232, 233, 235; 710/56, 57, 52

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,526,353 A | 6/1996 | Henley et al. | 370/60.1 |
| 5,737,536 A * | 4/1998 | Herrmann et al. | 709/229 |
| 5,793,980 A | 8/1998 | Glaser et al. | 395/200.61 |

| | | | |
|---|---|---|---|
| 5,809,239 A * | 9/1998 | Dan et al. | 709/203 |
| 5,822,537 A | 10/1998 | Katseff et al. | 395/200.61 |
| 5,922,048 A | 7/1999 | Emura | 709/219 |
| 5,923,655 A | 7/1999 | Veschi et al. | 370/394 |
| 5,999,525 A | 12/1999 | Krishnaswamy et al. | 370/352 |
| 6,002,720 A | 12/1999 | Yurt et al. | 375/240 |
| 6,014,693 A | 1/2000 | Ito et al. | 709/219 |
| 6,014,694 A | 1/2000 | Aharoni et al. | 709/219 |
| 6,014,706 A | 1/2000 | Cannon et al. | 709/231 |
| 6,029,194 A | 2/2000 | Tilt | 709/219 |
| 6,047,317 A | 4/2000 | Bisdikian et al. | 709/217 |
| 6,047,356 A * | 4/2000 | Anderson et al. | 711/129 |
| 6,057,832 A | 5/2000 | Lev et al. | 345/327 |
| 6,061,731 A | 5/2000 | Blakeslee | 709/231 |
| 6,061,732 A | 5/2000 | Korst et al. | 709/231 |
| 6,065,050 A | 5/2000 | DeMoney | 709/219 |
| 6,085,221 A | 7/2000 | Graf | 709/202 |
| 6,405,256 B1 * | 6/2002 | Lin et al. | 709/231 |

* cited by examiner

*Primary Examiner*—Mehmet B. Geckil
(74) *Attorney, Agent, or Firm*—Ernest D. Buff and Associates, LLC; Ernest D. Buff; Gordon E. Fish

(57) **ABSTRACT**

Streaming media, such as audio or video files, is sent via the Internet. The media are immediately played on a user's computer. Audio/video data is transmitted from the server more rapidly than it is played out by the user system. The audio/video data in the user buffer accumulates; and interruptions in playback as well as temporary modem delays are avoided.

**6 Claims, 3 Drawing Sheets**



# Fig. 1



# Fig. 2



Case 0:07-cv-00633-PRM-MB Document 1-2 Filed 05/22/2007 Page 10 of 12

# Fig. 3



US 6,766,376 B2

1

## STREAMING MEDIA BUFFERING SYSTEM

This application claim priority under 35 U.S.C. 119(e) of provisional application 60/231,997 filed Sep. 12, 2000.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to multimedia computer communication systems; and more particularly, to a buffering system for streaming media, such as audio/video, on the Internet.

2. Description of the Prior Art

Prior to the development of Internet streaming media technologies, audio and video were formatted into files, which users needed to download to their computer before the files could be heard or viewed. Real time, continuous media, as from a radio station, was not suitable for this arrangement in that a file of finite size must be created so it could be downloaded. The advent of streaming media technologies allowed users to listen or view the files as they were being downloaded, and allowed users to "tune-in" to a continuous media broadcast, or "stream," such as from a radio station.

Since audio and video media must play out over a period of time it is more appropriate to think of bandwidth requirements than file size. The bandwidth requirement of an audio or video media refers to the data rate in bits per second that must be transmitted and received in order to listen or view the material uninterrupted. Transmitting the audio or video material over a connection slower than the bandwidth requirement results in unsatisfactory viewing or listening, if viewing or listening is possible at all. The connection available to most Internet users is by dial-up modem, which has a maximum receive data rate of 56,000 bits per second. Most audio and video available on the Internet has been compressed to be listenable or viewable within the 56,000 bits per second modem bandwidth. Requirements for achieving adequate audio and video over the Internet generally consume a considerable portion of the available bandwidth.

Internet connection quality can vary rapidly over time, with two primary factors responsible for degradation of the instantaneous bandwidth actually available to the user. These factors are the quality of the user's modem connection over telephone lines, which can have periods of interference causing reduced available bandwidth, and momentary Internet congestion at various points along the route over which the user's data flows. Each of these factors can cause delays and interruptions in the transmission of data to the user. Internet data communications devices such as routers are designed to drop data "packets" if they get overloaded. For material that is not time sensitive, these dropped packets will usually be resent, and the user will eventually be presented with the material. However, since streaming media is time sensitive, dropped packets can have a significant impact on the receipt and playback of an audio or video stream. These degradations in the receipt of Internet data are very common, and prevent most users from being able to listen to or view streaming media without interruption unless some special provisions have been incorporated into the user's computer software to accommodate data transmission interruptions.

These interruptions are commonly referred to as "dropouts", meaning that the data flow to the user has been interrupted (i.e., the audio "drops out"). Dropouts can be extremely annoying—for example, while listening to music. The current state-of-the-art solution to the problem uses a

2

pre-buffering technique to store up enough audio or video data in the user's computer so that it can play the audio or video with a minimum of dropouts. This process requires the user to wait until enough of the media file is buffered in memory before listening or viewing can begin. The media data is delivered by a server computer which has available to it the source of the media data, such as by a connection to a radio station. When the user connects to the server via the Internet, audio/video output at the user's system is delayed while the user's buffer is filled to a predetermined level. Typical pre-buffering wait times range from 10 to 20 seconds or more, determined by the vendor providing the audio or video media. Even with this pre-buffering process, interruptions in playback still occur.

In this process, the user has a software application on the computer commonly called a "media player". Using the features built into the media player, the user starts the audio or video stream, typically by clicking on a "start" button, and waits 10–20 seconds or so before the material starts playing. During this time data is being received from the source and filling the media player's buffer. The audio or video data is delivered from the source at the rate it is to be played out. If, for example, the user is listening to an audio stream encoded to be played-out at 24,000 bits per second, the source sends the audio data at the rate of 24,000 bits per second. Provided that the user waits 10 seconds, and the receipt of the buffering data has not been interrupted, there is enough media data stored in the buffer to play for 10 seconds.

Gaps in the receipt of audio/video data, due to Internet slowdowns, cause the buffer to deplete. Because transmission of audio/video media data to the user takes place at the rate it is played out, the user's buffer level can never be increased or replenished while it is playing. Thus, gaps in the receipt of audio/video media data inexorably cause the buffer level to decrease from its initial level. In time, extended or repeated occurrences of these gaps empty the user's buffer. The audio/video material stops playing, and the buffer must be refilled to its original predetermined level before playing of the media resumes.

By way of illustration in a 10 second pre-buffering scenario, if the data reception stopped the instant that the media started playing, it would play for exactly 10 seconds. Once it starts playing, the media data plays out of the buffer as new media data replenishes the buffer. The incoming data rate equals the rate at which the data is played out of the user's buffer, assuming the receipt of data across the Internet is unimpeded. If there are no interruptions in the receipt of the media data for the duration of the time the user listens to or watches the material, the buffer level remains constant and there will still be 10 seconds of data stored in the media player's buffer when the user stops the player. On the other hand, if the media player encounters interruptions totaling 6 seconds while playing the material, there would only be 4 seconds of media data remaining in the buffer when the user stopped it. If data reception interruptions at any time during the playing exceed 10 seconds, the user's media player buffer becomes exhausted. There is no media data to play, and the audio or video stops—a dropout has occurred. At this point a software mechanism in the media player stops attempting to play any more of the material, and starts the buffering process again. The media player remains silent until the buffer refills, at which time the media player will once again start playing the material.

There are two fundamental types of streaming media: (i) material that originates from a source having a real-time nature, such as a radio or TV broadcast, and (ii) material that

3

originates from a non-real-time source such as from a disk file. An example of non-real-time material might be a piece of music stored as a disk file, or a portion of a broadcast that originally was real-time, perhaps yesterday's TV evening news, and was recorded into a disk file. For purposes of clarity within this document, streaming media of type (i) will be referred to as "broadcast" media, and streaming media of type (ii) will be referred to as "file based" media.

Both streaming media types are handled similarly in conventional systems, and both are handled similarly by the streaming media buffering system of the present invention. The two streaming media types are readily distinguished. Broadcast streaming media has as its source a system or arrangement that by definition can only be transmitted to users as fast as the material is generated; for example, a disk jockey speaking into a microphone. File based media, on the other hand, can be transmitted to users at any data rate, since there is no inherent time element to a file residing on a computer disk. With conventional Internet streaming media systems for streaming media of either type, media data is transmitted from the server to the user at the rate at which it will be played out, regardless of the data rate capabilities of the connection between the server and the user.

Conventional streaming media systems may buffer media data at the server for the purpose of packet assembly/ disassembly. Media data may also be buffered at the server to permit programming conveniences such as dealing with chunks of data of a specific size. Server buffering of media data is not used by conventional streaming media systems to mitigate long term Internet performance degradation as described hereinafter.

The sending of audio or video files via a network is known in the art. U.S. Pat. No. 6,029,194 to Tilt describes a media server for the distribution of audio/video over networks, in which retrieved media frames are transferred to a FIFO buffer. A clock rate for a local clock is adjusted according to the fullness of the buffer. The media frames from the buffer are sent in the form of data packets over the networks in response to interrupts generated by the local clock. In this manner, the timing for the media frames is controlled by the user to assure a continuous stream of video during editing. U.S. Pat. No. 6,014,706 to Cannon, et al. discloses an apparatus and method for displaying streamed digital video data on a client computer. The client computer is configured to receive the streamed digital video data from a server computer via a computer network. The streamed digital video data is transmitted from the server computer to the client computer as a stream of video frames. U.S. Pat. No. 6,002,720, to Yurt, et al. discloses a system of distributing video and/or audio information wherein digital signal processing is employed to achieve high rates of data compression. U.S. Pat. No. 5,923,655, to Veschi et al. discloses a system and method for communicating audio/video data in a packet-based computer network wherein transmission of data packets through the computer network requires variable periods of transmission time. U.S. Pat. No. 5,922,048 to Emura discloses a video server apparatus having a stream control section which determines a keyframe readout interval and a keyframe playback interval that satisfy a playback speed designated by a terminal apparatus. Finally, U.S. Pat. No. 6,014,694 to Aharoni, et al. discloses a system and method for adaptively transporting video over networks, including the Internet, wherein the available bandwidth varies with time.

There remains a need in the art for a method and system that afford immediate and uninterrupted listening/viewing of streaming media by the user.

4

## SUMMARY OF THE INVENTION

The present invention provides a system and method for sending streaming media, such as audio or video files, via the Internet. Immediate playing of the media on a user's computer is afforded while reducing interruptions in playback due to Internet congestion and temporary modem delays due to noisy lines. Nearly instantaneous playback is achieved, while maintaining protection against playback interruption. Delayed starts, heretofore required to provide protection against interruption, are avoided. Data loss due to interruptions in the receipt of media data by the media player can be recovered while the player continues to play out the audio or video material. If the interruptions are so severe as to deplete the user's buffer and stop the play out, the media player will begin to play out again as soon as the media player begins to receive media data without waiting to first build up the buffer.

Generally stated, the invention provides a system for distributing via the Internet streaming media composed of a plurality of time-sequenced data elements. The system has a server connected to the Internet for transmitting the data elements. Associated with the server are a buffer manager and a FIFO buffer for storing at least one of the data elements for transmission. The buffer manager comprises means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the FIFO buffer with a predetermined number of data elements at a constant time-sequenced fill rate; maintaining a pointer into the buffer for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent, and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received, said means arranged to maintain the pre-determined number of data elements in the FIFO buffer. At least one user computer is connected to the server via the Internet or other data communications medium.

This invention presumes the existence of a data communications transport mechanism, such as the TCP protocol, for the reliable delivery of data in an ordered sequence from the source of the media data to the server, or from the server to the media player software of the user computer. Thus, the delivery of data in the proper sequence is outside the scope of this invention.

The user computer is associated with a media player software incorporating a user buffer and comprises means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out. As data is played out, the next sequential data elements are received from the server in such a fashion as to approximately maintain the predetermined number of data elements in the user's buffer.

The server stores a predetermined amount of media data in a First-In First-Out (FIFO) buffer in an arrangement that receives media data at a fixed rate. Once the buffer is full, for each new data element received into the buffer the oldest data element is deleted from the buffer. Requests from user computers to connect are not accepted until the server buffer is full. Once a connection is made to a user's computer, the server sends the media data to the user computer as buffer in the following manner. First, media data is sent to the user at the highest rate that the data connection between the server and the user computer will support until the predetermined amount of data that had been stored in the server buffer has

US 6,766,376 B2

5

been transferred to the user's computer. Once the buffer has been transferred a steady state condition is reached wherein as each media data element arrives at the server, it is immediately sent out to the user computer. In this steady state condition, the media data is sent at a rate that matches the constant fill rate of the server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer. If interruptions have interfered with the arrival of sent media data to the user's computer, that data may have been "dropped" by routers in the Internet and needs to be resent. This causes data to "back up" into the server FIFO for that user.

The resending of missing data is the responsibility of the reliable transport mechanism, such as TCP. The server buffer "sends" data by delivering it to the transport mechanism. The transport mechanism actually "sends" that data across the communications medium, and has processes which determine if all the data that has been sent has been received by the destination. If not, missing pieces of data are automatically resent to the destination, and are arranged to be delivered to the target software on the destination system in an ordered fashion. In the circumstance of this invention, the destination is the user computer, and the target software on the destination system is the media player. If the transport mechanism determines that data is missing, it retransmits that data to the destination as fast as the connection between the server and destination will allow. The net effect of this invention is that all media data to be delivered to a user computer is always sent as fast as the communications medium will support, either by the server buffer passing media data to the transport mechanism, or by the transport mechanism delivering or redelivering the media data to the user computer. This is enabled by buffering data at the server, and is distinctly different from prior art in which media data is only sent from the server to the user computer at the rate at which it is to be played out.

Routinely, once a steady state has been achieved, the next data element to be sent is the next sequential data element from that which has already been received by the user's computer buffer. However, if there is more data to be sent than at the routine constant fill rate, such as in the condition where some media data has been resent by the reliable transport layer, the server transport mechanism will again send the buffered media data as fast as the connection between the server and the user's computer will support. This allows for rebuilding the user's computer buffer under circumstances wherein Internet interruptions have blocked the normal flow of data. When compared to conventional systems, which provide no capability to rebuild the user's computer buffer when data is lost, the streaming media buffering system of the present invention provides for recovery of lost data elements and the restoration of the user's buffer, even while the user media player continues to play.

Under conditions in which interruptions have interfered with the arrival of sent media data to the user's computer, data loss exceeding certain levels will cause the transport mechanism software to stop accepting data for transmission from the application software, namely the streaming media server software. The streaming media server software keeps track of the last data element in the FIFO buffer that has been "sent" to each user using a software pointer. An interruption in the ability to send media data to a user results in this pointer "backing up" in the FIFO in such a way that the server knows from what point in the buffer to restart sending data when the transport mechanism again requests data to send. When the server software receives that notification, it

6

will begin sending data to the user starting from the next data element to send as indicated by the pointer, and sending as much data as the transport mechanism will accept. The transport mechanism will again send this data as fast as it can to the user. This process continues until the steady state condition is again reached wherein each data element is sent to the user as soon as it arrives from the media source.

In another embodiment, the server is connected to the Internet, and to a broadcast media source, such as a radio station. A radio station computer is provided with a means for receiving media data elements as they are generated by the audio and/or video source, and for transmitting those media data elements to the server at a constant time-sequenced rate, using a reliable transport mechanism such as TCP. As before, the server provides a buffer manager and a FIFO buffer, and provides a means for receiving the sequentially arranged media data elements from the broadcast media source and storing those data elements in the FIFO buffer. The buffer manager comprises means for: supplying the FIFO buffer with a predetermined number of data elements at a constant time-sequenced fill rate; maintaining a pointer into the buffer for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received. Importantly, the buffer manager is arranged to maintain the pre-determined number of data elements in the FIFO buffer. At least one user computer is connected to the server via the Internet or other data communications medium.

The user computer is associated with a media player software incorporating a user buffer and comprises means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out. As data is played out, the next sequential data elements are received from the server in such a fashion as to approximately maintain the predetermined number of data elements in the user's buffer.

In another embodiment, the server is connected to the Internet and provisioned as initially described, and has available to it file based media data as the source material. The file based media data can be read by the server which can deliver media data elements to the server FIFO buffer at a constant time-sequenced rate, as if the data were arriving from a broadcast media source. As before, the server provides a buffer manager and a FIFO buffer, and provides a means for receiving the sequentially arranged media data elements from the file based media source and storing those data elements in the FIFO buffer. The buffer manager comprises means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the FIFO buffer with a predetermined number of data elements at a constant time-sequenced fill rate; maintaining a pointer into the buffer for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received, said means arranged to maintain the pre-determined number of data elements in the FIFO buffer. The server buffer manager, or a separate process on the server, or a process on another computer having access to the file based media data, provides for reading the media data file and making available to the FIFO buffer sequentially arranged media data elements. At least one user computer is connected to the server via the Internet.

US 6,766,376 B2

7

The user computer is associated with a media player software incorporating a user buffer and comprises means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out. As data is played out, the next sequential data elements are received from the server in such a fashion as to approximately maintain the predetermined number of data elements in the user's buffer.

In another embodiment, the server is connected to the Internet and provisioned as initially described. The server buffer manager, or the media source, provides for sequentially numbering the media data elements. The server buffer manager does not maintain a pointer into the server buffer for each user. Instead, the media player buffer manager in the user computer maintains a record of the serial number of the last data element that has been received. Via the use of standard data communications protocol techniques such as TCP, the user computer transmits a request to the server to send one or more data elements, specifying the serial numbers of the data elements. The server responds by sending the requested data elements, and depends upon the reliable transmission protocol to assure delivery. The user computer then continues with additional data requests for the duration of playing the audio/video material. In this manner, the user computer, not the server, maintains the record of the highest data element number stored in the user computer buffer. The media data will be transmitted to the user computer as fast as the data connection between the user computer and the server will allow. As before, the server provides a buffer manager and a FIFO buffer, and provides a means for receiving the sequentially numbered media data elements from a broadcast media source or a file based media source, and storing those data elements in the FIFO buffer. The buffer manager comprises means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the FIFO buffer with a predetermined number of data elements at a constant time-sequenced fill rate; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received. Such means is arranged to maintain the pre-determined number of data elements in the FIFO buffer. At least one user computer is connected to the server via the Internet.

The user computer is associated with a media player software incorporating a user buffer and comprises means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out. As data is played out, the next sequential data elements are requested from the server in such a fashion as to approximately maintain the predetermined number of data elements in the user's buffer.

In yet another embodiment, the invention provides a method for distributing from a server via the Internet streaming media composed of a plurality of time-sequenced data elements. A predetermined number of the data elements are sequentially loaded into a FIFO buffer. Additional data elements continue to be received on a constant time basis. As each new data element is input to the buffer, the oldest data element is deleted from the buffer, maintaining in the buffer the same predetermined number of data elements. At the request of a user computer for connection to a media stream, a group of the data elements is sequentially sent via the Internet from the FIFO buffer to the user computer connected to the Internet. Upon being received by the user

8

computer, the sent group of data elements is loaded into a user's buffer associated with the user computer. The users computer immediately begins to play the audio/video streaming media material. The server continues to send the next data elements in sequence until the contents of the FIFO buffer have been sent. The data elements are sent by the server as fast as the connection between the server and user computer will allow. Once the contents of the FIFO buffer have been sent to a user computer, as each new data element is received into the FIFO buffer it is immediately sent to the user computer in such a manner as to keep the user computer buffer full. The process repeats for substantially the entire time that the audio/video material is played.

Unlike conventional buffering systems, audio begins to play on the user system as soon as the user connection to the audio server is effected and a small amount of data has been transferred—conventional systems required many seconds of data. Audio/video media data is initially transmitted from the server more rapidly than it is played out by the user system, until the server buffer has been transferred to the user computer. The user's buffer is built up while the audio is playing, and can be restored if it is diminished by data transmission interruptions. Advantageously, the system and method of this invention afford faster data transmissions than the playback data rate of the media data. Audio/video data is transmitted from the server more rapidly than it is played out by the user system under conditions wherein the user's computer buffer is not full. The audio/video data in the user buffer accumulates; interruptions in playback due to temporary Internet and modem delays are avoided.

Although the preferred embodiment utilizes a reliable transport mechanism to move data between the server and the user, alternative embodiments could incorporate this invention's buffering system in combination with an unreliable datagram-based transport mechanism Hybrid systems, where a combination of this invention's buffering system, and unreliable datagram based transport mechanisms can also be used.

## BRIEF DESCRIPTION OF DRAWINGS

The invention will be more fully understood and further advantages will become apparent when reference is had to the following detailed description and the accompanying drawings, in which:

FIG. 1 is a schematic diagram illustrating the elements of a streaming media buffering system in accordance with the present invention;

FIG. 2 is a schematic diagram of an alternative embodiment of the system shown by FIG. 1; and

FIG. 3 is a block diagram illustrating the method of the present invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention relates to a buffering system for streaming media, such as audio/video, on the Internet.

In one embodiment, the invention provides a system for distributing via the Internet streaming media composed of a plurality of time-sequenced data elements. As shown in FIG. 1, the system is provided with a server 12 connected to the Internet 10 for transmitting the streaming media data elements. Associated with the server 12 is a FIFO buffer 14 for storing at least one of the data elements for transmission, and a buffer manager 16. Buffer 14 is a conventional computer storage mechanism such as a hard disk, as shown for

9

10

convenience of illustration, or, preferably, an electronic storage arrangement such as Random Access Memory (RAM). The buffer manager 16 is in the form of software or firmware that provides means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the buffer 14 with a predetermined number of data elements at a constant time-sequenced fill rate; maintaining a pointer 24a through 24n into the buffer, one for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received, said means arranged to maintain the predetermined number of data elements in the FIFO buffer. Buffer Manager 16 may also comprise means for: formatting media data according to the requirements of buffer 14, and for digitizing, encoding, and packetizing the media data.

There is at least one user computer 18 connected to the server 12 via the Internet 10. A user buffer 20 is associated with the user computer 18. The user buffer 20 is provided with means for storing a predetermined number of the data elements. User buffer 20 is a conventional computer storage mechanism such as a hard disk, or, preferably, an electronic storage arrangement such as Random Access Memory (RAM) as suggested by the illustration. A buffer manager 22 is associated with the user computer 18. The buffer manager 22, having the form of software or firmware, is provided with means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out.

The media may come from a live source, shown as 26 in FIG. 1, or from a stored file on the server 12, or another storage device, such as a hard drive. For broadcast media, as the term is used herein, such as an announcer speaking into a microphone, or playing a CD, the media source 26 can only transmit audio/video data as fast as it is generated. If the media source is file based, such as a music clip stored as a disk file, and if that disk file is stored on the server or an associated server computer, this connection could be considered to be near instantaneous. In this case, rather than audio/video data filling and depleting the buffer 14, an amount of audio/video data equivalent to the desired buffer size is logically constituted as a FIFO buffer. Such a construct is commonly called a data window. The data window moves on a time-sequenced basis through the media data file, thus defining the contents of the buffer on a moment-by-moment basis and performing the equivalent functions to receiving a new data element and deleting the oldest data element.

The server 12 maintains a buffer of audio/video data comprising an amount adequate to bridge gaps typical of Internet and modem delays to the user. Preferably, this buffer holds enough data elements for about one minute of play. The server buffer 14 is filled the first time the media source connection is established or a disk file is read, and before any users are allowed to connect to the server 12.

Connections from the server 12 through the Internet 10 commonly are much faster than the data rate required for audio or video playback. This fact is insignificant for conventional servers because, not having a FIFO buffer or a buffer pointer for each user, audio/video data can only be sent as fast as it becomes available, or as fast as the pace at which it must be delivered to the user in order to be properly replayed. The user, typically interacting with "media player" software on their computer, selects an audio source requiring a data rate slower than that available by the user's connection to the Internet. For example, if the user's connection to the Internet is made via a 56,000 bits per second modem, the user might select a media source encoded for playback at 24,000 bits per second.

With the present invention, as soon as a user connects to the server 12, the server 12 transmits audio/video data as sequential data elements from its buffer 14 to the buffer 20 of the user as fast as the data connection will allow. Unlike the prior art, media begins to play on the user computer 18 as soon as the user connection is made to the audio server 12 and a minimal amount of data elements have been received and stored in the user's buffer 20. The user's buffer 20 is built up while the media is playing. As each data element is played, it is deleted from the user's buffer 20. Initially, the user buffer manager 22 requests the server 12 to send media data elements to start the playback stream, such as by selecting a radio station from a list. The server 12 responds by sending data elements to the user computer 18 as fast as it can, until the entire FIFO buffer 14 has been sent to the user computer. Upon receipt of the initial data elements, the user buffer manager 22 begins playback. Because this is a synchronous system with the source, server, and user computer operating by the same playback clock rate as determined by the encoding rate of the media, as each data element is played out and is deleted from the user buffer 20, another data element has been deposited into the server buffer 14 and is available to be sent to the user computer. Server 12 sends the newly available data elements as fast as the data rate of the connection between server 12 and user computer 18 will allow.

Since the connection from the Internet to the user is faster than that required for media playback, audio/video data is transmitted from the server faster than it is played out by the user system, thus building up audio/video data in the user buffer. For example, if the user's connection to the Internet is at 56,000 bits per second, and the data rate encoded for the media to be played is 24,000 bits per second, the buffer level of the user buffer 20 will fill at the rate of 32,000 bits per second (56,000 bits per second receive rate, minus 24,000 bits per second playout depletion rate).

If, for example, the server buffer 14 held one minute of audio/video data, eventually the user buffer 20 will hold one minute of audio/video data. The effect is that, over a brief period of time, the server buffer 14, or a designated portion of it, is transferred to the user buffer 20. The number of data elements in the server buffer 14 actually never changes, it always maintains one minute of audio/video data. However, for the particular user under discussion, a copy of all the data held in the buffer has been sent to the user. Since the user buffer 20 now holds one minute of audio/video data, it can play continuously despite data reception interruptions of less than a minute, and as soon as the interruption ceases the user buffer 20 can begin to rebuild, which will take place as fast as the connection between the user computer 18 and the server 12 will allow. The media player can continue to play out the audio/video material while the user buffer 20 rebuilds.

The predetermined buffer level in the user buffer 20 may be set at less than the predetermined buffer level of the server buffer 14 if desired. For example, the server buffer 14 might be set to hold one minute of media data, and the user buffer 20 might be set to hold thirty seconds of media data.

Alternatively, the user computer is replaced by an Internet radio or Internet Appliance, which is comprised of a dedicated processor for receiving Internet radio or audio/video

US 6,766,376 B2

11                                                                          12

material. Examples of such devices might range from famil-
iar computing devices such as palmtops, PDAs (Portable
Digital Assistants), and wireless phones, to devices that
appear and operate similarly to conventional consumer
electronic devices such as radios and televisions, but with
the additional capability of Internet access.

In another embodiment, as shown in FIG. 2, the media
source may be remote from the user system, such as a computer
system 28 in a radio station studio. This computer includes
a source manager 30 which may be implemented in software
or firmware. The source manager 30 comprises means for:
formatting media data according to the requirements of
server 12, buffer 14, and buffer manager 16; and, for
transmitting that media data to server 12. Source manager 30
may further include means for digitizing, encoding, and
packetizing the media data. Media data typically is gener-
ated in real time such as by a speaker talking into a
microphone or by playing a CD. Generally, computer system
28 transmits media data to server 12 in real time as the media
data is generated. Buffering of media data might occur at
computer system 28 for convenience of programming, but
such buffering is incidental to the operation of the end-to-
end system being described. Computer system 28 connects
via the Internet 10, or other suitable data communications
medium, to a server 12, wherein server buffer manager 16
receives the media data for input into the FIFO buffer 14 as
described previously. Server 12, in turn, transmits the media
data to one or more user computers 18, also as previously
described.

In another embodiment, shown in FIG. 3, the invention
provides a method for distributing from a server via the
Internet streaming media composed of a plurality of time-
sequenced data elements. Time-sequenced data elements are
generated or received 32. Next, a predetermined number of
the data elements is sequentially loaded 34 into a server
buffer, which process of 32 and 34 continues indefinitely as
long as there is media data available. Next, a group of the
data elements is sequentially sent 36 via the Internet from
the server buffer to a user computer connected to the
Internet. Upon receipt by the user computer, the sent group
of data elements is loaded 38 into a user buffer associated
with the user computer. The user computer immediately
plays 40 the received portion of the media on the user
computer. At 42, if the user buffer is not full, then additional
data elements are sent to the user computer 36. And also at
42, if the user buffer is full, the system waits until new media
data is delivered to the server buffer 34. This process is
repeated until the entire media file is played at the user
computer.

Unlike conventional buffer arrangements, audio begins to
play on the user system as soon as the user connection is
made to the audio server. The user's buffer is built up while
the audio is playing. Advantageously, the system and
method of this invention create a faster than real time
connection. That is to say, audio/video data is transmitted
from the server faster than it is played out by the user
system, thus building up audio/video data in the user buffer.

Having thus described the invention in rather full detail,
it will be understood that such detail need not be strictly
adhered to, but that additional changes and modifications
may suggest themselves to one skilled in the art, all falling
within the scope of the invention as defined by the subjoined
claims.

What is claimed is:

1. A system, for distributing streaming media via a data
communications medium such as the Internet, said stream-
ing media composed of a plurality of time-sequenced data
elements, comprising:

(a) a server connected to said data communications
medium for transmitting said data elements;

(b) a server buffer for storing at least one of said data
elements for transmission;

(c) means for receiving said data elements sequentially;

(d) a server buffer manager comprising means for sup-
plying said server buffer with a predetermined number
of data elements at a constant time-sequenced fill rate,
and when said server buffer is full, for each new data
element to be received into the buffer, deleting the
oldest data element from the buffer;

(e) at least one user computer connected to said server via
said data communications medium;

(f) a user buffer associated with said user computer and
being provided with means for storing a predetermined
number of said data elements, which predetermined
number may be different from the predetermined num-
ber of data elements to be stored in the server buffer;
and

(g) a user buffer manager associated with said user
computer and being provided with means for receiving
data elements into the buffer, and playing out audio/
video material from said user buffer at a constant
time-sequenced depletion rate;

(h) a means for maintaining a record for each user of the
last data element that had been sent, and for causing
additional media data to be sent until all the data
elements in the server buffer have been sent to said user
computer, said means arranged in such a way as to
maintain the pre-determined number of data elements
in the user buffer,

whereby said server sends said sequential data elements at a
data rate as fast as the data connection between the server
and the user computer will support.

2. A system as recited by claim 1, wherein said user
computer is an Internet radio.

3. A system for distributing streaming media via a data
communications medium such as the Internet, said stream-
ing media composed of a plurality of time-sequenced data
elements, comprising:

(a) a source computer system being provided with media
source material data elements, and being connected to
said data communications medium for transmitting said
data elements to a server computer;

(b) a server connected to said data communications
medium for receiving said data elements from said
source computer system, and for transmitting said data
elements to user computers;

(c) a server buffer for storing at least one of said data
element for transmission;

(d) a means for receiving said data elements sequentially;

(e) a server buffer manager comprising means for receiv-
ing said data elements that have been transmitted by the
source computer system, supplying said server buffer
with a predetermined number of data elements at a
constant time-sequenced fill rate, and when said server
buffer is full, for each new data element to be received
into the buffer, deleting the oldest data element from the
buffer;

(f) at least one user computer connected to said server via
said data communications medium;

(g) a user buffer associated with said user computer and
being provided with means for storing a predetermined
number of said data elements, which predetermined
number may be different from the predetermined num-
ber of data elements to be stored in the server buffer;
and

US 6,766,376 B2

13 | 14

(h) a user buffer manager associated with said user computer and being provided with means for receiving data elements into the buffer, and playing out audio/video material from said user buffer at a constant time-sequenced depletion rate;

(i) a means for maintaining a record for each user of the last data element that had been sent, and for causing additional media data to be sent until all the data elements in the server buffer have been sent to said user computer, said means arranged in such a way as to maintain the pre-determined number of data elements in the user buffer;

whereby said server sends said sequential data elements at a data rate as fast as the data connection between the server and the user computer will support.

**4.** A system as recited by claim **3**, wherein said user computer is an Internet radio.

**5.** A method for distributing streaming media via a data communications medium such as the Internet from a server, said streaming media composed of a plurality of time-sequenced data elements, comprising the steps of:

(a) providing a plurality of time-sequenced data elements;

(b) loading a predetermined number of said data elements sequentially into a server buffer, which process continues indefinitely as long as there is media data available;

(c) when said server buffer is full with said predetermined number of said data elements, deleting from said server buffer the oldest data element each time a new data element is loaded into the buffer, the loading arrangement being adapted to maintain the predetermined number of data elements in the buffer;

(d) sending via said data communications medium a group of said data elements sequentially from said server buffer to a user computer connected to said Internet as fast as the connection between the server and the user computer will allow;

(e) loading said sent group of data elements into a user's buffer associated with said user computer;

(f) playing said media on said user computer as soon as said data elements first arrive, said played data elements being deleted from said user buffer;

(g) maintaining a record of the last data element having been sent to a user;

(h) if said user buffer is not full, sending the next sequential data elements to said user computer in such a manner that fills the user buffer to a predetermined number of data elements, and maintains that predetermined number of data elements in the buffer; and

(i) repeating steps "(b)" through "(h)" until all of said data elements of the streaming media are played by said user computer.

**6.** A method as recited by claim **5**, wherein said user computer is an Internet radio.

\* \* \* \* \*

§JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Surfer Internet Broadcasting of Mississippi, LLC

### DEFENDANTS
XM Satellite Radio Inc. and Sirius Satellite Radio Inc.

**(b)** County of Residence of First Listed Plaintiff **Washington County, MS**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Povall & Jeffreys, P.A., P. O. Drawer 1199
Cleveland, MS  38732, (662) 843-9948

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285
Brief description of cause:
patent infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
02/27/2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

OF COUNSEL:

John F. Ward, Esq.
E-mail: wardj@wardolivo.com
John W. Olivo, Jr., Esq.
E-mail: olivoj@wardolivo.com
**WARD & OLIVO**
New York, New York 10017
Telephone:    (212) 697-6262
Facsimile:    (212) 972-5866

Leslie D. Ware, Esq.
E-mail: lesware@airmail.net
**MONTS & WARE, L.L.P.**
1701 North Market Street, Suite 330
Dallas, Texas 75202
Telephone:    (212) 744-5000
Facsimile:    (212) 744-5013

Mike McKool, Jr., Esq.
E-mail: mmckool@mckoolsmith.com
Sam Baxter, Esq.
E-mail: sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 978-4000
Facsimile:    (214) 978-4044

Richard F. Scruggs, Esq.
708 Third Avenue
State Bar No. 6582
E-mail: dickscruggs@scruggsfirm.com
David Zachary Scruggs, Esq.
State Bar No. 100011
E-mail: zachscruggs@scruggsfirm.com
David Shelton, Esq.
State Bar No. 99675
E-mail: davidshelton@scruggsfirm.com
**SCRUGGS LAW FIRM, P.A.**
120A Courthouse Square
P.O. Box 1136
Oxford, Mississippi 38655
Telephone:    (662) 281-1212
Facsimile:    (662) 281-1312

**ATTORNEYS FOR PLAINTIFF,
SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC**

**CORPORATE DISCLOSURE STATEMENT
OF SURFER INTERNET BROADCASTING OF
MISSISSIPPI, LLC**

**PAGE 2**



# UNITED STATES DISTRICT COURT
### OFFICE OF THE CLERK
#### NORTHERN DISTRICT OF MISSISSIPPI

**DAVID CREWS**
CLERK

305 MAIN STREET, SUITE 329
GREENVILLE, MS  38701
TELEPHONE: (662) 234-1351
FACSIMILE: (662) 332-4292

911 JACKSON AVENUE, SUITE 369
OXFORD, MS 38655
TELEPHONE: (662) 234-1971
FACSIMILE: (662) 236-5210

301 WEST COMMERCE STREET
SUITE 310
ABERDEEN, MS 39730
TELEPHONE: (662) 369-4952
FACSIMILE: (662) 369-9569

**Surfer Internet Broadcasting of MS, LLC**

**v.**                                            **Case No:  4:07cv34-M-B**

**XM Satellite Radio, Inc., et al**

      **TAKE NOTICE** that the above styled and captioned cause has been **assigned to Michael P. Mills,** whose address is **Room 335 Federal Building, 911 Jackson Avenue, Oxford, MS 38655, telephone (662) 234-1538,** and to **Magistrate Judge Eugene M. Bogen,** whose address is **305 Main Street, Room 329, Greenville, MS 38701, telephone (662) 335-9214,** in accordance with Uniform Local Rule 83.2.

      For further information as to filing procedures, please refer to the Uniform Local Rules and the Administrative Procedures for Electronic Case Filing located at **www.msnd.uscourts.gov** or call the appropriate division of the Clerk's Office.

DAVID CREWS, CLERK

By:  *s/Dean Dacus*
        Deputy Clerk

DATE:   February 27, 2007

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET
BROADCASTING OF
MISSISSIPPI, LLC,

    Plaintiff,

v.

XM SATELLITE RADIO INC.,
    and
SIRIUS SATELLITE RADIO INC.,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. _4:07cv34-M-B_

**JURY TRIAL DEMANDED**

---

## SUMMONS
### Service by Process Server

**TO:**   **SIRIUS SATELLITE RADIO INC.,**
      **by service upon its registered agent for service of process,**
      **CT Corporation System**
      **645 Lakeland East Drive, Suite 101**
      **Flowood, MS  39232**

    You have been made Defendant in the lawsuit filed in this Court by the Plaintiff named above, and a copy of the Complaint is attached to this Summons.

### NOTICE TO DEFENDANT

    THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.  You are hereby summoned to this Court and you are required to mail or hand-deliver a copy of a written answer either admitting or denying each allegation in the Complaint to **Povall & Jeffreys, P.A.,** the Plaintiff's attorneys, whose address is **215 North Pearman Avenue, P. O. Drawer 1199, Cleveland, Mississippi 38732.**

    THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN TWENTY (20) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT FILED BY THE PLAINTIFF.

    You must also file the original of your Answer with the Clerk of this Court.

    **ISSUED** this the _27_ day of February, 2007.

             **DAVID CREWS,**
             **United States District Court Clerk**
             **305 Main Street - Room 329**
             **Greenville, MS   38701**

**(SEAL)**

                **By:** _Dean Dacus_     **D.C.**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET
BROADCASTING OF
MISSISSIPPI, LLC,

    Plaintiff,

v.

XM SATELLITE RADIO INC.,
    and
SIRIUS SATELLITE RADIO INC.,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 4:07CV39-M-B

**JURY TRIAL DEMANDED**

---

## SUMMONS
### Service by Process Server

---

**TO:**    **XM SATELLITE RADIO INC.,**
**by service upon its registered agent for service of process,**
**Corporation Service Company,**
**506 South President St.**
**Jackson, MS 39201**

    You have been made Defendant in the lawsuit filed in this Court by the Plaintiff named above, and a copy of the Complaint is attached to this Summons.

### NOTICE TO DEFENDANT

    THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. You are hereby summoned to this Court and you are required to mail or hand-deliver a copy of a written answer either admitting or denying each allegation in the Complaint to **Povall & Jeffreys, P.A.,** the Plaintiff's attorneys, whose address is **215 North Pearman Avenue, P. O. Drawer 1199, Cleveland, Mississippi 38732.**

    THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN TWENTY (20) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT FILED BY THE PLAINTIFF.

    You must also file the original of your Answer with the Clerk of this Court.

    **ISSUED** this the _27_ day of February, 2007.

        **DAVID CREWS,**
        **United States District Court Clerk**
        **305 Main Street - Room 329**
        **Greenville, MS 38701**

**(SEAL)**        **By:** _Dean Dacus_     **D.C.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:07CV34-M-B |
| XM SATELLITE RADIO INC., and SIRIUS SATELLITE RADIO INC., | § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § | |

## CORPORATE DISCLOSURE STATEMENT OF
## SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC

**COMES NOW** Plaintiff Surfer Internet Broadcasting of Mississippi, LLC, by and

through its counsel of record, pursuant to Local Rule 7.3, hereby serves this, its Corporate

Disclosure Statement as follows:

> WAG Acquisition, LLC is the parent corporation of
> Surfer Internet Broadcasting of Mississippi, LLC.

**RESPECTFULLY SUBMITTED** on this the 27th day of February, 2007.

**J. KIRKHAM POVALL**
Lead Attorney
State Bar No. 4459
E-mail: jkpovall@bellsouth.net
**S. TODD JEFFREYS**
State Bar No. 100042
E-mail: stjeffreys@bellsouth.net
**POVALL & JEFFREYS, P.A.**
215 North Pearman Avenue
P. O. Drawer 1199
Cleveland, Mississippi 38732
Telephone:    (662) 843-9948
Facsimile:     (662) 842-9957

**CORPORATE DISCLOSURE STATEMENT**
**OF SURFER INTERNET BROADCASTING OF**
**MISSISSIPPI, LLC**

PAGE 1

OF COUNSEL:

John F. Ward, Esq.
E-mail: wardj@wardolivo.com
John W. Olivo, Jr., Esq.
E-mail: olivoj@wardolivo.com
**WARD & OLIVO**
New York, New York 10017
Telephone:    (212) 697-6262
Facsimile:    (212) 972-5866

Leslie D. Ware, Esq.
E-mail: lesware@airmail.net
**MONTS & WARE, L.L.P.**
1701 North Market Street, Suite 330
Dallas, Texas 75202
Telephone:    (212) 744-5000
Facsimile:    (212) 744-5013

Mike McKool, Jr., Esq.
E-mail: mmckool@mckoolsmith.com
Sam Baxter, Esq.
E-mail: sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 978-4000
Facsimile:    (214) 978-4044

Richard F. Scruggs, Esq.
708 Third Avenue
State Bar No. 6582
E-mail: dickscruggs@scruggsfirm.com
David Zachary Scruggs, Esq.
State Bar No. 100011
E-mail: zachscruggs@scruggsfirm.com
David Shelton, Esq.
State Bar No. 99675
E-mail: davidshelton@scruggsfirm.com
**SCRUGGS LAW FIRM, P.A.**
120A Courthouse Square
P.O. Box 1136
Oxford, Mississippi 38655
Telephone:    (662) 281-1212
Facsimile:    (662) 281-1312

**ATTORNEYS FOR PLAINTIFF,
SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC**

✎ AO 120 (Rev. 3/04)

| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been

filed in the U.S. District Court _____for the Northern District of MS_____ on the following ☐ Patents or ☐ Trademarks:

| DOCKET NO.<br>4:07cv34-M-B | DATE FILED<br>2/27/07 | U.S. DISTRICT COURT<br>NORTHERN DISTRICT OF MISSISSIPPI |
|---|---|---|
| PLAINTIFF<br><br>Surfer Internet Broadcasting of Mississippi, LLC | | DEFENDANT<br><br>XM Satellite Radio, Inc. and Sirius Satellite Radio, Inc. |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 6,766,376 | 7/20/2004 | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | | |
|---|---|---|---|
| | ☐ Amendment  ☐ Answer  ☐ Cross Bill  ☐ Other Pleading | | |
| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br><br>DAVID CREWS | (BY) DEPUTY CLERK | DATE |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director**     **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director**     **Copy 4—Case file copy**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC, <br><br> Plaintiff, <br><br> v. <br><br> XM SATELLITE RADIO INC., and SIRIUS SATELLITE RADIO INC., <br><br> Defendants. | § § § § § § § § § § § § § | Civil Action No. 4:07CV34 M-B <br><br> **JURY TRIAL DEMANDED** |

## SUMMONS
### Service by Process Server

**TO:** **SIRIUS SATELLITE RADIO INC.,**
**by service upon its registered agent for service of process,**
**CT Corporation System**
**645 Lakeland East Drive, Suite 101**
**Flowood, MS  39232**

You have been made Defendant in the lawsuit filed in this Court by the Plaintiff named above, and a copy of the Complaint is attached to this Summons.

### NOTICE TO DEFENDANT

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. You are hereby summoned to this Court and you are required to mail or hand-deliver a copy of a written answer either admitting or denying each allegation in the Complaint to **Povall & Jeffreys, P.A.,** the Plaintiff's attorneys, whose address is **215 North Pearman Avenue, P. O. Drawer 1199, Cleveland, Mississippi 38732**.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN TWENTY (20) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT FILED BY THE PLAINTIFF.

You must also file the original of your Answer with the Clerk of this Court.

**ISSUED** this the ‑27‑ day of February, 2007.

**DAVID CREWS,**
**United States District Court Clerk**
**305 Main Street - Room 329**
**Greenville, MS   38701**

(SEAL)                                          By: _Dean Dacus_          D.C.

## PROOF OF SERVICE

## SIRIUS SATELLITE RADIO INC.
Name of Person or Entity Served

I, the undersigned process server, served the Summons and Complaint upon the person or entity named above in the manner set forth below (process server must check proper space and provide all additional information that is requested and pertinent to the mode of service used):

_____**First class mail and acknowledgment service.** By mailing (by first class mail, postage prepaid), on the date stated in the NOTICE, copies to the person served, together with copies of the form of notice and acknowledgment and return envelope, postage prepaid, addressed to the sender. *(Attach completed acknowledgment of receipt pursuant to M. R. C. P. Form 1B).*

X\_\_\_\_\_**Personal Service.** I personally delivered copies to __CT Corp. System__ on the __1st__ day of __March__, 2007, where I found said person in __Rankin__ County of the State of __MS__.

_____**Residence service.** After exercising reasonable diligence I was unable to deliver copies to said person within _____ County, _(state)_. I served the Summons and Complaint on the \_\_\_\_ day of _____, 20\_\_\_\_, at the usual place of abode of said person by leaving a true copy of the Summons and Complaint with _____, who is the _____, a member of the family of
(here insert wife, husband, son, daughter or other person as the case may be)
the person served above the age of sixteen years and willing to receive the Summons and Complaint, and thereafter on the _____ day of _____, 20\_\_\_\_, I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

_____**Certified Mail Service.** By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served. *(Attach signed return receipt or other evidence of actual delivery to the person service.)*
At the time of service I was at least 18 years of age and not a party to this action.

Process server must list below: *[Please print or type]*
Name __Hunter Nowell__
Address __1305 S. Fifth Ave. Cleveland, MS 38732__
Telephone No. __662-843-9968__

**STATE OF MISSISSIPPI**
**COUNTY OF** __Bolivar__

Personally appeared before me the undersigned authority in and for the state and county aforesaid, the within named __Hunter Nowell__, who being first duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

M. Hunter Nowell
*(Process Server Signature)*

Sworn to and subscribed before me this the __1st__ day of __March__, 20__07__.

Beth D. Peple
NOTARY PUBLIC

My Commission Expires
__5-7-2010__

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET
BROADCASTING OF
MISSISSIPPI, LLC,

  Plaintiff,

v.

XM SATELLITE RADIO INC.,
and
SIRIUS SATELLITE RADIO INC.,

  Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 4:07CV 34 M-B

**JURY TRIAL DEMANDED**

---

## SUMMONS
### Service by Process Server

---

## TO: XM SATELLITE RADIO INC.,
**by service upon its registered agent for service of process,
Corporation Service Company,
506 South President St.
Jackson, MS  39201**

You have been made Defendant in the lawsuit filed in this Court by the Plaintiff named above, and a copy of the Complaint is attached to this Summons.

### NOTICE TO DEFENDANT

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. You are hereby summoned to this Court and you are required to mail or hand-deliver a copy of a written answer either admitting or denying each allegation in the Complaint to **Povall & Jeffreys, P.A.,** the Plaintiff's attorneys, whose address is **215 North Pearman Avenue, P. O. Drawer 1199, Cleveland, Mississippi 38732.**

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN TWENTY (20) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT FILED BY THE PLAINTIFF.

You must also file the original of your Answer with the Clerk of this Court.

**ISSUED** this the 27 day of February, 2007.

     **DAVID CREWS,
United States District Court Clerk
305 Main Street - Room 329
Greenville, MS   38701**

(SEAL)      By: _____ D.C.

## PROOF OF SERVICE

## XM SATELLITE RADIO INC.
Name of Person or Entity Served

I, the undersigned process server, served the Summons and Complaint upon the person or entity named above in the manner set forth below (process server must check proper space and provide all additional information that is requested and pertinent to the mode of service used):

_____**First class mail and acknowledgment service.** By mailing (by first class mail, postage prepaid), on the date stated in the NOTICE, copies to the person served, together with copies of the form of notice and acknowledgment and return envelope, postage prepaid, addressed to the sender. *(Attach completed acknowledgment of receipt pursuant to M. R. C. P. Form 1B)*.

__X__ **Personal Service.** I personally delivered copies to _Corp. Service Company_ on the __1st__ day of __March__, 20_07_, where I found said person in ___Hinds___ County of the State of _MS_.

_____**Residence service.** After exercising reasonable diligence I was unable to deliver copies to said person within _____County, _____. I served the Summons and Complaint on the ____ day of _____, *(state)*

20_____, at the usual place of abode of said person by leaving a true copy of the Summons and Complaint with _____, who is the _____, a member of the family of *(here insert wife, husband, son, daughter or other person as the case may be)*

the person served above the age of sixteen years and willing to receive the Summons and Complaint, and thereafter on the _____ day of _____, 20____, I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

_____**Certified Mail Service.** By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served. *(Attach signed return receipt or other evidence of actual delivery to the person service.)*

At the time of service I was at least 18 years of age and not a party to this action.

Process server must list below: *[Please print or type]*
Name __Hunter Nowell__
Address __1305 S. Fifth Ave., Cleveland, MS 38732__
Telephone No. __662-843-9948__

**STATE OF MISSISSIPPI**
**COUNTY OF** _Bolivar_

Personally appeared before me the undersigned authority in and for the state and county aforesaid, the within named __Hunter Nowell__, who being first duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

__W. Hunter Nowell__
*(Process Server Signature)*

Sworn to and subscribed before me this the _1st_ day of __March__, 20_07_.

__Beth D. Peagler__
NOTARY PUBLIC

My Commission Expires:
__5-7-2010__

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

SURFER INTERNET                                         PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                    CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                  DEFENDANTS
SIRIUS SATELLITE RADIO INC.

## NOTICE OF ENTRY OF APPEARANCE

PLEASE TAKE NOTICE that J. Cal Mayo, Jr., and Pope S. Mallette of MAYO MALLETTE PLLC, have been retained by Defendant Sirius Satellite Radio Inc. ("Sirius"), and that they give notice as counsel for Sirius of their request that all notices or pleadings given or required to be given in this case and all papers served or required to be served in this case be provided to and served upon them as follows:

> J. Cal Mayo, Jr.
> Pope S. Mallette
> MAYO MALLETTE PLLC
> 428 North Lamar Boulevard
> Post Office Box 1456
> Oxford, Mississippi 38655
> Telephone: (662) 236-0055
> Facsimile:  (662) 236-0035
> cmayo@mayomallette.com
> pmallette@mayomallette.com

THIS, the 19th day of March, 2007.

> Respectfully submitted,
>
> SIRIUS SATELLITE RADIO INC.
>
>
>   */s/ Pope S. Mallette*                
> J. CAL MAYO, JR. (MS Bar No. 8492)
> POPE S. MALLETTE (MS Bar No. 9836)
> *ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi 38655
Telephone:      (662) 236-0055
Facsimile:      (662) 236-0035

## CERTIFICATE OF SERVICE

I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

THIS, the 19th day of March, 2007.

*/s/ Pope S. Mallette*
POPE S. MALLETTE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                    CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                      DEFENDANTS
SIRIUS SATELLITE RADIO, INC.

## MOTION FOR ENLARGEMENT OF TIME

Defendant Sirius Satellite Radio Inc. ("Sirius") seeks additional time in which to serve a responsive pleading to Plaintiff's Complaint, and in support states as follows:

1.      The undersigned Pope S. Mallette was engaged to represent Sirius on Monday, March 19, 2007.  Sirius's response to the Complaint is due Wednesday, March 21, 2007.

2.      The undersigned has requested Plaintiff's consent to an extension of 30 days within which Sirius may serve a response to the Complaint.  Plaintiff's counsel has conveyed its consent to an extension of 10 days but no more.

3.      The undersigned respectfully submits that he needs more than 10 days to evaluate the Complaint and to confer with his client so as to prepare Sirius's response to the Complaint.

4.      This Motion is not filed with the intent to cause unnecessary delay, and no party will be prejudiced should the requested relief be granted.

WHEREFORE, PREMISES CONSIDERED, Defendant Sirius Satellite Radio Inc. respectfully requests an additional 30 days, until April 20, 2007, within which it may serve its response to the Complaint.

THIS, the 19th day of March, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.


 */s/ Pope S. Mallette*
J. CAL MAYO, JR. (MS Bar No. 8492)
POPE S. MALLETTE (MS Bar No. 9836)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi 38655
Telephone:     (662) 236-0055
Facsimile:     (662) 236-0035

## CERTIFICATE OF SERVICE

I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

THIS, the 19th day of March, 2007.

                                    /s/ Pope S. Mallette
                                    POPE S. MALLETTE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET                                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                              CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                                    DEFENDANTS
SIRIUS SATELLITE RADIO INC.

## NOTICE OF ENTRY OF APPEARANCE

PLEASE TAKE NOTICE that Paul B. Watkins, Jr. of MAYO MALLETTE PLLC, has been

retained by Defendant Sirius Satellite Radio Inc. ("Sirius"), and that he gives notice as counsel for

Sirius of his request that all notices or pleadings given or required to be given in this case and all

papers served or required to be served in this case be provided to and served upon him as follows:

> Paul B. Watkins, Jr.
> MAYO MALLETTE PLLC
> 428 North Lamar Boulevard
> Post Office Box 1456
> Oxford, Mississippi 38655
> Telephone: (662) 236-0055
> Facsimile:  (662) 236-0035
> *pwatkins@mayomallette.com*

THIS, the 20th day of March, 2007.

> Respectfully submitted,
>
> SIRIUS SATELLITE RADIO INC.
>
>
> */s/ Paul B. Watkins, Jr.*
> J. CAL MAYO, JR. (MS Bar No. 8492)
> POPE S. MALLETTE (MS Bar No. 9836)
> PAUL B. WATKINS, JR. (MS Bar No. 102348)
> *ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi  38655
Telephone:     (662) 236-0055
Facsimile:     (662) 236-0035

## CERTIFICATE OF SERVICE

I, Paul B. Watkins, Jr., one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Steven Todd Jeffreys, Esq.
*stjeffreys@bellsouth.net*

John K. Povall, Esq.
*jkpovall@bellsouth.net*

David Zachary Scruggs, Esq.
*zachscruggs@scruggsfirm.com*

Richard F. Scruggs, Esq.
*dickscruggs@scruggsfirm.com*

David Wayne Shelton, Esq.
*davidshelton@scruggsfirm.com*

THIS, the 20th day of March, 2007.

*/s/ Paul B. Watkins, Jr.*
POPE S. MALLETTE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                                              PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                     CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO INC., ET AL.                                           DEFENDANTS

## DEFENDANT XM SATELLITE RADIO INC.'S
## MOTION FOR ENLARGEMENT OF TIME

Defendant XM Satellite Radio Inc. ("XM"), by and through counsel, seeks additional time within which to serve its response to the complaint, and in support states as follows:

1.      The undersigned LeRoy D. Percy was engaged to represent XM in this matter on Friday, March 16, 2007.  XM's response to the complaint is due Wednesday, March 21, 2007.

2.      The undersigned counsel has requested the plaintiff's consent to an extension of 30 days within which XM may serve its response to the complaint.  Plaintiff's counsel has conveyed its consent to an extension of 10 days but no more.

3.      The undersigned counsel respectfully submits he needs more than 10 additional days to evaluate the complaint and to confer with his client so as to prepare its response to the complaint.

4.      This motion is not filed for the purpose of causing unnecessary delay, and no party will be prejudiced should the requested relief be granted.

WHEREFORE, PREMISES CONSIDERED, Defendant XM Satellite Radio Inc. respectfully requests an additional 30 days, until April 20, 2007, within which to serve its response to the complaint.

Page -1-

Respectfully submitted,

XM SATELLITE RADIO INC.,

By and through counsel,

/s/ *LeRoy D. Percy*
LeRoy D. Percy, MSB #10454
TOLLISON LAW FIRM, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Tel: (662) 234-7070
Fax: (662) 234-7095
roy@tollisonlaw.com

<u>CERTIFICATE OF SERVICE</u>

I, LeRoy D. Percy, hereby certify that I have this day electronically filed the above and

foregoing document with the Clerk of Court using the ECF system, which provided notification to

the following persons:

J. Kirkham Povall
S. Todd Jeffreys
POVALL & JEFFREYS, P.A.
P.O. Drawer 1199
Cleveland, MS 38732
jkpovall@bellsouth.net
stjeffreys@bellsouth.net

David Zachary Scruggs
Richard F. Scruggs
David Wayne Shelton
SCRUGGS LAW FIRM
P.O. Box 1136
Oxford, MS 38655
zachscruggs@scruggsfirm.com
dickscruggs@scruggsfirm.com
davidshelton@scruggsfirm.com

J. Cal Mayo, Jr.
Pope S. Mallette
MAYO MALLETTE PLLC
P.O. Box 1456
Oxford, MS 38655
cmayo@mayomallette.com
pmallette@mayomallette.com

This the 20th day of March, 2007.


                                        /s/ LeRoy D. Percy
                                        LEROY D. PERCY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**SURFER INTERNET BROADCASTING**
**OF MISSISSIPPI, LLC**                                                    **PLAINTIFF**

**VS.**                                              **CIVIL ACTION NO. 4:07cv34-M-B**

**XM SATELLITE RADIO, INC. and**
**SIRIUS SATELLITE RADIO, INC.**                                    **DEFENDANTS**

### PLAINTIFF'S RESPONSE TO DEFENDANT,
### SIRIUS SATELLITE RADIO, INC.'S,
### MOTION FOR ENLARGEMENT OF TIME

**NOW COMES** Plaintiff, **SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC**, ("Plaintiff"), by and through its undersigned counsel, and files this its Response to the Motion for Enlargement of Time filed by Defendant, **SIRIUS RADIO SATELLITE, INC.**, ("Defendant"), and would show unto the Court the following:

### 1.

Defendant was served with Plaintiff's Original Complaint on March 1, 2007, and pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), Defendant's Answer and Defenses is due on or before March 21, 2007.

### 2.

Counsel for Defendant has filed a Motion for Enlargement of Time, seeking an additional thirty (30) days in which Defendant may serve its Answer to Plaintiff's Complaint. Counsel for the Plaintiff was contacted by counsel for Defendant, and Plaintiff's counsel was agreeable to a ten (10) day extension for Defendant to serve its Answer and Defenses, thereby making Defendant's responsive pleading due on or before April 2, 2007.

**3.**

Counsel for Defendant represented to the Court that they were engaged to represent their client on Monday, March 19, 2007. Plaintiff notes that it has no control over when Defendant deemed it necessary to employ counsel in this case, nineteen (19) days after it was served with process. Furthermore, Plaintiff's Complaint consists of five (5) pages and sixteen (16) paragraphs and a thirty (30) day extension of time to file a responsive pleading, in addition to the time which has already elapsed, is not warranted under the circumstances. Plaintiff therefore requests that Defendant be given until April 2, 2007 to file its responsive pleading in this case.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, **SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC**, respectfully requests that this Court grant to Defendant, **SIRIUS SATELLITE RADIO, INC.**, an additional ten (10) days within in which to serve its Answer and Defenses to Plaintiff's Complaint, thereby making the Defendant's responsive pleading due on or before April 2, 2007.

**RESPECTFULLY SUBMITTED** on this the 20th day of March, 2007.

> **SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC, Plaintiff**
>
> By:     /s/S. Todd Jeffreys
> **S. TODD JEFFREYS**
> State Bar No. 100042
> E-mail: stjeffreys@bellsouth.net
> **POVALL & JEFFREYS, P.A.**
> 215 North Pearman Avenue
> P. O. Drawer 1199
> Cleveland, Mississippi 38732
> Telephone: (662) 843-9948
> Facsimile: (662) 842-9957

2

**OF COUNSEL:**

John F. Ward, Esq.
E-mail: wardj@wardolivo.com
John W. Olivo, Jr., Esq.
E-mail: olivoj@wardolivo.com
**WARD & OLIVO**
New York, New York 10017
Telephone:     (212) 697-6262
Facsimile:     (212) 972-5866

Leslie D. Ware, Esq.
E-mail: lesware@airmail.net
**MONTS & WARE, L.L.P.**
1701 North Market Street, Suite 330
Dallas, Texas 75202
Telephone:     (212) 744-5000
Facsimile:     (212) 744-5013

Mike McKool, Jr., Esq.
E-mail: mmckool@mckoolsmith.com
Sam Baxter, Esq.
E-mail: sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:     (214) 978-4000
Facsimile:     (214) 978-4044

Richard F. Scruggs, Esq.
708 Third Avenue
State Bar No. 6582
E-mail: dickscruggs@scruggsfirm.com
David Zachary Scruggs, Esq.
State Bar No. 100011
E-mail: zachscruggs@scruggsfirm.com
David Shelton, Esq.
State Bar No. 99675
E-mail: davidshelton@scruggsfirm.com
**SCRUGGS LAW FIRM, P.A.**
120A Courthouse Square
P.O. Box 1136
Oxford, Mississippi 38655
Telephone:     (662) 281-1212
Facsimile:     (662) 281-1312

**ATTORNEYS FOR PLAINTIFF,
SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC**

## CERTIFICATE OF SERVICE

I, **S. TODD JEFFREYS**, attorney for Plaintiff, do hereby certify that I have this day

electronically filed the foregoing ***Plaintiff's Response to Defendant, Sirius Satellite Radio, Inc.'s,***

***Motion for Enlargement of Time*** with the Clerk of the Court using the ECF system which sent

notification of such filing to the following:

        **J. Cal Mayo, Jr., Esq.**
        **Pope S. Mallette, Esq.**
        **Paul B. Watkins, Jr.**
        **MAYO MALLETTE, PLLC**
        **P. O. Box 1456**
        **Oxford, MS 38655**
        **cmayo@mayomallette.com**
        **pmallette@mayomallette.com**
        **pwatkins@mayomallette.com**
        **Attorneys for Defendant, Sirius Satellite Radio, Inc.**

        **LeRoy D. Percy, Esq.**
        **TOLLISON LAW FIRM, P.A.**
        **P. O. Box 1216**
        **Oxford, MS 38655**
        **roy@tollisonlaw.com**
        **Attorney for XM Satellite Radio, Inc.**

        **David Zachary Scruggs, Esq.**
        **Richard F. Scruggs, Esq.**
        **David Wayne Shelton, Esq.**
        **SCRUGGS LAW FIRM**
        **P. O. Box 1136**
        **Oxford, MS 38655**
        **zachscruggs@scruggsfirm.com**
        **dickscruggs@scruggsfirm.com**
        **davidshelton@scruggsfirm.com**
        **Attorneys for Plaintiff**

**SO CERTIFIED** on this the 20th day of March, 2007.

                       s/S. Todd Jeffreys
                       **S. TODD JEFFREYS**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**SURFER INTERNET BROADCASTING**
**OF MISSISSIPPI, LLC**                                       **PLAINTIFF**

**VS.**                                       **CIVIL ACTION NO. 4:07cv34-M-B**

**XM SATELLITE RADIO, INC. and**
**SIRIUS SATELLITE RADIO, INC.**                              **DEFENDANTS**

## PLAINTIFF'S RESPONSE TO DEFENDANT,
## XM SATELLITE RADIO, INC.'S,
## <u>MOTION FOR ENLARGEMENT OF TIME</u>

**NOW COMES** Plaintiff, **SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC**, ("Plaintiff"), by and through its undersigned counsel, and files this its Response to the Motion for Enlargement of Time filed by Defendant, **XM RADIO SATELLITE, INC.**, ("Defendant"), and would show unto the Court the following:

### 1.

Defendant was served with Plaintiff's Original Complaint on March 1, 2007, and pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), Defendant's Answer and Defenses is due on or before March 21, 2007.

### 2.

Counsel for Defendant has filed a Motion for Enlargement of Time, seeking an additional thirty (30) days in which Defendant may serve its Answer to Plaintiff's Complaint. Counsel for the Plaintiff was contacted by counsel for Defendant, and Plaintiff's counsel was agreeable to a ten (10) day extension for Defendant to serve its Answer and Defenses, thereby making Defendant's responsive pleading due on or before April 2, 2007.

**3.**

Counsel for Defendant represented to the Court that they were engaged to represent their client on Friday, March 16, 2007. Plaintiff notes that it has no control over when Defendant deemed it necessary to employ counsel in this case, sixteen (16) days after it was served with process. Furthermore, Plaintiff's Complaint consists of five (5) pages and sixteen (16) paragraphs and a thirty (30) day extension of time to file a responsive pleading, in addition to the time which has already elapsed, is not warranted under the circumstances. Plaintiff therefore requests that Defendant be given until April 2, 2007 to file its responsive pleading in this case.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, **SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC**, respectfully requests that this Court grant to Defendant, **XM SATELLITE RADIO, INC.**, an additional ten (10) days within in which to serve its Answer and Defenses to Plaintiff's Complaint, thereby making the Defendant's responsive pleading due on or before April 2, 2007.

**RESPECTFULLY SUBMITTED** on this the 20th day of March, 2007.

> **SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC, Plaintiff**
>
> By:  /s/S. Todd Jeffreys
>
> **S. TODD JEFFREYS**
> State Bar No. 100042
> E-mail: stjeffreys@bellsouth.net
> **POVALL & JEFFREYS, P.A.**
> 215 North Pearman Avenue
> P. O. Drawer 1199
> Cleveland, Mississippi 38732
> Telephone: (662) 843-9948
> Facsimile: (662) 842-9957

**OF COUNSEL:**

John F. Ward, Esq.
E-mail: wardj@wardolivo.com
John W. Olivo, Jr., Esq.
E-mail: olivoj@wardolivo.com
**WARD & OLIVO**
New York, New York 10017
Telephone:     (212) 697-6262
Facsimile:     (212) 972-5866

Leslie D. Ware, Esq.
E-mail: lesware@airmail.net
**MONTS & WARE, L.L.P.**
1701 North Market Street, Suite 330
Dallas, Texas 75202
Telephone:     (212) 744-5000
Facsimile:     (212) 744-5013

Mike McKool, Jr., Esq.
E-mail: mmckool@mckoolsmith.com
Sam Baxter, Esq.
E-mail: sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:     (214) 978-4000
Facsimile:     (214) 978-4044

Richard F. Scruggs, Esq.
708 Third Avenue
State Bar No. 6582
E-mail: dickscruggs@scruggsfirm.com
David Zachary Scruggs, Esq.
State Bar No. 100011
E-mail: zachscruggs@scruggsfirm.com
David Shelton, Esq.
State Bar No. 99675
E-mail: davidshelton@scruggsfirm.com
**SCRUGGS LAW FIRM, P.A.**
120A Courthouse Square
P.O. Box 1136
Oxford, Mississippi 38655
Telephone:     (662) 281-1212
Facsimile:     (662) 281-1312

**ATTORNEYS FOR PLAINTIFF,
SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC**

3

## CERTIFICATE OF SERVICE

I, **S. TODD JEFFREYS**, attorney for Plaintiff, do hereby certify that I have this day

electronically filed the foregoing ***Plaintiff's Response to Defendant, XM Satellite Radio, Inc.'s,***

***Motion for Enlargement of Time*** with the Clerk of the Court using the ECF system which sent

notification of such filing to the following:

> LeRoy D. Percy, Esq.
> TOLLISON LAW FIRM, P.A.
> P. O. Box 1216
> Oxford, MS 38655
> roy@tollisonlaw.com
> Attorney for XM Satellite Radio, Inc.
>
> J. Cal Mayo, Jr., Esq.
> Pope S. Mallette, Esq.
> Paul B. Watkins, Jr.
> MAYO MALLETTE, PLLC
> P. O. Box 1456
> Oxford, MS 38655
> cmayo@mayomallette.com
> pmallette@mayomallette.com
> pwatkins@mayomallette.com
> Attorneys for Defendant, Sirius Satellite Radio, Inc.
>
> David Zachary Scruggs, Esq.
> Richard F. Scruggs, Esq.
> David Wayne Shelton, Esq.
> SCRUGGS LAW FIRM
> P. O. Box 1136
> Oxford, MS 38655
> zachscruggs@scruggsfirm.com
> dickscruggs@scruggsfirm.com
> davidshelton@scruggsfirm.com
> Attorneys for Plaintiff

**SO CERTIFIED** on this the 20th day of March, 2007.

> s/S. Todd Jeffreys
> _____
> **S. TODD JEFFREYS**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET                                                      PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC


V.                                                      CIVIL ACTION NO. 4:07cv34-M-B


XM SATELLITE RADIO, INC., and                          DEFENDANTS
SIRIUS SATELLITE RADIO, INC.


## REBUTTAL BRIEF IN SUPPORT OF SIRIUS SATELLITE
## RADIO'S MOTION FOR ENLARGEMENT OF TIME

It is difficult to imagine any harm that will befall Plaintiff Surfer Internet Broadcasting of

Mississippi in the eighteen days between April 2 and April 20, at least in any amount sufficient for

it to object in good faith to Sirius' request for eighteen additional days in which to respond to

Surfer's Complaint.  After all, Surfer has only existed for one month, having filed its certificate of

formation on February 20, 2007.  *See* Certificate of Formation (Ex. "A" to this Rebuttal).  Surfer's

Complaint seeks no temporary or preliminary injunctive relief that would suggest any immediacy

to a response.  In its Response to Sirius' Motion for Time, Surfer identifies no harm or prejudice and

simply states that the applicable rules of procedure provide for twenty days and an additional ten

days should be sufficient.

Sirius needs an additional eighteen days (until April 20) beyond the ten days offered by

Surfer for two reasons.  Since first receiving the Complaint, Sirius has been and continues to

investigate the infringement claims stated by Surfer.  This investigation is complicated by several

factors. First, Sirius uses software obtained from a non-party to perform the internet radio broadcast

functions under attack in Surfer's Complaint. Sirius has provided the Complaint to this provider, but must await a response before having any relevant information as to the truth of the averments in Surfer's Complaint. Second, Surfer never communicated with Sirius in advance of filing its Complaint (granted, a difficult task as Surfer filed is Complaint one week after its birth), so receipt of the Complaint in early March was the first indication of any infringement claim by Surfer. Third, Surfer's Complaint is less than informative, as it merely makes "on information and belief" averments and fails to specify which of the particular claims that Sirius supposedly infringes from among the six claims (many with sub-parts) in the patent-in-suit. Finally, Sirius' initial investigation must necessarily include consideration of possible defenses, such as the invalidity and unenforceability of the patent-in-suit. The additional 18 requested days will provide much needed time to permit Sirius to make a good faith response to Surfer's Complaint.

Second, the circumstances surrounding the creation of Surfer and the filing of Surfer's Complaint raise serious forum-shopping questions. With the inventor in Pennsylvania, Sirius in New York and Defendant XM Satellite Radio in Washington, D.C., one does wonder about the propriety of the forum selected by Surfer. As a result of extending the deadline for responding by eighteen days, Sirius will have time to further and more adequately explore the possibility of seeking a transfer of this matter to a more appropriate venue.

In any event, Surfer will not be unduly prejudiced by an additional eighteen days in which Sirius may respond to the Complaint. Sirius requests that this Court grant this reasonable

enlargement of time to permit Sirius to investigate the patent, patent claims, technology under attack, allegations of infringement, available defenses and the appropriate forum for resolving this dispute.

THIS, the 21st day of March, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.

*/s/ J. Cal Mayo, Jr.*
J. CAL MAYO, JR. (MS Bar No. 8492)
POPE S. MALLETTE (MS Bar No. 9836)
PAUL B. WATKINS, JR. (MS Bar No. 102348)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035

## CERTIFICATE OF SERVICE

I, J. Cal Mayo, Jr., one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

Pope S. Mallette, Esq.
pmallette@mayomallette.com

J. Cal Mayo, Jr., Esq.
cmayo@mayomallette.com

LeRoy Davis Percy, Esq.
roy@tollisonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

Paul Bowie Watkins, Esq.
pwatkins@mayomallette.com

THIS, the 21st day of March, 2007.

_/s/ J. Cal Mayo, Jr._
J. CAL MAYO, JR.

**F0100 - Page 1 of 2**



## OFFICE OF THE MISSISSIPPI

P.O. BOX 136, JACKSON, MS 39205-0136   (601) 359-1333

### Certificate of Formation

Business ID: 907327
Date Filed: 02/20/2007 05:00 PM
Eric Clark
Secretary of State

The undersigned, pursuant to Senate Bill No. 2395, Chapter 402, Laws of 1994, hereby executes the following document and sets forth:

**1. Name of the Limited Liability Company**

⇒ | SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC

**2. The future effective date is
   (Complete if applicable)**   UPON FILING

**3. Federal Tax ID**

⇒

**4. Name and Street Address of the Registered Agent and Registered Office is**

⇒ Name | Corporation Service Company

⇒ Physical Address | 506 South President Street

⇒ P.O. Box

⇒ City, State, ZIPS, ZIP4 | Jackson | MS | 39201 -

**5. If the Limited Liability Company is to have a specific date of dissolution, the latest date upon which the Limited Liability Company is to dissolve**

⇒ | PERPETUAL

**6. Is full or partial management of the Limited Liability Company vested in a manager or managers? (Mark appropriate box)**

⇒ [ ] Yes    [✗] No

**7. Other matters the managers or members elect to include**

⇒

⇒

Rev. 01/96

792352 FEB 20 07

Exhibit "A"

# OFFICE OF THE MISSISSIPPI SECRETARY OF STATE
### P.O. BOX 136, JACKSON, MS 39205-0136   (601) 359-1333
### Certificate of Formation

By:   Signature

(Please keep writing within blocks)

Printed Name

Corporation Service Company
Brandon Laramore

Title   Organizer Asst. Sect.

Street and Mailing Address

⇒   Physical Address   2711 Centerville Road, Suite 400

⇒   P.O. Box

⇒   City, State, ZIP5, ZIP4   Wilmington   DE   19808   -

By:   Signature

(Please keep writing within blocks)

Printed Name   Title

Street and Mailing Address

⇒   Physical Address

⇒   P.O. Box

⇒   City, State, ZIP5, ZIP4   -

792352 FEB 20 07

Rev. 01/96

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET                                              PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC


V.                                          CIVIL ACTION NO. 4:07cv34-M-B


XM SATELLITE RADIO, INC., and                               DEFENDANTS
SIRIUS SATELLITE RADIO, INC.


## REBUTTAL BRIEF IN SUPPORT OF SIRIUS SATELLITE RADIO'S MOTION FOR ENLARGEMENT OF TIME

It is difficult to imagine any harm that will befall Plaintiff Surfer Internet Broadcasting of Mississippi in the eighteen days between April 2 and April 20, at least in any amount sufficient for it to object in good faith to Sirius' request for eighteen additional days in which to respond to Surfer's Complaint.  After all, Surfer has only existed for one month, having filed its certificate of formation on February 20, 2007.  *See* Certificate of Formation (Ex. "A" to this Rebuttal).  Surfer's Complaint seeks no temporary or preliminary injunctive relief that would suggest any immediacy to a response.  In its Response to Sirius' Motion for Time, Surfer identifies no harm or prejudice and simply states that the applicable rules of procedure provide for twenty days and an additional ten days should be sufficient.

Sirius needs an additional eighteen days (until April 20) beyond the ten days offered by Surfer for two reasons.  Since first receiving the Complaint, Sirius has been and continues to investigate the infringement claims stated by Surfer.  This investigation is complicated by several factors. First, Sirius uses software obtained from a non-party to perform the internet radio broadcast

functions under attack in Surfer's Complaint. Sirius has provided the Complaint to this provider, but must await a response before having any relevant information as to the truth of the averments in Surfer's Complaint. Second, Surfer never communicated with Sirius in advance of filing its Complaint (granted, a difficult task as Surfer filed is Complaint one week after its birth), so receipt of the Complaint in early March was the first indication of any infringement claim by Surfer. Third, Surfer's Complaint is less than informative, as it merely makes "on information and belief" averments and fails to specify which of the particular claims that Sirius supposedly infringes from among the six claims (many with sub-parts) in the patent-in-suit. Finally, Sirius' initial investigation must necessarily include consideration of possible defenses, such as the invalidity and unenforceability of the patent-in-suit. The additional 18 requested days will provide much needed time to permit Sirius to make a good faith response to Surfer's Complaint.

Second, the circumstances surrounding the creation of Surfer and the filing of Surfer's Complaint raise serious forum-shopping questions. With the inventor in Pennsylvania, Sirius in New York and Defendant XM Satellite Radio in Washington, D.C., one does wonder about the propriety of the forum selected by Surfer. As a result of extending the deadline for responding by eighteen days, Sirius will have time to further and more adequately explore the possibility of seeking a transfer of this matter to a more appropriate venue.

In any event, Surfer will not be unduly prejudiced by an additional eighteen days in which Sirius may respond to the Complaint. Sirius requests that this Court grant this reasonable

enlargement of time to permit Sirius to investigate the patent, patent claims, technology under attack, allegations of infringement, available defenses and the appropriate forum for resolving this dispute.

THIS, the 21st day of March, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.

   */s/ J. Cal Mayo, Jr.*
J. CAL MAYO, JR. (MS Bar No. 8492)
POPE S. MALLETTE (MS Bar No. 9836)
PAUL B. WATKINS, JR. (MS Bar No. 102348)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi  38655
Telephone:    (662) 236-0055
Facsimile:    (662) 236-0035

## CERTIFICATE OF SERVICE

I, J. Cal Mayo, Jr., one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

Pope S. Mallette, Esq.
pmallette@mayomallette.com

J. Cal Mayo, Jr., Esq.
cmayo@mayomallette.com

LeRoy Davis Percy, Esq.
roy@tollisonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

Paul Bowie Watkins, Esq.
pwatkins@mayomallette.com

THIS, the 21st day of March, 2007.

_/s/ J. Cal Mayo, Jr._
J. CAL MAYO, JR.



**F0100 - Page 1 of 2**

Business ID: 907327
Date Filed: 02/20/2007 05:00 PM
Eric Clark
Secretary of State

## OFFICE OF THE MISSISSIPPI

P.O. BOX 136, JACKSON, MS 39205-0136  (601) 359-1333

### Certificate of Formation

The undersigned, pursuant to Senate Bill No. 2395, Chapter 402, Laws of 1994, hereby executes the following document and sets forth:

**1. Name of the Limited Liability Company**

⇒ | SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC |

**2. The future effective date is**
   **(Complete if applicable)**  | UPON FILING |

**3. Federal Tax ID**

⇒

**4. Name and Street Address of the Registered Agent and Registered Office is**

⇒ Name | Corporation Service Company |

⇒ Physical
   Address | 506 South President Street |

⇒ P.O. Box

⇒ City, State, ZIPS, ZIP4 | Jackson | MS | 39201 - |

**5. If the Limited Liability Company is to have a specific date of dissolution, the latest date upon which the Limited Liability Company is to dissolve**

⇒ | PERPETUAL |

**6. Is full or partial management of the Limited Liability Company vested in a manager or managers? (Mark appropriate box)**

⇒ ☐ Yes     ☒ No

**7. Other matters the managers or members elect to include**

⇒

⇒

Rev. 01/96

**Exhibit "A"**

792352  FEB 20 07

**F0100 - Page 2 of 2**

# OFFICE OF THE MISSISSIPPI SECRETARY OF STATE
### P.O. BOX 136, JACKSON, MS 39205-0136   (601) 359-1333
### Certificate of Formation

By:   Signature                                         (Please keep writing within blocks)

Printed Name

| Corporation Service Company Brandon Laramore | Title | Organizer Asst. Sect. |
|---|---|---|

Street and Mailing Address

⇒ Physical Address   2711 Centerville Road, Suite 400

⇒ P.O. Box

⇒ City, State, ZIP5, ZIP4   Wilmington   DE   19808   -

By:   Signature                                         (Please keep writing within blocks)

Printed Name                                       Title

Street and Mailing Address

⇒ Physical Address

⇒ P.O. Box

⇒ City, State, ZIP5, ZIP4   -

792352 FEB 20 07

Rev. 01/96

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                         PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                     NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                        DEFENDANTS

### MOTION TO ADMIT NON-RESIDENT ATTORNEYS *PRO HAC VICE*

COMES NOW LeRoy D. Percy, attorney of record for Defendant XM Satellite Radio Inc.,

pursuant to Uniform Local Rule 83.1(A)(2), and moves for the admission of Alan D. Albright, Conor

M. Civins, Ruffin B. Cordell, J. Scott Denko, and Christopher O. Green ("Applicants") to appear

*pro hac vice* in this action as co-counsel of record for Defendant XM Satellite Radio Inc., and in

support states as follows:

1.      Applicants, all of the law firm Fish & Richardson P.C., are non-resident attorneys

who are not members of the Mississippi Bar and who wish to be admitted *pro hac vice* by comity

to practice in this action as attorneys of record for Defendant XM Satellite Radio Inc.

2.      Applicants have associated the undersigned LeRoy D. Percy, a member in good

standing of the bar of this court, to assist them in this action.

3.      Applicants' certifications that they have read and are familiar with the Uniform Local

Rules of the United States District Courts for the Northern District and Southern District of

Mississippi, as well as Applicants' certificates of good standing from the United States district courts

of their respective jurisdictions, are attached hereto as Exhibits "A" through "J."

4.      Applicants' *pro hac vice* admission fees have this day been paid to the clerk of the

court.

WHEREFORE, PREMISES CONSIDERED, LeRoy D. Percy respectfully requests that Alan D. Albright, Conor M. Civins, Ruffin B. Cordell, J. Scott Denko, and Christopher O. Green be admitted *pro hac vice* by comity to practice in this action as attorneys of record for Defendant XM Satellite Radio Inc.

Respectfully submitted,

/s/ *LeRoy D. Percy*
LeRoy D. Percy, MSB #10454
TOLLISON LAW FIRM, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Tel: (662) 234-7070
Fax: (662) 234-7095
roy@tollisonlaw.com

<u>CERTIFICATE OF SERVICE</u>

I, LeRoy D. Percy, hereby certify that I have this day electronically filed the above and foregoing document with the Clerk of Court using the ECF system, which provided notification to the following persons:

J. Kirkham Povall
S. Todd Jeffreys
POVALL & JEFFREYS, P.A.
P.O. Drawer 1199
Cleveland, MS 38732
jkpovall@bellsouth.net
stjeffreys@bellsouth.net

David Zachary Scruggs
Richard F. Scruggs
David Wayne Shelton
SCRUGGS LAW FIRM
P.O. Box 1136
Oxford, MS 38655
zachscruggs@scruggsfirm.com
dickscruggs@scruggsfirm.com
davidshelton@scruggsfirm.com

J. Cal Mayo, Jr.
Pope S. Mallette
Paul B. Watkins, Jr.
MAYO MALLETTE PLLC
P.O. Box 1456
Oxford, MS 38655
cmayo@mayomallette.com
pmallette@mayomallette.com
pwatkins@mayomallette.com

This the 17th day of April, 2007.

/s/ *LeRoy D. Percy*
LEROY D. PERCY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                              PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                    NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                            DEFENDANTS

## CERTIFICATE OF ALAN D ALBRIGHT

I, Alan D Albright, hereby certify that I have read and am familiar with the Uniform Local

Rules of the United States District Courts for the Northern District and the Southern District of

Mississippi.

I have associated LeRoy D. Percy, a member of the bar of this court, to assist me in this

action.

Provided herewith is a certificate from the United States district court of my jurisdiction,

showing that I am duly authorized to practice in and am in good standing with that court.

This the ___26___ day of March, 2007.

_____
Alan D Albright, Tex. Bar No. 00973650
FISH & RICHARDSON P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
Tel: (512) 226-8106
Fax: (512) 320-8935

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                         NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                              DEFENDANTS

## CERTIFICATE OF CHRISTOPHER O. GREEN

I, Christopher O. Green, hereby certify that I have read and am familiar with the Uniform

Local Rules of the United States District Courts for the Northern District and the Southern District

of Mississippi.

I have associated LeRoy D. Percy, a member of the bar of this court, to assist me in this

action.

Provided herewith is a certificate from the United States district court of my jurisdiction,

showing that I am duly authorized to practice in and am in good standing with that court.

This the 21st day of _____March_____, 2007.


_____
Christopher O. Green, Ga. Bar. No. 037617
FISH & RICHARDSON P.C.
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 724-2777
Fax: (404) 892-5002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET             PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.               NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.       DEFENDANTS

## CERTIFICATE OF CONOR M. CIVINS

I, Conor M. Civins, hereby certify that I have read and am familiar with the Uniform Local

Rules of the United States District Courts for the Northern District and the Southern District of

Mississippi.

I have associated LeRoy D. Percy, a member of the bar of this court, to assist me in this

action.

Provided herewith is a certificate from the United States district court of my jurisdiction,

showing that I am duly authorized to practice in and am in good standing with that court.

This the 26th day of March, 2007.

              Conor M. Civins, Tex. Bar No. 24040693
              FISH & RICHARDSON P.C.
              One Congress Plaza, Suite 810
              111 Congress Avenue
              Austin, TX 78701
              Tel: (512) 226-8109
              Fax: (512) 320-8935

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                        PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                              NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                     DEFENDANTS

## CERTIFICATE OF J. SCOTT DENKO

I, J. Scott Denko, hereby certify that I have read and am familiar with the Uniform Local

Rules of the United States District Courts for the Northern District and the Southern District of

Mississippi.

I have associated LeRoy D. Percy, a member of the bar of this court, to assist me in this

action.

Provided herewith is a certificate from the United States district court of my jurisdiction,

showing that I am duly authorized to practice in and am in good standing with that court.

This the 26th day of _____MARCH_____, 2007.

_____

J. Scott Denko, Tex. Bar No. 00792457
FISH & RICHARDSON P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
Tel: (512) 226-8106
Fax: (512) 320-8935

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                          PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                      NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                         DEFENDANTS

## CERTIFICATE OF RUFFIN B. CORDELL

I, Ruffin B. Cordell, hereby certify that I have read and am familiar with the Uniform Local

Rules of the United States District Courts for the Northern District and the Southern District of

Mississippi.

I have associated LeRoy D. Percy, a member of the bar of this court, to assist me in this

action.

Provided herewith is a certificate from the United States district court of my jurisdiction,

showing that I am duly authorized to practice in and am in good standing with that court.

This the 12th day of April, 2007.

Ruffin B. Cordell, Tex. Bar No. 04820550 and
Va. Bar No. 35449
FISH & RICHARDSON P.C.
1425 K Street, N.W.
11th Floor
Washington, D.C. 20005-3500
Tel: (202) 626-6449
Fax: (202) 783-2331

# Certificate of Good Standing

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

I, **WILLIAM G. PUTNICKI**, Clerk of the United States District Court, Western District of Texas, DO HEREBY CERTIFY that Alan D. Albright, Bar # 00973650, was duly admitted to practice in said Court on May 19, 1986, and is in good standing as a member of the bar of said Court.

Signed at Austin, Texas on January 30, 2007.

WILLIAM G. PUTNICKI, Clerk

BY: _____
Deputy Clerk



## CERTIFICATE OF GOOD STANDING

UNITED STATES OF AMERICA          }

                                      } ss.

NORTHERN DISTRICT OF GEORGIA      }

        I, James N. Hatten, Clerk of the United States District Court for the Northern District of Georgia,

        **DO HEREBY CERTIFY** that **CHRISTOPHER OWEN GREEN, 37617,** was duly admitted to practice in said Court on April 30, 2001 and is in good standing as a member of the bar of said Court.

        Dated at Atlanta, Georgia, this 22nd day of March, 2007.

JAMES N. HATTEN
CLERK OF COURT

By: _____

Luis Perez
Deputy Clerk



# Certificate of Good Standing

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

I, **WILLIAM G. PUTNICKI**, Clerk of the United States District Court, Western District of Texas,

DO HEREBY CERTIFY that CONOR M. CIVINS, Texas State Bar No. 24040693, was duly admitted to

practice in said Court on January 13, 2006, and is in good standing as a member of the bar of said Court.

Signed at Austin, Texas on November 16, 2006.

WILLIAM G. PUTNICKI, Clerk

BY: _____
Deputy Clerk

# Certificate of Good Standing

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

I, **WILLIAM G. PUTNICKI**, Clerk of the United States District Court, Western District of Texas, DO HEREBY CERTIFY that John Scott Denko, Bar # 00792457, was duly admitted to practice in said Court on November 14, 2000, and is in good standing as a member of the bar of said Court.

Signed at Austin, Texas on January 30, 2007.

WILLIAM G. PUTNICKI, Clerk

BY: _____

Deputy Clerk

# United States District Court
# for the District of Columbia
### CLERK'S OFFICE
### 333 Constitution Avenue, NW
### Washington, DC 20001

---

I, **NANCY M. MAYER-WHITTINGTON,** Clerk of the United States

District Court for the District of Columbia, do hereby certify that:

### RUFFIN   B.   CORDELL

was, on the  5th  day of  August  A.D.  1996  admitted to practice as an  Attorney

at  Law at the Bar of this Court, and is, according to the records of this Court, a

member of said Bar in good standing.

In Testimony Whereof, I hereunto subscribe my name and affix the seal of said Court

in the City of Washington this  16th  day of  April  A.D. 2007.

**NANCY M. MAYER-WHITTINGTON,** CLERK

By: _____
                 **Deputy Clerk**



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET                                                                                        PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                                                   CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                                                        DEFENDANTS
SIRIUS SATELLITE RADIO, INC.

## MOTION OF DEFENDANT SIRIUS SATELLITE RADIO INC.
## FOR ADMISSION OF COUNSEL BY COMITY

Defendant Sirius Satellite Radio Inc. moves the Court to admit Vito J. DeBari, ("DeBari")

of KRAMER LEVIN NAFTALIS & FRANKEL LLP, as attorney *pro hac vice* by comity, and states the

following:

1.      As demonstrated by the Declaration attached hereto as Exhibit "A," DeBari practices

law in New York, New York. He is admitted to practice in the District Courts of New York and is

a member in good standing of the New York Bar.

2.      DeBari seeks admission *pro hac vice* by comity in this case to represent Defendant

Sirius Satellite Radio Inc. in association with Pope S. Mallette, MAYO MALLETTE PLLC, a resident

attorney, and the attorneys in the law firm of MAYO MALLETTE PLLC.

WHEREFORE, PREMISES CONSIDERED, Defendant Sirius Satellite Radio Inc.

respectfully moves this Court, pursuant to Local Rule 83.1(A)(2), that Vito J. DeBari of KRAMER

LEVIN NAFTALIS & FRANKEL LLP be admitted *pro hac vice* by comity as a nonresident attorney

before the Bar of this Court for all proceedings on behalf of Defendant Sirius Satellite Radio Inc. in

connection with the above-referenced civil action.

THIS, the 17th day of April, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.

  */s/ Pope S. Mallette*
J. CAL MAYO, JR. (MS Bar No. 8492)
POPE S. MALLETTE (MS Bar No. 9836)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi 38655
Telephone:     (662) 236-0055
Facsimile:     (662) 236-0035

## CERTIFICATE OF SERVICE

   I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify

that I have this date electronically filed a true and correct copy of the foregoing document with the

Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

   Steven Todd Jeffreys, Esq.
   stjeffreys@bellsouth.net

   John K. Povall, Esq.
   jkpovall@bellsouth.net

   David Zachary Scruggs, Esq.
   zachscruggs@scruggsfirm.com

   Richard F. Scruggs, Esq.
   dickscruggs@scruggsfirm.com

   David Wayne Shelton, Esq.
   davidshelton@scruggsfirm.com

   THIS, the 17th day of April, 2007.


             */s/ Pope S. Mallette*
             POPE S. MALLETTE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

SURFER INTERNET
BROADCASTING OF
MISSISSIPPI, LLC

PLAINTIFF

V.

CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO INC., and
SIRIUS SATELLITE RADIO INC.

DEFENDANTS

**DECLARATION UNDER PENALTY OF PERJURY
OF VITO J. DEBARI IN SUPPORT OF
PLAINTIFFS' MOTION FOR ADMISSION BY COMITY**

I, Vito J. DeBari, declare as follows:

1.      My residence address is 215 Atlantic Street, Oradell, New Jersey 07649, and my office address is Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036.

2.      I received a Juris Doctorate, Fordham University School of Law, 1995 and a Bachelor of Engineering, Stevens Institute of Technology, 1988.

3.      I desire to appear as counsel *pro hac vice* for Defendant Sirius Satellite Radio Inc. in the United States District Court for the Northern District of Mississippi in the above-styled matter.

4.      I am admitted to practice before the United States District Court for the Southern District of New York as of May 21, 1996.

5.      I am currently licensed and/or in good standing to practice law in State of New York.  A copy of my Certificate of Good Standing in the District Court from my jurisdiction is attached.

KL3 2587165.1

6.     I am not now nor have I ever been suspended or disbarred by a jurisdiction.

7.     I have associated J. Cal Mayo, Jr., and Pope S. Mallette, who are members in good standing of the Mississippi Bar, and the firm of MAYO MALLETTE PLLC as local counsel in the above-styled cause.

8.     I certify that I have read and am familiar with the Uniform Local Rules of this Court and that upon filing of the attached Motion I will pay the *pro hac vice* admission fee.

I declare under penalty of perjury that the foregoing is true and correct.

THIS, the 17th day of April, 2007.

_____
Vito J. DeBari

# United States District Court
## Southern District of New York

# Certificate of
# Good Standing

I, _____J. Michael McMahon_____ , Clerk of this Court, certify that

VITO  DeBARI_____ , Bar # _____VD3539_____

was duly admitted to practice in this Court on

MAY  21st,  1996_____ , and is in good standing

as a member of the Bar of this Court.

Dated at  500 Pearl Street
New York, New York          on  APRIL 13th,  2007

**J. MICHAEL McMAHON**
Clerk

by: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                                      PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                                  NO. 4:07cv34-M-B

XM SATELLITE RADIO INC., ET AL.                                     DEFENDANTS

## ORDER

LeRoy D. Percy having moved for the admission *pro hac vice* of certain non-resident

attorneys to practice in this action as co-counsel of record for Defendant XM Satellite Radio Inc.

(doc. 16), and it appearing to the Court that the requirements of Uniform Local Rule 83.1(A)(2) have

been met, the Court finds that the motion is well taken and should be granted.

**IT IS ORDERED, THEREFORE**, that Alan D. Albright, Conor M. Civins, Ruffin B.

Cordell, J. Scott Denko, and Christopher O. Green shall be and are hereby admitted to appear *pro*

*hac vice* in this action as attorneys of record for Defendant XM Satellite Radio Inc.  Said attorneys

shall on or before May 2, 2007, register for electronic service of orders and notices of the Court in

accordance with Federal Rule of Civil Procedure 5(b)(2)(D) and Uniform Local Rule 5.2(A).

Attorneys may register electronically by accessing the Attorney Registration site at

www.msnd.uscourts.gov/ecf or, alternatively, by printing, executing and mailing or hand-delivering

to the Clerk of this Court the Attorney Registration Form attached as Form 1 to the *Administrative*

*Procedures for Electronic Case Filing* in the United States District Court for the Northern District

Page -1-

of Mississippi.

**THIS**, the 18th day of April, 2007.

/s/ Eugene M. Bogen
UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

SURFER INTERNET                                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                                    CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                                     DEFENDANTS
SIRIUS SATELLITE RADIO INC.


## ORDER GRANTING ADMISSION OF COUNSEL BY COMITY

This matter came before this Court on the Motion [doc. 17] of Defendant Sirius Satellite

Radio Inc., for Admission of Counsel by Comity.  The Court, having considered the Motion and

being otherwise fully advised in the premises, finds that the Motion is well-taken and should be

granted.

**IT IS, THEREFORE, ORDERED** that Vito J. DeBari, of Kramer Levin Naftalis & Frankel

LLP, is admitted *pro hac vice* as a nonresident attorney before the Bar of this Court for all

proceedings on behalf of the Defendant Sirius Satellite Radio Inc., in connection with the above-

referenced action.  Mr. DeBari shall on or before May 2, 2007, register for electronic service of

orders and notices of the Court in accordance with Federal Rule of Civil Procedure 5(b)(2)(D) and

Uniform Local Rule 5.2(A).  Attorneys may register electronically by accessing the Attorney

Registration site at www.msnd.uscourts.gov/ecf or, alternatively, by printing, executing and mailing

or hand-delivering to the Clerk of this Court the Attorney Registration Form attached as Form 1 to

the *Administrative Procedures for Electronic Case Filing* in the United States District Court for the

Northern District of Mississippi.

**THIS**, the 18th day of <u>April</u>, 2007.

<u>/s/ Eugene M. Bogen</u>
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

SURFER INTERNET                                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                                    CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                                    DEFENDANTS
SIRIUS SATELLITE RADIO INC.

## ORDER GRANTING ADMISSION OF COUNSEL BY COMITY

This matter came before this Court on the Motion [doc. 17] of Defendant Sirius Satellite

Radio Inc., for Admission of Counsel by Comity.  The Court, having considered the Motion and

being otherwise fully advised in the premises, finds that the Motion is well-taken and should be

granted.

**IT IS, THEREFORE, ORDERED** that Vito J. DeBari, of Kramer Levin Naftalis & Frankel

LLP, is admitted *pro hac vice* as a nonresident attorney before the Bar of this Court for all

proceedings on behalf of the Defendant Sirius Satellite Radio Inc., in connection with the above-

referenced action.  Mr. DeBari shall on or before May 2, 2007, register for electronic service of

orders and notices of the Court in accordance with Federal Rule of Civil Procedure 5(b)(2)(D) and

Uniform Local Rule 5.2(A).  Attorneys may register electronically by accessing the Attorney

Registration site at www.msnd.uscourts.gov/ecf or, alternatively, by printing, executing and mailing

or hand-delivering to the Clerk of this Court the Attorney Registration Form attached as Form 1 to

the *Administrative Procedures for Electronic Case Filing* in the United States District Court for the

Northern District of Mississippi.

      **THIS**, the 18th day of <u>April</u>, 2007.


                                  <u>/s/ Eugene M. Bogen</u>
                                  UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 4:07cv34-M-B |
| v. | ) ) | **MEMORANDUM IN SUPPORT** |
| XM SATELLITE RADIO INC., and SIRIUS SATELLITE RADIO INC. | ) ) ) | **OF DEFENDANTS' JOINT MOTION TO TRANSFER VENUE** |
| Defendants. | ) ) | |

Defendants Sirius Satellite Radio Inc. ("Sirius") and XM Satellite Radio Inc. ("XMSR") (referred to collectively herein as "Defendants") respectfully submit this Memorandum in support of their Motion to Transfer Venue.[1] Defendants move pursuant to 28 U.S.C. §1404(a) to transfer this patent infringement action to the District Court for the Southern District of New York ("SDNY"). As described below, the facts and circumstances in this case clearly demonstrate that, for the convenience of the parties and witnesses and in the interests of justice, the case should be transferred to the SDNY.

## I. PRELIMINARY STATEMENT

Plaintiff Surfer Internet Broadcasting of Mississippi, LLC ("Plaintiff" or "Surfer") has brought this patent infringement action against Defendants Sirius and XMSR in the Northern District of Mississippi despite the fact that this action has no meaningful connection to

---

[1] Also attached in support of this motion is the Declaration of Vito J. DeBari ("DeBari Decl."), who is a member of Sirius' litigation counsel in New York. Mr. DeBari has sought *pro hac vice* admission in this case by motion filed earlier this week. All Exhibits that support this Memorandum are attached to the DeBari Decl. and will be referred to herein as "Ex. __."

Mississippi. Defendants file this motion to transfer to the SDNY, because it is a more convenient forum for the witnesses and parties and better serves the interests of justice. The following factors weigh strongly in favor of transferring this action to the SDNY:

- Most of the party and non-party witnesses identified to date, as well as documents likely to be relevant in this action, are located in or near the SDNY. In fact, Defendants are not aware of **any** witnesses or documents that are located in Mississippi;

- Plaintiff Surfer was formed in Mississippi a mere **seven days** prior to the filing of this lawsuit in an attempt to manufacture some connection to the Northern District of Mississippi. In reality, the individuals who have knowledge of and interest in the patent at issue are located in or near New Jersey;

- Transfer to the SDNY will significantly reduce the cost of attendance for the majority of the witnesses who will likely testify in this action.

## II.  BACKGROUND

Plaintiff brought this lawsuit in the Northern District of Mississippi against Defendants Sirius and XMSR, alleging that Defendants are infringing U.S. Patent No. 6,766,376 ("the '376 patent") (Ex. 1), which involves streaming video and/or audio files over the Internet. This lawsuit, however, has no meaningful connection to Mississippi.

While Plaintiff Surfer is a Mississippi entity, it was suspiciously formed a mere <u>seven days</u> before this litigation was filed, strongly suggesting that Plaintiff Surfer was formed for the sole purpose of suing Defendants in Mississippi. According to the Mississippi Secretary of State records, Plaintiff Surfer does not even maintain an office in Mississippi and had no officers or directors when it was formed.[2]    In fact, when the history of the `376 patent is examined, it is

---

[2] Although the Mississippi Secretary of State records do not list any address for Surfer in Mississippi (Ex. 2), Surfer listed in its Complaint (¶2) a "principal place of business" that it has

revealed that the witnesses and evidence related to the patent are located not in Mississippi, but almost exclusively in New Jersey and Pennsylvania, forums that are substantially more convenient to the SDNY than the Northern District of Mississippi.

Prior to the assignment of the `376 patent to Plaintiff[3], the patent and/or patent application were owned by a series of related entities that were based in either Budd Lake, New Jersey or Flanders, New Jersey, which are located less than 50 miles from the SDNY.  (Exs. 15, 19).  Moreover, three individuals likely to have substantial knowledge of the development of the `376 patent as well as the patent's claimed invention are also located in or near New Jersey.  One of those individuals, William A. Grywalski, the co-founder and/or president of each of the related entities that owned the `376 patent before it was assigned to Plaintiff[4], is a resident of

---

in Greenville, Mississippi.  Thus, it appears that Surfer opened its "principal place of business" in Greenville some time in the week between its formation and the filing of this action.

[3] While the Complaint in this action alleges that Surfer is the assignee of the '376 patent (Complaint ¶1), since Surfer was formed only seven days before the Complaint in this action was filed, the '376 could only have been assigned to Surfer within the seven day period between the formation of Surfer and the filing of the Complaint.

[4] Specifically, before the '376 patent application issued, the named inventor on the face of the '376 patent, Harold Edward Price, assigned the '376 patent application to a company which Mr. Grywalski co-founded and for which he served as President, SurferNetwork.com, Inc.  (Exs. 4, 5).  At the time, SurferNetwork.com Inc.'s place of business was in Mount Olive, New Jersey.  (Ex. 4).  Then, while the '376 patent application was pending, it was assigned to SN Acquisition, LLC ("SN"), located in Flanders, New Jersey, which acquired all the assets and assumed all operations of SurferNetwork.com, Inc.  (Exs. 4, 6, 7).  Mr. Grywalski also was a member and President of SN.  (Ex. 7).  Finally, shortly after the '376 patent issued, it was assigned by SN to WAG Acquisition, LLC ("WAG"), which has the same business address as SN.  (Exs. 4, 8).  WAG currently is doing business as "SurferNetwork", which operates a website (www.surfernetwork.com) and which lists as its business address the same address as WAG's place of business in Flanders, New Jersey.  (Exs. 8, 9).  Mr. Grywalski currently is a member of WAG and President of SurferNetwork.  (Exs. 5, 8).  Significantly, SurferNetwork's website (www.surfernetwork.com) still indicates that it owns the '376 patent and includes copies of press releases that refer to the '376 patent as covering certain of its technology that is referred to as SurferNetwork's "LightingStream" technology.  (Exs. 10, 11).

Budd Lake, New Jersey. (Ex. 3). Earnest D. Bluff, the attorney who prosecuted the `376 patent, maintains an office in Bedminster, New Jersey, which is also located less than 50 miles from the SDNY. (Exs. 12, 18). Finally, Harold Edward Price, the named inventor on the face of the `376 patent, is a resident of Bethel Park, Pennsylvania. (Ex. 13). While Bethel Park is located approximately 380 miles from the SDNY, it is more than 900 miles from Greenville, Mississippi. (Ex. 17).

Similarly, Defendants' witnesses and evidence are located in or near the SDNY. Defendant Sirius is a Delaware corporation that is headquartered in New York, New York and, more specifically, in the SDNY. Sirius employees who have knowledge of and may testify regarding the design, function and/or operation of Sirius' accused products are located in New York or within the New York metropolitan area. For example, Sirius' head of engineering and Sirius' sales and marketing personnel are located in New York. Moreover, all the documents and evidence that relate to Sirius' accused products are located at Sirius' headquarters in New York or within the New York metropolitan area.

Defendant XMSR is a Delaware corporation that is headquartered in Washington, D.C. XMSR employees who have knowledge and may testify regarding the design, function and/or operation of XMSR's accused products are located primarily in Washington, D.C., including XMSR's sales and marketing personnel. XMSR documents and evidence that relate to the XMSR products at issue in this lawsuit are also located in Washington, D.C. New York is significantly more convenient to Washington, D.C. than Greenville, Mississippi, as the distance between the cities illustrates. While Washington, D.C. is located approximately 225 miles from New York, it is over 1050 miles from Greenville, Mississippi. In addition, XMSR does frequent business in New York and maintains two offices there.

4

Accordingly, and for the reasons described in detail below, the balance of convenience and the interests of justice weigh in favor of transfer of this action to the SDNY.

## III.  ARGUMENT AND AUTHORITIES

### A.  Legal standard for transfer of venue under 28 U.S.C. § 1404(a).

Section 1404(a) of Title 28 provides that a "district court may transfer any civil action to any other district or division where it might have been brought" based on "the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The first question in determining whether a case may be transferred is whether the requested transfer would place the action in a judicial district in which the claim could have originally been filed. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If transfer would place an action in a judicial district where the claim could have originally have been filed, the Court must then consider whether the convenience of the parties and witnesses and the interests of justice dictate transfer. *Dale v. First American National Bank*, 395 F.Supp.2d 451, 453-54 (S.D. Miss 2005).

There are two categories a Court considers when determining whether convenience and justice dictate venue transfer: (1) private interests and (2) public interests. *See Volkswagen*, 371 F.3d at 203; *Masonite Corp. v. Jeld-Wen, Inc.*, No CIV A206CV184KS, 2007 WL 685190 at *1 (S.D. Miss., March 2, 2007). Private interests are considered first, and are the following:

(1)   the relative ease of access to sources of proof;
(2)   the availability of compulsory process to secure the attendance of witnesses;
(3)   the cost of attendance for willing witnesses; and
(4)   all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Volkswagen*, 371 F.3d at 203.

Even if the private interests do not rise to the level of justifying transfer, the Court may still transfer on the basis of public interests, which include the following:

5

    (1)     the administrative difficulties flowing from court congestion;
    (2)     the local interest in having localized interests decided at home;
    (3)     the familiarity of the forum with the law that will govern the case; and
    (4)     the avoidance of unnecessary problems of conflicts of laws in the application of foreign law.

*Id.*

Additionally, a court must consider the plaintiff's choice of forum, although it is not conclusive or determinative. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

The applicable factors in this case dictate that this lawsuit be transferred to the SDNY. Specifically, the SDNY is a judicial district in which this lawsuit could have originally been filed, both the private and public interests weigh heavily in favor of transfer to the SDNY and, as will be discussed in greater detail below, Plaintiff's choice of forum is entitled to no deference under these circumstances because Plaintiff and this litigation have no real connection to Mississippi.

### B.     This action could have been brought in the SDNY.

In patent infringement cases, venue is governed by both 28 U.S.C. § 1391 (federal question jurisdiction) and 28 U.S.C. § 1400 (patent infringement). For federal questions, venue is proper in a judicial district (1) where any defendant resides or (2) in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391. In patent infringement cases, in addition to being appropriate in the judicial district where the defendant resides, the action may also be brought where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400.

In this case, the SDNY is an appropriate venue under either statute. Sirius is a resident of the SDNY because it headquartered in, and does business in, New York City. Similarly, XMSR

is a resident of the SDNY because it has offices in, and does business in, New York City. Accordingly, Plaintiff could have originally filed this action in the SDNY.

### C. Private interest factors weigh in favor of transfer to the SDNY.

Once a Court determines that a lawsuit could have originally been filed in the targeted venue for transfer (in this case the SDNY) it must then consider the following private concerns in order to determine whether transfer is appropriate: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen*, 371 F.3d at 203.

#### 1. Sources of proof are more easily accessible in the SDNY.

The most significant factor to consider when deciding a motion to transfer under Section 1404(a) is the convenience of the party and non-party witnesses. *The Willowbrook Found. Inc. v. Visiting Nurse Ass'n Inc.*, 87 F. Supp.2d 629, 636 (N.D. Miss. 2000). In addition, the location of the sources of proof is an important related consideration. *See, e.g., Volkswagen*, 371 F.3d at 204-05; *see also Apache Products Co. v. Employers Insurance of Wausau*, 154 F.R.D. 650, 653 (S.D. Miss. 1994) (transferring venue from the Southern District of Mississippi to the Northern District of Illinois where the product at issue in the lawsuit was designed, developed, and analyzed in Illinois and the majority of party and non-party witnesses were located in Illinois). In this case, both the witnesses and other sources of proof are located in or near the SDNY, which makes it a more convenient forum and a forum where sources of proof are more easily accessible.

7

For example, Sirius' employees who have knowledge of and may testify regarding the design, function and/or operation of any of Sirius' accused products are located in New York or in the New York metropolitan area. This includes Sirius' head of engineering and sales and marketing personnel. Similarly, the documents and evidence that are in Sirius' possession or control that relate to its accused products are located at its headquarters in New York or within the New York metropolitan area.

XMSR employees who have knowledge and may testify regarding the design, function and/or operation of XMSR's accused products are located in Washington, D.C., including XMSR's sales and marketing personnel. The documents and evidence in XMSR's possession or control that relate to its accused products are also located at its headquarters in Washington, D.C., which is significantly more convenient to the SDNY than Greenville, Mississippi.

In addition to Defendant Sirius' and XMSR's witnesses and evidence, Messr. Grywalski, Bluff and Price, discussed above, are likely to have substantial knowledge regarding the development of the claimed invention of the `376 patent and the prosecution of the patent itself. Mr. Grywalski, the co-founder and/or president of each entity that previously owned the `376 patent, is likely to have information regarding the development and commercialization of the patent's claimed invention and any licensing efforts undertaken in connection with the patent. Mr. Grywalski resides in Budd Lake, New Jersey, less than 50 miles from the SDNY. (Exs. 3, 15). Mr. Bluff, the attorney who prosecuted the `376 patent, will have information related to the issuance of the `376 patent, including information related to the patent's claim construction, as well as the patent's potential invalidity and unenforceability. Mr. Bluff has a law office in Bedminster, New Jersey, which is also less than 50 miles from the SDNY. (Exs. 12, 18). Finally, Mr. Price, the named inventor on the `376 patent, will have detailed information

regarding the claimed invention of the `376 patent, as well as information regarding the patent's potential invalidity and unenforceability. Mr. Price resides in Bethel Park, Pennsylvania, which is much closer and more convenient to the SDNY than to the Northern District of Mississippi. (Exs. 16, 17).

Documents and evidence related to the `376 patent are also likely located in New Jersey—specifically where Mr. Grywalski resides (Budd Lake, New Jersey), where the previous owners of the `376 patent are located (Budd Lake and Flanders, New Jersey) and/or where Mr. Bluff's office is located (Bedminster, New Jersey). Additional documents and evidence may also be located in Bethel Park, Pennsylvania, where the named inventor on the `376 patent, Mr. Price, resides.

Thus, the parties, witnesses, documents and other evidence in this lawsuit are located in New York, New Jersey, Washington, D.C. and Pennsylvania. Indeed, Defendants are not aware of a single witness or document that is located anywhere in the State of Mississippi. Given the location of the SDNY in New York and the proximity of New Jersey, Washington, D.C. and Pennsylvania to the SDNY, as well as the ease and frequency of travel between those locations and the SDNY, it seems clear that access to sources of proof is substantially more convenient in the SDNY than Greenville, Mississippi. Accordingly, the convenience of the known potential witnesses and parties strongly favor a transfer of this case to the SDNY.

> **2. Compulsory process to secure witnesses exists in the SDNY, but does not in Greenville, Mississippi.**

The compulsory process factor "speaks to the availability of compulsory process to secure attendance; it does not instruct district courts to take into account other means of ensuring a witness's attendance." *Elwood v. Cobra Collection Agency*, No. 2:06cv91-KS-JMR, 2006 U.S.

Dist. LEXIS 90555 at *17 (S.D. Miss Dec. 14, 2006). The weight given to the availability of compulsory service of process to secure the in-person attendance of a witness depends heavily on the availability of non-party witnesses. *See Id.* at *15-16. In *Apache*, for example, the District Court for the Southern District of Mississippi transferred venue to the Northern District of Illinois after noting, *inter alia*, that "a party should not be relegated to trying his case with depositions rather than live witnesses because he is unable to compel the attendance of material witnesses." *Apache*, 154 F.R.D. at 655.

Key potential unwilling witnesses in this case reside within the subpoena power of the SDNY. For example, Mr. Bluff, the attorney who prosecuted the '376 patent may be compelled to attend trial in the SDNY, but not in Northern District of Mississippi. Similarly, Mr. Grywalski, co-founder and president of each of the entities that previously owned the `376 patent, may be compelled to attend trial in the SDNY, but not in Northern District of Mississippi. In addition, to the extent other officers or employees of the New Jersey entities that previously owned the `376 patent need to be compelled to testify, those individuals are likely in the subpoena power of the SDNY, but not the Northern District of Mississippi.

Moreover, although all the witnesses in this case have yet to be identified, it is evident that the majority of the witnesses in this case will be concentrated in New York, or relatively nearby forums such as Washington, D.C., New Jersey and Pennsylvania. As such, this factor heavily favors transferring the case from the Northern District of Mississippi to the SDNY.

### 3. Venue in the SDNY would significantly reduce the cost of attendance for the majority of witnesses.

As discussed above, the SDNY is clearly a more convenient forum than the Northern District of Mississippi for the majority of witnesses in this case, including both party witnesses

and potential non-party witnesses. Implicit in this convenience is a lower cost for these witnesses to testify. Travel to the SDNY from within New York and from nearby forums such as Washington, D.C., New Jersey and Pennsylvania will be substantially cheaper, faster and generally less burdensome than traveling from these places to Greenville, Mississippi, which is a more than 1200 mile journey from the SDNY. (Ex. 20). *See Volkswagen*, 371 F.3d at 204-05 (recognizing that when "the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"). Because it would be more costly and burdensome for the witnesses in this case to appear in the Northern District of Mississippi than the SDNY, this factor heavily favors transfer to the SDNY.

### 4. Other practical problems favor transfer to the SDNY.

The parties, witnesses, documents and other evidence in this case are all located in or near the SDNY. In addition, every party to this action has hired counsel with offices in New York City. Sirius has hired Kramer Levin Naftalis & Frankel, XMSR has hired Fish & Richardson P.C., and Plaintiff has hired Ward & Olivo (Ex. 14). — all with offices located in the SDNY. It will be faster, easier and less costly to transport the parties, lawyers, witnesses, documents and other evidence in this case to the SDNY rather than the Northern District of Mississippi. There are numerous forms of transportation between New Jersey or Pennsylvania and New York and, while there are frequent direct flights between Washington, D.C. and New York, there are no direct flights between Washington, D.C. and Greenville, Mississippi.

Furthermore, because this request for transfer is being made early in the litigation when there has been no substantial progression of this case and no discovery, a transfer to the SDNY would not hinder the progress of this case. *See Apache*, 154 F.R.D. at 657, *Frazier v.*

*Commercial Credit Equip. Corp.*, 755 F. Supp. 163 (S.D. Miss. 1991).  Thus, this factor weighs in favor of transfer to the SDNY.

### D. Public interest factors weigh in favor of transfer to the SDNY.

In addition to considering private interest factors, a court may also consider the following public interesting factors: 1) administrative difficulties flowing from court congestion; 2) the local interest in having local issues decided at home; 3) the forum's familiarity with the governing law; and 4) the avoidance of unnecessary conflict of law problems involving foreign law's application.  *Volkswagen*, 371 F.3d at 203.  Each of these factors is either neutral or favors transfer to the SDNY.

#### 1. Administrative difficulties flowing from court congestion favors transfer.

In 2006, the median time from the filing a civil case to final disposition in the Northern District of Mississippi was 12.3 months, compared to a significantly shorter period of 8.3 months in the SDNY.  (Exs. 21, 22).  Comparing the median time from the filing of a civil case to trial, in 2006 the median time in the Northern District of Mississippi was 24.0 months, while in the SDNY it was a slightly longer period of 25.7 months.  (Exs. 21, 22).  Thus, based upon these statistics, the administrative difficulties flowing from court congestion favors transferring the case to the SDNY.  *See Masonite Corp.*, 2007 WL 685190 at *1 (S.D. Miss., March 2, 2007) (comparing the median times from the filing of a civil case to final disposition of the original forum and transferee forum when analyzing the "administrative difficulties" factor).

#### 2. Mississippi has little, if any, localized interest in this case.

Mississippi has little, if any, local interest in deciding this case.  As discussed above, Plaintiff was formed a mere seven days before filing this lawsuit, strongly indicating that its sole purpose for forming in Mississippi was to bring this suit.  Plaintiff does not appear to maintain an

office in Mississippi, have any assets in Mississippi or employ any Mississippians.[5]  *See Dunn v. Am. Health Ctrs., Inc.*, 2006 U.S. Dist. LEXIS 71493 at *16-17 (finding a lawsuit to have practically no substantive connection to the Northern District of Mississippi when no Mississippi residents were parties to the lawsuit and only a fraction of the assets connected with the litigation were located in Mississippi).   The individuals and entities with knowledge relevant to this lawsuit are located almost exclusively in New York, New Jersey, Washington, D.C. and Pennsylvania.  Thus, it is difficult to discern any interest Mississippi or its citizens would have in the outcome of this lawsuit.  As stated by the Gulf Oil Court, "jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  Accordingly, this factor favors transfer to the SDNY.

### 3. Because this case is governed by federal law exclusively, familiarity with the law is a neutral factor.

The familiarity with governing law is inapplicable in this case because the suit does not involve any state law claims.  This Court, therefore, is no better or worse equipped to handle this matter than any other United States district court.  This factor favors neither venue.

### 4. Because there is no application of foreign law in this case, conflicts of laws is a neutral factor.

The avoidance of unnecessary conflict of laws concern is inapplicable in this action because it is governed entirely by federal patent law.  This factor favors neither venue.

### E. No deference should be given to Plaintiff's choice of forum.

---

[5] See footnote 2.

Plaintiff's choice of forum may be entitled to some degree of greater consideration, however, it is by no means determinative. *Gregory Productions, v. Trimark Picture, Inc.*, No. CIV.A2:96CV24-D-A, 1996 WL 33370629 at *3 (N.D. Miss. March, 8, 1996) (citing *Gundle Lining Const. v. Fireman's Fund Inc.*, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994). While the plaintiff's choice of forum is normally entitled to significant weight, it is entitled to little consideration when a plaintiff sues in a district other than the district in which he resides. *Embree v. Cutter Biologics*, 760 F. Supp. 103, 105 (N.D. Miss. 1991). In this instance, although Plaintiff technically resides in Mississippi, its residence was suspiciously established a mere seven days prior to the filing of this lawsuit, which strongly suggests forum shopping. When a plaintiff forum shops little, if any, deference should be given to its choice of forum. *See Fullman v. AAA Cooper Transportation Co.*, 732 F. Supp. 54, 56 (N.D. Miss. 1990).

Moreover, when a defendant demonstrates that another forum is significantly more convenient for the parties and witnesses, and there appears to be no substantial impediments to transfer, "the plaintiff's choice of forum must give way and the court should not hesitate to order a transfer." *Apache*, 154 F.R.D. at 653. Defendants have demonstrated in this motion that the SDNY is a significantly more convenient forum for the parties and witnesses than the Northern District of Mississippi. Accordingly, transfer of this case to the SDNY is appropriate.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants Sirius and XMSR respectfully request that the Court grant this Motion to Transfer Venue and any such other and further relief to which Defendants are justly entitled.

14

THIS, the 20th day of April, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.                    XM SATELLITE RADIO INC.


  _/s/ Pope S. Mallette_                          _/s/ LeRoy D. Percy_
J. CAL MAYO, JR. (MS Bar No. 8492)             LEROY D. PERCY (MS Bar No. 10454)
POPE S. MALLETTE (MS Bar No. 9836)             _ONE OF ITS ATTORNEYS_
PAUL B. WATKINS, JR. (MS Bar No.
10348)
VITO J. DEBARI (Admitted _Pro Hac Vice_)
_ITS ATTORNEYS_                                 OF COUNSEL:

OF COUNSEL:                                     TOLLISON LAW FIRM, P.A.
                                                100 Courthouse Square
MAYO MALLETTE PLLC                              Post Office Box 1216
428 North Lamar Boulevard                       Oxford, Mississippi  38655
Post Office Box 1456                            Telephone:     (662) 234-7070
Oxford, Mississippi  38655                      Facsimile:      (662) 234-7095
Telephone:     (662) 236-0055
Facsimile:      (662) 236-0035

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-9249
Facsimile:      (212) 715-8000

**CERTIFICATE OF SERVICE**

I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Alan D. Albright, Esq.
Albright@fr.com

Conor M. Civins, Esq.
Civins@fr.com

Ruffin B. Cordell, Esq.
Cordell@fr.com

J. Scott Denko, Esq.
Denko@fr.com

Christopher O. Green, Esq.
Cgreen@fr.com

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

LeRoy Davis Percy, Esq.
Roy@tollisonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

THIS, the 20th day of April, 2007.

_/s/ Pope S. Mallette_
POPE S. MALLETTE

KL3 2587518.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
SURFER INTERNET BROADCASTING     :
OF MISSISSIPPI, LLC,     :
    :
        Plaintiff,     :
    :
v.     :   Civil Action No. 4:07-CV-34-M-B
    :
XM SATELLITE RADIO, INC.,     :
        and     :
SIRIUS SATELLITE RADIO INC.,     :
    :
        Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## ANSWER OF SIRIUS SATELLITE RADIO INC.

Defendant Sirius Satellite Radio Inc. ("Sirius") for its Answer to the Original Complaint ("Complaint") of Plaintiff Surfer Internet Broadcasting Of Mississippi, LLC ("Surfer") responds to each of the numbered paragraphs of the Complaint as follows:

### NATURE OF THE ACTION

1.     Sirius admits that this is an action for patent infringement and that Surfer seeks injunctive relief and monetary damages. Sirius admits Surfer has alleged that it is the assignee of United States Patent No. 6,766,376 ("the '376 patent"), but Sirius otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies them. Further, Sirius denies all remaining allegations in Paragraph 1 of the Complaint.

### PARTIES

2.     Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint and, therefore, denies them.

3.      Sirius admits that XM Satellite Radio Inc. ("XM Radio") is a Delaware corporation which is headquartered in Washington, D.C.  Sirius lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3 of the Complaint and, therefore, denies them.

4.      Sirius admits the allegations in Paragraph 4 of the Complaint.

<u>JURISDICTION AND VENUE</u>

5.      Sirius admits that this action purports to arise under the Patent Laws of the United States, Title 35 U.S.C. §§ 1 *et seq.*  Sirius admits that the Court has jurisdiction to resolve federal causes of action that arise under the Patent Laws of the United States, but Sirius otherwise denies the remaining allegations.

6.      Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint relating to defendant XM Radio and, therefore, denies them.  Further, Sirius denies the remaining allegations in Paragraph 6 of the Complaint.

7.      Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint relating to defendant XM Radio and, therefore, denies them.  Sirius admits that it distributes, offers for sale, sells, and/or advertises its products and services nationally throughout the United States, including through its web site.  Sirius admits that it has customers who are residents in the State of Mississippi.  Sirius otherwise denies the remaining allegations Paragraph 7 of the Complaint.

8.      Sirius denies the allegations in Paragraph 8 of the Complaint.

<u>COUNT I – PATENT INFRINGEMENT</u>

9.      Sirius admits that the '376 patent was granted by the United States Patent and Trademark Office ("USPTO") on July 20, 2004, but Sirius otherwise denies that the patent was

KL3 2587247.5

duly and legally issued by the USPTO after a full and fair examination. Further, Sirius lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Complaint and, therefore, denies them.

10.     Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint relating to defendant XM Radio and, therefore, denies them. Sirius admits that it provides internet radio services and maintains a website that may be found at http://www.sirius.com, but Sirius otherwise denies the remaining allegations in Paragraph 10 of the Complaint.

11.     Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint relating to defendant XM Radio and, therefore, denies them. Further, Sirius denies the remaining allegations Paragraph 11 of the Complaint.

12.     Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint relating to defendant XM Radio and, therefore, denies them. Further, Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint and, therefore, denies them.

13.     Sirius denies the allegations in Paragraph 13 of the Complaint.

14.     Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint relating to defendant XM Radio and, therefore, denies them. Further, Sirius denies the remaining allegations Paragraph 14 of the Complaint.

15.     Sirius lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint relating to defendant XM Radio and, therefore, denies them. Further, Sirius denies the remaining allegations Paragraph 15 of the Complaint.

## JURY DEMAND

16.    Sirius admits that Surfer demands a trial by jury on all issues.

## PRAYER FOR RELIEF

Sirius hereby incorporates by reference its answers to all paragraphs in Surfer's Complaint as though fully set forth herein.

Sirius denies that Surfer is entitled to any of the relief requested in its Complaint.

## **DEFENSES**

In addition to the defenses stated below, Sirius reserves the right to allege additional defense as they become known through the course of discovery.

### **First Defense – Non-Infringement**

1.    Sirius does not infringe and has not infringed (directly or indirectly, either literally, or under the doctrine of equivalents) any claim the '376 patent.

### **Second Defense – Invalidity**

2.    The claims of the '376 patent are invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103 and 112.

### **Third Defense – Improper Venue**

3.    Venue is improper for the reasons set forth in the Joint Motion to Transfer Venue and accompanying memorandum, filed concurrently with this Answer.

### **PRAYER FOR RELIEF**

WHEREFORE, Sirius prays for the following:

A.    A judgment denying all claims and demands for relief asserted by Surfer in the Complaint and dismissing the Complaint with prejudice;

B.      A judgment that this case is "exceptional" and awarding Sirius its costs, expense and disbursement in this action, including reasonable attorneys fee;

C.      A judgment awarding Sirius its costs and expenses as allowed by law; and

D.      A judgment awarding Sirius such other and further relief as the Court deems just and proper.

THIS, 20th day of April 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.

_/s/ Pope S. Mallette_____
J. Cal Mayo, Jr. (MS Bar No. 8492)
Pope S. Mallette (MS Bar No. 9836)
Paul B. Watkins, Jr. (MS Bar No. 10348)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALETTE PLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi  38655
Telephone:     (662) 236-0055
Facsimile:     (662) 236-0035

KL3 2587247.5

## CERTIFICATE OF SERVICE

I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Alan D. Albright, Esq.
Albright@fr.com

Conor M. Civins, Esq.
Civins@fr.com

Ruffin B. Cordell, Esq.
Cordell@fr.com

J. Scott Denko, Esq.
Denko@fr.com

Christopher O. Green, Esq.
Cgreen@fr.com

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

LeRoy Davis Percy, Esq.
Roy@tollisonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

THIS, the 20th day of April, 2007.

_/s/ Pope S. Mallette_
POPE S. MALLETTE

KL3 2587247.5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

SURFER INTERNET                                                         PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                                      CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO INC., and                                          DEFENDANTS
SIRIUS SATELLITE RADIO INC.

**CORPORATE DISCLOSURE STATEMENT**

Defendant Sirius Satellite Radio Inc.("Sirius"), pursuant to Uniform Local Rule 7.3, states

that it is a publicly held corporation whose shares are regularly traded in the open market.  Sirius has

no parent corporation, and no publicly-held corporation holds more than ten percent (10%) of the

shares of Sirius.

THIS, the 20th day of April, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.

_/s/ Pope S. Mallette_____
J. CAL MAYO, JR. (MS Bar No. 8492)
POPE S. MALLETTE (MS Bar No. 9836)
PAUL B. WATKINS, JR. (MS Bar No. 10348)
VITO J. DEBARI (Admitted *Pro Hac Vice*)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC                          KRAMER LEVIN NAFTALIS & FRANKEL LLP
428 North Lamar Boulevard                   1177 Avenue of the Americas
Post Office Box 1456                         New York, New York 10036
Oxford, Mississippi  38655                   Telephone:     (212) 715-9249
Telephone:     (662) 236-0055               Facsimile:     (212) 715-8000
Facsimile:     (662) 236-0035

## CERTIFICATE OF SERVICE

I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Alan D. Albright, Esq.
Albright@fr.com

Conor M. Civins, Esq.
Civins@fr.com

Ruffin B. Cordell, Esq.
Cordell@fr.com

J. Scott Denko, Esq.
Denko@fr.com

Christopher O. Green, Esq.
Cgreen@fr.com

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

LeRoy Davis Percy, Esq.
Roy@tollisonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

THIS, the 20th day of April, 2007.

_/s/ Pope S. Mallette_____
POPE S. MALLETTE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                                      PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                          NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                              DEFENDANTS

<u>**NOTICE OF ENDORSEMENT**</u>

PLEASE TAKE NOTICE that the undersigned LeRoy D. Percy, attorney of record for

Defendant XM Satellite Radio Inc., authorized the placement of his electronic signature on the

following documents filed using the ECF system by counsel for Defendant Sirius Satellite Radio

Inc.:

1.      Joint Motion of Defendants to Transfer Venue [doc. 20];

2.      Memorandum in Support of Defendants' Joint Motion to Transfer Venue [doc. 21].

Respectfully submitted,

/s/ *LeRoy D. Percy*
LeRoy D. Percy, MSB #10454
TOLLISON LAW FIRM, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Tel: (662) 234-7070
Fax: (662) 234-7095
roy@tollisonlaw.com

<u>CERTIFICATE OF SERVICE</u>

I, LeRoy D. Percy, hereby certify that I have this day electronically filed the above and

foregoing document with the Clerk of Court using the ECF system, which provided notification to

the following persons:

J. Kirkham Povall
S. Todd Jeffreys
POVALL & JEFFREYS, P.A.
P.O. Drawer 1199
Cleveland, MS 38732
jkpovall@bellsouth.net
stjeffreys@bellsouth.net

David Zachary Scruggs
Richard F. Scruggs
David Wayne Shelton
SCRUGGS LAW FIRM
P.O. Box 1136
Oxford, MS 38655
zachscruggs@scruggsfirm.com
dickscruggs@scruggsfirm.com
davidshelton@scruggsfirm.com

J. Cal Mayo, Jr.
Pope S. Mallette
Paul B. Watkins, Jr.
MAYO MALLETTE PLLC
P.O. Box 1456
Oxford, MS 38655
cmayo@mayomallette.com
pmallette@mayomallette.com
pwatkins@mayomallette.com

This the 20th day of April, 2007.

/s/ *LeRoy D. Percy*
LEROY D. PERCY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                              PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                          NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                            DEFENDANTS

## CORPORATE DISCLOSURE STATEMENT
## OF DEFENDANT XM SATELLITE RADIO INC.

Defendant XM Satellite Radio Inc. ("XMSR") makes the following disclosures:

1.      Defendant XMSR is a non-governmental corporate party in the above-captioned action.  XM Satellite Radio Holdings Inc. ("XM Holdings" and together with XMSR, "XM") is XMSR's parent company and owns 100% of XMSR.

2.      AXA Assurances I.A.R.D. Mutuelle Et Al owns approximately ten percent (10%) of XM Holdings' stock..

3.      General Motors is one of XM Holdings' shareholders and Chester A. Huber, Jr., the President of OnStar Corporation, a subsidiary of General Motors, is a member of XM's board of directors. John W. Mendel, Senior Vice President, automobile operations of American Honda Motor Co., Inc. is also a member of XM's board of directors.

4.      XM Holdings has signed a merger agreement with Sirius Satellite Radio Inc. ("Sirius").  The proposed merger of XM Holdings and Sirius remains subject to regulatory approval.

Respectfully submitted,

XM SATELLITE RADIO INC.,

Page -1-

By and through counsel,

/s/ *LeRoy D. Percy*
LeRoy D. Percy, MSB #10454
TOLLISON LAW FIRM, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Tel: (662) 234-7070
Fax: (662) 234-7095
roy@tollisonlaw.com

Alan D. Albright
J. Scott Denko
Conor M. Civins
FISH & RICHARDSON P.C.
One Congress Plaza
111 Congress Avenue
Austin, TX 78701
Tel: (512) 472-5070
Fax: (512) 320-8935
albright@fr.com
denko@fr.com
civins@fr.com

Ruffin B. Cordell
FISH & RICHARDSON P.C.
1425 K Street, NW
11th Floor
Washington, D.C. 20005-3500
Tel: (202) 626-6449
Fax: (202) 783-2331
cordell@fr.com

Christopher O. Green
FISH & RICHARDSON P.C.
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 724-2777
Fax: (404) 892-5002
cgreen@fr.com

<u>CERTIFICATE OF SERVICE</u>

I, LeRoy D. Percy, hereby certify that I have this day electronically filed the above and

foregoing document with the Clerk of Court using the ECF system, which provided notification to

the following persons:

J. Kirkham Povall
S. Todd Jeffreys
POVALL & JEFFREYS, P.A.
P.O. Drawer 1199
Cleveland, MS 38732
jkpovall@bellsouth.net
stjeffreys@bellsouth.net

David Zachary Scruggs
Richard F. Scruggs
David Wayne Shelton
SCRUGGS LAW FIRM
P.O. Box 1136
Oxford, MS 38655
zachscruggs@scruggsfirm.com
dickscruggs@scruggsfirm.com
davidshelton@scruggsfirm.com

J. Cal Mayo, Jr.
Pope S. Mallette
Paul B. Watkins, Jr.
MAYO MALLETTE PLLC
P.O. Box 1456
Oxford, MS 38655
cmayo@mayomallette.com
pmallette@mayomallette.com
pwatkins@mayomallette.com

This the 20th day of April, 2007.

/s/ *LeRoy D. Percy*
LEROY D. PERCY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                          PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                      NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                         DEFENDANTS

**DEFENDANT XM SATELLITE RADIO INC.'S
ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT**

Defendant XM Satellite Radio Inc. ("XMSR") files its Answer and Affirmative Defenses to

Plaintiff Surfer Internet Broadcasting of Mississippi, LLC's ("Plaintiff") Original Complaint,

admitting those facts specifically admitted below and denying all others averred in the Original

Complaint, and states as follows:

**ANSWER**

**NATURE OF THE ACTION**

1.      XMSR admits that Plaintiff has filed a patent infringement action relating to United

States Patent No. 6,766,376 entitled "Streaming Media Buffering System." XMSR lacks sufficient

knowledge to admit or deny the remaining allegations of Paragraph 1 of the Original Complaint and,

therefore, denies those allegations.

**PARTIES**

2.      XMSR lacks sufficient knowledge to admit or deny the allegations of Paragraph 2 of

the Original Complaint and, therefore, denies those allegations.

3.      XMSR admits the allegations of Paragraph 3 of the Original Complaint.

4.    XMSR lacks sufficient knowledge to admit or deny the allegations of Paragraph 4 of the Original Complaint and, therefore, denies those allegations.

## JURISDICTION AND VENUE

5.    XMSR admits that Plaintiff alleges this Court has jurisdiction over this action pursuant to 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284 and 285, as well as pursuant to 28 U.S.C. §§ 1331 and 1338(a).   XMSR lacks sufficient knowledge to admit or deny the factual allegations underpinning Plaintiff's allegation of jurisdiction, and therefore, denies those allegations.

6.    XMSR admits that it conducts business within the State of Mississippi and the Northern District of Mississippi.  XMSR denies the remaining allegations of Paragraph 6 of the Original Complaint.

7.    XMSR admits that it distributes, sells and advertises its products and services in the United States, the State of Mississippi and the Northern District of Mississippi.  XMSR further admits that it has customers who are residents of the State of Mississippi and the Northern District of Mississippi.  XMSR denies the remaining allegations in Paragraph 7 of the Original Complaint.

8.    XMSR denies that venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b), and is filing a Joint Motion to Transfer Venue with its Answer.

## COUNT I – PATENT INFRINGEMENT

9.    XMSR admits that United States Patent No. 6,766,376 (the "`376 patent") entitled "Streaming Media Buffering System" issued on July 20, 2004.  XMSR denies that the patent was duly and legally issued after full and fair examination.  XMSR lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 9 of the Original Complaint and, therefore, denies

those allegations.

10.    XMSR admits that it maintains a website that may be found at www.xmradio.com. XMSR is without knowledge sufficient to admit or deny the remaining allegations of Paragraph 10 of the Original Complaint and, therefore, denies those allegations.

11.    XMSR denies the allegations of Paragraph 11 of the Original Complaint.

12.    XMSR is without knowledge sufficient to admit or deny the allegations of Paragraph 12 of the Original Complaint and, therefore, denies those allegations.

13.    XMSR denies the allegations of Paragraph 13 of the Original Complaint.

14.    XMSR denies the allegations of Paragraph 14 of the Original Complaint.

15.    XMSR denies the allegations of Paragraph 15 of the Original Complaint.

## PRAYER FOR RELIEF

XMSR hereby incorporates by reference its answers to all paragraphs in Plaintiff's Original Complaint as though fully set forth herein.  XMSR denies that Plaintiff is entitled to any of the relief requested in its Original Complaint.

## JURY DEMAND

XMSR admits that Plaintiff demands a trial by jury on all issues.

## ADDITIONAL DEFENSES

In addition to any defenses stated below, XMSR specifically reserves the right to allege any additional defenses as they become known through the course of discovery.

## First Additional Defense
### (Non-Infringement)

1.    XMSR does not infringe and has not infringed, directly or indirectly, either literally

or under the doctrine of equivalents, any claim of the `376 Patent.

**Second Additional Defense**
**(Invalidity)**

2.    The `376 Patent is invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

**Third Additional Defense**
**(Improper Venue)**

3.    Venue is improper for the reasons set forth in Defendants' Joint Motion to Transfer Venue filed concurrently with this Answer.

**Fourth Additional Defense**
**(Estoppel)**

4.    Plaintiff is estopped, by reason of the prior art and/or statements and representations made to and by the United States Patent and Trademark Office ("the Patent Office") during prosecution of the applications that led to the issuance of the '376 Patent, from asserting any interpretation of the claims in the patents-in-suit that would cover any technology made, used, offered for sale, or sold by XMSR.

**Fifth Additional Defense**
**(Laches Waiver)**

5.    The patent-in-suit is unenforceable by reason of laches and/or waiver.

**Sixth Additional Defense**
**(Patent Misuse)**

6.    The '376 Patent also is unenforceable under the equitable doctrine of patent misuse which prevents Plaintiff's impermissible attempt to broaden the coverage of any claim of the '376 Patent beyond its legitimate scope.  The scope of every patent claim must be confined so that the

patentee's monopoly does not extend beyond the patentee's legitimate contribution to the art, as demonstrated by the text of the patentee's earliest, effective, priority filing with the Patent Office. The scope of every patent claim must also be confined so as not to draw into the patentee's monopoly any information that was known or used by others, or in the public domain, prior to the patentee's date of filing with the Patent Office. Here Plaintiff attempts to enforce subject matter not covered by the '376 Patent, which renders the '376 Patent unenforceable for misuse.

## **PRAYER FOR RELIEF**

Wherefore, XMSR prays for a judgment dismissing Plaintiff's Original Complaint with prejudice, that Plaintiff take nothing by its Original Complaint and for all such other relief, both at law and in equity, to which XMSR is justly entitled.

Respectfully submitted,

XM SATELLITE RADIO INC.,

By and through counsel,

/s/ *LeRoy D. Percy*
LeRoy D. Percy, MSB #10454
TOLLISON LAW FIRM, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Tel: (662) 234-7070
Fax: (662) 234-7095
roy@tollisonlaw.com

Alan D. Albright
J. Scott Denko
Conor M. Civins
FISH & RICHARDSON P.C.
One Congress Plaza
111 Congress Avenue
Austin, TX 78701

Tel: (512) 472-5070
Fax: (512) 320-8935
albright@fr.com
denko@fr.com
civins@fr.com

Ruffin B. Cordell
FISH & RICHARDSON P.C.
1425 K Street, NW
11th Floor
Washington, D.C. 20005-3500
Tel: (202) 626-6449
Fax: (202) 783-2331
cordell@fr.com

Christopher O. Green
FISH & RICHARDSON P.C.
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 724-2777
Fax: (404) 892-5002
cgreen@fr.com

<u>CERTIFICATE OF SERVICE</u>

I, LeRoy D. Percy, hereby certify that I have this day electronically filed the above and

foregoing document with the Clerk of Court using the ECF system, which provided notification to

the following persons:

J. Kirkham Povall
S. Todd Jeffreys
POVALL & JEFFREYS, P.A.
P.O. Drawer 1199
Cleveland, MS 38732
jkpovall@bellsouth.net
stjeffreys@bellsouth.net

David Zachary Scruggs
Richard F. Scruggs
David Wayne Shelton
SCRUGGS LAW FIRM
P.O. Box 1136
Oxford, MS 38655
zachscruggs@scruggsfirm.com
dickscruggs@scruggsfirm.com
davidshelton@scruggsfirm.com

J. Cal Mayo, Jr.
Pope S. Mallette
Paul B. Watkins, Jr.
MAYO MALLETTE PLLC
P.O. Box 1456
Oxford, MS 38655
cmayo@mayomallette.com
pmallette@mayomallette.com
pwatkins@mayomallette.com

This the 20th day of April, 2007.

                                        /s/ *LeRoy D. Percy*
                                        LEROY D. PERCY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET BROADCASTING                          Plaintiff,
OF MISSISSIPPI, LLC,

v.                                          Civil Action No. 4:07cv34-M-B

XM SATELLITE RADIO INC., and                          Defendants.
SIRIUS SATELLITE RADIO INC.,

## MEMORANDUM IN OPPOSITION TO DEFENDANTS'
## JOINT MOTION TO TRANSFER

## I.
## INTRODUCTION

Plaintiff Surfer Internet Broadcasting of Mississippi, LLC ('SIBM") is a Greenville, Mississippi corporation whose patented technology was and is currently being infringed upon by Defendants Sirius Satellite Radio, Inc. ("Sirius") and XM Satellite Radio, Inc. ("XM") (Sirius and XM together referred to hereinafter as "Defendants") in the Northern District of Mississippi. Defendants have moved to transfer Plaintiff's patent infringement suit against them from the Northern District of Mississippi to the Southern District of New York, alleging in conclusory fashion that it "is a more convenient forum for the witnesses and parties and better serves the interests of justice." (Defendants' Memo, pp. 1-2).

However, Defendants fall far short of meeting the heavy burden imposed on them by the Fifth Circuit of clearly proving that Plaintiff's choice of forum should be ignored and that the Southern District of New York is a "substantially more convenient" forum than Mississippi. SIBM is a Mississippi corporation; and the timing of its formation is irrelevant to a transfer analysis as a matter of law. Defendants admit that they conduct business and sell their services in the Northern District of Mississippi. Moreover, the Defendants have infringed and are

infringing the patent-in-suit – United States Patent No. 6,766,376 ("the '376 patent") – in the Northern District of Mississippi.

Transferring this action will not promote the "interests of justice." In fact, Defendants' sole motivation for seeking to transfer this patent suit to New York is in order to kill it: the amount of time it takes to bring a patent suit to trial in the Southern District of New York is approximately 44.4 months. If Defendants are right, then no patent case, or any case for that matter, could be brought against these defendants anywhere but the Southern District of New York. We have courthouses in Mississippi too.

Defendants' convenience arguments ignore the realities of modern discovery and have already been rejected by this Court in *Haas Outdoors, Inc. v. Novelty, Inc.*, 2006 U.S. Dist. LEXIS 22727 (N.D. Miss. April 24, 2006). SIBM maintains its principal office in Greenville and the relevant '376 patent documents are located there. The inventor and prosecuting attorney of the '376 patent will voluntarily appear at trial in the Northern District if requested to do so, and Defendants can certainly obtain the appearance of their own employees in this District. Defendants present no evidence that any key witness would be unavailable to testify in this forum.

Accordingly, transfer should be denied because Defendants have not and cannot meet their heavy evidentiary burden to demonstrate that the convenience of parties and witnesses or the interests of justice clearly and substantially weigh in favor of transfer.

# II.
## ARGUMENT AND AUTHORITIES

### A.    The Applicable Standard Places a Heavy Burden on Defendants.

Section 1404(a) states: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court <u>may</u> transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). Whether to transfer venue is within the sound discretion of the Court. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

The Fifth Circuit has stated that the moving party bears the burden of proving that transfer is appropriate. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). Mississippi federal district courts have held that this burden is a high one, stating that: "[t]he party seeking transfer pursuant to §1404(a) has the burden of establishing, by reference to particular circumstances and by a preponderance of the evidence, that the transferee forum is clearly more convenient and that transfer is proper." *Mizell v. Prism Computer Corp.*, 27 F. Supp.2d 708, 712 (S.D. Miss. 1998). Other Circuits have even described the Defendants' burden as being as stringent as "clear and convincing evidence." *Headrick v. Atchison*, 182 F.2d 305, 310 (10th Cir. 1950); *see also Ayers v. Arabian Am. Oil Co.*, 571 F. Supp. 707, 709 (S.D.N.Y. 1983). Moreover, the Defendants must also show that "a transfer would make it *substantially* more convenient for the parties to litigate the case." *Gardipee v. Petrol Helicopters, Inc.*, 49 F. Supp. 2d 925, 928 (E.D. Tex. 1999) (emphasis added). As set forth herein, the Defendants' motion does not satisfy any of these standards.

### B.    Plaintiff's Choice of Forum Carries the Greatest Weight.

In considering a motion to transfer, courts employ a two-pronged test. First, a court must determine whether the claim could have been filed in the district to which the movant seeks

3

transfer. *In re Volkswagen AG*, 371 F.3d at 203. Second, the court must consider several private and public interest factors. *Id.* The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6 (1981). The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law. *Id.*; *see also Haas Outdoors, Inc.*, 2006 U.S. Dist. LEXIS 22727 at *11.

But the factor usually given the most weight is plaintiff's choice of forum. It is generally "highly esteemed" and entitled to great weight, particularly when his choice of forum is his own home state, as in the present case. *Paul v. International Precious Metals Corp.*, 613 F. Supp. 174, 178-79 (S.D. Miss. 1985) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)).

## C. Defendants Do Not Dispute that the Northern District of Mississippi is a Proper Venue.

Venue in a patent infringement action properly lies in any district where defendants manufacture, offer for sale, or sell the accused products and/or services. Significantly, Defendants concede that they advertise and sell their products to Mississippians in this District. XM Satellite Radio admits the following in its Answer:

> XMSR admits that it distributes, sells and advertises its products and services in the United States, the State of Mississippi and the Northern District of Mississippi. XMSR further admits that it has customers who are residents of the State of Mississippi and the Northern District of Mississippi.

*See* Defendant XM Satellite Radio Inc.'s Answer to Plaintiff's Original Complaint, at ¶ 7.

4

Similarly, Sirius admits the following in its Answer:

> Sirius admits that it distributes, offers for sale, sells, and/or advertises its products and services nationally throughout the United States, including through its web site. Sirius admits that it has customers who are residents in the State of Mississippi.

*See* Answer of Sirius Satellite Radio Inc., at ¶ 7.

Defendants offer a laundry list of unconvincing "factors" allegedly supporting transfer, while conveniently ignoring the most important facts justifying retention. First, SIBM is the owner of the entire right, title and interest in and to the '376 patent. Second, SIBM is a Mississippi corporation and was a Mississippi corporation at the time this suit was filed. Third, infringement is occurring within the Northern District of Mississippi daily – Defendants knowingly offer and sell their products and services here. Fourth, Defendants Sirius and XM are unquestionably sending monthly bills to subscribers within the Northern District of Mississippi. Fifth, Defendants are undoubtedly accepting payments from residents of the Northern District of Mississippi each and every month.

While venue in the Northern District of Mississippi is clearly proper, SIBM does not contest that the present suit could have been brought just about anywhere, including the Southern District of New York. Plaintiff chose to file suit in its home forum, and under the Fifth Circuit case law cited herein, this essentially ends the debate.

### D. The Private Interest Factors Favor This Forum.

#### 1. SIBM's Choice Of Forum Is Entitled To Substantial Deference.

In the Fifth Circuit, a plaintiff's choice of forum is "highly esteemed" and entitled to the greatest weight, particularly when his choice of forum is his own home state. *Paul*, 613 F. Supp. at 178-79 (citing *Time, Inc.*, 366 F.2d at 698); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

5

508 (1947) ("But unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should *rarely* be disturbed.") (emphasis added). The Federal Circuit, the exclusive Court of Appeals for patent cases, agrees that §1404(a) normally requires that the court "give *great weight* to the plaintiff's choice of forum." *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999) (emphasis added).

Similarly, in the Fifth Circuit, "there is a strong presumption in favor of plaintiff's choice of forum that may be overcome only when the private and public interest factors *clearly* point towards trial in the alternative forum." *Schexnider v. McDermott Int'l, Inc.*, 817 F2d 1159, 1163 (5th Cir. 1987) (emphasis added); *see also Marbury-Pattillo Constr. Co., Inc.*, 490 F.2d 155, 158 (5th Cir. 1974). Here, neither the private nor the public interest factors favor transfer whatsoever, much less *clearly* favor transfer. In fact, in this case Defendants must clearly prove that transferring this action to the Southern District of New York is "substantially more convenient for the parties to litigate the case." *Gardipee*, 49 F. Supp. 2d at 928. Defendants have failed to do so.

### 2. SIBM is an Active Mississippi Corporation and the Timing of its Formation is Irrelevant.

Defendants recognize that SIBM is a Mississippi corporation, but assert that SIBM's choice of forum should be ignored because "Plaintiff was formed a mere seven days before filing this lawsuit, strongly indicating that its sole purpose for forming in Mississippi was to bring this suit." (Defendants' Memo, p. 12). Defendants cite no factual or legal authorities to support this proposition because there are none. SIBM's residence in the Northern District cannot be ignored merely because SIBM's Mississippi incorporation is of recent origin.

More importantly, as a matter of law, a plaintiff's motive for establishing residence in a forum is immaterial for the purpose of analyzing venue. *Lewis v. U.S.*, No. C-4-1834-PJH, 2004

U.S. Dist. LEXIS 25283, at *10 (N.D. Cal. Dec. 2, 2004) (citing *Williamson v. Osenton*, 232 U.S. 619, 625 (1914)).  Venue is determined based on the facts as they exist <u>at the time of filing suit</u>. *Flowers Indus., Inc. v. FTC*, 835 F.2d 775, 776 n.1 (11th Cir. 1987).  In this case, at the time of filing suit, SIBM was a Mississippi corporation with its principal place of business at 800 Highway 1 South in Greenville, Mississippi, and as discussed above, its choice of forum is entitled to substantial weight. (Exhibit A, Decl. of Grywalski at ¶ 4).

The Fifth Circuit has made it clear that a plaintiff has the absolute right to select its forum subject to the venue rules for any number of legitimate reasons:

> The existence of [forum choices] not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making his choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

*McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983).

Other district courts in this Circuit have noted that a plaintiff's alleged motive is "irrelevant": "[r]egardless of a plaintiff's motivation for choosing a particular forum, the court should give that choice great deference." *Lone Star Milk Producers, Inc. v. Dairy Farmers of Am., Inc.*, No. 5:00-CV-191, 2001 U.S. Dist. LEXIS 18717, at *8 (E.D. Tex. Jan. 19, 2001) (denying motion to transfer venue).  "The Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the party selecting the forum." *Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 996 (E.D. Tex. 1993); *see also Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 773 (E.D. Tex. 2000) ("[T]his Court simply isn't concerned with the plaintiff's motive for filing suit in this Court – be it 'blatant' or not.").

7

Litigation is commonly blamed for the loss of businesses coming to Mississippi; it is now ironic for Defendants to complain about a *new* business being formed in Mississippi. Just to set the record straight, however, SIBM was established in this District for appropriate reasons, as Plaintiff's principals have familiarity with the State of Mississippi. One of Plaintiff's principals is a benefactor of the Hope Village orphanage here in Mississippi. (Ex. A, Decl. of Grywalski at ¶ 6).

### 3. Defendants Fail To Prove Key Witnesses Will Be Inconvenienced In the Northern District.

One of the most significant factors in considering a Motion to Transfer a case pursuant to 28 U.S.C. §1404(a) is the convenience of the party and non-party witnesses. *Apache Prods. Co. v. Employers Ins.*, 154 F.R.D. 650, 653 (S.D. Miss. 1994). Because §1404(a) only allows for transfer to a forum that is "substantially more convenient for the parties to litigate the case," *Gardipee*, 49 F.Supp. 2d at 928, the defendants must clearly and convincingly demonstrate that transfer is warranted under section 1404(a). *See also Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).

Defendants, who conduct business on a nationwide basis, have no legitimate basis for claiming that their witnesses are inconvenienced by possibly testifying in this case in Mississippi. As this Court has held, "corporations are routinely involved in litigation as the result of placing their products into the marketplace. With the benefit of conducting nationwide business, so to comes the burden of providing witnesses in defense of their products." *Haas Outdoors, Inc.* 2006 U.S. Dist. LEXIS 22727 at *12.

With regard to the convenience of their own party and non-party witnesses, the Defendants must specifically relate the identity of the witnesses and the nature and relative importance of their testimony. *Somerville v. Major Exploration, Inc.*, 576 F. Supp. 902, 907

8

(S.D.N.Y. 1983); *Southern Investors II v. Commuter Aircraft Corp.*, 520 F. Supp. 212, 216 (M.D. La. 1981). Here, Defendants have failed to provide the Court with either the identities of any of their potential witnesses or the required outlines of the substance of their testimony. Instead, they provide nothing more than conclusory allegations which clearly fall short of the *Sommerville* requirements. *See Crawford v. Glenns, Inc.*, 637 F. Supp. 107, 110 (N.D. Miss. 1986).

### a.   The Inventor Will Not Be Inconvenienced By Trial In the Northern District of Mississippi.

Defendants note that the inventor of the patent-in-suit lives in Pennsylvania (as opposed to the Southern District of New York) and assert that he will be inconvenienced by trial in the Northern District. (Defendants' Memo, pp. 8-9). The inventor's declaration, submitted by SIBM as Exhibit B, proves otherwise. Harold Edward Price, the named inventor of the '376 patent, disclaims any inconvenience in appearing at trial in the Northern District of Mississippi, and agrees to appear voluntarily if requested to do so. (Ex. B, Price Decl. at ¶ 4). Therefore, the location of the inventor is irrelevant to the transfer analysis as a matter of law and does not weigh in favor of transfer.

### b.   Plaintiff's Patent Attorney Is Not a Key Witness Who Will Be Inconvenienced.

Defendants ask the Court to presume that Ernest Buff, the prosecuting attorney of the patent-in-suit, is a "key potential unwilling witness."[1] (Defendants' Memo, p. 10). Defendants do not, however, outline the substance of Mr. Buff's testimony or explain why he should be designated a "key" witness. It is, in fact, highly unlikely that Mr. Buff would give "key" testimony at trial. Testimony from a prosecuting attorney is almost always related to an

---

[1] Defendants repeatedly refer to Mr. Buff as "Mr. Bluff". We presume this was an unintended typographical error rather than a misguided malaprop.

9

allegation of inequitable conduct. *See Elk Corp. v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 31 (Fed. Cir. 1999). Mr. Buff cannot be such a "key" witness in this case, however, because Defendants have not alleged inequitable conduct as a defense. (*See* Answers of Defendants XM and Sirius). Mr. Buff's location thus lacks relevance as a matter of law and bears no weight in the transfer analysis. *See Z-Tel Commc'ns, Inc., v. SBC Commc'ns, Inc.,* 331 F. Supp. 2d 567, 574 (E.D. Tex. 2004) ("The bottom line is that a flat assertion that these witnesses might potentially offer information germane to the facts at issue does not help the Court determine if attendance at trial will be likely such that the inconvenience associated with their travel . . . weighs heavily in the analysis.").

Defendants further assert that, to the extent he is called as a witness, Mr. Buff will be inconvenienced by trial in the Northern District because he lives in New Jersey (not the Southern District of New York). (Defendants' Memo, p.8). Mr. Buff's declaration proves otherwise. (Ex. C, Decl. of Buff at ¶ 4). Should his testimony become relevant to any issue, Mr. Buff will voluntarily appear at trial in the Northern District if requested to do so and will not be inconvenienced by trial in this forum. *Id.*

### 4. The Costs of Obtaining the Attendance of Witnesses and the Availability of Compulsory Process Do Not Support Transfer.

Because the non-party witnesses named by Defendants, *i.e.*, a corporate officer, the inventor, and the prosecuting attorney of the patent-in-suit, have all agreed to appear at trial in the Northern District, this factor is irrelevant to the Court's analysis. Defendants will not, as they assert, be deprived of the ability to call these witnesses live at trial, if they so desire. (Defendants' Memo, p. 10). It is also interesting to note that none of these potential witnesses lives in the Southern District of New York. Moreover, it is now universally recognized that many such trial witnesses are just as easily and effectively presented by deposition: with modern

video deposition technology, the need for many witnesses to appear in person is reduced or eliminated. This is especially true for witnesses whose credibility cannot be seriously challenged even if there is a dispute over the effect of some technical data they produce, or a witness with background information needed to establish a basis for more crucial testimony by an expert.

Defendants do not describe the substance of the expected testimony of its employees, the prosecuting attorney, the inventors, or SIBM's officers with the specificity necessary for the Court to evaluate the likelihood that they will actually need to travel to the Northern District to testify. It is thus impossible to calculate the actual cost of obtaining the attendance of witnesses at trial. Furthermore, because many of the witnesses Defendants name are their own employees, the availability of compulsory process is a non-issue as to them. *See In re Triton Limited Sec. Litig.,* 70 F. Supp. 2d 678, 690 (E.D. Tex. 1999). Defendants have not, in fact, presented evidence that any witness within the range of the subpoena power of the Southern District of New York would be unwilling to travel to the Northern District of Mississippi to testify. *See First Nat'l City Bank v. Nanz, Inc.*, 437 F. Supp. 184, 189 (S.D.N.Y. 1975). SIBM, on the other hand, presents declarations of the officer, inventor, and prosecuting attorney in which they volunteer to appear in the Northern District of Mississippi. Defendants fail to provide the Court with enough information to allow it to even speculate whether compulsory process will be needed. This factor clearly weighs against transfer.

Experts and potential witnesses are local and all over the country, and it will be no less inconvenient for them to travel to Greenville or Oxford, Mississippi, than to New York City. In fact, the Court can take judicial notice that it would be quicker and easier for potential witnesses to get from their domiciles to Oxford or Greenville, Mississippi (which both have airports close by) than it would take to get to downtown New York City. Similarly, the Court can also take

11

judicial notice that it would be cheaper for witnesses to stay in Mississippi than New York City. In fact, a recent newspaper article reported that the average hotel room in New York costs $374 per night. In contrast, on his last visit to Greenville, Mr. Grywalski paid $56 per night at the Fairfield Inn. (Ex. A, Decl. of Grywalski at ¶¶ 7, 8)

### 5. The Accessibility and Location of Sources of Proof Bear Little Weight in the Analysis.

The accessibility and location of sources of proof weigh only slightly in the transfer analysis in patent cases. *In re Triton*, 70 F. Supp. 2d at 690. These factors have been given decreasing emphasis due to advances in copying technology and information storage and the ease of transportation and communication. In fact, this very Court denied a motion to transfer venue by stating in pertinent part that "[i]n contemporary litigation virtually all records are within easy reach due to modern technology. If plaintiffs were held hostage by the location of corporate records, the pursuit of justice would be a matter of geography." *Haas Outdoors, Inc.*, 2006 U.S. Dist. LEXIS 22727 at *12. Regardless, Defendants present no evidence to show why the location of its documents outside the Northern District works a substantial hardship. Additionally, not all relevant documents are located outside the Northern District of Mississippi, as Defendants imply. In fact, many documents related to the patent-in-suit are stored at SIBM's office in Greenville, Mississippi. (Ex. A, Decl. of Grywalski at ¶ 5). This factor thus weighs against transfer.

### 6. Transfer Would Result In Delay And Prejudice.

Defendants do not address the delay factor, which is a significant consideration when the "interests of justice" are being contemplated. Defendants admit that the time to trial in the Southern District of New York is longer than in the Northern District of Mississippi (25.7 months versus 24 months). This only tells half the story however. More importantly, the length

12

of time it takes to bring a patent infringement action in the Southern District of New York is far greater, averaging 44.4 months. (Ex. D, Decl. of Ward at ¶ 6). It is now easy to see why Defendants want to be there. Considering these statistics, this factor also weighs against transfer.

In sum, the private interest factors counsel against transfer.

### E.     The Public Interest Factors Do Not Support Transfer.

Defendants' Motion does not accurately address the four public interest factors. As shown below, none of these factors supports Defendants' request for transfer.

#### 1.     Defendants Present No Evidence of Administrative Difficulties Caused by Court Congestion.

There is no evidence of administrative difficulties caused by court congestion if this case remains in this Court. The Northern District of Mississippi maintains a fast and efficient docket and is known for its expeditious, organized preparation of cases for trial. This factor does not weigh in favor of transfer.

#### 2.     Mississippi Has A Significant Interest In Adjudicating This Dispute.

SIBM is a Mississippi corporation. Defendants' accused products and/or services have been offered for sale and sold within this District in the past and are still being offered for sale and sold here. These sales constitute part of Defendants' infringement and SIBM's damages. The residents of the Northern District of Mississippi have a significant interest in the enforcement of federal patent laws against infringing activities occurring within the Northern District and the Greenville Division. This factor weighs against transfer.

#### 3.     Northern District Citizens Will Not Be Unfairly Burdened With Jury Duty.

This is not an unrelated forum, as Defendants assert. SIBM is a Mississippi corporation. Defendants' accused products and/or services have been offered for sale and sold within the

Northern District in the past and are still being offered for sale and sold here. The citizens of the Northern District have an interest in adjudicating this suit. *See In re Triton*, 70 F. Supp. 2d at 691. It follows that the jury pool in the Northern District will not be unfairly burdened in deciding this matter, which involves a Mississippi corporation with its principal office in Greenville. Consequently, this factor weighs against transfer.

### 4. There Are No Problems In Conflicts Of Laws To Avoid.

Defendants agree that this factor is not an issue. Because this is a patent infringement case governed by federal patent law, the potential for conflicts of laws does not exist. This factor bears no weight in the transfer analysis.

### F. This Court Has Recently Denied Transfer Under Similar Circumstances.

As mentioned herein, in *Haas Outdoors, Inc., v. Novelty, Inc.*, 2006 U.S. Dist. LEXIS 22727 (N.D. Miss. April 24, 2006), this Court was faced with a transfer motion brought by an out of state defendant, alleging similar grounds for transfer. Defendant in that case argued that transfer was appropriate because a material witness would not travel to Mississippi to testify on behalf of the defendant; that defendant's employees [party witnesses] would be material witnesses and would be highly inconvenienced by traveling to Mississippi to testify; and that it would be unduly burdensome to transport its documents [sources of proof] from Indiana to Mississippi during litigation. *Id.* at *12.

This Court found each argument less than compelling:

The Court can quickly dispense with each argument. In contemporary litigation virtually all records are within easy reach due to modern technology. If plaintiffs were held hostage by the location of corporate records, the pursuit of justice would be a matter of geography. Similarly, corporations are routinely involved in litigation as the result of placing their products into the marketplace. With the benefit of conducting nationwide business, so to comes the burden of providing witnesses in defense of their products. Balancing all the public and private factors

collectively, the Court concludes that Novelty's forum non conveniens argument is without merit. Transfer is denied.

*Id.* at \*13.

Transfer should similarly be denied here as well.

## III.
## CONCLUSION

Defendants have failed to sustain their heavy burden to show that SIBM, a Mississippi plaintiff, should be ousted from a Mississippi forum when infringement of the patent in suit is occurring in this District. The majority of the private convenience and public interest factors weigh against transfer. SIBM therefore respectfully requests that the Court deny Defendants' Motion to Transfer Venue.

Respectfully submitted on this 7th day of May, 2007.

**SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC, Plaintiff**

By:    /s/ Zach Scruggs
        David Zachary Scruggs, Esq.
        State Bar No. 100011
        E-mail: zachscruggs@scruggsfirm.com

        Richard F. Scruggs, Esq.
        State Bar No. 6582
        E-mail: dickscruggs@scruggsfirm.com

        David Shelton, Esq.
        State Bar No. 99675
        E-mail: davidshelton@scruggsfirm.com

        **SCRUGGS LAW FIRM, P.A.**
        120A Courthouse Square
        P.O. Box 1136
        Oxford, Mississippi 38655
        Telephone:    (662) 281-1212
        Facsimile:    (662) 281-1312

**OF COUNSEL:**

John F. Ward, Esq.
E-mail: wardj@wardolivo.com
John W. Olivo, Jr., Esq.
E-mail: olivoj@wardolivo.com
**WARD & OLIVO**
708 Third Avenue
New York, New York 10017
Telephone:    (212) 697-6262
Facsimile:    (212) 972-5866

Leslie D. Ware, Esq.
E-mail: lesware@airmail.net
**MONTS & WARE, L.L.P.**
1701 North Market Street, Suite 330
Dallas, Texas 75202
Telephone:    (214) 744-5000
Facsimile:    (214) 744-5013

Mike McKool, Jr., Esq.
E-mail: mmckool@mckoolsmith.com
Sam Baxter, Esq.
E-mail: sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 978-4000
Facsimile:    (214) 978-4044

S. Todd Jeffreys
State Bar No. 100042
E-mail: stjeffreys@bellsouth.net
**POVALL & JEFFREYS, P.A.**
215 North Pearman Avenue
P.O. Drawer 1199
Cleveland, Mississippi 38732
Telephone:    (662) 843-9948
Facsimile:    (662) 842-9957

**ATTORNEYS FOR PLAINTIFF,
SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system sent notification of such filing to the following counsel of record:

**LeRoy Davis Percy**
TOLLISON LAW FIRM, P.A.
P. O. Box 1216
Oxford, MS 38655-1216
Email: roy@tollisonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan D. Albright**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: albright@fr.com
*ATTORNEY TO BE NOTICED*

**Christopher O. Green**
FISH & RICHARDSON PC - Atlanta
1180 Peachtree Street N.E., 21st Floor
Atlanta, GA 30309
Email: cgreen@fr.com
*ATTORNEY TO BE NOTICED*

**Conor M. Civins**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: civins@fr.com
*ATTORNEY TO BE NOTICED*

**J. Scott Denko**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: denko@fr.com
*ATTORNEY TO BE NOTICED*

**Ruffin B. Cordell**
FISH & RICHARDSON PC - DC
1425 K Street NW, 11th Floor
Washington, DC 20005
Email: cordell@fr.com
*ATTORNEY TO BE NOTICED*

**J. Cal Mayo, Jr.**
MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, MS 38655
Email: cmayo@mayomallette.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Bowie Watkins**
MAYO MALLETTE, PLLC
P.O. Box 1456
Oxford, MS 38655
Email: pwatkins@mayomallette.com
*ATTORNEY TO BE NOTICED*

**Pope S. Mallette**
MAYO MALLETTE, PLLC
P.O. Box 1456
Oxford, MS 38655
Email: pmallette@mayomallette.com
*ATTORNEY TO BE NOTICED*

**Vito J. DeBari**
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
*ATTORNEY TO BE NOTICED*

This the 7th day of May, 2007.

/s/ Zach Scruggs
David Zachary Scruggs

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING<br>OF MISSISSIPPI, LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:07cv34-M-B |
| | ) | |
| v. | ) | |
| | ) | |
| XM SATELLITE RADIO, INC., and | ) | |
| SIRIUS SATELLITE RADIO INC. | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF WILLIAM GRYWALSKI

I, WILLIAM GRYWALSKI, do hereby declare and state as follows:

1.     I am over twenty-one (21) years of age and fully competent to make this declaration and to testify to the matters set forth herein.  I have personal knowledge of the statements contained herein and the facts stated herein are true and correct.

2.     This declaration is submitted in support of Surfer Internet Broadcasting of Mississippi, LLC's Opposition to Defendants' Joint Motion to Transfer.

3.     I am the President of Surfer Internet Broadcasting of Mississippi, LLC ("SIBM"), the plaintiff in the above-styled and numbered lawsuit.

4.     SIBM maintains its principal place of business at 800 Highway 1 South in Greenville, Mississippi.

5.     Documents related to United States Patent No. 6,776,376, which is the subject of the above-styled and numbered lawsuit, are kept at SIBM's principal place of business in Greenville, Mississippi.

6.     SIBM is a benefactor of the Hope Village for Children, Inc. ("Hope Village"), an orphanage located in Meridian, Mississippi.

7.     I have stayed at the Fairfield Inn, located at 137 North Walnut Street in Greenville, Mississippi, at a cost of $56 per night.

8.     As reported in the Daily Telegraph on April 24, 2007, the average cost for staying in a hotel in New York, New York is $374 per night.  A copy of the relevant article is attached hereto as Appendix 1.

9.     I am willing to travel to the Northern District of Mississippi to provide testimony in the lawsuit.  Traveling to the Northern District of Mississippi to provide testimony in this lawsuit would not pose an inconvenience to me.

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct, and that this declaration was executed on May 7, 2007 at

Flanders      , New Jersey.

William Grywalski

2

Hotel rates on the rise | The Daily Telegraph
Case 1:07-cv-06035-MHM-BMB Document 27-2 Filed 07/05/2007 Page 1 of 316
Page 1 of 3

# THE Daily Telegraph

## Hotel rates on the rise

**By Caroline Pierce**
April 24, 2007 12:00

Article from: **ESCAPE**

**GUEST expectations at the world's top hotels get greater every year. No longer satisfied with a bar of soap and a shower cap in the bathroom, guests now demand bathrobes, slippers and luxury toiletries as a start.**

Any self-respecting hotel must have a swimming pool, gymnasium, spa, 24-hour concierge and a variety of extras from a pillow menu to fresh flowers, chocolates and champagne on arrival.

With the tourism downturn following the events of September 11, 2001 and the rising cost of air travel, these things came at a minimal cost increase to the average traveller.

But it seems that's about to change. Greater demand is seeing the end of the aggressive discounting which meant you could be treated like royalty without paying a king's ransom.

A survey by hotels.com released in late March found that hotel prices around the world rose by an average of 15 per cent in the last three months of 2006, compared with the same period in the previous year.

The survey tracked prices paid for accommodation at everything from bed and breakfasts to five-star hotels worldwide.

In the US, rates rose 11 per cent on average, in Asia 12 per cent and the UK 17 per cent.

The biggest price rise was in Bangkok. Average cost of staying in the Thai capital rose 58 per cent to $106 – still nowhere near London's average of $258, which included a rise of 22 per cent.

The UK remained the most expensive country in Europe to rest your head during 2006. Rome was the most expensive continental European city at $227 a night, followed by Copenhagen and Amsterdam, both $224.

Moscow retained its position as the world's most expensive place to find a room – an average of $415 a night – despite dropping three per cent on 2005's prices.

Second and third were New York and Dubai, which came in at an average of $374 and $299 a night, respectively.

New York was the most expensive place to stay in a luxury hotel, with prices averaging $827 compared with $543 in London.

If you're looking for a bargain bed, try Shanghai or Bali. Both came in with average room prices of around $150.

American Express's 2006 Business Travel Monitor, released at the end of March, backs up the hotels.com research.

It tracks the cost of travel booked through American Express and found that international air fares (5.8 per cent),

Case 1:07-cv-06343-MHT-WMBD Document 127-2 Filed 05/2007 Page 2 of 316

international hotel rates (8.5 per cent) and budget-tier hotels (19 per cent) in the US experienced the greatest price rises.

"Budget hotels are trying to attract more of the business travel market," said Mike Streit, vice-president of American Express business travel advisory services. "They are heavily investing in room renovations and adding in-room amenities."

Patrick Griffin, national accommodation president of the Australian Hotels Association and managing director of The Observatory Hotel in The Rocks, says the trend is likely to follow here in Australia.

In the first three months of this year, the cost of staying in a five-star hotel in the Sydney CBD was $254 a night. This compares to $244 in the same period last year – an increase of about five per cent, which is not much more than the inflation rate.

Mr Griffin says travellers to Australia are getting a good deal when you compare rates with places like London and New York.

"Business is picking up and, as a result, there will be greater confidence to bring rates into line with other international cities," Mr Griffin said.

"The hospitality industry has a high labour component, and Australia has the second-highest labour cost in the OECD. That has to flow through.

"Sydney is unlikely to ever reach the giddy heights of London pricing. It's the town at the end of the line: it's expensive to reach and it's not an international transit point.

"Our rates will have to go up, but we will always be a value-for-money destination."

*The Sunday Telegraph*

Case 1:07-cv-09635-RMB-THBMB Document 27-2 Filed 05/27/2008 Page 26 of 316



What people want ... Sydney's Observatory Hotel has the quiet luxury five-star travellers expect / No credit

## LUXURY HOTELS



## ROOM FOR TWO

IN an extract from his book, *Hotel Heaven: Confessions of a Luxury Hotel Addict*, travel writer Matthew Brace gives you the key to his 'Magnificent Seven' hotels.

Copyright 2007 News Limited. All times AEST (GMT +10).

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING<br>OF MISSISSIPPI, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:07cv34-M-B |
| | ) | |
| v. | ) | |
| | ) | |
| XM SATELLITE RADIO, INC., and<br>SIRIUS SATELLITE RADIO INC. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF HAROLD PRICE</u>

I, HAROLD PRICE, do hereby declare and state as follows:

1.      I am over twenty-one (21) years of age and fully competent to make this declaration and to testify to the matters set forth herein.  I have personal knowledge of the statements contained herein and the facts stated herein are true and correct.

2.      This declaration is submitted in support of Surfer Internet Broadcasting of Mississippi, LLC's Opposition to Defendants' Joint Motion to Transfer.

3.      I am the sole inventor of United States Patent No. 6,776,376, which is the subject of the above-styled and numbered lawsuit.

4.      I am willing to travel to the Northern District of Mississippi to provide testimony in the lawsuit.  Travelling to the Northern District of Mississippi to provide testimony in this lawsuit would not pose an inconvenience to me.

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct, and that this declaration was executed on May 7, 2007 at

_Bethel Park, PA_____.

_____
Harold Price

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

SURFER INTERNET BROADCASTING      )
OF MISSISSIPPI, LLC               )
                                  )
                    Plaintiff,    )          Civil Action No. 4:07cv34-M-B
                                  )
v.                                )
                                  )
XM SATELLITE RADIO, INC., and     )
SIRIUS SATELLITE RADIO INC.       )
                                  )
                    Defendants.   )

## DECLARATION OF ERNEST D. BUFF

I, ERNEST D. BUFF, do hereby declare and state as follows:

1.    I am over twenty-one (21) years of age and fully competent to make this declaration and to testify to the matters set forth herein. I have personal knowledge of the statements contained herein and the facts stated herein are true and correct.

2.    This declaration is submitted in support of Surfer Internet Broadcasting of Mississippi, LLC's Opposition to Defendants' Joint Motion to Transfer.

3.    I am the attorney who prepared and prosecuted the application leading to the patent-in-suit, United States Patent No. 6,776,376 ("the '376 patent"), before the United States Patent Office. The '376 patent is the subject of the above-styled and numbered lawsuit.

4.    I am willing to travel to the Northern District of Mississippi to provide testimony in the lawsuit. Traveling to the Northern District of Mississippi to provide testimony in this lawsuit would not pose an inconvenience to me.

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct, and that this declaration was executed on May 7, 2007 at Daytona Beach, Florida.

Ernest D. Buff

2

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 4:07cv34-M-B |
| v. | ) ) | |
| XM SATELLITE RADIO, INC., and SIRIUS SATELLITE RADIO INC. | ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF JOHN F. WARD, ESQ.

I, John F. Ward, do hereby declare and state as follows:

1.      I am over twenty-one (21) years of age and fully competent to make this declaration and to testify to the matters set forth herein. I have personal knowledge of the statements contained herein and the facts stated herein are true and correct.

2.      This declaration is submitted in support of Surfer Internet Broadcasting of Mississippi, LLC's Opposition to Defendants' Joint Motion to Transfer.

3.      I am a partner at the law firm of Ward & Olivo.

4.      I am admitted to practice in the State of New York and the Southern District of New York.

5.      I have litigated several patent infringement cases in the Southern District of New York.

6.      According to LegalMetric, LLC, the length of time to bring a patent infringement action in the Southern District of New York averages approximately 44.4

months. A copy of the relevant LegalMetric charts depicting average time is attached hereto as Appendix 1.

7.     I am willing to travel to the Northern District of Mississippi to provide testimony in the lawsuit. Traveling to the Northern District of Mississippi to provide testimony in this lawsuit would not pose an inconvenience to me.

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct, and that this declaration was executed on May 7, 2007 at New York, New York.

John F. Ward



# TIME TO TRIAL

4

| DISTRICT | MONTHS TO JURY TRIAL |
|----------|----------------------|
| E.D. Va. | 10.9 |
| W.D. Wisc. | 12.4 |
| E.D. Tex. | 26.6 |
| N.D. Cal. | 30.9 |
| N.D. Ill. | 32.3 |
| C.D. Cal. | 32.5 |
| D. Del. | 36.7 |
| S.D.N.Y. | 44.4 |

Source: LegalMetric, LLC

*March 30, 2007 · Affinia Manhattan Hotel, New York, NY*

# TIME TO TRIAL

5

Source: LegalMetric, LLC

*March 30, 2007 · Affinia Manhattan Hotel, New York, NY*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRCIT OF MISSISSIPPI
## GREENVILLE DIVISON

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC | § § § § | |
| Plaintiff, | § | |
| v. | § § | Civil Action No.    4:07cv34-M-B |
| XM SATELLITE RADIO, INC.,<br>and<br>SIRUS SATELLITE RADIO, INC., | § § § § | |
| Defendants, | § | |

## NOTICE OF APPEARANCE

COME NOW, Joseph C. Langston and William M. Quin, II, of The Langston Law Firm, P.A. and enter an appearance in this matter for and on behalf of all Plaintiff Surfer Internet Broadcasting of Mississippi, LLC.

Respectfully, submitted, this the 16th day of May, 2007.

BY: /s/ William M. Quin, II
William M. Quin, II, MSB# 10834
Joseph C. Langston, MSB# 1060

The Langston Law Firm, P.A.
100 South Main Street
Post Office Box 787
Booneville, MS 38829
Telephone: 662-728-3138
Facsimile: 662-728-1992

{L0025696.DOC}

## CERTIFICATE OF SERVICE

     I, William M. Quin, II do hereby certify that on May 16, 2007 I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**LeRoy Davis Percy**
TOLLISON LAW FIRM, P.A.
P.O. Box 1216
Oxford, Ms 38655-1216
Email: roy@tollisonlaw.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Ruffin B. Cordell**
FISH & RICHARDSON, PC –DC
1425 K Street NW, 11th Floor
Washington, DC 20005
Email: cordell@fr.com
ATTORNEY TO BE NOTICED

**Alan D. Albright**
FISH & RICHARDSON, PC – Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: Albright@fr.com
ATTORNEY TO BE NOTICED

**J. Cal Mayo, Jr.**
MAYO MALLETTE PLLC
428 North Lamar Boulevard
Oxford, MS 38655
Email: camay@mayomallette.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Christopher O. Green**
FISH & RICHARDSON PC – Atlanta
1180 Peachtree Street N. E., 21st Floor
Atlanta, GA 30309
Email: cgren@fr.com
ATTORNEY TO BE NOTICED

**Paul Bowie Watkins**
MAYO MALLETTE PLLC
P.O. Box 1456
Oxford, MS 38655
Email: pwatkins@mayomallette.com
ATTORNEY TO BE NOTICED

**Conor M. Civins**
FISH & RICHARDSON, PC – Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: civins@fr.com
ATTORNEY TO BE NOTICED

**Pope S. Mallette**
MAYO MALLETTE PLLC
P.O. Box 1456
Oxford, MS 38655
Email: pmallette@mayomallette.com
ATTORNEY TO BE NOTICED

**J. Scott Denko**
FISH & RICHARDSON, PC – Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: denfo@fr.com
ATTORNEY TO BE NOTICED

**Vito J. DeBari**
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
ATTORNEY TO BE NOTICED

     This the 16th day of May, 2007.

/s/ William M. Quin, II
William M. Quin, II

{L0025696.DOC}

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 407CV34-M-B |
| XM SATELLITE RADIO, INC., and SIRIUS SATELLITE RADIO, INC., | § § § § | |
| Defendants. | § § | |

### DEFENDANTS' REBUTTAL TO PLAINTIFF'S OPPOSITION
### TO DEFENDANTS' JOINT MOTION TO TRANSFER

Defendants Sirius Satellite Radio Inc. ("Sirius") and XM Satellite Radio Inc. ("XMSR") (referred to collectively herein as "Defendants") respectfully submit this Rebuttal to Plaintiff's Opposition of Defendants' Joint Motion to Transfer, ("Motion to Transfer") and respectfully show the Court as follows:

### I.  INTRODUCTION

Plaintiff's Memorandum in Opposition to Defendants' Joint Motion to Transfer ("Plaintiff's Opposition") relies heavily on Plaintiff's choice of forum and ignores the legal authority that holds a plaintiff's choice of forum should be given little, if any, deference when, as here, the plaintiff blatantly forum shops.  As described in Defendants' Motion to Transfer, Plaintiff was formed in Mississippi a mere seven days prior to filing this suit, strongly suggesting Plaintiff was formed for the express purpose of filing in this district.  Moreover, another action filed recently in this district by the same attorneys representing Plaintiff follows this same pattern and further confirms that Plaintiff is forum shopping in this case.  Specifically, the plaintiff in

*Greenville Communications, LLC v. Verizon Communication Inc., et al.*, Civil Action No. 4:07CV66-P-B, was formed less than a month before that litigation was filed on April 25, 2007, and lists as its principal place of business the same address as Plaintiff's place of business in Greenville. Thus, Plaintiff's "place of business" in Greenville is being shared by at least two newly formed corporations represented by Plaintiff's attorneys in different cases in this district.

Furthermore, Plaintiff's Opposition fails to rebut the private and public interest factors established in Defendants' Motion to Transfer that weigh heavily in favor of transfer of this case to the SDNY. These factors include the convenience of the parties and witnesses, the location of the witnesses and evidence in or near the SDNY and the Northern District of Mississippi's lack of local interest in this case.

## II. ARGUMENT AND AUTHORITIES

**A.      Plaintiff's choice of forum is entitled to little, if any, deference in this case.**

First, the case law is clear that under a motion to transfer analysis, a plaintiff's choice of forum "may be disregarded under § 1404(a) for less compelling reasons than under the former doctrine of forum non conveniens." *Embree v. Cutter Biologics*, 760 F. Supp. 103, 105 (N.D. Miss. 1991); *see also Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). The Supreme Court, while discussing the appropriate standard for transferring cases under § 1404(a), stated:

> [W]e believe that Congress, by the term, 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

*Id.* Indeed, Fifth Circuit courts have embraced this standard, asserting that "while the plaintiff's choice of forum may be entitled to some degree of greater consideration, it is by no means determinative." *Gregory Prods., Inc. v. Trimark Pictures, Inc.*, 1996 WL 33370629, at *3 (N.D. Miss. March 8, 1996); *see also Gundle Lining Const. v. Fireman's Fun Inc.*, 844 F. Supp. 1163,

1165 (S.D. Tex. 1994) (noting that plaintiff's choice of forum is not entitled to the decisive weight it would enjoy under "the doctrine of *forum non conveniens*"). If Defendants are able to demonstrate that the SDNY "is significantly more convenient for the parties and witnesses, and that there appear to be no substantial impediments otherwise to transfer, ***[Plaintiff's] choice of forum must give way and the court should not hesitate to order a transfer*.**" *Gregory Prods.*, 1996 WL 33370629, at *3 (emphasis added); *Apache Prods. Co. v. Employers Ins. of Wausau*, 154 F.R.D. 650, 653 (S.D. Miss. 1994). As established below and in Defendants' Motion to Transfer, given the location of witnesses and evidence in this case, the SDNY is a significantly more convenient venue for the parties and witnesses.

In addition, as Defendants point out in their Motion to Transfer, while Plaintiff technically "resides" in Mississippi, it was formed a mere seven days before this litigation was filed, strongly suggesting that Plaintiff was formed for the sole purpose of suing Defendants in Mississippi. Plaintiff attempts to minimize this fact by arguing that the timing of its formation is irrelevant, and that its "residence" in the Northern District of Mississippi cannot be ignored merely because of its recent origin. *See* Plaintiff's Opposition, at p. 6. Plaintiff even argues that, "as a matter of law, [its] motive for establishing residence in a forum is immaterial for the purpose of analyzing venue." *Id.* It is well established, however, that courts consider forum shopping when determining whether to transfer a case. *See Fullman v. AAA Cooper Transp. Co.*, 732 F. Supp. 54, 56 (N.D. Miss. 1990); *see also Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 828 (S.D. Tex. 1993) (stating that the Court "is loathe to respect those choices that appear to be blatant attempts at forum shopping with little or no factual justification"). In *Fullman*, the Court noted that the plaintiff had apparently chosen the Northern District of Mississippi based on favorable law rather than because it was more convenient, stating "[w]hen the plaintiff engages in such blatant forum shopping, little, if any, deference should be given to her choice of forum." *See Fullman*, 732 F. Supp. at 56.

In this case, Plaintiff asserts that it should not matter when it was formed, arguing that it "chose to file suit in its home forum, and under the Fifth Circuit law cited herein, this essentially ends the debate." *See* Plaintiff's Opposition, at p. 5. Notwithstanding Plaintiff's stretched interpretation of Fifth Circuit law, it appears that Plaintiff would like the Court to ignore the reality that it was formed in this District solely because Plaintiff (and apparently its lawyers) preferred to file suit here. Such conduct should not be allowed to circumvent the appropriate standard for transfer under § 1404(a).

**B.**  **The majority of witnesses are more convenient to the SDNY than the Northern District of Mississippi.**

Plaintiff's Opposition fails to adequately address the most significant factor considered under a § 1404(a) analysis—the convenience of party and non-party witnesses. *Apache Prods. Co.*, 154 F.R.D. at 653. Although Plaintiff attempts to minimize the significance of Defendants' locations, Plaintiff cannot dispute that virtually all of Defendants' witnesses and evidence are located in either Washington, D.C. or the SDNY. Instead, Plaintiff complains that Defendants failed to provide the identities or substance of their potential witnesses' testimony. *See* Plaintiff's Opposition, at p. 9. Defendants, however, provided more than adequate information regarding its potential witnesses to establish that the SDNY is clearly a more convenient forum for this case than the Northern District of Mississippi.

It is no secret that in the type of patent infringement suit Plaintiff has brought against Defendants, Defendants will present employee witnesses to refute Plaintiff's infringement contentions with testimony regarding the design, functionality and operation of the accused products. It is also no secret that Defendants may need to present employee witnesses who will testify regarding the marketing and sale of the accused products in this case. Indeed, Defendants specifically described these witnesses in their Motion to Transfer and, more importantly for purposes of transfer analysis under § 1404(a), Defendants made clear that these witnesses were

virtually all located in either Washington, D.C. or New York, which are unquestionably more convenient to the SDNY than the Northern District of Mississippi. *See* Motion to Transfer, at p. 5.

Every XMSR and Sirius employee who is called upon as a witness will be required to take an absence from work to travel and testify at trial in the Northern District of Mississippi, which requires further travel and greater time away from their work and families than testifying in the SDNY. Plaintiff attempts to deflect attention from the inconvenience that will be caused the witnesses in this case by providing declarations from William Grywalski, Ernest Buff and Harold Price, each proclaiming that they are willing to travel to the Northern District of Mississippi.[1] This, however, does nothing to lessen the inconvenience caused to Defendants' employees. Moreover, while these individual's declarations establish their willingness to travel to Mississippi, none of them assert that the Northern District of Mississippi would be a more convenient forum than the SDNY, or that the SDNY would be an inconvenient forum for them. This is not surprising considering Messr. Grywalski, Buff and Price reside in close proximity to the SDNY in Budd Lake, New Jersey, Bedminster, New Jersey and Bethel Park, Pennsylvania, respectively.

As for naming specific employee witnesses who may testify in this case, at a stage when even the earliest pre-discovery disclosures have not yet been required, it is difficult to identify with precision who may or will be called as a witness. Nevertheless, because Plaintiff claims to need to know the specific identities of Defendants' potential key witnesses at this early stage of litigation, at this time Defendants provide the following individuals who may be called to testify in this case:

| **Name - Title** | **Location** |
| --- | --- |
| Daniel Eccles - VP, Applications Development at Sirius | New York, NY |

---

[1] This is not surprising, since these individuals are apparently working with Plaintiff to ensure this case proceeds in this district. Indeed, Plaintiff's President, Mr. Grywalski, also is the President of the New Jersey company that owned the patent-in-suit before it was transferred to Plaintiff some time within the seven day period before this action was filed.

Raymond Lowe – Senior Technical Consultant at Sirius     Princeton, NJ

Joseph Zamplione – Information Technology Manager at Sirius     New York, NY

**C.     The majority of evidence is more easily accessible in the SDNY than the Northern District of Mississippi.**

All of the evidence in Defendants' possession, custody or control that relate to the accused products are located in Washington, D.C. or in the New York metropolitan area, which means the sources of proof in this case are more easily accessible from the SDNY. *See Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) (stating that the location of witnesses and evidence "necessarily implicate[s] the ease of conducting merits-related discovery in a location which is near the relevant witnesses and documents"). In response, Plaintiff cites to the decision in *Haas Outdoors, Inc. v. Novelty, Inc.*, which correctly points out that modern technology makes access to records easier. *See Haas Outdoors, Inc. v. Novelty, Inc.*, 2006 WL 1134234, at *5 (N.D. Miss. April 24, 2006). Nevertheless, Defendants respectfully submit that the totality of factors in this case—i.e., the location of witnesses, the location of evidence and this lawsuit's lack of substantive connection to Mississippi (which will be discussed in more detail below)—dictate that this case should be transferred to the SDNY.

**D.     Mississippi has little, if any, local interest in this case.**

Plaintiff argues that Mississippi has a significant interest in adjudicating this dispute because Plaintiff is a Mississippi corporation and Defendants' products and/or services are offered and sold in the Northern District of Mississippi. As Defendants state above and in their Motion to Transfer, Plaintiff's formation in Mississippi was nothing more than blatant forum shopping. It is doubtful that Plaintiff is providing Mississippi with the beneficial activities true operating businesses provide, such as investment of capital, jobs for Mississippi residents or any products or services. Indeed, while Plaintiff alleges it was established in the Northern District of Mississippi for "appropriate reasons," it is telling that Plaintiff does not elaborate further and merely points out

that Plaintiff's President, William Grywalski (a New Jersey resident) is familiar with Mississippi because he is a benefactor of an orphanage in Mississippi. *See* Plaintiff's Opposition, at p. 8. While this is no doubt a worthy charitable cause, it is difficult to discern how such a fact establishes a connection between Plaintiff and Mississippi or otherwise fits into the § 1404(a) analysis.

Significantly, Plaintiff's business address at 800 Highway 1 South, Suite B-23, Greenville, Mississippi 38701, is identical to the address of Greenville Communications, LLC, the plaintiff in a separate and unrelated patent infringement suit filed in this district by the same attorneys who represent Plaintiff in this case. *See Greenville Communications, LLC v. Verizon Communication Inc., et al.*, Civil Action No. 4:07CV66-P-B, filed April 25, 2007. This fact lends yet more credence to the notion that Plaintiff was formed in Mississippi for the sole purpose of filing this lawsuit and that there is no substantive connection between this lawsuit and Mississippi.

The burdens imposed on a district by a lawsuit with which it has no connection is among the public interest factors courts consider under § 1404(a). *Embree*, 760 F. Supp. at 106. "Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). In this case, the residents of Mississippi have no interest or relation to this dispute. It is true that Defendants sell products and services that are bought by some residents of the Northern District of Mississippi. Defendants do not contest that this fact helps to establish that the Northern District of Mississippi is a legally proper venue for this lawsuit. The relevant issue is not, however, whether venue is proper in the Northern District of Mississippi. Rather, the relevant issue is whether the venue should be transferred under § 1404(a) for "the convenience of the parties and witnesses, [and] in the interest of justice" based on the private and public interest factors. 28 U.S.C. § 1404(a). The factors in this case, including Mississippi's lack of local interest in this dispute, weigh heavily in favor of transfer

to the SDNY.

**E.      Transfer to the SDNY will not cause delay or prejudice.**

Plaintiff claims, according to one alleged study, it takes a patent infringement action in the SDNY an average of 44.4 months to reach trial, which, according to Plaintiff, should weigh against transfer.  *See* Plaintiff's Opposition, at p. 13.  Plaintiff, however, fails to provide adequate information about the source of its information, such as how the information was collected, where it was collected from or what time period it purports to cover.  More importantly, Plaintiff fails to even attempt to make an appropriate comparison to the length of time it takes a patent infringement case in the Northern District of Mississippi to reach trial.

Defendants are confident that the Northern District of Mississippi maintains a fast, organized and efficient docket.  However, so does the SDNY, which is a significantly more convenient venue with a local interest in this dispute.  Defendants have provided statistics that actually came from the Northern District of Mississippi and the SDNY that confirm the time periods for reaching trials in civil cases in those courts are comparable.[2]

Moreover, even assuming some delay does accompany a transfer of this case, that factor does not overcome the other private and public interest factors that weigh heavily in favor of transfer to the SDNY.  In *McGinnis v. Eli Lilly and Co.*, the Court transferred a case from the plaintiff's home forum based on the plaintiff's apparent forum shopping, convenience to the defendant and location of the majority of witnesses.  *McGinnis v. Eli Lilly and Co.*, 181 F. Supp. 2d 684, 691 (S.D. Tex 2002).  While making its decision, the *McGinnis* Court observed the following:

> [T]he utter dearth of contacts between Plaintiff's case and [this venue] exemplifies nothing less than blatant forum shopping.  While the Court recognizes that a venue transfer may well result in Plaintiff

---

[2] As described in Defendants' Motion to Transfer, statistics from the Northern District of Mississippi and the SDNY indicate that the median times from the filing of a civil case to trial in those districts were 24.0 months and 25.7 months, respectively.  *See* Motion to Transfer, at p. 12.  In addition, the statistics from the courts also include the percentage of civil cases over 3 years old, which in 2006 was 18.4% for the SDNY and 20.7% for the Northern District of Mississippi, a comparable number.  *See* DeBari Decl., Exs. 21, 22.

> losing the benefit of this Court's expeditious and cost-efficient
> manner of handling cases, the mere fact that Plaintiff may suffer
> some delay in having his claim adjudicated will not, in light of the
> totality of the circumstances, sufficiently militate against transfer.

*Id.* Similarly, the totality of circumstances in this case dictate that transfer to the SDNY is appropriate.

Finally, Plaintiff fails entirely to address its claim that it will be somehow prejudiced by a transfer. This lawsuit is still in the very beginning stages. Indeed, Defendants filed their Motion to Transfer on the same day they filed their respective Answers. No discovery has taken place and no other substantive issues have been raised or addressed by the parties. Accordingly, transfer of this case to the SDNY will not subject Plaintiff to any prejudice.

### F. The remaining private and public interest factors weigh in favor of transfer of this case to the SDNY.

Defendants' Motion to Transfer established that the remaining private and public interest factors considered under § 1404(a) were either neutral or weighed in favor of transfer of this case to the SDNY. Defendants respectfully submit that, when all of the factors are weighed together, this lawsuit should be transferred to the SDNY.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Defendants Sirius and XMSR respectfully request that the Court grant Defendants' Motion to Transfer Venue, deny Plaintiff's Opposition and grant Defendants any such other and further relief to which they are justly entitled.

Dated:  May 17, 2007


Respectfully submitted,

SIRIUS SATELLITE RADIO INC.          XM SATELLITE RADIO, INC.



_____/s/ Pope S. Mallette_          _____/s/ LeRoy D. Percy_
J. CAL MAYO, JR. (MS Bar No. 8492)          LEROY D. PERCY (MS Bar No. 10454)
POPE S. MALLETTE (MS Bar No. 9836)          *ONE OF ITS ATTORNEYS*
PAUL B. WATKINS, JR. (MS Bar No. 10348)
VITO J. DEBARI (*Admitted Pro Hac Vice*)
*ITS ATTORNEYS*

OF COUNSEL:          OF COUNSEL:

MAYO MALLETTE PLLC          TOLLISON LAW FIRM, P.A.
428 North Lamar Boulevard          100 Courthouse Square
Post Office Box 1456          Post Office Box 1216
Oxford, Mississippi  38655          Oxford, Mississippi 38655
Telephone:  (662) 236-0055          Telephone:  (662) 234-7070
Facsimile:  (662) 236-0035          Facsimile: (662) 234-7095

KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9249
Facsimile:  (212) 715-8000

## CERTIFICATE OF SERVICE

I, LeRoy D. Percy, hereby certify that I have this day electronically filed the above and

foregoing document with the Clerk of Court using the ECF system, which provided notification to

the following persons:

J. Kirkham Povall
S. Todd Jeffreys
POVALL & JEFFREYS, P.A.
P.O. Box 1199
Cleveland, MS 38732

David Zachary Scruggs
Richard F. Scruggs
David Wayne Shelton
SCRUGGS LAW FIRM
P.O. Box 1136
Oxford, MS 38655

J. Cal Mayo, Jr.
Pope S. Mallette
Paul B. Watkins
MAYO MALLETTE, PLLC
Oxford, MS 38655

Vito J. DeBari
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036

Alan D Albright
J. Scott Denko
Conor M. Civins
FISH & RICHARDSON P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701

Ruffin B. Cordell
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005-3500

Christopher O. Green
FISH & RICHARDSON P.C.
1180 Peachtree St.
Atlanta, GA 30309

This the 17th day of May, 2007

_____ /s/ LeRoy D. Percy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

SURFER INTERNET                                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                              CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO INC., and                                      DEFENDANTS
SIRIUS SATELLITE RADIO INC.

## NOTICE OF ENDORSEMENT

PLEASE TAKE NOTICE that the undersigned Pope S. Mallette, attorney of record for

Defendant Sirius Satellite Radio Inc., authorized the placement of his electronic signature on the

following document filed using the ECF system by counsel for Defendant XM Satellite Radio Inc.:

Defendants' Rebuttal to Plaintiff's Opposition to Defendants' Joint Motion to
Transfer [doc. 29]

THIS, the 17th day of May, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.

_/s/ Pope S. Mallette_____
J. CAL MAYO, JR. (MS Bar No. 8492)
POPE S. MALLETTE (MS Bar No. 9836)
PAUL B. WATKINS, JR. (MS Bar No. 10348)
VITO J. DEBARI (Admitted *Pro Hac Vice*)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi 38655
Telephone:    (662) 236-0055
Facsimile:    (662) 236-0035

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 715-9249
Facsimile:    (212) 715-8000

## CERTIFICATE OF SERVICE

I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Alan D. Albright, Esq.
Albright@fr.com

Conor M. Civins, Esq.
Civins@fr.com

Ruffin B. Cordell, Esq.
Cordell@fr.com

J. Scott Denko, Esq.
Denko@fr.com

Christopher O. Green, Esq.
Cgreen@fr.com

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

LeRoy Davis Percy, Esq.
Roy@tollisonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

THIS, the 17th day of May, 2007.

   /s/ Pope S. Mallette
POPE S. MALLETTE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC,                    PLAINTIFF(S)

VS.                                         CIVIL ACTION NO. 4:07-cv-00034-MPM-EMB

XM SATELLITE RADIO, INC. ET AL,                                      DEFENDANT(S)

**REVISED**
RULE 16.1(A) INITIAL ORDER

The above captioned cause is set for a **TELEPHONIC CASE MANAGEMENT CONFERENCE (CMC)** on August 15, 2007, at 11:30 before:

Magistrate Judge Bogen @662-335-9214

**UNLESS OTHERWISE AGREED, IT SHALL BE THE RESPONSIBILITY OF COUNSEL FOR THE PLAINTIFF TO SET UP THE CONFERENCE CALL AT THE SCHEDULED TIME. THE MAGISTRATE JUDGE MAY REQUIRE COUNSEL AND THE PARTIES TO ATTEND THE CMC.**

**RULE 16.1(B)(1) ATTORNEY CONFERENCE**

No later than twenty one (21) days prior to the CMC, counsel shall confer, either in person or telephonically, regarding the following matters, so as to comply with the requirements regarding Case Management Orders and Memoranda. (See next page).

1.     Identify the principal factual and legal issues in dispute;

2.     Discuss the principal evidentiary basis for claims and defenses;

3.     Determine the differentiated case management case track, days required for trial, and whether the case should be considered for Alternative Dispute Resolution (ADR);

4.     Discuss when voluntary disclosure of documents or other information should be made pursuant to Rule 26.1 [no later than fourteen (14) days after the attorney conference, Local Rule 16.1(B)(7)];

5.      Identify any motions whose early resolution would have significant impact on the scope of discovery or other aspects of the litigation;

6.      Consistent with the case track recommendations, determine what additional discovery is required beyond the voluntary disclosures and initial depositions of the parties, with designated time limitations;

7.      Discuss whether all parties consent to jurisdiction by a magistrate judge;

8.      Discuss a time for the Local Rule 16.1(C) settlement conference;

9.      Discuss settlement prospects fully with each other and their respective clients and represent to the Court that they have done so and communicate the costs of going through litigation and the appeal process with each's respective clients and represent to the Court that they have done so.

10.     Discuss preparation of a proposed case management order .  Scheduling deadlines based on the track designation should not be included in the proposed case management order.  All deadlines shall be determined at the telephonic case management conference.

## PROPOSED CASE MANAGEMENT ORDER
## CONFIDENTIAL SETTLEMENT MEMORANDA

*FOURTEEN (14) days **PRIOR** to the Case Management Conference counsel shall submit to the Magistrate Judge a memorandum (3 page maximum) setting forth a <u>brief explanation of the case</u> and <u>counsel's own **CANDID** appraisal of the claims or defenses</u>,  and the memorandum shall include <u>good faith settlement estimates</u>. By the same deadline counsel shall also submit to the Magistrate Judge a jointly proposed Case Management Order (CMO).*

The <u>memoranda and proposed CMO</u>  shall be *sent to Magistrate Judge Bogen  via  <u>E-MAIL</u> to judge_bogen@msnd.uscourts.gov  (**NO FAXES**)*. The memoranda are **NOT** to be exchanged and will be viewed only by the Court. They will not become part of the record and will be destroyed upon resolution of the case.

## CASE MANAGEMENT PLAN

At the conference, the Court and the parties shall:

2

1.  Identify the principal factual and legal issues in dispute;

2.  Identify the alternative dispute resolution procedure which counsel intend to use, or report specifically why no such procedure would assist in the resolution of the case;

3.  Indicate whether all parties consent to jurisdiction by a magistrate judge;

4.  Review the parties' compliance with their disclosure obligations and consider whether to order additional disclosures;

5.  Determine whether to order early filing of any motions that might significantly affect the scope of discovery or other aspects of the litigation, and provide for the staged resolution, or bifurcation of issues for trial consistent with 42(b) Fed.R.Civ.P.;

6.  Determine the plan for at least the first stage of discovery; impose limitations on each discovery tool, time periods and other appropriate matters;

7.  Determine the date for the Local Rule 16.1(C) settlement conference or mediation;

8.  Discuss scheduling and set appropriate scheduling deadlines including dates for settlement conference, completion of discovery, motions, final pretrial conference and trial.

## **CASE MANAGEMENT ORDER**

A Case Management Order shall be entered by the Court within ten (10) days of the conference. A Uniform Case Management Order has been developed and is available on the Court web site at http://www.msnd.uscourts.gov/localrules/form1.pdf as Form No. 1 in the revised Uniform Local Rules, effective December 1, 2000. Counsel shall use that format in discussions and preparation.

Date: May 29, 2007.

/s/ E.M. Bogen
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

SURFER INTERNET                                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                             CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                              DEFENDANTS
SIRIUS SATELLITE RADIO, INC.

## MOTION OF DEFENDANT SIRIUS SATELLITE RADIO INC.
## FOR ADMISSION OF COUNSEL BY COMITY

Defendant Sirius Satellite Radio Inc. moves the Court to admit Nicholas L. Coch, ("Coch")

of KRAMER LEVIN NAFTALIS & FRANKEL LLP, as attorney *pro hac vice* by comity, and states the

following:

1.      As demonstrated by the Declaration attached hereto as Exhibit "A," Coch practices

law in New York, New York.  He is admitted to practice in the District Courts of New York and is

a member in good standing of the New York Bar.

2.      Coch seeks admission *pro hac vice* by comity in this case to represent Defendant

Sirius Satellite Radio Inc. in association with Pope S. Mallette, MAYO MALLETTE PLLC, a resident

attorney, and the attorneys in the law firm of MAYO MALLETTE PLLC.

WHEREFORE, PREMISES CONSIDERED, Defendant Sirius Satellite Radio Inc.

respectfully moves this Court, pursuant to Local Rule 83.1(A)(2), that Nicholas L. Coch of KRAMER

LEVIN NAFTALIS & FRANKEL LLP be admitted *pro hac vice* by comity as a nonresident attorney

before the Bar of this Court for all proceedings on behalf of Defendant Sirius Satellite Radio Inc. in

connection with the above-referenced civil action.

THIS, the 5th day of July, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.


   */s/ Pope S. Mallette*
J. CAL MAYO, JR. (MS Bar No. 8492)
POPE S. MALLETTE (MS Bar No. 9836)
VITO J. DEBARI (Admitted *Pro Hac Vice*)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, Mississippi  38655
Telephone:     (662) 236-0055
Facsimile:      (662) 236-0035

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-9249
Facsimile:      (212) 715-8000

## CERTIFICATE OF SERVICE

I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Alan D. Albright, Esq.
albright@fr.com

Conor M. Civins, Esq.
civins@fr.com

Ruffin B. Cordell, Esq.
cordell@fr.com
J. Scott Denko, Esq.
denko@fr.com

Christopher O. Green, Esq.
cgreen@fr.com

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

Joseph C. Langston, Esq.
jlangston@langstonlaw.com
LeRoy Davis Percy, Esq.
roy@tollisonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

William Monroe Quin, II, Esq.
wquin@langstonlaw.com

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

THIS, the 5th day of July, 2007.

_/s/ Pope S. Mallette_____
POPE S. MALLETTE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

| | |
|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC | PLAINTIFF |
| V. | CIVIL ACTION NO. 4:07cv34-M-B |
| XM SATELLITE RADIO INC., and SIRIUS SATELLITE RADIO INC. | DEFENDANTS |

## DECLARATION UNDER PENALTY OF PERJURY
## OF NICHOLAS L. COCH IN SUPPORT OF
## DEFENDANT'S MOTION FOR ADMISSION BY COMITY

I, Nicholas L. Coch, declare as follows:

1.      My residence address is 14 Sutton Place South, New York, New York 10022, and my office address is Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036.

2.      I received a Juris Doctorate from New York University School of Law in 1962, a Bachelor of Science in Engineering from Columbia University School of Engineering and Applied Sciences in 1957 and a Bachelor of Arts from Columbia College in 1956.

3.      I desire to appear as counsel *pro hac vice* for Defendant Sirius Satellite Radio Inc. in the United States District Court for the Northern District of Mississippi in the above-styled matter.

4.      I am admitted to practice before the United States District Court for the Southern District of New York as of March 17, 1966.

5.      I am currently licensed and/or in good standing to practice law in the State of New York. A copy of my Certificate of Good Standing in the District Court from my jurisdiction is attached.

KL3 2600569.1

6.     I am not now nor have I ever been suspended or disbarred by any jurisdiction.

7.     I am associated with J. Cal Mayo, Jr., and Pope S. Mallette, who are members in good standing of the Mississippi Bar, and the firm of MAYO MALLETTE PLLC as local counsel in the above-styled cause.

8.     I certify that I have read and am familiar with the Uniform Local Rules of this Court and that upon filing of the attached Motion I will pay the *pro hac vice* admission fee.

I declare under penalty of perjury that the foregoing is true and correct.

THIS, the 26th day of June, 2007.

Nicholas L. Coch

# United States District Court

## Southern District of New York

# Certificate of
# Good Standing

I,      **J. Michael McMahon**      , Clerk of this Court, certify that

**NICHOLAS  LAZAROS  COCH**      Bar #      **NC3541**

was duly admitted to practice in this Court on

MARCH  17th,  1966      , and is in good standing

as a member of the Bar of this Court.

Dated at    500 Pearl Street
New York, New York      on      JUNE  29th,  2007

**J. MICHAEL McMAHON**

Clerk          by: _____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

SURFER INTERNET                                                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                                                        CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                                                      DEFENDANTS
SIRIUS SATELLITE RADIO INC.

## ORDER GRANTING ADMISSION OF COUNSEL BY COMITY

This matter came before this Court on the Motion [doc. 32] of Defendant Sirius Satellite

Radio, Inc., for Admission of Counsel by Comity.  The Court, having considered the Motion and

being otherwise fully advised in the premises, finds that the Motion is well-taken and should be

granted.

**IT IS, THEREFORE, ORDERED** that Nicholas L. Coch of KRAMER LEVIN NAFTALIS &

FRANKEL, LLP, is admitted *pro hac vice* as a nonresident attorney before the Bar of this Court for all

proceedings on behalf of the Defendant Sirius Satellite Radio, Inc., in connection with the above-

referenced action.  Mr. Coch shall on or before July 20, 2007, register for electronic service of orders

and notices of the Court in accordance with Federal Rule of Civil Procedure 5(b)(2)(D) and Uniform

Local Rule 5.2(A).  Attorneys may register electronically by accessing the Attorney Registration site

at  www.msnd.uscourts.gov/ecf or, alternatively, by printing, executing and mailing or hand-

delivering to the Clerk of this Court the Attorney Registration Form attached as Form 1 to the

*Administrative Procedures for Electronic Case Filing* in the United States District Court for the

Northern District of Mississippi.

**THIS**, the 6th day of July, 2007.


/s/ Eugene M. Bogen
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

SURFER INTERNET                                                    PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

V.                                                CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                                    DEFENDANTS
SIRIUS SATELLITE RADIO, INC.

## DEFENDANTS' JOINT MOTION TO STAY
## PROCEEDINGS PENDING RULING ON DEFENDANTS'
## JOINT MOTION TO TRANSFER VENUE

Defendants XM Satellite Radio Inc. and Sirius Satellite Radio Inc. ("Defendants") request

that this Court stay all proceedings, including the Case Management Conference (set for August 15,

2007), pending a ruling on Defendants' Joint Motion to Transfer Venue (filed April 20, 2007).  In

support, Defendants state the following:

1.

This is a patent infringement action.  Plaintiff Surfer Internet Broadcasting of Mississippi,

LLC ("Plaintiff"), asserts that Defendants have infringed, induced infringement of and contributed

to infringement of U.S. Patent No. 6,766,376 ("the '376 patent") by providing Internet radio services

and maintaining an Internet radio website.  Defendants deny infringement of the '376 patent and

assert that the patent is invalid.

2.

In response to the filing of the Complaint, Defendants filed their Joint Motion to Transfer Venue on April 20. As stated in that Motion and the supporting papers, this matter has virtually no connection with this forum beyond the formation of Plaintiff as a Mississippi entity a week before initiation of this litigation. Defendants' Joint Motion to Transfer Venue remains pending.

3.

Pursuant to the Revised Initial Rule 16.1(A) Order (May 29, 2007), the Court has scheduled the Case Management Conference for Wednesday, August 15, 2007. This Court should postpone the Case Management Conference and entry of a scheduling order and stay all proceedings until resolution of Defendants' Joint Motion to Transfer Venue in the interest of judicial economy.

4.

Patent infringement litigation raises unique case management issues, as the court must decide early in the case how to sequence discrete phases associated with patent cases -- that is, claim interpretation and construction; merits of the infringement claims, including the affect of prior art; and damages, including the issue of willful infringement. Different federal districts and different judges have their own approaches to patent cases. It would be most efficient to have, after determination of the motion to transfer, the court where the case is to be tried set the schedule for the case.

5.

This Court has "wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery." *Newman v. Lexington Ins. Co.*, 2007 U.S. Dist. LEXIS 25141, *5 (E.D. La. 2007) (citing *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)). The Court

may use this "general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *Newman*, 2007 U.S. Dist. LEXIS 25141, at *5-6 (citing *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)). It is appropriate to stay litigation while a motion to transfer is under consideration. *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994). When considering motions to transfer venue and consolidate, Courts routinely stay the proceedings pending a ruling. *Duke v. Rolls-Royce Corp.*, No. 3:05CV538-W, 2007 WL 674310, at *2 & n.2 (W.D.N.C., Feb. 28, 2007); *accord Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997) (observing that majority of courts have concluded it is appropriate to stay preliminary pretrial proceedings while motion to transfer and consolidate is pending).

6.

In the interest of judicial economy and to avoid unnecessarily initiating one discovery process only to have a second court adopt a different format, Defendants request that this Court stay these proceedings pending a ruling on Defendants' Joint Motion to Transfer Venue. As Plaintiff has existed for little more than six months, no prejudice can possibly arise from a short stay of this litigation while the Court considers the venue transfer motion. *See Enplanar*, 11 F.3d at 1291. Defendants have not filed this Motion to cause unreasonable delay in resolving Plaintiff's claims, but have done so solely in the interest of justice and to avoid unnecessary duplication.

WHEREFORE, PREMISES CONSIDERED, Defendants request this Court to stay all proceedings, including postponement of the Case Management Conference and entry of a scheduling

3

order, pending a ruling on Defendants' Joint Motion to Transfer Venue. Defendants ask for any other relief appropriate under the circumstances.

THIS, the 2nd day of August, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.

*/s/ J. Cal Mayo, Jr.*
J. CAL MAYO, JR. (MB No. 8492)
POPE S. MALLETTE (MB No. 9836)
VITO J. DEBARI (Admitted *Pro Hac Vice*)
*ITS ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Telephone:    (662) 236-0055
Facsimile:    (662) 236-0035

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 715-9249
Facsimile:    (212) 715-8000

XM SATELLITE RADIO INC.

*/s/ LeRoy D. Percy*
LEROY D. PERCY (MB No. 10454)
*ONE OF ITS ATTORNEYS*

OF COUNSEL:

TOLLISON LAW FIRM, P.A.
100 Courthouse Square
Post Office Box 1216
Oxford, Mississippi 38655
Telephone:    (662) 234-7070
Facsimile:    (662) 234-7095

4

# CERTIFICATE OF SERVICE

I, J. Cal Mayo, Jr., one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

Joseph C. Langston, Esq.
jlangston@langstonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

William Monroe Quin, II, Esq.
wquin@langstonlaw.com

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

*Attorneys for Plaintiff*

Alan D. Albright, Esq.
albright@fr.com

Conor M. Civins, Esq.
civins@fr.com

Ruffin B. Cordell, Esq.
cordell@fr.com

J. Scott Denko, Esq.
denko@fr.com

Christopher O. Green, Esq.
cgreen@fr.com

LeRoy Davis Percy, Esq.
roy@tollisonlaw.com

*Attorneys for Defendant XM*

THIS, the 2nd day of August, 2007.

  /s/ J. Cal Mayo, Jr.
J. CAL MAYO, JR.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                          PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                                      NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                         DEFENDANTS

## NOTICE OF ENDORSEMENT

PLEASE TAKE NOTICE that the undersigned LeRoy D. Percy, attorney of record for

Defendant XM Satellite Radio Inc., authorized the placement of his electronic signature on the

following document(s) filed using the ECF system by counsel for Defendant Sirius Satellite Radio

Inc.:

1.      Defendants' Joint Motion to Stay Proceedings Pending Ruling on Defendants' Joint
        Motion to Transfer Venue [doc. 34].

Respectfully submitted,

/s/ LeRoy D. Percy
LeRoy D. Percy, MSB #10454
TOLLISON LAW FIRM, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Tel: (662) 234-7070
Fax: (662) 234-7095
roy@tollisonlaw.com

<u>CERTIFICATE OF SERVICE</u>

I, LeRoy D. Percy, hereby certify that I have this day electronically filed the above and foregoing document with the Clerk of Court using the ECF system, which provided notification to the following persons:

J. Kirkham Povall
jkpovall@bellsouth.net

J. Cal Mayo, Jr.
cmayo@mayomallette.com

S. Todd Jeffreys
stjeffreys@bellsouth.net

Pope S. Mallette
pmallette@mayomallette.com

David Zachary Scruggs
zachscruggs@scruggsfirm.com

Paul B. Watkins, Jr.
pwatkins@mayomallette.com

Richard F. Scruggs
dickscruggs@scruggsfirm.com

Vito J. DeBari
vdebari@kramerlevin.com

David Wayne Shelton
davidshelton@scruggsfirm.com

Joseph C. Langston
jlangston@langstonlaw.com

William Monroe Quin, II
wquin@langstonlaw.com

This the 2nd day of August, 2007.

/s/ *LeRoy D. Percy*
LEROY D. PERCY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC                                                                  PLAINTIFF

VS.                                                       CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC. and
SIRIUS SATELLITE RADIO, INC.                                          DEFENDANTS

<u>**ORDER**</u>

Before the Court is Defendants' Joint Motion to Stay Proceedings Pending Ruling on

Defendants' Joint Motion to Transfer Venue [doc.34]. The Court, having duly considered the

motion and record of this case, is of the opinion that it should be granted.

**THEREFORE, IT IS ORDERED** that the motion is **GRANTED**, and all proceedings

herein, including the case management conference, are **STAYED** pending the Court's decision

on Defendant's Motion to Transfer Venue. The parties shall notify the undersigned within ten

(10) days of the ruling if the Motion to Transfer Venue is denied.

**SO ORDERED** this, the 6th day of August, 2007.

**/s/ Eugene M. Bogen**
**U. S. MAGISTRATE JUDGE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

SURFER INTERNET BROADCASTING                                    PLAINTIFF
OF MISSISSIPPI, LLC

V.                                                       CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., and                                  DEFENDANTS
SIRIUS SATELLITE RADIO, INC.

## DEFENDANTS' JOINT SUPPLEMENTAL BRIEF
## IN SUPPORT OF THEIR JOINT MOTION TO TRANSFER VENUE

Defendants XM Satellite Radio Inc. and Sirius Satellite Radio Inc. ("Defendants") submit

this Supplemental Brief in support of their Joint Motion to Transfer Venue (filed April 20, 2007).

In support, Defendants state the following:

This is a patent infringement action.  Plaintiff Surfer Internet Broadcasting of Mississippi,

LLC ("Plaintiff"), asserts that Defendants have infringed, induced infringement of and contributed

to infringement of U.S. Patent No. 6,766,376 ("the '376 patent") by providing Internet radio services

and maintaining an Internet radio website.  Defendants deny infringement of the '376 patent and

assert that the patent is invalid.

In response to the Complaint, Defendants filed their Joint Motion to Transfer Venue.  As

stated in that Motion and supporting papers, this matter has virtually no connection with this forum

beyond the formation of Plaintiff as a Mississippi entity a week before initiation of this litigation.

Today, United States District Judge W. Allen Pepper, Jr., rendered his Memorandum Opinion

and entered an Order transferring to the District of New Jersey that certain matter pending in this

Court and styled, "Greenville Communications, LLC v. Verizon Communications, Inc., et al.",

bearing civil action number 4:07CV66-P-B. Judge Pepper concluded that transfer was appropriate

for the same reasons that Defendants have sought transfer in the instant matter.  For the Court's convenience, a copy of Judge Pepper's Memorandum Opinion is attached as Exhibit "A" to this Supplemental Brief.

In conclusion, Defendants request this Court to transfer this matter to the United States District Court for the Southern District of New York.  Defendants ask for any other relief appropriate under the circumstances.

THIS, the 27th day of August, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.

_/s/ J. Cal Mayo, Jr._____
J. CAL MAYO, JR. (MB No. 8492)
POPE S. MALLETTE (MB No. 9836)
VITO J. DEBARI (Admitted *Pro Hac Vice*)
*ITS ATTORNEYS*

OF COUNSEL:
MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi  38655
Telephone:     (662) 236-0055

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-9249

XM SATELLITE RADIO INC.

_/s/ LeRoy D. Percy_____
LEROY D. PERCY (MB No. 10454)
*ONE OF ITS ATTORNEYS*

OF COUNSEL:
TOLLISON LAW FIRM, P.A.
100 Courthouse Square
Post Office Box 1216
Oxford, Mississippi  38655
Telephone:     (662) 234-7070

**CERTIFICATE OF SERVICE**

I, J. Cal Mayo, Jr., one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

Joseph C. Langston, Esq.
jlangston@langstonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

William Monroe Quin, II, Esq.
wquin@langstonlaw.com

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

*Attorneys for Plaintiff*

Alan D. Albright, Esq.
albright@fr.com

Conor M. Civins, Esq.
civins@fr.com

Ruffin B. Cordell, Esq.
cordell@fr.com

J. Scott Denko, Esq.
denko@fr.com

Christopher O. Green, Esq.
cgreen@fr.com

LeRoy Davis Percy, Esq.
roy@tollisonlaw.com

*Attorneys for Defendant XM*

THIS, the 27th day of August, 2007.

_/s/ J. Cal Mayo, Jr._____
J. CAL MAYO, JR.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

GREENVILLE COMMUNICATIONS, LLC,                    PLAINTIFF,

VS.                                    CIVIL ACTION NO. 4:07CV66-P-B

VERIZON COMMUNICATIONS, INC., ET AL.,                 DEFENDANTS.

### MEMORANDUM OPINION

This matter comes before the court upon Defendants' Joint Motion to Transfer Venue to the District of New Jersey [61]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

The inventors of the patents that are the subject of this patent infringement suit, Mark Gregorek and Jeffery Dillow, are residents of New Jersey. The inventors initially assigned the patents to Quantum Systems, Inc., a New Jersey corporation headquartered in Ramsey, New Jersey. After a merger between Quantum Systems and eClips, a Delaware corporation headquartered in Sommerset, New Jersey, the patents were assigned to eClips who later assigned the patents to Marshall Communications, a Texas limited liability company headquartered in Marshall, Texas. Marshall Communications' sole owner and managing member is eClips. Cliff Radziewicz, the President of Marshall Communications, is a resident of New Jersey and is also the President, Secretary, and Treasurer of eClips, Inc. in New Jersey.

Greenville Communications was formed as a limited liability company in Mississippi on March 28, 2007. Nine days later, on April 6, 2007, Marshall Communications assigned the subject patents to Greenville Communications. Nineteen days later, on April 25, 2007, Greenville

1

Exhibit "A"

Communications filed this suit.

New Jersey-based eClips owns Greenville Communications. Although the plaintiff avers that its principal place of business is in Greenville, Mississippi, it is undisputed that they are not a corporation licensed to do business in Mississippi nor does Greenville Communications allege to conduct any active business in Greenville.

Defendants Verizon Wireless is headquartered in Basking Ridge, New Jersey. Defendant T-Mobile is headquartered in Bellevue, Washington. Defendant AT&T Mobility is headquartered in Atlanta, Georgia.

The defendants filed the instant motion to transfer this action to the U.S. District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

## II. DISCUSSION

### A. Standards for Inter-District Transfer

Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The Fifth Circuit has advised that "the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 101, 203 (5th Cir. 2004). It is undisputed that the instant action could have been properly filed in the District of New Jersey. Thus, the next steps are to determine whether "the convenience of the parties and witness" and "the interests of justice" weigh in favor of transfer.

"The determination of 'convenience' turns on a number of private and public interest factors,

2

none of which are given dispositive weight." *Id.*

"The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*

"The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

"[T]he convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *Id.* at 206.

The Fifth Circuit has held that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987).

**B. Convenience of the Parties**

**1. The Private Concerns**

a. Relative Ease of Access to Sources of Proof

The court concludes that the the relative ease of access to sources of proof factor weighs in favor of the defendants. The plaintiff seeks damages for alleged patent infringement during the last six years. Greenville Communications has only owned the subject patents for less than three weeks

3

of this six-year period, whereas eClips, a New Jersey corporation, has controlled the subject patents for the remainder of the period. Furthermore, eClips also owns Greenville Communications. The plaintiff has not identified any key witnesses who reside in the Northern District of Mississippi that will testify at trial. The defendants, however, point to the two inventors of the patents, Verizon Wireless employees, and eClips employees, all of whom reside in New Jersey, as well as the attorney who prosecuted the subject patents who resides in Pennsylvania.

With regard to documentary evidence, the plaintiff alleges that it has some unidentified documents in Greenville, but it does not dispute that the lion's share of relevant documents are located outside of Mississippi and a significant number of them are located in or near New Jersey.

### b. Availability of Compulsory Process to Secure Attendance of Witnesses

Although the plaintiff avers that the two New Jersey inventors and the Pennsylvania patent prosecuting attorney are willing to voluntarily testify in the Northern District of Mississippi, it is undisputed that there are no key witnesses identified by either party that are within the subpoena power of this court.

### c. Cost of Attendance for Willing Witnesses

Given the majority of potential key witnesses are located closer to the District of New Jersey – especially the owner of eClips, Cliff Radziewicz, who owns Greenville Communications; the inventors of the patent; and the employees of at least one defendant, Verizon – and no key witnesses have been alleged to reside in the Northern District of Mississippi, this factor weighs in favor of transfer.

4

**2. Public Concerns**

a. Administrative Difficulties Flowing from Court Congestion

According to the Judicial Caseload Profile Reports available on the U.S. Courts website, the average caseload for the three active District Judges (one of whom went on Senior Status in June 2007) in 2006 was 506 compared to an average of 403 pending cases for a total of seventeen District Judges in the District of New Jersey. The court concludes that this factor weighs in favor of transfer.

b. Local Interests

The plaintiffs allege that Mississippi has a local interest in this matter since millions of cell phones currently infringing upon the plaintiff's patents are sold in Mississippi and Greenville Communications is a Mississippi corporation. However, the defendants are correct that Greenville Communications is not a corporation registered to do business in Mississippi, but rather is a limited liability company that appears to do no business in Mississippi other than having a small office in Greenville, Mississippi staffed with no one employed by Greenville Communications. The plaintiff's argument regarding the millions of cell phones sold in Mississippi applies with equal force to the rest of the country. The court concludes that this factor weighs in favor of transfer.

c. Familiarity with the Forum with the Law that Will Govern the Case and the Potential for Conflict of Laws

The factors of familiarity of the forum with the law governing the case and the potential conflict of laws do not apply in this instance given that it is undisputed that federal patent law will govern the plaintiff's patent infringement claims. These claims can be dealt with just as easily in the District of New Jersey as in the Northern District of Mississippi.

5

### C. Interest of Justice

In addition to the "convenience of the parties," the text of § 1404(a) states that the court can also consider the "interest of justice" when deciding upon a motion to transfer a case to another district. The court is convinced that the defendants have adequately demonstrated that the sole purpose for the plaintiff's formation less than three weeks prior to the filing of this action was an attempt to select a potentially favorable forum. This choice, while given some merit, is far outweighed by the remaining standards governing inter-district transfer and is overcome by the other private and public interest factors which clearly point towards trial in the alternative forum. In other words, it is more likely than not that eClips, the New Jersey owner of Greenville Communications who owns the subject patent, formed Greenville Communications, LLC simply to avoid venue in New Jersey.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the presumption in favor of the plaintiff's choice of forum has been substantially overcome by the private and public "convenience of the parties" factors as well as the "interest of justice" factor regarding transfer of this case. These factors clearly weigh in favor of the more appropriate forum of the United States District Court for the District of New Jersey. Therefore, the defendants' motion to transfer should be granted. Accordingly, an Order shall issue forthwith,

**THIS DAY** of August 27, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET                                      PLAINTIFF
BROADCASTING OF
MISSISSIPPI, LLC

VS.                                              NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC., ET AL.                     DEFENDANTS

## NOTICE OF ENDORSEMENT

PLEASE TAKE NOTICE that the undersigned LeRoy D. Percy, attorney of record for

Defendant XM Satellite Radio Inc., authorized the placement of his electronic signature on the

following document(s) filed using the ECF system by counsel for Defendant Sirius Satellite Radio

Inc.:

1.      Defendants' Joint Supplemental Brief in Support of Their Joint Motion to Transfer
        Venue [doc. 37].

Respectfully submitted,

/s/ LeRoy D. Percy
LeRoy D. Percy, MSB #10454
TOLLISON LAW FIRM, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Tel: (662) 234-7070
Fax: (662) 234-7095
roy@tollisonlaw.com

<u>CERTIFICATE OF SERVICE</u>

I, LeRoy D. Percy, hereby certify that I have this day electronically filed the above and foregoing document with the Clerk of Court using the ECF system, which provided notification to the following persons:

J. Kirkham Povall
jkpovall@bellsouth.net

J. Cal Mayo, Jr.
cmayo@mayomallette.com

S. Todd Jeffreys
stjeffreys@bellsouth.net

Pope S. Mallette
pmallette@mayomallette.com

David Zachary Scruggs
zachscruggs@scruggsfirm.com

Paul B. Watkins, Jr.
pwatkins@mayomallette.com

Richard F. Scruggs
dickscruggs@scruggsfirm.com

Vito J. DeBari
vdebari@kramerlevin.com

David Wayne Shelton
davidshelton@scruggsfirm.com

Joseph C. Langston
jlangston@langstonlaw.com

William Monroe Quin, II
wquin@langstonlaw.com

This the 27th day of August, 2007.

/s/ LeRoy D. Percy
LEROY D. PERCY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**SURFER INTERNET BROADCASTING**
**OF MISSISSIPPI, LLC**                                   **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO. 4:07cv34-M-B**

**XM SATELLITE RADIO, INC. and**
**SIRIUS SATELLITE RADIO, INC.**                           **DEFENDANTS**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' JOINT SUPPLEMENTAL BRIEF

Defendants, **XM SATELLITE RADIO, INC.** and **SIRIUS SATELLITE RADIO, INC.** ("Defendants") filed a Joint Supplemental Brief in Support of Their Joint Motion to Transfer Venue on August 27, 2007. Defendants' filing attached a recent opinion from *Greenville Communications v. Verizon Communications, Inc.* Plaintiff files this brief response to Defendants' Joint Supplemental Brief.

Plaintiff, **SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC** ("Surfer") has patented technology that is currently being infringed upon by Defendants in the Northern District of Mississippi. In *Greenville Communications*, the Court stated that the plaintiff was "not a corporation licensed to do business in Mississippi." However, in the present case, Surfer is a Mississippi LLC registered with the Mississippi Secretary of State's office and is in good standing. Surfer is an active business and Defendants have no evidence to the contrary. Surfer maintains its principle office in Greenville and the relevant patent documents are located there. Additionally, the timing of Surfer's formation is irrelevant to a transfer analysis as a matter of law.

Furthermore, as the *Greenville Communications* defendants highlighted in their transfer motion, the *Greenville Communications* plaintiff has significant contacts to New Jersey where that case was transferred. However, in this case, Surfer has no contacts with New York, which is the Defendants' requested transferee jurisdiction.

The Northern District of Mississippi is a proper venue. There is no dispute that Defendants conduct and sell their services in the Northern District of Mississippi. Moreover, the Defendants have infringed and are infringing the patent-in-suit in this District. Defendants' limited convenience arguments ignore the realities of modern discovery and have already been rejected by this Court in *Haas Outdoors, Inc. v. Novelty, Inc.* 2006 U.S. Dist. LEXIS 22727 (N.D. Miss. April 24, 2006).

In summary, Plaintiffs' choice of forum carries the greatest weight. It is undisputed that the Northern District of Mississippi is a proper venue for this case. The Plaintiff has chosen the Northern District of Mississippi for its forum, and that selection is entitled to substantial deference. The public and private interests favor the Northern District of Mississippi and do not support transfer, and Surfer reiterates its request that the Court deny Defendants' motion to transfer venue.

**RESPECTFULLY SUBMITTED** on this 6th day of September, 2007.

SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC, Plaintiff


By:    /s/S. Todd Jeffreys
**S. TODD JEFFREYS**
State Bar No. 100042
E-mail: stjeffreys@bellsouth.net
**POVALL & JEFFREYS, P.A.**
215 North Pearman Avenue
P. O. Drawer 1199
Cleveland, Mississippi 38732
Telephone: (662) 843-9948
Facsimile: (662) 842-9957

**2**

**OF COUNSEL:**

John F. Ward, Esq.
E-mail: wardj@wardolivo.com
John W. Olivo, Jr., Esq.
E-mail: olivoj@wardolivo.com
**WARD & OLIVO**
708 Third Avenue
New York, New York 10017
Telephone:    (212) 697-6262
Facsimile:    (212) 972-5866

Leslie D. Ware, Esq.
E-mail: lesware@airmail.net
**MONTS & WARE, L.L.P.**
1701 North Market Street, Suite 330
Dallas, Texas 75202
Telephone:    (212) 744-5000
Facsimile:    (212) 744-5013

Mike McKool, Jr., Esq.
E-mail: mmckool@mckoolsmith.com
Sam Baxter, Esq.
E-mail: sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 978-4000
Facsimile:    (214) 978-4044

Richard F. Scruggs, Esq.
State Bar No. 6582
E-mail: dickscruggs@scruggsfirm.com
David Zachary Scruggs, Esq.
State Bar No. 100011
E-mail: zachscruggs@scruggsfirm.com
David Shelton, Esq.
State Bar No. 99675
E-mail: davidshelton@scruggsfirm.com
**SCRUGGS LAW FIRM, P.A.**
120A Courthouse Square
P. O. Box 1136
Oxford, Mississippi 38655
Telephone:    (662) 281-1212
Facsimile:    (662) 281-1312

William M. Quinn II, Esq.
**THE LANGSTON LAW FIRM, P.A.**
100 S. Main Street
Booneville,  MS   38829
Telephone:    (662) 728-3138
Facsimile:    (662) 728-1992

**ATTORNEYS FOR PLAINTIFF,**
**SURFER INTERNET BROADCASTING**
**OF MISSISSIPPI, LLC**

3

## CERTIFICATE OF SERVICE

I, **S. TODD JEFFREYS**, attorney for Plaintiff, do hereby certify that I have this day

electronically filed the foregoing *Plaintiff's Response in Opposition to Defendants' Joint*

*Supplemental Brief* with the Clerk of the Court using the ECF system which sent notification of

such filing to the following:

**LeRoy Davis Percy**
TOLLISON LAW FIRM, P.A.
P. O. Box 1216
Oxford, MS 38655-1216
Email: roy@tollisonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan D. Albright**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: albright@fr.com
*ATTORNEY TO BE NOTICED*

**Christopher O. Green**
FISH & RICHARDSON PC - Atlanta
1180 Peachtree Street N.E., 21st Floor
Atlanta, GA 30309
Email: cgreen@fr.com
*ATTORNEY TO BE NOTICED*

**Conor M. Civins**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: civins@fr.com
*ATTORNEY TO BE NOTICED*

**J. Scott Denko**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: denko@fr.com
*ATTORNEY TO BE NOTICED*
**Ruffin B. Cordell**
FISH & RICHARDSON PC - DC
1425 K Street NW, 11th Floor
Washington, DC 20005

Email: cordell@fr.com
*ATTORNEY TO BE NOTICED*

**J. Cal Mayo, Jr.**
MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, MS 38655
Email: cmayo@mayomallette.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Bowie Watkins**
MAYO MALLETTE, PLLC
P.O. Box 1456
Oxford, MS 38655
Email: pwatkins@mayomallette.com
*ATTORNEY TO BE NOTICED*

**Pope S. Mallette**
MAYO MALLETTE, PLLC
P.O. Box 1456
Oxford, MS 38655
Email: pmallette@mayomallette.com
*ATTORNEY TO BE NOTICED*

**Vito J. DeBari**
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
*ATTORNEY TO BE NOTICED*

**SO CERTIFIED** on this the 6th day  of September, 2007.


s/S. Todd Jeffreys
**S. TODD JEFFREYS**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET BROADCASTING                                    Plaintiff,
OF MISSISSIPPI, LLC,

v.                                              Civil Action No. 4:07cv34-M-B

XM SATELLITE RADIO INC., and                                   Defendants.
SIRIUS SATELLITE RADIO INC.,

## MOTION TO WITHDRAW AS COUNSEL

Movants, The Scruggs Law Firm and all partners and employee attorneys who have

entered an appearance herein, respectfully move to withdraw as co-counsel of record for the

Plaintiffs, and in support thereof would show the following:

1.    Plaintiffs are presently represented by **WARD & OLIVO, POVALL &**

**JEFFREYS, P.A., MONTS & WARE, L.L.P., McKOOL SMITH, P.C.,** and **LANGSTON**

**LAW FIRM** who will continue to serve as counsel for Plaintiffs.

2.    The Scruggs Law Firm wishes to withdraw based on MRPC Rules 1.16(b)(3),

1.16(b)(5), and 1.16(b)(6), which state in part that "a lawyer may withdraw from representing a

client if … good cause for withdrawal exists."

3.    Other attorneys involved in this cause will continue to represent the Plaintiffs in

regards to their claims and are, or will be, in receipt of all Plaintiffs' files and such withdrawal

will not hinder nor harm the Plaintiffs' or Defendants' positions.

WHEREFORE, PREMISES CONSIDERED, The Scruggs Law Firm and all partners and

employee attorneys who have entered an appearance herein, move for an Order granting

Movants' motion for withdrawal of representation as co-counsel for Plaintiffs herein, and

providing that Movants are relieved of any further responsibility associated with the

representation of this party in this case. Movants request such further general or specific relief to

which they may be entitled.

Respectfully submitted, this the 19th day of December, 2007.

THE SCRUGGS LAW FIRM, P.A.
RICHARD F. SCRUGGS
DAVID ZACHARY SCRUGGS
DAVID W. SHELTON

/s/ Richard F. Scruggs
RICHARD F. SCRUGGS (MSB No. 6582)

/s/ Zach Scruggs
DAVID ZACHARY SCRUGGS (MSB No. 100011)

/s/ David W. Shelton
DAVID W. SHELTON (MSB No. 99675)

THE SCRUGGS LAW FIRM, P.A.
Richard F. Scruggs, MSB No. 6582
David Zachary Scruggs, MSB No. 100011
David W. Shelton, MSB No. 99675
120-A Courthouse Square P.O. Box 1136
Oxford, MS 38655
Telephone: (662)281-1212
Facsimile: (662)281-1312

**OF COUNSEL:**

John F. Ward, Esq.
E-mail: wardj@wardolivo.com
John W. Olivo, Jr., Esq.
E-mail: olivoj@wardolivo.com
**WARD & OLIVO**
708 Third Avenue
New York, New York 10017
Telephone:    (212) 697-6262
Facsimile:    (212) 972-5866

S. Todd Jeffreys, Esq/
State Bar No. 100042
E-mail: stjeffreys@bellsouth.net
**POVALL & JEFFREYS, P.A.**
215 North Pearman Avenue
P.O. Drawer 1199
Cleveland, Mississippi 38732
Telephone:    (662) 843-9948
Facsimile:    (662) 842-9957

Leslie D. Ware, Esq.
E-mail: lesware@airmail.net
**MONTS & WARE, L.L.P.**
1701 North Market Street, Suite 330
Dallas, Texas 75202
Telephone:    (214) 744-5000
Facsimile:    (214) 744-5013

Joseph C. Langston, Esq.
E-mail: jlangston@langstonlaw.com
William Monroe Quin, II, Esq.
E-mail: wquin@langstonlaw.com
**LANGSTON LAW FIRM**
PO Box 787
Booneville, MS 38829
Telephone:    (662) 728-3138
Facsimile:    (662) 728-1992

Mike McKool, Jr., Esq.
E-mail: mmckool@mckoolsmith.com
Sam Baxter, Esq.
E-mail: sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 978-4000
Facsimile:    (214) 978-4044

**ATTORNEYS FOR PLAINTIFF,**
**SURFER INTERNET BROADCASTING**
**OF MISSISSIPPI, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system sent notification of such filing to the following counsel of record:

**LeRoy Davis Percy**
TOLLISON LAW FIRM, P.A.
P. O. Box 1216
Oxford, MS 38655-1216
Email: roy@tollisonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan D. Albright**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: albright@fr.com
*ATTORNEY TO BE NOTICED*

**Christopher O. Green**
FISH & RICHARDSON PC - Atlanta
1180 Peachtree Street N.E., 21st Floor
Atlanta, GA 30309
Email: cgreen@fr.com
*ATTORNEY TO BE NOTICED*

**Conor M. Civins**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: civins@fr.com
*ATTORNEY TO BE NOTICED*

**J. Scott Denko**
FISH & RICHARDSON PC - Austin
111 Congress Avenue, Suite 810
Austin, TX 78701
Email: denko@fr.com
*ATTORNEY TO BE NOTICED*

**Ruffin B. Cordell**
FISH & RICHARDSON PC - DC
1425 K Street NW, 11th Floor
Washington, DC 20005
Email: cordell@fr.com
*ATTORNEY TO BE NOTICED*

**J. Cal Mayo, Jr.**
MAYO MALLETTE PLLC
428 North Lamar Boulevard
Post Office Box 1456
Oxford, MS 38655
Email: cmayo@mayomallette.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Bowie Watkins**
MAYO MALLETTE, PLLC
P.O. Box 1456
Oxford, MS 38655
Email: pwatkins@mayomallette.com
*ATTORNEY TO BE NOTICED*

**Pope S. Mallette**
MAYO MALLETTE, PLLC
P.O. Box 1456
Oxford, MS 38655
Email: pmallette@mayomallette.com
*ATTORNEY TO BE NOTICED*

**Vito J. DeBari**
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
*ATTORNEY TO BE NOTICED*

This the 19th day of December, 2007.

/s/ Richard F. Scruggs
RICHARD F. SCRUGGS (MSB No. 6582)

/s/ Zach Scruggs
DAVID ZACHARY SCRUGGS (MSB No. 100011)

/s/ David W. Shelton
DAVID W. SHELTON (MSB No. 99675)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**SURFER INTERNET BROADCASTING**
**OF MISSISSIPPI, LLC**                                                                **PLAINTIFF**

**VS.**                                                      **CIVIL ACTION NO. 4:07cv34-M-B**

**XM SATELLITE RADIO, INC. and**
**SIRIUS SATELLITE RADIO, INC.**                                         **DEFENDANTS**

### ORDER

    **BEFORE THE COURT** is the Motion of counsel for Plaintiffs, The Scruggs Law Firm,

for leave to withdraw as counsel.  For good cause shown, the Motion is hereby **GRANTED**; and

Richard F. Scruggs, David Zachary Scruggs, David W. Shelton and The Scruggs Law Firm, P.A.,

are hereby relieved of all responsibility regarding representing Plaintiffs in the above entitled

action.

    **SO ORDERED** this, the 2nd day of January, 2008.


                                **/s/ Eugene M. Bogen**
                                  **U. S. MAGISTRATE JUDGE**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

---

**SURFER INTERNET BROADCASTING**                                    **PLAINTIFF**
**OF MISSISSIPPI, LLC.**

**V.**                                                                                    **CASE NO. 4:07CV034**

**XM SATELLITE RADIO INC., and**
**SIRIUS SATELLITE RADIO INC.**                                       **DEFENDANTS**

---

### <u>ORDER</u>

This cause comes before the court on the defendants' motion to change the venue in this

action from the Northern District of Mississippi to the Southern District of New York.  The

plaintiff has responded in opposition and this court is prepared to rule.

Surfer Internet Broadcasting of Mississippi, LLC ('SIBM"), a Mississippi corporation,

filed this patent infringement suit against XM Satellite Radio, Inc. ("XM") and Sirius Satellite

Radio, Inc. ("Sirius") on February 27, 2007.   XM is a Delaware corporation headquartered in

Washington, D.C., but it also maintains two New York offices.  Sirius is a Delaware corporation

headquartered in New York, New York.  SIBM alleges that Sirius and XM are infringing U.S.

Patent No. 6,766,376 ("376 patent"), which involves streaming video and audio files over the

internet.

It should be noted that SIBM was formed seven days before the institution of this action.

Howard Price, the named inventor, assigned the 376 patent application to SurferNetwork.com,

Inc.  William Grywalski served as co-founder and president of SurferNetwork.com, Inc., and the

company was located in Mount Olive, New Jersey.   While the patent application was still

pending, SN Acquisition, LLC acquired all assets of SurferNetwork.com, Inc., including the 376 patent application. It also assumed the operations of SurferNetwork.com, Inc. William Grywalski was the president of SN Acquisition, which was located in Flanders, New Jersey. After the 376 patent issued, SN Acquisition assigned the patent to WAG Acquisition, LLC, which has the same business address as SN Acquisition and does business as SurferNetwork. William Grywalski is a member of WAG and president of SurferNetwork. SIBM was created on February 20, 2007, and was assigned the 376 patent at some point between February 20, 2007, and the institution of this action on February 27, 2007.

XM and Sirius contend that this action should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) because it is a more convenient forum for parties and witnesses and better serves the interest of justice. SIBM maintains that the defendants seek to transfer this action to New York in order to prolong this matter. 28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In applying the provisions of §1404(a), the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Next, the court should consider the convenience of the parties and witnesses. *Id*. When considering a § 1404(a) motion to transfer, a district court should consider a number of private and public interest factors, none of which are dispositive. *Id*. The private interest factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that

2

make trial of a case easy, expeditious, and inexpensive. *Id.* The public interest factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* The plaintiff's choice of forum is also one of the several factors to be considered under the venue transfer analysis. *See Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987). However, Judge L.T. Senter has pointed out that "little, if any, deference should be given to [the plaintiff's] choice of forum" when the plaintiff engages in "blatant forum shopping." *Fullman by Flanaghan v. AAA Cooper Transp. Co.*, 732 F. Supp. 54, 56 (N.D. Miss. 1990).

As Sirius and XM both maintain New York offices, this suit could have originally been brought in the Southern District of New York. This court now considers the public and private interest factors related to this motion to change venue.

**Private Factors**

<u>Relative Ease of Access to Sources of Proof</u>

Sirius and XM are both Delaware corporations and headquartered in New York and Washington, D.C., respectively. The defendants maintain that virtually all of their witnesses and evidence are located in either Washington, D.C. or New York, or are located substantially closer to the Southern District of New York than the Northern District of Mississippi. "With regard to the convenience of party and non-party witnesses, the defendants must specifically relate the identity of the witnesses and the nature and relative importance of their testimony." *Crawford v. Glenns, Inc.*, 637 F. Supp. 107, 110 (N.D. Miss. 1986), *citing Sommerville v. Major Exploration, Inc.,* 576 F. Supp. 902, 907 (S.D.N.Y. 1983). Although this case is in the early stages of

litigation, the defendants have provided the names of three potential witnesses, all of whom are located in the New York, New Jersey, Pennsylvania and Washington, D.C. areas. Most relevant to this factor is the issue of key witnesses. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000).

Sirius and XM aver that their witnesses will be employees with knowledge regarding the design, function, and/or operation of the products in question. Though an incomplete witness listing, the defendants anticipate calling three specific key witnesses from Sirius: 1) Daniel Eccles - VP, Applications Development - New York, NY; 2) Raymond Lowe - Senior Technical Consultant - Princeton, NJ; and 3) Joseph Zampoline - Information Technology Manager - New York, NY. The defendants also contend that the documents related to this litigation are located at Sirius' New York headquarters or the surrounding metropolitan area or at XM's headquarters in Washington, D.C.

The plaintiff maintains that its documents related to the 376 patent are kept at SIBM's principal place of business in Greenville, MS. However, the defendants note that SIBM was formed merely seven days before the institution of this action and assert that this litigation has no meaningful connection to the State of Mississippi. Prior to SIBM's formation and the assignment of the 376 patent to the company, the 376 patent and patent application were owned by related entities run by William Grywalski based in Budd Lake, New Jersey or Flanders, New Jersey. Budd Lake and Flanders are located less than fifty miles from the Southern District of New York. Mr. Grywalski is a Budd Lake resident. Howard Price, the inventor named on the 376 patent application is a resident of Bethel Park, Pennsylvania, which is approximately 380 miles from the Southern District of New York. Ernest Buff, the attorney who prosecuted the 376

patent, has an office in Bedminster, New Jersey, which is less than fifty miles from the Southern District of New York. The court does keep in mind, however, that the plaintiff has produced affidavits from all three men averring that they are willing to travel to the Northern District of Mississippi to provide testimony in this lawsuit and that such travel would not pose an inconvenience.

Availability of Compulsory Process to Secure the Attendance of Witnesses

Pursuant to Fed. R. Civ. Pro. 45(b)(2)(B), this court has the authority to subpoena out of state witnesses to the Northern District of Mississippi if they are located within one hundred miles of the place specified for trial. While three of the plaintiff's witnesses are willing to voluntarily appear, it seems likely that a majority, if not all, of the witnesses are beyond the subpoena power of this court.

Cost of Attendance for Willing Witnesses

The cost of attending trial would be significantly less expensive for witnesses if litigated in the Southern District of New York. There are no commercial airports located in Oxford, which means that out of state witnesses would not only have to purchase airline tickets, but also arrange for automobile transportation to travel from the nearest airport into Oxford. The Fifth Circuit has noted:

> Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

5

*In re Volkswagen AG*, 371 F.3d at 203.

If this case were litigated in the Southern District of New York, witnesses would be more likely to have the option of traveling to and from New York in a single day, avoiding the need of overnight stays. In addition, many witnesses would be able to drive, thereby reducing or eliminating expenses related to air travel and rental cars.

**Public Factors**

Administrative Difficulties Flowing from Court Congestion

The median time from filing a case to the conclusion of trial in the Northern District of Mississippi is 24 months and for the Southern District of New York it is 25.7 months. This minimal time difference does not cause the court to favor one jurisdiction over the other.

Local Interest in the Matter

Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. *In re Volkswagen AG*, 371 F.3d at 206. (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). XM and Sirius do have customers in Mississippi, and the plaintiff alleges that these sales constitute a part of the alleged infringement and SIBM's damages. They further assert that Mississippi has a significant interest in this matter because SIBM is a Mississippi corporation. The plaintiff's arguments are unconvincing. SIBM only came into existence seven days before the institution of this lawsuit, and does not appear to do substantial business in Mississippi or employ Mississippi residents. Mississippi has a very limited interest in this matter.

Familiarity of the Forum with the Law & Conflict of Laws

Federal law will govern this case and applies equally in the Northern District of

6

Mississippi and the Southern District of New York.  Both parties agree that there is no

application of foreign law in this case and that the potential for conflict of laws does not exist.

     After reviewing the public and private interest factors in this case, the court concludes

that the convenience of the parties and the interests of justice mandate transfer.  The defendant's

motion to change venue [20] is GRANTED.  This case is hereby transferred to the Southern

District of New York.

     This the 24th day of April, 2008.


     **/s/ MICHAEL P. MILLS**
     **CHIEF JUDGE**
     **UNITED STATES DISTRICT COURT**
     **NORTHERN DISTRICT OF MISSISSIPPI**



**UNITED STATES DISTRICT COURT**
OFFICE OF THE CLERK
NORTHERN DISTRICT OF MISSISSIPPI

**DAVID CREWS**
CLERK

**July 15, 2008**

911 JACKSON AVENUE, SUITE 369
OXFORD, MS 38655
TELEPHONE: (662) 234-1971
FACSIMILE: (662) 236-5210
www.msnd.uscourts.gov

301 WEST COMMERCE STREET, SUITE 308
POST OFFICE BOX 704
ABERDEEN, MS 39730
TELEPHONE: (662) 369-4952
FACSIMILE: (662) 369-9569

305 MAIN STREET, SUITE 329
POST OFFICE BOX 190
GREENVILLE, MS 38701
TELEPHONE: (662) 335-1651
FACSIMILE: (662) 332-4292

**Via e-mail**

United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:  *Surfer Internet Broadcasting of Mississippi, LLC v. XM Satellite Radio, Inc. et al.*
     ND/MS Case No: 4:07cv34

Dear Clerk:

Pursuant to the attached Order from Chief Judge Michael P. Mills, the above-mentioned case is being transferred to the Southern District of New York.

Enclosed is a certified copy of the docket entries for your reference, however, this case was filed electronically and no hard copies are available. You are being provided with a temporary login and password to expedite the viewing and downloading of the PDF files. The login is **ndca** and the password is **nyvum+62.** This account is specified for read-only and will be active for one month only.

If you have any questions, I may be reached at 662/281-3033.

Sincerely,

DAVID CREWS, CLERK

By: _Renee' Moore_____

Renee' Moore, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

| | |
|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC | PLAINTIFF |
| V. | CIVIL ACTION NO. 4:07cv34-M-B |
| XM SATELLITE RADIO INC., and SIRIUS SATELLITE RADIO INC. | DEFENDANTS |

## <u>JOINT MOTION OF DEFENDANTS TO TRANSFER VENUE</u>

Defendants Sirius Satellite Radio Inc. ("Sirius") and XM Satellite Radio Inc. ("XMSR") file this Motion to Transfer Venue, pursuant to 28 U.S.C. §1404(a), and in support state the following:

1.      Defendants file this motion to transfer to the SDNY, because it is a more convenient forum for the witnesses and parties and better serves the interests of justice.

2.       This action has no meaningful connection to the forum in which it has been filed.

3.      Most of the party and non-party witnesses identified to date, as well as documents likely to be relevant in this action, are located in or near the SDNY.  In fact, Defendants are not aware of any witnesses or documents that are located in Mississippi.

4.      Plaintiff Surfer Internet Broadcasting of Mississippi, LLC ("Surfer"), was formed in Mississippi only seven days prior to the filing of this lawsuit in an attempt to manufacture some connection to the Northern District of Mississippi.  In reality, the individuals who have knowledge of and interest in the patent at issue are located in or near New Jersey.

5.      Transfer to the SDNY will significantly reduce the cost of attendance for the majority of the witnesses who will likely testify in this action.

6.     In addition to the Memorandum Brief filed simultaneously herewith, Defendants submit the Declaration of Vito J. DeBari, which has the following exhibits attached:

Exhibit 1:     U.S. Patent No. 6,766,376;

Exhibit 2:     Mississippi Secretary of State information regarding Surfer Internet Broadcasting of Mississippi, LLC;

Exhibit 3:     ChoicePoint Asset Company's AutoTrack XP National Comprehensive Report for William A. Grywalski;

Exhibit 4:     Web pages from the United States Patent and Trademark Office website indicating the assignment history for U.S. Patent No. 6,766,376;

Exhibit 5:     Report from Netvention Inc. indicating the current corporate information for SurferNetwork;

Exhibit 6:     Dun & Bradstreet (D&B) Comprehensive Report for SurferNetwork.com, Inc.;

Exhibit 7:     Dun & Bradstreet (D&B) Comprehensive Report for SN Acquisitions LLC;

Exhibit 8:     Dun & Bradstreet (D&B) Company Detail D&B Family Tree Finder report for Wag Acquisition LLC;

Exhibit 9:     Web page from the SurferNetwork.com website indicating the contact information and for SurferNetwork;

Exhibit 10:    Web pages from the SurferNetwork.com website describing SurferNetwork's "LightingStream" technology and referring to U.S. Patent No. 6,766,376 patent relating thereto;

Exhibit 11:    Web pages from the SurferNetwork.com website including copies of press releases issued by SurferNetwork, including a press release issued on August 6, 2004 announcing the issuance of U.S. Patent No. 6,766,376 to SurferNetwork;

Exhibit 12:    Current Martindale Hubbell entry for Ernest D. Buff, Esq.;

Exhibit 13:    ChoicePoint Asset Company's AutoTrack XP National Comprehensive Report for Harold E. Price;

2

Exhibit 14:     Plaintiff's Response to Defendant Sirius Satellite Radio, Inc.'s Motion for Enlargement of Time;

Exhibit 15:     Web pages from the Mapquest.com website providing driving directions and distance of 46.06 miles between Budd Lake, New Jersey and 500 Pearl Street, New York, New York;

Exhibit 16:     Web pages from the Mapquest.com website providing driving directions and distance of 377.86 miles between 5949 Pudding Stone Lane, Bethel Park, Pennsylvania and 500 Pearl Street, New York, New York;

Exhibit 17:     Web pages from the Mapquest.com website providing driving directions and distance of 938.73 miles between 5949 Pudding Stone Lane, Bethel Park, Pennsylvania and 305 Main Street, Greenville, Mississippi;

Exhibit 18:     Web pages from the Mapquest.com website providing driving directions and distance of 40.76 miles between 231 Somerville Road, Bedminster, New Jersey and 500 Pearl Street, New York, New York;

Exhibit 19:     Web pages from the Mapquest.com website providing driving directions and distance of 46.56 miles between Flanders, New Jersey and 500 Pearl Street, New York, New York;

Exhibit 20:     Web pages from the Mapquest.com website providing driving directions and distance of 1246.82 miles between the location of this Court at 305 Main Street, Greenville, Mississippi and 500 Pearl Street, New York, New York;

Exhibit 21:     Judicial Caseload Profile for the U.S. District Court for the Northern District of Mississippi; and

Exhibit 22:     Judicial Caseload Profile for the U.S. District Court for the Southern District of New York.

WHEREFORE, PREMISES CONSIDERED, Defendants Sirius Satellite Radio Inc. and XM Satellite Radio Inc. respectfully request that the Court grant this Motion to Transfer Venue and any such other and further relief to which Defendants are justly entitled.

THIS, the 20th day of April, 2007.

Respectfully submitted,

SIRIUS SATELLITE RADIO INC.                    XM SATELLITE RADIO INC.


  */s/ Pope S. Mallette*                           */s/ LeRoy D. Percy*
J. CAL MAYO, JR. (MS Bar No. 8492)              LEROY D. PERCY (MS Bar No. 10454)
POPE S. MALLETTE (MS Bar No. 9836)              *ONE OF ITS ATTORNEYS*
PAUL B. WATKINS, JR. (MS Bar No. 10348)
VITO J. DEBARI (Admitted *Pro Hac Vice*)
*ITS ATTORNEYS*

OF COUNSEL:                                     OF COUNSEL:

MAYO MALLETTE PLLC                              TOLLISON LAW FIRM, P.A.
428 North Lamar Boulevard                       100 Courthouse Square
Post Office Box 1456                            Post Office Box 1216
Oxford, Mississippi  38655                      Oxford, Mississippi  38655
Telephone:     (662) 236-0055                   Telephone:     (662) 234-7070
Facsimile:     (662) 236-0035                   Facsimile:     (662) 234-7095

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-9249
Facsimile:     (212) 715-8000

## CERTIFICATE OF SERVICE

I, Pope S. Mallette, one of the attorneys for Defendant Sirius Satellite Radio Inc., do certify that I have this date electronically filed a true and correct copy of the foregoing document with the Clerk of the Court, utilizing the ECF system, which sent notification to the following persons:

Alan D. Albright, Esq.
Albright@fr.com

Conor M. Civins, Esq.
Civins@fr.com

Ruffin B. Cordell, Esq.
Cordell@fr.com

J. Scott Denko, Esq.
Denko@fr.com

Christopher O. Green, Esq.
Cgreen@fr.com

Steven Todd Jeffreys, Esq.
stjeffreys@bellsouth.net

LeRoy Davis Percy, Esq.
Roy@tollisonlaw.com

John K. Povall, Esq.
jkpovall@bellsouth.net

David Zachary Scruggs, Esq.
zachscruggs@scruggsfirm.com

Richard F. Scruggs, Esq.
dickscruggs@scruggsfirm.com

David Wayne Shelton, Esq.
davidshelton@scruggsfirm.com

THIS, the 20th day of April, 2007.

  _/s/ Pope S. Mallette_
POPE S. MALLETTE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

| | | |
|---|---|---|
| SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 4:07cv34-M-B |
| v. | ) ) | |
| XM SATELLITE RADIO INC., and SIRIUS SATELLITE RADIO INC. | ) ) ) | **DECLARATION OF VITO J. DEBARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE** |
| Defendants. | ) ) | |

VITO J. DEBARI do hereby declare:

I am an attorney-at-law of the State of New York and am a Member of the firm Kramer Levin Naftalis & Frankel LLP, attorneys for Defendant Sirius Satellite Radio Inc. ("Sirius") in this matter. I am admitted to this Court *pro hac vice* for purposes of this action. I make this Declaration In Support Of Defendants' Motion To Transfer Venue. I am one of the principal attorneys representing Sirius in connection with a charge of infringement of U.S. Patent No. 6,766,376 ("the '376 patent"). I make this Declaration of my own knowledge, and, if called upon, could and would testify competently hereto.

1.     Attached hereto as Exhibit 1 is a true and accurate copy U.S. Patent No. 6,766,376.

2.     Attached hereto as Exhibit 2 are true and accurate copies of web pages from the Mississippi Secretary of State website concerning the formation of Surfer Internet Broadcasting of Mississippi, LLC and the Certificate of Formation filed on behalf of Surfer Internet Broadcasting of Mississippi, LLC.

1

3. Attached hereto as Exhibit 3 is a true and accurate copy of ChoicePoint Asset Company's AutoTrack XP National Comprehensive Report for William A. Grywalski indicating that he has a reported residence at 77 Lozier Road, Budd Lake, New Jersey, 07828.

4. Attached hereto as Exhibit 4 is a true and accurate copy of web pages from the United States Patent and Trademark Office website indicating the assignment history for U.S. Patent No. 6,766,376.

5. Attached hereto as Exhibit 5 is a true and accurate copy of a report from Netvention Inc. indicating the current corporate information for SurferNetwork.

6. Attached hereto as Exhibit 6 is a true and accurate copy of a Dun & Bradstreet (D&B) Comprehensive Report for SurferNetwork.com, Inc.

7. Attached hereto as Exhibit 7 is a true and accurate copy of a Dun & Bradstreet (D&B) Comprehensive Report for SN Acquisitions LLC.

8. Attached hereto as Exhibit 8 is a true and accurate copy of a Dun & Bradstreet (D&B) Company Detail D&B Family Tree Finder report for Wag Acquisition LLC.

9. Attached hereto as Exhibit 9 is a true and accurate copy of a web page from the SurferNetwork.com website indicating the contact information and for SurferNetwork, including SurferNetwork's address at 3 Gold Mine Road, Suite 104, Flanders, New Jersey, 07836.

10. Attached hereto as Exhibit 10 is a true and accurate copy of web pages from the SurferNetwork.com website describing SurferNetwork's "LightingStream" technology and referring to U.S. Patent No. 6,766,376 patent relating thereto.

11. Attached hereto as Exhibit 11 is a true and accurate copy of web pages from the SurferNetwork.com website including copies of press releases issued by SurferNetwork,

2

including a press release issued on August 6, 2004 announcing the issuance of U.S. Patent No. 6,766,376 to SurferNetwork..

12.     Attached hereto as Exhibit 12 is a true and accurate copy of the current Martindale Hubbell entry for Ernest D. Buff, Esq., indicating that his law office is located at 231 Somerville Road, Bedminster, New Jersey, 07921.

13.     Attached hereto as Exhibit 13 is a true and accurate copy of ChoicePoint Asset Company's AutoTrack XP National Comprehensive Report for Harold E. Price indicating that he has a reported residence at 5949 Pudding Stone Lane, Bethel Park, Pennsylvania, 15102.

14.     Attached hereto as Exhibit 14 is a true and accurate copy of Plaintiff's Response to Defendant Sirius Satellite Radio, Inc.'s Motion for Enlargement of Time, indicating that Plaintiff has retained as counsel for this case John F. Ward, Esq. of Ward & Olivo, which is located in New York, New York.

15.     Attached hereto as Exhibit 15 is a true and accurate copy of web pages from the Mapquest.com website providing driving directions and distance of 46.06 miles between Budd Lake, New Jersey and 500 Pearl Street, New York, New York, which is where the courthouse for the U.S. District Court for the Southern District of New York is located in New York City.

16.     Attached hereto as Exhibit 16 is a true and accurate copy of web pages from the Mapquest.com website providing driving directions and distance of 377.86 miles between 5949 Pudding Stone Lane, Bethel Park, Pennsylvania and 500 Pearl Street, New York, New York, which is where the courthouse for the U.S. District Court for the Southern District of New York is located in New York City.

17.     Attached hereto as Exhibit 17 is a true and accurate copy of web pages from the Mapquest.com website providing driving directions and distance of 938.73 miles between 5949

3

Pudding Stone Lane, Bethel Park, Pennsylvania and 305 Main Street, Greenville, Mississippi, the location of this Court.

18.    Attached hereto as Exhibit 18 is a true and accurate copy of web pages from the Mapquest.com website providing driving directions and distance of 40.76 miles between 231 Somerville Road, Bedminster, New Jersey and 500 Pearl Street, New York, New York, which is where the courthouse for the U.S. District Court for the Southern District of New York is located in New York City.

19.    Attached hereto as Exhibit 19 is a true and accurate copy of web pages from the Mapquest.com website providing driving directions and distance of 46.56 miles between Flanders, New Jersey and 500 Pearl Street, New York, New York, which is where the courthouse for the U.S. District Court for the Southern District of New York is located in New York City.

20.    Attached hereto as Exhibit 20 is a true and accurate copy of web pages from the Mapquest.com website providing driving directions and distance of 1246.82 miles between the location of this Court at 305 Main Street, Greenville, Mississippi and 500 Pearl Street, New York, New York, which is where the courthouse for the U.S. District Court for the Southern District of New York is located in New York City.

21.    Attached hereto as Exhibit 21 is a true and accurate copy of the Judicial Caseload Profile for the U.S. District Court for the Northern District of Mississippi available from the U.S. Courts website at www.uscourts.gov.

22.    Attached hereto as Exhibit 22 is a true and accurate copy of the Judicial Caseload Profile for the U.S. District Court for the Southern District of New York available from the U.S. Courts website at www.uscourts.gov.

4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 18, 2007

_____

Vito J. DeBari

US006766376B2

(12) **United States Patent**　　(10) Patent No.:　　**US 6,766,376 B2**

Price　　(45) Date of Patent:　　**Jul. 20, 2004**

(54) **STREAMING MEDIA BUFFERING SYSTEM**

(75) Inventor: **Harold Edward Price**, Bethel Park, PA (US)

(73) Assignee: **SN Acquisition, L.L.C,** Flanders, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 524 days.

(21) Appl. No.: **09/819,337**

(22) Filed: **Mar. 28, 2001**

(65) **Prior Publication Data**

US 2002/0143973 A1 Oct. 3, 2002

**Related U.S. Application Data**

(60) Provisional application No. 60/231,997, filed on Sep. 12, 2000.

(51) Int. Cl.[7] .................................................. G06F 15/16
(52) U.S. Cl. ........................ 709/231; 709/203; 710/52
(58) Field of Search ................................. 709/231, 203, 709/217–219, 232, 233, 235; 710/56, 57, 52

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,526,353 A | 6/1996 | Henley et al. | 370/60.1 |
| 5,737,536 A * | 4/1998 | Herrmann et al. | 709/229 |
| 5,793,980 A | 8/1998 | Glaser et al. | 395/200.61 |
| 5,809,239 A * | 9/1998 | Dan et al. | 709/203 |
| 5,822,537 A | 10/1998 | Katseff et al. | 395/200.61 |
| 5,922,048 A | 7/1999 | Emura | 709/219 |
| 5,923,655 A | 7/1999 | Veschi et al. | 370/394 |
| 5,999,525 A | 12/1999 | Krishnaswamy et al. | 370/352 |
| 6,002,720 A | 12/1999 | Yurt et al. | 375/240 |
| 6,014,693 A | 1/2000 | Ito et al. | 709/219 |
| 6,014,694 A | 1/2000 | Aharoni et al. | 709/219 |
| 6,014,706 A | 1/2000 | Cannon et al. | 709/231 |
| 6,029,194 A | 2/2000 | Tilt | 709/219 |
| 6,047,317 A | 4/2000 | Bisdikian et al. | 709/217 |
| 6,047,356 A * | 4/2000 | Anderson et al. | 711/129 |
| 6,057,832 A | 5/2000 | Lev et al. | 345/327 |
| 6,061,731 A | 5/2000 | Blakeslee | 709/231 |
| 6,061,732 A | 5/2000 | Korst et al. | 709/231 |
| 6,065,050 A | 5/2000 | DeMoney | 709/219 |
| 6,085,221 A | 7/2000 | Graf | 709/202 |
| 6,405,256 B1 * | 6/2002 | Lin et al. | 709/231 |

* cited by examiner

*Primary Examiner*—Mehmet B. Geckil
(74) *Attorney, Agent, or Firm*—Ernest D. Buff and Associates, LLC; Ernest D. Buff; Gordon E. Fish

(57) **ABSTRACT**

Streaming media, such as audio or video files, is sent via the Internet. The media are immediately played on a user's computer. Audio/video data is transmitted from the server more rapidly than it is played out by the user system. The audio/video data in the user buffer accumulates; and interruptions in playback as well as temporary modem delays are avoided.

**6 Claims, 3 Drawing Sheets**



**EXHIBIT 1**

# Fig. 1



# Fig. 2



# Fig. 3



generate or receive time-sequenced data elements

32

sequentially load predetermined number of data elements into server buffer

34

sequentially send group of data elements via Internet to user computer

36

load sent data elements to user buffer of user computer

38

user computer immediately plays the received portion of the media

40

maintain a record of the last data element sent and checking whether the buffer is full

42

**1**

## STREAMING MEDIA BUFFERING SYSTEM

This application claim priority under 35 U.S.C. 119(e) of provisional application 60/231,997 filed Sep. 12, 2000.

### BACKGROUND OF THE INVENTION

#### 1. Field of the Invention

The present invention relates to multimedia computer communication systems; and more particularly, to a buffering system for streaming media, such as audio/video, on the Internet.

#### 2. Description of the Prior Art

Prior to the development of Internet streaming media technologies, audio and video were formatted into files, which users needed to download to their computer before the files could be heard or viewed. Real time, continuous media, as from a radio station, was not suitable for this arrangement in that a file of finite size must be created so it could be downloaded. The advent of streaming media technologies allowed users to listen or view the files as they were being downloaded, and allowed users to "tune-in" to a continuous media broadcast, or "stream," such as from a radio station.

Since audio and video media must play out over a period of time it is more appropriate to think of bandwidth requirements than file size. The bandwidth requirement of an audio or video media refers to the data rate in bits per second that must be transmitted and received in order to listen or view the material uninterrupted. Transmitting the audio or video material over a connection slower than the bandwidth requirement results in unsatisfactory viewing or listening, if viewing or listening is possible at all. The connection available to most Internet users is by dial-up modem, which has a maximum receive data rate of 56,000 bits per second. Most audio and video available on the Internet has been compressed to be listenable or viewable within the 56,000 bits per second modem bandwidth. Requirements for achieving adequate audio and video over the Internet generally consume a considerable portion of the available bandwidth.

Internet connection quality can vary rapidly over time, with two primary factors responsible for degradation of the instantaneous bandwidth actually available to the user. These factors are the quality of the user's modem connection over telephone lines, which can have periods of interference causing reduced available bandwidth, and momentary Internet congestion at various points along the route over which the user's data flows. Each of these factors can cause delays and interruptions in the transmission of data to the user. Internet data communications devices such as routers are designed to drop packets "packets" if they get overloaded. For material that is not time sensitive, these dropped packets will usually be resent, and the user will eventually be presented with the material. However, since streaming media is time sensitive, dropped packets can have a significant impact on the receipt and playback of an audio or video stream. These degradations in the receipt of Internet data are very common, and prevent most users from being able to listen to or view streaming media without interruption unless some special provisions have been incorporated into the user's computer software to accommodate data transmission interruptions.

These interruptions are commonly referred to as "dropouts", meaning that the data flow to the user has been interrupted (i.e., the audio "drops out"). Dropouts can be extremely annoying—for example, while listening to music. The current state-of-the-art solution to the problem uses a

**2**

pre-buffering technique to store up enough audio or video data in the user's computer so that it can play the audio or video with a minimum of dropouts. This process requires the user to wait until enough of the media file is buffered in memory before listening or viewing can begin. The media data is delivered by a server computer which has available to it the source of the media data, such as by a connection to a radio station. When the user connects to the server via the Internet, audio/video output at the user's system is delayed while the user's buffer is filled to a predetermined level. Typical pre-buffering wait times range from 10 to 20 seconds or more, determined by the vendor providing the audio or video media. Even with this pre-buffering process, interruptions in playback still occur.

In this process, the user has a software application on the computer commonly called a "media player". Using the features built into the media player, the user starts the audio or video stream, typically by clicking on a "start" button, and waits 10–20 seconds or so before the material starts playing. During this time data is being received from the source and filling the media player's buffer. The audio or video data is delivered from the source at the rate it is to be played out. If, for example, the user is listening to an audio stream encoded to be played-out at 24,000 bits per second, the source sends the audio data at the rate of 24,000 bits per second. Provided that the user waits 10 seconds, and the receipt of the buffering data has not been interrupted, there is enough media data stored in the buffer to play for 10 seconds.

Gaps in the receipt of audio/video data, due to Internet slowdowns, cause the buffer to deplete. Because transmission of audio/video media data to the user takes place at the rate it is played out, the user's buffer level can never be increased or replenished while it is playing. Thus, gaps in the receipt of audio/video media data inexorably cause the buffer level to decrease from its initial level. In time, extended or repeated occurrences of these gaps empty the user's buffer. The audio/video material stops playing, and the buffer must be refilled to its original predetermined level before playing of the media resumes.

By way of illustration in a 10 second pre-buffering scenario, if the data reception stopped the instant that the media started playing, it would play for exactly 10 seconds. Once it starts playing, the media data plays out of the buffer as new media data replenishes the buffer. The incoming data rate equals the rate at which the data is played out of the user's buffer, assuming the receipt of data across the Internet is unimpeded. If there are no interruptions in the receipt of the media data for the duration of the time the user listens to or watches the material, the buffer level remains constant and there will still be 10 seconds of data stored in the media player's buffer when the user stops the player. On the other hand, if the media player encounters interruptions totaling 6 seconds while playing the material, there would only be 4 seconds of media data remaining in the buffer when the user stopped it. If data reception interruptions at any time during the playing exceed 10 seconds, the user's media player buffer becomes exhausted. There is no media data to play, and the audio or video stops—a dropout has occurred. At this point a software mechanism in the media player stops attempting to play any more of the material, and starts the buffering process again. The media player remains silent until the buffer refills, at which time the media player will once again start playing the material.

There are two fundamental types of streaming media: (i) material that originates from a source having a real-time nature, such as a radio or TV broadcast, and (ii) material that

US 6,766,376 B2

originates from a non-real-time source such as from a disk file. An example of non-real-time material might be a piece of music stored as a disk file, or a portion of a broadcast that originally was real-time, perhaps yesterday's TV evening news, and was recorded into a disk file. For purposes of clarity within this document, streaming media of type (i) will be referred to as "broadcast" media, and streaming media of type (ii) will be referred to as "file based" media.

Both streaming media types are handled similarly in conventional systems, and both are handled similarly by the streaming media buffering system of the present invention. The two streaming media types are readily distinguished. Broadcast streaming media has as its source a system or arrangement that by definition can only be transmitted to users as fast as the material is generated; for example, a disk jockey speaking into a microphone. File based media, on the other hand, can be transmitted to users at any data rate, since there is no inherent time element to a file residing on a computer disk. With conventional Internet streaming media systems for streaming media of either type, media data is transmitted from the server to the user at the rate at which it will be played out, regardless of the data rate capabilities of the connection between the server and the user.

Conventional streaming media systems may buffer media data at the server for the purpose of packet assembly/disassembly. Media data may also be buffered at the server to permit programming conveniences such as dealing with chunks of data of a specific size. Server buffering of media data is not used by conventional streaming media systems to mitigate long term Internet performance degradation as described hereinafter.

The sending of audio or video files via a network is known in the art. U.S. Pat. No. 6,029,194 to Tilt describes a media server for the distribution of audio/video over networks, in which retrieved media frames are transferred to a FIFO buffer. A clock rate for a local clock is adjusted according to the fullness of the buffer. The media frames from the buffer are sent in the form of data packets over the networks in response to interrupts generated by the local clock. In this manner, the timing for the media frames is controlled by the user to assure a continuous stream of video during editing. U.S. Pat. No. 6,014,706 to Cannon, et al. discloses an apparatus and method for displaying streamed digital video data on a client computer. The client computer is configured to receive the streamed digital video data from a server computer via a computer network. The streamed digital video data is transmitted from the server computer to the client computer as a stream of video frames. U.S. Pat. No. 6,002,720, to Yurt, et al. discloses a system of distributing video and/or audio information wherein digital signal processing is employed to achieve high rates of data compression. U.S. Pat. No. 5,923,655, to Veschi et al. discloses a system and method for communicating audio/video data in a packet-based computer network wherein transmission of data packets through the computer network requires variable periods of transmission time. U.S. Pat. No. 5,922,048 to Emura discloses a video server apparatus having a stream control section which determines a keyframe readout interval and a keyframe playback interval that satisfy a playback speed designated by a terminal apparatus. Finally, U.S. Pat. No. 6,014,694 to Aharoni, et al. discloses a system and method for adaptively transporting video over networks, including the Internet, wherein the available bandwidth varies with time.

There remains a need in the art for a method and system that afford immediate and uninterrupted listening/viewing of streaming media by the user.

## SUMMARY OF THE INVENTION

The present invention provides a system and method for sending streaming media, such as audio or video files, via the Internet. Immediate playing of the media on a user's computer is afforded while reducing interruptions in playback due to Internet congestion and temporary modem delays due to noisy lines. Nearly instantaneous playback is achieved, while maintaining protection against playback interruption. Delayed starts, heretofore required to provide protection against interruption, are avoided. Data loss due to interruptions in the receipt of media data by the media player can be recovered while the player continues to play out the audio or video material. If the interruptions are so severe as to deplete the user's buffer and stop the play out, the media player will begin to play out again as soon as the media player begins to receive media data without waiting to first build up the buffer.

Generally stated, the invention provides a system for distributing via the Internet streaming media composed of a plurality of time-sequenced data elements. The system has a server connected to the Internet for transmitting the data elements. Associated with the server are a buffer manager and a FIFO buffer for storing at least one of the data elements for transmission. The buffer manager comprises means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the FIFO buffer with a predetermined number of data elements at a constant time-sequenced fill rate; maintaining a pointer into the buffer for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received, said means arranged to maintain the pre-determined number of data elements in the FIFO buffer. At least one user computer is connected to the server via the Internet or other data communications medium.

This invention presumes the existence of a data communications transport mechanism, such as the TCP protocol, for the reliable delivery of data in an ordered sequence from the source of the media data to the server, or from the server to the media player software of the user computer. Thus, the delivery of data in the proper sequence is outside the scope of this invention.

The user computer is associated with a media player software incorporating a user buffer and comprises means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out. As data is played out, the next sequential data elements are received from the server in such a fashion as to approximately maintain the predetermined number of data elements in the user's buffer.

The server stores a predetermined amount of media data in a First-In First-Out (FIFO) buffer in an arrangement that receives media data at a fixed rate. Once the buffer is full, for each new data element received into the buffer the oldest data element is deleted from the buffer. Requests from user computers to connect are not accepted until the server buffer is full. Once a connection is made to a user's computer, the server sends the media data to the user computer as buffer in the following manner. First, media data is sent to the user at the highest rate that the data connection between the server and the user computer will support until the predetermined amount of data that had been stored in the server buffer has

**5**

been transferred to the user's computer. Once the buffer has been transferred to a steady state condition is reached wherein as each media data element arrives at the server, it is immediately sent out to the user computer. In this steady state condition, the media data is sent at a rate that matches the constant fill rate of the server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer. If interruptions have interfered with the arrival of sent media data to the user's computer, that data may have been "dropped" by routers in the Internet and needs to be resent. This causes data to "back up" into the server FIFO for that user.

The resending of missing data is the responsibility of the reliable transport mechanism, such as TCP. The server buffer "sends" data by delivering it to the transport mechanism. The transport mechanism actually "sends" the data across the communications medium, and has processes which determine if all the data that has been sent has been received by the destination. If not, missing pieces of data are automatically resent to the destination, and are arranged to be delivered to the target software on the destination system in an ordered fashion. In the circumstance of this invention, the destination is the user computer, and the target software on the destination system is the media player. If the transport mechanism determines that data is missing, it retransmits that data to the destination as fast as the connection between the server and destination will allow. The net effect of this invention is that all media data to be delivered to a user computer is always sent as fast as the communications medium will support, either by the server buffer passing media data to the transport mechanism, or by the transport mechanism delivering or redelivering the media data to the user computer. This is enabled by buffering data at the server, and is distinctly different from prior art in which media data is only sent from the server to the user computer at the rate at which it is to be played out.

Routinely, once a steady state has been achieved, the next data element to be sent is the next sequential data element from that which has already been received by the user's computer buffer. However, if there is more data to be sent than at the routine constant fill rate, such as in the condition where some media data has been resent by the reliable transport layer, the server transport mechanism will again send the buffered media data as fast as the connection between the server and the user's computer will support. This allows for rebuilding the user's computer buffer under circumstances wherein Internet interruptions have blocked the normal flow of data. When compared to conventional systems, which provide no capability to rebuild the user's computer buffer when data is lost, the streaming media buffering system of the present invention provides for recovery of lost data elements and the restoration of the user's buffer, even while the user media player continues to play.

Under conditions in which interruptions have interfered with the arrival of sent media data to the user's computer, data loss exceeding certain levels will cause the transport mechanism software to stop accepting data for transmission from the application software, namely the streaming media server software. The streaming media server software keeps track of the last data element in the FIFO buffer that has been "sent" to each user using a software pointer. An interruption in the ability to send media data to a user results in this pointer "backing up" in the FIFO in such a way that the server knows from what point in the buffer to restart sending data when the transport mechanism again requests data to send. When the server software receives that notification, it

**6**

will begin sending data to the user starting from the next data element to send as indicated by the pointer, and sending as much data as the transport mechanism will accept. The transport mechanism will again send this data as fast as it can to the user. This process continues until the steady state condition is again reached wherein each data element is sent to the user as soon as it arrives from the media source.

In another embodiment, the server is connected to the Internet, and to a broadcast media source, such as a radio station. A radio station computer is provided with a means for receiving media data elements as they are generated by the audio and/or video source, and for transmitting those media data elements to the server at a constant time-sequenced rate, using a reliable transport mechanism such as TCP. As before, the server provides a buffer manager and a FIFO buffer, and provides a means for receiving the sequentially arranged media data elements from the broadcast media source and storing those data elements in the FIFO buffer. The buffer manager comprises means for: supplying the FIFO buffer with a predetermined number of data elements at a constant time-sequenced fill rate; maintaining a pointer into the buffer for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received. Importantly, the buffer manager is arranged to maintain the pre-determined number of data elements in the FIFO buffer. At least one user computer is connected to the server via the Internet or other data communications medium.

The user computer is associated with a media player software incorporating a user buffer and comprises means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out. As data is played out, the next sequential data elements are received from the server in such a fashion as to approximately maintain the predetermined number of data elements in the user's buffer.

In another embodiment, the server is connected to the Internet and provisioned as initially described, and has available to it file based media data as the source material. The file based media data can be read by the server which can deliver media data elements to the server FIFO buffer at a constant time-sequenced rate, as if the data were arriving from a broadcast media source. As before, the server provides a buffer manager and a FIFO buffer, and provides a means for receiving the sequentially arranged media data elements from the file based media source and storing those data elements in the FIFO buffer. The buffer manager comprises means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the FIFO buffer with a predetermined number of data elements at a constant time-sequenced fill rate; maintaining a pointer into the buffer for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received, said means arranged to maintain the pre-determined number of data elements in the FIFO buffer. The server buffer manager, or a separate process on the server, or a process on another computer having access to the file based media data, provides for reading the media data file and making available to the FIFO buffer sequentially arranged media data elements. At least one user computer is connected to the server via the Internet.

US 6,766,376 B2

**7**

The user computer is associated with a media player software incorporating a user buffer and comprises means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out. As data is played out, the next sequential data elements are received from the server in such a fashion as to approximately maintain the predetermined number of data elements in the user's buffer.

In another embodiment, the server is connected to the Internet and provisioned as initially described. The server buffer manager, or the media source, provides for sequentially numbering the media data elements. The server buffer manager does not maintain a pointer into the server buffer for each user. Instead, the media player buffer manager in the user computer maintains a record of the serial number of the last data element that has been received. Via the use of standard data communications protocol techniques such as TCP, the user computer transmits a request to the server to send one or more data elements, specifying the serial numbers of the data elements. The server responds by sending the requested data elements, and depends upon the reliable transmission protocol to assure delivery. The user computer then continues with additional data requests for the duration of playing the audio/video material. In this manner, the user computer, not the server, maintains the record of the highest data element number stored in the user computer buffer. The media data will be transmitted to the user computer as fast as the data connection between the user computer and the server will allow. As before, the server provides a buffer manager and a FIFO buffer, and provides a means for receiving the sequentially numbered media data elements from a broadcast media source or a file based media source, and storing those data elements in the FIFO buffer. The buffer manager comprises means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the FIFO buffer with a predetermined number of data elements at a constant time-sequenced fill rate; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received. Such means is arranged to maintain the pre-determined number of data elements in the FIFO buffer. At least one user computer is connected to the server via the Internet.

The user computer is associated with a media player software incorporating a user buffer and comprises means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out. As data is played out, the next sequential data elements are requested from the server in such a fashion as to approximately maintain the predetermined number of data elements in the user's buffer.

In yet another embodiment, the invention provides a method for distributing from a server via the Internet streaming media composed of a plurality of time-sequenced data elements. A predetermined number of the data elements are sequentially loaded into a FIFO buffer. Additional data elements continue to be received on a constant time basis. As each new data element is input to the buffer, the oldest data element is deleted from the buffer, maintaining in the buffer the same predetermined number of data elements. At the request of a user computer for connection to a media stream, a group of the data elements is sequentially sent via the Internet from the FIFO buffer to the user computer connected to the Internet. Upon being received by the user

**8**

computer, the sent group of data elements is loaded into a user's buffer associated with the user computer. The users computer immediately begins to play the audio/video streaming media material. The server continues to send next data elements in sequence until the contents of the FIFO buffer have been sent. The data elements are sent by the server as fast as the connection between the server and user computer will allow. Once the contents of the FIFO buffer have been sent to a user computer, as each new data element is received into the FIFO buffer it is immediately sent to the user computer in such a manner as to keep the user computer buffer full. The process repeats for substantially the entire time that the audio/video material is played.

Unlike conventional buffering systems, audio begins to play on the user system as soon as the user connection to the audio server is effected and a small amount of data has been transferred—conventional systems required many seconds of data. Audio/video media data is initially transmitted from the server more rapidly than it is played out by the user system, until the server buffer has been transferred to the user computer. The user's buffer is built up while the audio is playing, and can be restored if it is diminished by data transmission interruptions. Advantageously, the system and method of this invention afford faster data transmissions than the playback data rate of the media data. Audio/video data is transmitted from the server more rapidly than it is played out by the user system under conditions wherein the user's computer buffer is not full. The audio/video data in the user buffer accumulates; interruptions in playback due to temporary Internet and modem delays are avoided.

Although the preferred embodiment utilizes a reliable transport mechanism to move data between the server and the user, alternative embodiments could incorporate this invention's buffering system in combination with an unreliable datagram-based transport mechanism Hybrid systems, where a combination of this invention's buffering system, and unreliable datagram based transport mechanisms can also be used.

## BRIEF DESCRIPTION OF DRAWINGS

The invention will be more fully understood and further advantages will become apparent when reference is had to the following detailed description and the accompanying drawings, in which:

FIG. 1 is a schematic diagram illustrating the elements of a streaming media buffering system in accordance with the present invention;

FIG. 2 is a schematic diagram of an alternative embodiment of the system shown by FIG. 1; and

FIG. 3 is a block diagram illustrating the method of the present invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention relates to a buffering system for streaming media, such as audio/video, on the Internet.

In one embodiment, the invention provides a system for distributing via the Internet streaming media composed of a plurality of time-sequenced data elements. As shown in FIG. 1, the system is provided with a server 12 connected to the Internet 10 for transmitting the streaming media data elements. Associated with the server 12 is a FIFO buffer 14 for storing at least one of the data elements for transmission, and a buffer manager 16. Buffer 14 is a conventional computer storage mechanism such as a hard disk, as shown for

**9**

convenience of illustration, or, preferably, an electronic storage arrangement such as Random Access Memory (RAM). The buffer manager 16 is in the form of software or firmware that provides means for: receiving the media data; supplying media data in order to the FIFO buffer; supplying the buffer 14 with a predetermined number of data elements at a constant time-sequenced fill rate; maintaining a pointer 24a through 24n into the buffer, one for each user computer indicating the last media data element that has been sent to that user, thus indicating the next element or elements to be sent; and, once the FIFO buffer is full, deleting the oldest data element in the buffer as each new data element is received, said means arranged to maintain the predetermined number of data elements in the FIFO buffer. Buffer Manager 16 may also comprise means for: formatting media data according to the requirements of buffer 14, and for digitizing, encoding, and packetizing the media data.

There is at least one user computer 18 connected to the server 12 via the Internet 10. A user buffer 20 is associated with the user computer 18. The user buffer 20 is provided with means for storing a predetermined number of the data elements. User buffer 20 is a conventional computer storage mechanism such as a hard disk, or, preferably, an electronic storage arrangement such as Random Access Memory (RAM) as suggested by the illustration. A buffer manager 22 is associated with the user computer 18. The buffer manager 22, having the form of software or firmware, is provided with means for receiving and storing a predetermined number of media data elements which are received sequentially by the media player, playing the data out sequentially as audio and/or video, and deleting media data elements from the buffer as they are played out.

The media may come from a live source, shown as 26 in FIG. 1, or from a stored file on the server 12, or another storage device, such as a hard drive. For broadcast media, as the term is used herein, such as an announcer speaking into a microphone, or playing a CD, the media source 26 can only transmit audio/video data as fast as it is generated. If the media source is file based, such as a music clip stored as a disk file, and if that disk file is stored on the server or an associated server computer, this connection could be considered to be near instantaneous. In this case, rather than audio/video data filling and depleting the buffer 14, an amount of audio/video data equivalent to the desired buffer size is logically constituted as a FIFO buffer. The data window is commonly called a data window. The data window moves on a time-sequenced basis through the media data file, thus defining the contents of the buffer on a moment-by-moment basis and performing the equivalent functions to receiving a new data element and deleting the oldest data element.

The server 12 maintains a buffer of audio/video data comprising an amount adequate to bridge gaps typical of Internet and modem delays to the user. Preferably, this buffer holds enough data elements for about one minute of play. The server buffer 14 is filled the first time the media source connection is established or a disk file is read, and before any users are allowed to connect to the server 12.

Connections from the server 12 through the Internet 10 commonly are much faster than the data rate required for audio or video playback. This fact is insignificant for conventional servers because, not having a FIFO buffer or a buffer pointer for each user, audio/video data can only be sent as fast as it becomes available, or as fast as the pace at which it must be delivered to the user in order to be properly replayed. The user, typically interacting with "media player" software on their computer, selects an audio source requiring

**10**

a data rate slower than that available by the user's connection to the Internet. For example, if the user's connection to the Internet is made via a 56,000 bits per second modem, the user might select a media source encoded for playback at 24,000 bits per second.

With the present invention, as soon as a user connects to the server 12, the server 12 transmits audio/video data as sequential data elements from its buffer 14 to the buffer 20 of the user as fast as the data connection will allow. Unlike the prior art, media begins to play on the user computer 18 as soon as the user connection is made to the audio server 12 and a minimal amount of data elements have been received and stored in the user's buffer 20. The user's buffer 20 is built up while the media is playing. As each data element is played, it is deleted from the user's buffer 20. Initially, the user buffer manager 22 requests the server 12 to send media data elements to start the playback stream, such as by selecting a radio station from a list. The server 12 responds by sending data elements to the user computer 18 as fast as it can, until the entire FIFO buffer 14 has been sent to the user computer. Upon receipt of the initial data elements, the user buffer manager 22 begins playback. Because this is a synchronous system with the source, server, and user computer operating by the same playback clock rate as determined by the encoding rate of the media, as each data element is played out and is deleted from the user buffer 20, another data element has been deposited into the server buffer 14 and is available to be sent to the user computer. Server 12 sends the newly available data elements as fast as the data rate of the connection between server 12 and user computer 18 will allow.

Since the connection from the Internet to the user is faster than that required for media playback, audio/video data is transmitted from the server faster than it is played out by the user system, thus building up audio/video data in the user buffer. For example, if the user's connection to the Internet is at 56,000 bits per second, and the data rate encoded for the media to be played is 24,000 bits per second, the buffer level of the user buffer 20 will fill at the rate of 32,000 bits per second (56,000 bits per second receive rate, minus 24,000 bits per second playout depletion rate).

If, for example, the server buffer 14 held one minute of audio/video data, eventually the user buffer 20 will hold one minute of audio/video data. The effect is that, over a brief period of time, the server buffer 14, or a designated portion of it, is transferred to the user buffer 20. The number of data elements in the server buffer 14 actually never changes, it always maintains one minute of audio/video data. However, for the particular user under discussion, a copy of all the data held in the buffer has been sent to the user. Since the user buffer 20 now holds one minute of audio/video data, it can play continuously despite data reception interruptions of less than a minute, and as soon as the interruption ceases the user buffer 20 can begin to rebuild, which will take place as fast as the connection between the user computer 18 and the server 12 will allow. The media player can continue to play out the audio/video material while the user buffer 20 rebuilds.

The predetermined buffer level in the user buffer 20 may be set at less than the predetermined buffer level of the server buffer 14 if desired. For example, the server buffer 14 might be set to hold one minute of media data, and the user buffer 20 might be set to hold thirty seconds of media data.

Alternatively, the user computer is replaced by an Internet radio or Internet Appliance, which is comprised of a dedicated processor for receiving Internet radio or audio/video

**11**

material. Examples of such devices might range from familiar computing devices such as palmtops, PDAs (Portable Digital Assistants), and wireless phones, to devices that appear and operate similarly to conventional consumer electronic devices such as radios and televisions, but with the additional capability of Internet access.

In another embodiment, as shown in FIG. 2, the media source may be remote from the server 12, such as a computer system 28 in a radio station studio. This computer includes a source manager 30 which may be implemented in software or firmware. The source manager 30 comprises means for: formatting media data according to the requirements of server 12, buffer 14, and buffer manager 16; and, for transmitting that media data to server 12. Source manager 30 may further include means for digitizing, encoding, and packetizing the media data. Media data typically is generated in real time such as by a speaker talking into a microphone or by playing a CD. Generally, computer system 28 transmits media data to server 12 in real time as the media data is generated. Buffering of media data might occur at computer system 28 for convenience of programming, but such buffering is incidental to the operation of the end-to-end system being described. Computer system 28 connects via the Internet 10, or other suitable data communications medium, to a server 12, wherein server buffer manager 16 receives the media data for input into the FIFO buffer 14 as described previously. Server 12, in turn, transmits the media data to one or more user computers 18, also as previously described.

In another embodiment, shown in FIG. 3, the invention provides a method for distributing media from a server via the Internet streaming media composed of a plurality of time-sequenced data elements. Time-sequenced data elements are generated or received 32. Next, a predetermined number of the data elements is sequentially loaded 34 into a server buffer, which process of 32 and 34 continues indefinitely as long as there is media data available. Next, a group of the data elements is sequentially sent 36 via the Internet from the server buffer to a user computer connected to the Internet. Upon receipt by the user computer, the sent group of data elements is loaded 38 into a user buffer associated with the user computer. The user computer immediately plays 40 the received portion of the media on the user computer. At 42, if the user buffer is not full, then additional data elements are sent to the user computer 36. And also at 42, if the user buffer is full, the system waits until new media data is delivered to the server buffer 34. This process is repeated until the entire media file is played at the user computer.

Unlike conventional buffer arrangements, audio begins to play on the user system as soon as the user connection is made to the audio server. The user's buffer is built up while the audio is playing. Advantageously, the system and method of this invention create a faster than real time connection. That is to say, audio/video data is transmitted from the server faster than it is played out by the user system, thus building up audio/video data in the user buffer.

Having thus described the invention in rather full detail, it will be understood that such detail need not be strictly adhered to, but that additional changes and modifications may suggest themselves to one skilled in the art, all falling within the scope of the invention as defined by the subjoined claims.

What is claimed is:

1. A system, for distributing streaming media via a data communications medium such as the Internet, said streaming media composed of a plurality of time-sequenced data elements, comprising:

**12**

(a) a server connected to said data communications medium for transmitting said data elements;

(b) a server buffer for storing at least one of said data elements for transmission;

(c) means for receiving said data elements sequentially;

(d) a server buffer manager comprising means for supplying said server buffer with a predetermined number of data elements at a constant time-sequenced fill rate, and when said server buffer is full, for each new data element to be received into the buffer, deleting the oldest data element from the buffer;

(e) at least one user computer connected to said server via said data communications medium;

(f) a user buffer associated with said user computer and being provided with means for storing a predetermined number of said data elements, which predetermined number may be different from the predetermined number of data elements to be stored in the server buffer; and

(g) a user buffer manager associated with said user computer and being provided with means for receiving data elements into the buffer, and playing out audio/video material from said user buffer at a constant time-sequenced depletion rate;

(h) a means for maintaining a record for each user of the last data element that had been sent, and for causing additional media data to be sent until all the data elements in the server buffer have been sent to said user computer, said means arranged in such a way as to maintain the pre-determined number of data elements in the user buffer,

whereby said server sends said sequential data elements at a data rate as fast as the data connection between the server and the user computer will support.

2. A system as recited by claim 1, wherein said user computer is an Internet radio.

3. A system for distributing streaming media via a data communications medium such as the Internet, said streaming media composed of a plurality of time-sequenced data elements, comprising:

(a) a source computer system being provided with media source material data elements, and being connected to said data communications medium for transmitting said data elements to a server computer;

(b) a server connected to said data communications medium for receiving said data elements from said source computer system, and for transmitting said data elements to user computers;

(c) a server buffer for storing at least one of said data element for transmission;

(d) a means for receiving said data elements sequentially;

(e) a server buffer manager comprising means for receiving said data elements that have been transmitted by the source computer system, supplying said server buffer with a predetermined number of data elements at a constant time-sequenced fill rate, and when said server buffer is full, for each new data element to be received into the buffer, deleting the oldest data element from the buffer;

(f) at least one user computer connected to said server via said data communications medium;

(g) a user buffer associated with said user computer and being provided with means for storing a predetermined number of said data elements, which predetermined number may be different from the predetermined number of data elements to be stored in the server buffer; and

US 6,766,376 B2

**13**

(h) a user buffer manager associated with said user computer and being provided with means for receiving data elements into the buffer, and playing out audio/video material from said user buffer at a constant time-sequenced depletion rate;

(i) a means for maintaining a record for each user of the last data element that had been sent, and for causing additional media data to be sent until all the data elements in the server buffer have been sent to said user computer, said means arranged in such a way as to maintain the pre-determined number of data elements in the user buffer;

whereby said server sends said sequential data elements at a data rate as fast as the data connection between the server and the user computer will support.

4. A system as recited by claim 3, wherein said user computer is an Internet radio.

5. A method for distributing streaming media via a data communications medium such as the Internet from a server, said streaming media composed of a plurality of time-sequenced data elements, comprising the steps of:

(a) providing a plurality of time-sequenced data elements;

(b) loading a predetermined number of said data elements sequentially into a server buffer, which process continues indefinitely as long as there is media data available;

(c) when said server buffer is full with said predetermined number of said data elements, deleting from said server buffer the oldest data element each time a new data

**14**

element is loaded into the buffer, the loading arrangement being adapted to maintain the predetermined number of data elements in the buffer;

(d) sending via said data communications medium a group of said data elements sequentially from said server buffer to a user computer connected to said Internet as fast as the connection between the server and the user computer will allow;

(e) loading said sent group of data elements into a user's buffer associated with said user computer;

(f) playing said media on said user computer as soon as said data elements first arrive, said played data elements being deleted from said user buffer;

(g) maintaining a record of the last data element having been sent to a user;

(h) if said user buffer is not full, sending the next sequential data elements to said user computer in such a manner that fills the user buffer to a predetermined number of data elements, and maintains that predetermined number of data elements in the buffer; and

(i) repeating steps "(b)" through "(h)" until all of said data elements of the streaming media are played by said user computer.

6. A method as recited by claim 5, wherein said user computer is an Internet radio.

\* \* \* \* \*



SECRETARY OF STATE
Business Services

**Date: 4/6/2007**    **View Filed Documents**

Name History

| Name | Name Type |
|------|-----------|
| Surfer Internet Broadcasting of Mississippi, LLC | Legal |

### Limited Liability Company - Domestic - Information

| | |
|---|---|
| **Business ID:** | 907327 |
| **Status:** | Good Standing |
| **Creation Date:** | 2/20/2007 |
| **State of Incorporation:** | MS |
| **Principal Office Address:** | No Address |
| **Principal Mailing Address:** | No Address |
| **Listing Address:** | No Address |

### Registered Agent

| | |
|---|---|
| **Agent Name:** | **CORPORATION SERVICES CO** |
| **Office Address:** | 506 SOUTH PRESIDENT STRE JACKSON MS 39201 |
| **Mailing Address:** | |

### Officers & Directors

Search
- **By Business Name**
- **By Business ID**
- **By Officer Name**
- **By Registered Agent**
- **New Corporations**
  - Annual Report
- **File Online**
  - Verification
- **Verify Certification**
  - Online Orders
- **Register for Online Orders**
- **Order Good Standing**
  - Fee Schedules
- **Corporations**
- **Limited Partnerships**
- **Limited Liability Partnerships**
- **Limited Liability Companies**
  - Miscellaneous
- **Registered Agents**
- **Download Corporate Forms and Instructions**
- **Look Up an SIC**
  - Contact
- **Corporations Unit**

Business

Home

Home | Accessibility Policy | Contact Us | E-mail Us | Links | Search

Copyright © 2007 Mississippi Secretary of State. All rights reserved.
Due to the use of DHTML and Java, this Web site is optimized for Microsoft Internet Explorer 5+ or Netscape 6+.

**EXHIBIT 2**



## Officers & Directors

Search
• **By Business Name**
• **By Business ID**
• **By Officer Name**
• **By Registered Agent**
• **New Corporations**
  Annual Report
• **File Online**
  Verification
• **Verify Certification**
  Online Orders
• **Register for Online Orders**
• **Order Good Standing**
  Fee Schedules
• **Corporations**
• **Limited Partnerships**
• **Limited Liability**
  **Partnerships**
• **Limited Liability**
  **Companies**
  Miscellaneous
• **Registered Agents**
• **Download Corporate**
  **Forms and Instructions**
• **Look Up an SIC**
  Contact
• **Corporations Unit**

| Name | Title(s) |
|---|---|
| **Corporation Services Company**<br>2711 Centerville Road, Suite 400<br>Wilmington DE 19808 | Other |

**Click here to go back to the Corporation**

**Business**

**Home**

---

Home  |  Accessibility Policy  |  Contact Us  |  E-mail Us  |  Links  |  Search

Copyright © 2007 Mississippi Secretary of State. All rights reserved.
Due to the use of DHTML and Java, this Web site is optimized for Microsoft Internet Explorer 5+ or Netscape 6+.

Business ID: 907327
Date Filed: 02/20/2007 05:00 PM
Eric Clark
Secretary of State

**F0100 - Page 1 of 2**



**OFFICE OF THE MISSISSIPPI**
**P.O. BOX 136, JACKSON, MS 3**

**Certificate of Formation**

The undersigned, pursuant to Senate Bill No. 2395, Chapter 402, Laws of 1994, hereby executes the following document and sets forth:

**1. Name of the Limited Liability Company**

⇒  SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC

**2. The future effective date is**
**(Complete if applicable)**   UPON FILING

**3. Federal Tax ID**

⇒

**4. Name and Street Address of the Registered Agent and Registered Office is**

⇒ Name   Corporation Service Company

⇒ Physical Address   506 South President Street

⇒ P.O. Box

⇒ City, State, ZIPS, ZIP4   Jackson   MS   39201   -

**5. If the Limited Liability Company is to have a specific date of dissolution, the latest date upon which the Limited Liability Company is to dissolve**

⇒  PERPETUAL

**6. Is full or partial management of the Limited Liability Company vested in a manager or managers? (Mark appropriate box)**

⇒  ☐ Yes   ☒ No

**7. Other matters the managers or members elect to include**

⇒

⇒

792352 FEB 20 07

Rev. 01/96

**F0100 - Page 2 of 2**

**OFFICE OF THE MISSISSIPPI SECRETARY OF STATE**
P.O. BOX 136, JACKSON, MS 39205-0136   (601) 359-1333
**Certificate of Formation**

By:   Signature                                     (Please keep writing within blocks)

Printed Name        Corporation Service Company        Title        Organizer Asst. Sect.
                    Brandon Laramore

Street and Mailing Address

⇒   Physical Address        2711 Centerville Road, Suite 400

⇒   P.O. Box

⇒   City, State, ZIP5, ZIP4        Wilmington        DE        19808        -

By:   Signature                                     (Please keep writing within blocks)

Printed Name                                        Title

Street and Mailing Address

⇒   Physical Address

⇒   P.O. Box

⇒   City, State, ZIP5, ZIP4                                        -

792352  FEB 20 07

Rev. 01/96

# National Comprehensive Report
### 04/09/2007 - 2:54PM - Reference: 09990800095

## Subject

WILLIAM A GRYWALSKI

**SSN:**                 157-42-XXXX issued in New Jersey between 1966 and 1967

**DOB:**                 03/XX/1951

## User Supplied Information

| | |
|---|---|
| **Last Name:** | GRYWALSKI |
| **First Name:** | WILLIAM |
| **Middle Initial:** | A |
| **SSN:** | 157-42-XXXX |
| **Address 1:** | 77 LOZIER RD BUDD LAKE, NJ 07828 |

## Possible AKAs for Subject      (4 Records)

| Name | SSN | Date of Birth |
|---|---|---|
| GRYWALSKI, W | | |
| GRYWALSKI, WILLIAM | 157-42-XXXX | 03/XX/1951 |
| GRYWALSKI, WM A | 157-42-XXXX | 1951 |
| GRYWALSKI, WILIAM A | | |

## Possible Other Records and Names Associated with Social Security Numbers     (1 Record)

| Name | SSN | Date of Birth |
|---|---|---|
| GRYWALSKI, DONNA B | 157-42-XXXX | |

## Possible Addresses Associated with Subject     (5 Records)

| Date Range | Address/Phone | Source | Source Reported Dates |
|---|---|---|---|
| 09/1983 - 03/2007 | 77 LOZIER RD BUDD LAKE, NJ 07828 691-8378 | Consumer Bureau 2 Composite Info Consumer Bureau 1 Consumer Bureau 3 | 09/1983 - 03/2007 07/2000 - 02/2002 09/1993 - 09/1993 05/1985 - 05/1985 |
| 07/2004 - 07/2004 | 71 LOZIER RD BUDD LAKE, NJ 07828 | Consumer Bureau 2 | 07/2004 - 07/2004 |
| 04/2000 - 04/2000 | 1269 WINDANCE LN COROLLA, NC 27927 (252) 453-8566 | Consumer Bureau 2 | 04/2000 - 04/2000 |
| 06/1993 - 07/1993 | 1269 WINDANCE LANR COROLLA, NC 27927 | Consumer Bureau 2 Consumer Bureau 1 | 07/1993 - 07/1993 06/1993 - 06/1993 |
| 11/1985 - 11/1985 | 28 GRANDVIEW AVE STOCKHOLM, NJ 07460 | Consumer Bureau 1 Consumer Bureau 3 | 11/1985 - 11/1985 |

**EXHIBIT 3**

**Phone Listings for Subject's Addresses**                          (2 Records)

## 71 LOZIER RD BUDD LAKE, NJ 07828
Name:        PALMISANO DANIEL R         Phone:        (973) 347-2413
Name:        PALMISANO DAWN V           Phone:        (973) 347-2413

**Possible Real Property Ownership and Deed Transfers**              (5 Records)

## 77 LOZIER RD BUDD LAKE, NJ 07828

| | | | |
|---|---|---|---|
| Owner Name: | GRYWALSKI WILLIAM GRYWALSKI DONNA | | |
| Assess State: | New Jersey | County: | MORRIS |
| Parcel Number: | 02801-0000-00019 | Type: | SFR |
| Short Legal Description: | | | |
| Document Number: | | Recorded Date: | |
| Situs Address: | 77 LOZIER RD BUDD LAKE, NJ 07828 -1210 | Book: | 002694 |
| Mailing Address: | 77 LOZIER RD BUDD LAKE, NJ 07828 -1210 | Page: | 000750 |
| Assessment Year: | | Tax Year: | 2001 |
| Assessed Land Value: | $116,600 | Market Land Value: | |
| Assessed Improvements: | $180,400 | Market Improvements | |
| Total Assessed Value: | $297,000 | Total Market Value: | |
| Most Recent Sale: | $27,500 | Prior Sale Price: | |

| | | | |
|---|---|---|---|
| Owner Name: | GRYWALSKI WILLIAM GRYWALSKI DONNA | | |
| Assess State: | New Jersey | County: | MORRIS |
| Parcel Number: | 2702801000000019 | Type: | SFR |
| Short Legal Description: | | | |
| Document Number: | | Recorded Date: | |
| Situs Address: | 77 LOZIER RD BUDD LAKE, NJ 07828 -1210 | Book: | |
| Mailing Address: | 77 LOZIER RD BUDD LAKE, NJ 07828 -1210 | Page: | |
| Assessment Year: | 2004 | Tax Year: | 2003 |
| Assessed Land Value: | $116,600 | Market Land Value: | |
| Assessed Improvements: | $180,400 | Market Improvements | |
| Total Assessed Value: | $297,000 | Total Market Value: | |
| Most Recent Sale: | | Prior Sale Price: | |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 2702801000000019 |
| Legal Desc: | |
| Sale Price: | |
| Loan Amount: | $40,600 |
| Contract Date: | 03/04/2002 |
| Document Type: | MORTGAGE DEED |
| Refinance: | YES |
| Lender: | FIRST UNION NAT'L BK |
| Title Co: | |
| Situs Address: | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| Buyers: | GRYWALSKI WILLIAM |
| Buyer Address: | 77 LOZIER RD BUDD LAKE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 2702801000000019 |
| Legal Desc: | |
| Sale Price: | |
| Loan Amount: | $186,500 |
| Contract Date: | 10/31/2001 |
| Document Type: | MORTGAGE DEED |

| | | | |
|---|---|---|---|
| **Refinance:** | YES | | |
| **Lender:** | CHASE MANHATTAN MTG | | |
| **Title Co:** | | | |
| **Situs Address:** | 77 LOZIER RD BUDD LAKE, NJ 07828 | | |
| **Buyers:** | GRYWALSKI WILLIAM & DONNA | | |
| **Buyer Address:** | | | |
| **Owner Name:** | GRYWALSKI, WILLIAM & DONNA | | |
| **Assess State:** | New Jersey | **County:** | MORRIS |
| **Parcel Number:** | 27 02801-0000-00019-0000 | **Type:** | RESIDENTIAL 2SF |
| **Short Legal Description:** B153 L3-2 | | | |
| **Document Number:** | | **Recorded Date:** | 09/16/1983 |
| **Situs Address:** | 77 LOZIER RD BUDD LAKE, NJ 07828 | **Book:** | 2694 |
| **Mailing Address:** | 77 LOZIER RD BUDD LAKE, NJ 07828 | **Page:** | 750 |
| **Assessment Year:** | 1999 | **Tax Year:** | |
| **Assessed Land Value:** | $116,600 | **Market Land Value:** | |
| **Assessed** | $180,400 | **Market** | |
| **Improvements:** | | **Improvements** | |
| **Total Assessed Value:** | $297,000 | **Total Market Value:** | |
| **Most Recent Sale:** | $27,500 | **Prior Sale Price:** | |

| | | | |
|---|---|---|---|
| **Owner Name:** | GRYWALSKI WILLIAM A | | |
| **Assess State:** | North Carolina | **County:** | CURRITUCK |
| **Parcel Number:** | 114E00001400000 | **Type:** | SFR |
| **Short Legal Description:** LOT 140 VILLAGES AT | | | |
| **Document Number:** | | **Recorded Date:** | |
| **Situs Address:** | NC | **Book:** | |
| **Mailing Address:** | 77 LOZIER RD BUDD LAKE, NJ 07828 -0000 | **Page:** | |
| **Assessment Year:** | | **Tax Year:** | |
| **Assessed Land Value:** | | **Market Land Value:** | |
| **Assessed** | | **Market** | |
| **Improvements:** | | **Improvements** | |
| **Total Assessed Value:** | | **Total Market Value:** | |
| **Most Recent Sale:** | | **Prior Sale Price:** | |

| | | | |
|---|---|---|---|
| **Owner Name:** | GRYWALSKI WILLIAM A GRYWALSKI DONNA | | |
| **Assess State:** | North Carolina | **County:** | CARTERET |
| **Parcel Number:** | 537316848377000 | **Type:** | VACANT LAND (NEC) |
| **Short Legal Description:** L92 DOLPHIN RIDGE PLAT 28-228 | | | |
| **Document Number:** | | **Recorded Date:** | |
| **Situs Address:** | 107 DOLPHIN RIDGE RD EMERALD ISLE, NC 28594 -2343 | **Book:** | |
| **Mailing Address:** | 77 LOZIER ROAD RD BUDD LAKE, NJ 07828 -0000 | **Page:** | |
| **Assessment Year:** | | **Tax Year:** | |
| **Assessed Land Value:** | $76,665 | **Market Land Value:** | |
| **Assessed** | $342,102 | **Market** | |
| **Improvements:** | | **Improvements** | |
| **Total Assessed Value:** | $435,205 | **Total Market Value:** | |
| **Most Recent Sale:** | | **Prior Sale Price:** | |

**Possible Property Owners of Subject's Addresses**                    (3 Records)

## 77 LOZIER RD BUDD LAKE, NJ 07828

| | | | |
|---|---|---|---|
| **Owner Name:** | BRODER ADAM BRODER PHYLLIS | | |
| **Assess State:** | New Jersey | **County:** | MORRIS |
| **Parcel Number:** | 2702801000000018 | **Type:** | SFR |
| **Short Legal Description:** | | | |
| **Document Number:** | | **Recorded Date:** | 05/13/2002 |
| **Situs Address:** | 77 LOZIER RD BUDD LAKE, NJ 07828 -1210 | **Book:** | 005616 |
| **Mailing Address:** | 77 LOZIER RD BUDD LAKE, NJ 07828 -1210 | **Page:** | 000087 |
| **Assessment Year:** | | **Tax Year:** | 2004 |
| **Assessed Land Value:** | $56,700 | **Market Land Value:** | |
| **Assessed** | $143,900 | **Market** | |

Improvements:                                    Improvements
Total Assessed Value:   $200,600                 Total Market Value:
Most Recent Sale:       $280,000                 Prior Sale Price:

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 2702801000000018 |
| Legal Desc: | |
| Sale Price: | |
| Loan Amount: | $50,000 |
| Contract Date: | 11/21/2005 |
| Document Type: | MORTGAGE DEED |
| Lender: | SOVEREIGN BK FSB |
| Title Co: | |
| Situs Address: | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| Buyers: | BRUDER ADAM & PHYLLIS |
| Buyer Address: | 77A LOZIER RD BUDD LAKE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 2702801000000018 |
| Legal Desc: | |
| Sale Price: | |
| Loan Amount: | $290,000 |
| Contract Date: | 03/31/2004 |
| Document Type: | MORTGAGE DEED |
| Refinance: | YES |
| Lender: | US MTG CORP |
| Title Co: | |
| Situs Address: | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| Buyers: | BRUDER ADAM M & PHYLLIS A |
| Buyer Address: | 77 A LOZIER RD BUDD LAKE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 2702801000000018 |
| Legal Desc: | |
| Sale Price: | |
| Loan Amount: | $32,000 |
| Contract Date: | 05/06/2003 |
| Document Type: | MORTGAGE DEED |
| Refinance: | YES |
| Lender: | DITECH.COM |
| Title Co: | ATTORNEY ONLY |
| Situs Address: | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| Buyers: | BRUDER ADAM M PHYLLIS A |
| Buyer Address: | 77A LOZIER RD BUDD LAKE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 2702801000000018 |
| Legal Desc: | |
| Sale Price: | |
| Loan Amount: | $32,000 |
| Contract Date: | 05/06/2003 |
| Document Type: | MORTGAGE DEED |
| Refinance: | YES |
| Lender: | DITECH.COM |
| Title Co: | |
| Situs Address: | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| Buyers: | BRUDER ADAM & PHYLLIS |
| Buyer Address: | 77A LOZIER RD BUDD LAKE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000018 |
| **Legal Desc:** | |
| **Sale Price:** | $280,000 |
| **Loan Amount:** | |
| **Contract Date:** | 04/30/2002 |
| **Document Type:** | |
| **Resale/New Construction:** | RE-SALE |
| **Lender:** | |
| **Title Co:** | |
| **Situs Address:** | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| **Sellers:** | ECKERT GARY & MARTA |
| **Buyers:** | BRODER ADAM & PHYLLIS |
| **Buyer Address:** | 77 LOZIER RD BUDD LAKE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000018 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $224,000 |
| **Contract Date:** | 04/30/2002 |
| **Document Type:** | MORTGAGE DEED |
| **Refinance:** | YES |
| **Lender:** | WEICHERT FIN'L SVCS |
| **Title Co:** | |
| **Situs Address:** | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| **Buyers:** | BRUDER ADAM & PHYLLIS |
| **Buyer Address:** | 77 A LOZIER RD MOUNT OLIVE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000018 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $20,000 |
| **Contract Date:** | 04/30/2002 |
| **Document Type:** | MORTGAGE DEED |
| **Refinance:** | YES |
| **Lender:** | WEICHERT FIN'L SVCS |
| **Title Co:** | |
| **Situs Address:** | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| **Buyers:** | BRUDER ADAM & PHYLLIS |
| **Buyer Address:** | 771A LOZIER RD MOUNT OLIVE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000018 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $50,000 |
| **Contract Date:** | |
| **Document Type:** | MORTGAGE DEED |
| **Refinance:** | YES |
| **Lender:** | FLEET NAT'L BK |
| **Title Co:** | |
| **Situs Address:** | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| **Buyers:** | ECKERT MARTA D |
| **Buyer Address:** | |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000018 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $53,000 |
| **Contract Date:** | 11/06/1998 |
| **Document Type:** | MORTGAGE DEED |
| **Lender:** | CHATHAM SVGS |
| **Title Co:** | |
| **Situs Address:** | 77A LOZIER RD BUDD LAKE, NJ 07828 |
| **Buyers:** | ECKERT GARY P & MARTA D L |
| **Buyer Address:** | 77A LOZIER RD BUDD LAKE, NJ 07828 |

## 71 LOZIER RD BUDD LAKE, NJ 07828

| | | | |
|---|---|---|---|
| **Owner Name:** | PALMISANO DAWN | | |
| **Assess State:** | New Jersey | **County:** | MORRIS |
| **Parcel Number:** | 2702801000000015 | **Type:** | SFR |
| **Short Legal Description:** | | | |
| **Document Number:** | | **Recorded Date:** | 02/01/2003 |
| **Situs Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 -1210 | **Book:** | 005783 |
| **Mailing Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 -1210 | **Page:** | 000124 |
| **Assessment Year:** | | **Tax Year:** | 2004 |
| **Assessed Land Value:** | $75,000 | **Market Land Value:** | |
| **Assessed Improvements:** | $162,300 | **Market Improvements** | |
| **Total Assessed Value:** | $237,300 | **Total Market Value:** | |
| **Most Recent Sale:** | $379,900 | **Prior Sale Price:** | $65,000 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000015 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $300,000 |
| **Contract Date:** | 04/20/2006 |
| **Document Type:** | MORTGAGE DEED |
| **Refinance:** | YES |
| **Lender:** | ATLANTIC PACIFIC MTG CORP |
| **Title Co:** | |
| **Situs Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |
| **Buyers:** | PALMISANO DAWN |
| | PALMISANO DANIEL |
| **Buyer Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000015 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $35,000 |
| **Contract Date:** | 07/06/2005 |
| **Document Type:** | MORTGAGE DEED |
| **Lender:** | GMAC MTG CORP/PA |
| **Title Co:** | |
| **Situs Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |
| **Buyers:** | PALMISANO DAWN |
| **Buyer Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |

### New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000015 |
| **Legal Desc:** | |
| **Sale Price:** | $379,900 |
| **Loan Amount:** | |
| **Contract Date:** | 01/17/2003 |
| **Document Type:** | |
| **Resale/New** | RE-SALE |
| **Construction:** | |
| **Lender:** | |
| **Title Co:** | |
| **Situs Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |
| **Sellers:** | NUNN MICHAEL J & JACQUELINE |
| **Buyers:** | PALMISANO DAWN |
| **Buyer Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |

### New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000015 |
| **Legal Desc:** | |
| **Sale Price:** | $379,900 |
| **Loan Amount:** | $230,000 |
| **Contract Date:** | 01/17/2003 |
| **Document Type:** | MORTGAGE DEED |
| **Resale/New** | RE-SALE |
| **Construction:** | |
| **Lender:** | FIRST ACCEPTANCE MTG CORP |
| **Title Co:** | |
| **Situs Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |
| **Sellers:** | NUNN MICHAEL J & JACQUELINE |
| **Buyers:** | PALMISANO DAWN |
| **Buyer Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |

### New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000015 |
| **Legal Desc:** | |
| **Sale Price:** | $65,000 |
| **Loan Amount:** | |
| **Contract Date:** | 06/21/2002 |
| **Document Type:** | |
| **Resale/New** | RE-SALE |
| **Construction:** | |
| **Lender:** | |
| **Title Co:** | |
| **Situs Address:** | 71 LOZIER RD BUDD LAKE, NJ 07828 |
| **Sellers:** | NUNN MICHAEL J & JACQULINE |
| **Buyers:** | STATE OF NJ DEP |
| **Buyer Address:** | 401 EAST ST TRENTON, NJ 08625 |

### New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| **Parcel Number:** | 2702801000000015 |
| **Legal Desc:** | |
| **Sale Price:** | $220,000 |
| **Loan Amount:** | $155,000 |
| **Contract Date:** | 11/09/1994 |
| **Document Type:** | |
| **Resale/New** | RE-SALE |
| **Construction:** | |
| **Lender:** | |

| Title Co: | |
|---|---|
| Situs Address: | 71 LOZIER RD BUDD LAKE, NJ 07828 |
| Sellers: | FROOT ARTHUR L & SHERRY H |
| Buyers: | NUNN MICHAEL J & JACQUELINE |
| Buyer Address: | 71 LOZIER RD BUDD LAKE, NJ 07828 |

## 28 GRANDVIEW AVE STOCKHOLM, NJ 07460

| | | | |
|---|---|---|---|
| Owner Name: | JOB ANNAMARIE | | |
| Assess State: | New Jersey | County: | MORRIS |
| Parcel Number: | 1400558000000015 | Type: | SFR |
| Short Legal Description: | | | |
| Document Number: | | Recorded Date: | 08/21/1998 |
| Situs Address: | 28 GRANDVIEW AVE STOCKHOLM, NJ 07460 -1902 | Book: | 004827 |
| Mailing Address: | 28 GRANDVIEW AVE STOCKHOLM, NJ 07460 -1902 | Page: | 000302 |
| Assessment Year: | | Tax Year: | 2004 |
| Assessed Land Value: | $24,500 | Market Land Value: | |
| Assessed Improvements: | $62,000 | Market Improvements | |
| Total Assessed Value: | $86,500 | Total Market Value: | |
| Most Recent Sale: | $108,000 | Prior Sale Price: | $70,000 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 1400558000000015 |
| Legal Desc: | |
| Sale Price: | |
| Loan Amount: | $87,000 |
| Contract Date: | 08/18/2004 |
| Document Type: | EQUITY OR CREDIT LINE |
| Lender: | WASHINGTON MUTUAL BK FA |
| Title Co: | |
| Situs Address: | 28 GRANDVIEW AVE STOCKHOLM, NJ 07460 |
| Buyers: | JOB ANNAMARIE |
| Buyer Address: | 28 GRANDVIEW AVE STOCKHOLM, NJ 07460 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 1400558000000015 |
| Legal Desc: | |
| Sale Price: | $108,000 |
| Loan Amount: | $86,000 |
| Contract Date: | 07/17/1998 |
| Document Type: | |
| Resale/New Construction: | RE-SALE |
| Lender: | FLEET MTG CORP |
| Title Co: | |
| Situs Address: | 28 GRANDVIEW AVE STOCKHOLM, NJ 07460 |
| Sellers: | WAY SHARON |
| Buyers: | JOB ANNAMARIE |
| Buyer Address: | 28 GRANDVIEW AVE STOCKHOLM, NJ 07460 |

## New Jersey Deed Transfer Records - County of: MORRIS

| | |
|---|---|
| Parcel Number: | 1400558000000015 |
| Legal Desc: | |
| Sale Price: | $70,000 |
| Loan Amount: | |
| Contract Date: | 04/1985 |
| Document Type: | |
| Resale/New | RE-SALE |

**Construction:**
**Lender:**
**Title Co:**
**Situs Address:**    28 GRANDVIEW AVE STOCKHOLM, NJ 07460
**Sellers:**    GRYWALSKI WILLIAM
**Buyers:**    WAY S
**Buyer Address:**

## New Jersey Deed Transfer Records - County of: MORRIS

**Parcel Number:**    1400558000000015
**Legal Desc:**
**Sale Price:**    $57,900
**Loan Amount:**    $49,500
**Contract Date:**    04/1980
**Document Type:**
**Resale/New**    RE-SALE
**Construction:**
**Lender:**
**Title Co:**
**Situs Address:**    28 GRANDVIEW AVE STOCKHOLM, NJ 07460
**Sellers:**    BOER ESTHER V
**Buyers:**    GRYWALSKI WILLIAM
**Buyer Address:**

**Possible Deed Transfers**    (1 Record)

## New Jersey Deed Transfer Records - County of: MORRIS

**Parcel Number:**
**Deed Type:**    TRUSTEE'S DEED (FORCLOSURE)
**Legal Desc:**
**Sale Price:**
**Loan Amount:**    $30,000
**Resale/New**
**Construction:**
**Contract Date:**    07/24/1996
**Lender:**    MERRILL LYNCH CREDIT CORP
**Title Co:**
**Situs Address:**
**Buyers:**    GRYWALSKI WILLIAM & DONNA /HW
**Buyer Address:**    77 LOZIER RD BUDD LAKE, NJ 07828

**Possible Real-Time Vehicle Registrations**    (2 Records)

***Notice*** Vehicles Registered to Last Name and Subject's Current Address
### 77 LOZIER RD BUDD LAKE, NJ 07828
VIN SERVICES REPORT FOR USE IN CONNECTION WITH LEGAL PROCEEDINGS IN FEDERAL, STATE, OR LOCAL COURT OR AGENCY

**Registered Owner:**    GRYWALSKI, DONNA & WILLIAM
**Vin:**    WBAEU33453PF58982
**Make Model:**    BMW 325XI    **Model Year:**    2003

**Registered Owner:**    GRYWALSKI, WILLIAM
**Vin:**    5N1ED28Y21C582548
**Make Model:**    NISSAN XTERRA    **Model Year:**    2001

**Possible Business Affiliations (includes Officer Name Match)**    (3 Records)

### 77 LOZIER RD BUDD LAKE, NJ 07828
The current status of New Jersey Corporations is unconfirmed. Further investigation is required for changes that may have occurred to date.

**FUNGUSFOCUS LIMITED LIABILITY COMPANY**

| | | | | |
|---|---|---|---|---|
| **Corp State:** NJ | **Corp Number:** | 0400024315 | **Status:** | ACTIVE - ACTIVE, ACCEPTED, CURRENT |
| **Affilation:** NAME (REGISTERED AGENT) | **ABI Number:** | | **ABI Phone:** | |

**Officer Name Match Only (NOT necessarily affiliated)**
**Matching Name: GRYWALSKI W**

**WAG ACQUISITION L.L.C.**

| | | | | |
|---|---|---|---|---|
| **Corp State:** NJ | **Corp Number:** | 0600188642 | **Status:** | ACTIVE - ACTIVE, ACCEPTED, CURRENT |
| **Affilation:** NAME (REGISTERED AGENT) | | | | |

**GEODE ELECTRONICS L.L.C.**

| | | | | |
|---|---|---|---|---|
| **Corp State:** FL | **Corp Number:** | L98000002431 | **Status:** | INACTIVE |
| **Affilation:** MEMBER/MANAGER | **ABI Number:** | | **ABI Phone:** | |

**Officer Name Match Only (NOT necessarily affiliated)**
**Matching Name: GRYWALSKI W**

**WAG ACQUISITION L.L.C.**

| | | | | |
|---|---|---|---|---|
| **Corp State:** NJ | **Corp Number:** | 0600188642 | **Status:** | ACTIVE - ACTIVE, ACCEPTED, CURRENT |
| **Affilation:** NAME (REGISTERED AGENT) | | | | |

**HOME MAINTENANCE NETWORK INCORPORATED**

| | | | | |
|---|---|---|---|---|
| **Corp State:** NJ | **Corp Number:** | 0100728309 | **Status:** | ACTIVE - ACTIVE, ACCEPTED, CURRENT |
| **Affilation:** NAME (REGISTERED AGENT) | **ABI Number:** | | **ABI Phone:** | |

**Officer Name Match Only (NOT necessarily affiliated)**
**Matching Name: GRYWALSKI W**

**WAG ACQUISITION L.L.C.**

| | | | | |
|---|---|---|---|---|
| **Corp State:** NJ | **Corp Number:** | 0600188642 | **Status:** | ACTIVE - ACTIVE, ACCEPTED, CURRENT |
| **Affilation:** NAME (REGISTERED AGENT) | | | | |

---

**\*\*\* Report section(s) with no matches:**

Possible Other Social Security Numbers Associated with Subject, Possible Driver Licenses, Possible High Risk Address, Possible Infractions, Possible Broward County Felonies and Misdemeanors, Possible Florida Sexual Predator, Possible Florida Felony/Probation/Parole, Possible Florida Concealed Weapon Permits, Possible Vehicles Registered at Subject's Addresses, Possible Florida Accidents, Possible Criminal Offenders, Possible Broward County Traffic Citations, Possible Florida Tangible Property, Possible Florida Insurance Agents, Possible Florida Unclaimed Property, Possible Watercraft, Possible Watercraft - USCG Documented Vessels, Possible Florida Boating Citations, Possible FAA Aircraft Registrations, Possible UCC Filings, Possible Bankruptcies, Liens and Judgments, Possible Dallas County Criminal Histories, Possible Texas State Criminal History, Possible Professional Licenses, Possible FAA Pilot Licenses, Possible Marine Radio Licenses, Possible Florida Salt Water Product Licenses, Possible DEA Controlled Substance Licenses, Possible Florida Securities Dealer Registrations, Possible Florida Day Care Licenses, Possible Florida Department of Education, Possible Florida Banking and Finance Licenses, Possible Florida Handicap Parking Permits, Possible Florida Tobacco License, Possible Florida Beverage License, Possible Florida Money Transmitter Licenses, Possible Hunting and Fishing Licenses, Possible Texas Beverage Licenses, Possible U.S. Military Personnel, Possible Federal Firearms and Explosives License, Possible Oregon Beverage License, Possible Fictitious Business Names (DBA), Possible Significant Shareholders, Possible Trademarks/Service Marks, Possible Texas Trademark Registrations, Possible Florida Hotels and Restaurants, Possible Florida Worker's Compensation Claims

*Some data provided by infoUSA®, Copyright© 2005, All Rights Reserved

*Due to privacy regulations instituted by individual states, Vehicle and Watercraft data from all states may not be available.

* Option Control Number:NNNN-NATCOMP *

* BOBWPSS412/10 31721641 *

* expGate *

**\* \* \* END OF REPORT \* \* \***

 **United States Patent and Trademark Office**

Home|Site Index|Search|Guides|Contacts|eBusiness|eBiz alerts|News|Help



## Assignments on the Web > Patent Query

# Patent Assignment Abstract of Title

***NOTE:Results display only for issued patents and published applications. For
pending or abandoned applications please consult USPTO staff.***

**Total Assignments: 9**
    **Patent #:** 6766376    **Issue Dt:** 07/20/2004    **Application #:** 09819337    **Filing Dt:** 03/28/2001
  **Publication #:** US20020143973    **Pub Dt:** 10/03/2002
     **Inventor:** Harold Edward Price
       **Title:** STREAMING MEDIA BUFFERING SYSTEM

**Assignment: 1**
   **Reel/Frame:** 011656/0347      **Recorded:** 03/28/2001         **Pages:** 3
  **Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
    **Assignor:** PRICE, HAROLD EDWARD         **Exec Dt:** 03/24/2001
   **Assignee:** SURFERNETWORK.COM, INC.
         SUITE 155
         500 INTERNATIONAL DRIVE
         MOUNT OLIVE, NEW JERSEY 07828
 **Correspondent:** ERNEST D. BUFF & ASSOCIATES, LLC
         ERNEST D. BUFF
         245 SOUTH STREET
         MORRISTOWN, NJ 07960

**Assignment: 2**
   **Reel/Frame:** 011862/0589      **Recorded:** 06/06/2001         **Pages:** 4
  **Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
    **Assignor:** GEODE ELECTRONICS, L.L.C.       **Exec Dt:** 06/01/2001
   **Assignee:** SURFERNETWORK.COM, INC.
         SUITE 155
         500 INTERNATIONAL DRIVE
         MOUNT OLIVE, NEW JERSEY 07828
 **Correspondent:** ERNEST D. BUFF & ASSOCIATES, LLC
         ERNEST D. BUFF
         245 SOUTH STREET
         MORRISTOWN, NJ 07960

**Assignment: 3**
   **Reel/Frame:** 012177/0215      **Recorded:** 09/19/2001         **Pages:** 3
  **Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
    **Assignor:** SURFERNETWORK.COM, INC.       **Exec Dt:** 08/08/2001
   **Assignee:** SN ACQUISITION, L.L.C.
         SUITE 155
         500 INTERNATIONAL DRIVE

**EXHIBIT 4**

MOUNT OLIVE, NEW JERSEY 07828

**Correspondent:** ERNEST D. BUFF & ASSOCIATES, LLC
ERNEST D. BUFF
245 SOUTH STREET
MORRISTOWN, NJ 07960

**Assignment: 4**

**Reel/Frame:** 016050/0831      **Recorded:** 05/24/2005      **Pages:** 5

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** SN ACQUISITION, LLC      **Exec Dt:** 12/15/2004

**Assignee:** WAG ACQUISITION, L.L.C.
3 GOLDMINE ROAD
FLANDERS, NEW JERSEY 07836

**Correspondent:** ERNEST D. BUFF
231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

**Assignment: 5**

**Reel/Frame:** 016172/0158      **Recorded:** 04/27/2005      **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** SN ACQUISITION, L.L.C.      **Exec Dt:** 12/15/2004

**Assignee:** WAGA ACQUISITION, L.L.C.
3 GOLDMINE ROAD
FLANDERS, NEW JERSEY 07836

**Correspondent:** ERNEST D. BUGFF
ERNEST D. BUFF & ASSOCIATES, LLC
231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

**Assignment: 6**

**Reel/Frame:** 016427/0634      **Recorded:** 04/06/2005      **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** SN ACQUISITION, L.L.C.      **Exec Dt:** 12/15/2004

**Assignee:** WAG ACQUISITION, L.L.C.
3 GOLDMINE ROAD
FLANDERS, NEW JERSEY 07836

**Correspondent:** ERNEST D. BUFF
ERNEST D. BUFF & ASSOCIATES, LLC
231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

**Assignment: 7**

**Reel/Frame:** 016438/0635      **Recorded:** 04/06/2005      **Pages:** 8

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** SN ACQUISITION, L.L.C.      **Exec Dt:** 12/15/2004

**Assignee:** WAG ACQUISITION, L.L.C.
3 GOLDMINE ROAD
FLANDERS, NEW JERSEY 07836

**Correspondent:** ERNEST D. BUFF
ERNEST D. BUFF & ASSOCIATES, LLC

231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

**Assignment: 8**

**Reel/Frame:** 016438/0643      **Recorded:** 04/06/2005      **Pages:** 7

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** SN ACQUISITION, L.L.C.      **Exec Dt:** 12/15/2004

**Assignee:** WAG ACQUISITION, L.L.C.
3 GOLDMINE ROAD
FLANDERS, NEW JERSEY 07836

**Correspondent:** ERNEST D. BUFF
ERNEST D. BUFF & ASSOCIATES, LLC
231 SOMERVILLE ROAD
BEDMINSTER, NJ 07921

**Assignment: 9**

**Reel/Frame:** 016438/0650      **Recorded:** 04/06/2005      **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** SN ACQUISITION, L.L.C.      **Exec Dt:** 12/15/2004

**Assignee:** WAG ACQUISITION, L.L.C.
3 GOLDMINE ROAD
FLANDERS, NEW JERSEY 07836

**Correspondent:** ERNEST D. BUFF
ERNEST D. BUFF & ASSOCIATES, LLC
231 SOMERVILLE ROAD
BEDMINSTER, NEW JERSEY 07921

Search Results as of: 04/18/2007 05:59 PM
If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350.
Web interface last modified: February 22, 2007 v.2.0

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

http://assignments.uspto.gov/assignments/q?db=pat&qt=pat&reel=&frame=&pat=6766376&pub=&asnr=...   4/18/2007

2 of 5 DOCUMENTS

Copyright 2007 Netvention Inc., All Rights Reserved
Netvention Company Profiles

January 2, 2007

SURFERNETWORK

3 GOLD MINE RD
FLANDERS, NJ 07836
UNITED STATES

\* \* \* \* \* \* \* \* \* **COMMUNICATIONS** \* \* \* \* \* \* \* \* \* \*
**TELEPHONE:** 1 973 691 7420
**FAX:** 1 973 691 7427
**URL:** http://www.surfernetwork.com

\* \* \* \* \* \* \* \* \* \* **EXECUTIVES** \* \* \* \* \* \* \* \* \* \*
**CONTACT:**
BILL GRYWALSKI, PRESIDENT AND CO-FOUNDER OF SURFERNETWORK

\* \* \* \* \* \* \* \* \* \* **DESCRIPTION** \* \* \* \* \* \* \* \* \* \*
webcast service provider of online radio stations and audio and video streaming broadcasts for music, talk, sports, news, start your own internet radio station
Bringing you radio stations across the Internet with an FM quality listening experience through the site's own music player.
**INDUSTRY TYPE:** Arts
Radio
Internet
Directories

\* \* \* \* \* \* \* \* \* \* **WEB SITE DETAILS** \* \* \* \* \* \* \* \* \* \*
**WEB SITE SIZE LEVEL:** Medium (21-125 pages)
**WEB SITE POPULARITY LEVEL:** Medium (20-100 referral sites)
**LAST UPDATE:** January 29, 2006

**LOAD-DATE:** January 2, 2007

**EXHIBIT 5**

# D&B Comprehensive Report

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 001092728L

ATTN: **099908/00095**                                  Report Printed: APR 05 2007

## Overview

**BUSINESS SUMMARY**

**SURFERNETWORK.COM, INC.**
  (SUBSIDIARY OF SURFER NETWORK LLC, BUDD LAKE, NJ)
**500 International Drive Ste 155**
**(mount Olive)**
**Budd Lake, NJ 07828**

**D&B D-U-N-S Number:**    84-394-4369

**Rating Change**

Our information indicates this business is no longer active at this location. If you have reason to believe this business is currently operating, please call our Customer Service Center at the phone number listed below to request an investigation.

This is a **single (subsidiary)** location.

| | |
|---|---|
| **Web site:** | www.broadcastamerica.net |
| **Telephone:** | NONE |
| **Chief executive:** | GORDON BRIDGE, CHB-CEO |
| **Management control:** | 1999 |
| **Employs:** | 15 |
| **History:** | INCOMPLETE |
| **SIC:** | 4813 |

**Line of business:** Internet streaming media company

**Credit Score Class:  0**

This business's credit score of 0 means it is in open bankruptcy, has discontinued operating at this location or cannot be scored.

**Financial Stress Class:  0**

This business's financial stress score of 0 means it is in open bankruptcy, has discontinued operating at this location or cannot be scored.

| **D&B Rating:** | **NQ** |
|---|---|
| | Formerly 1R4 |

### CREDIT CAPACITY SUMMARY

**D&B Rating:NQ**

The NQ rating stands for Not Quoted. This is generally assigned when a business has been confirmed as no longer active at the location, or when D&B is unable to confirm active operations. It may also appear on some branch reports, when the branch is located in the same city as the headquarters. For more information, see the D&B Rating Key.

**# of Employees Total:**                              15

### SPECIAL EVENTS

**EXHIBIT 6**

10/04/2002

On October 4, 2002, William Grywalski, COO, stated that in, July of 2001, SN Acquisitions, LLC, DUNS #92-678-

6476, acquired all of the assets of the subject. The subject is no longer an operating entity. All operations have been assumed by SN Acquisition LLC..

Jump to:

Overview | Payments | Public Filings | History & Operations | Banking & Finance

# Scores

## FINANCIAL STRESS SUMMARY

Based on information in D&B's data files, the FINANCIAL STRESS CLASS for this business is 0. This means the company is either OPEN BANKRUPTCY, DISCONTINUED OPERATING AT THIS LOCATION, or cannot be scored. See SPECIAL EVENTS for details.

Financial Stress Norms are provided in the next section to support your analysis of other accounts you may have with similar demographic characteristics as the subject company.

You may also wish to order full reports on these firms for a more thorough review of their risk profile.

There are no financial stress comments for this case.

| Norms | National % |
|---|---|
| This Business | N/A |
| Region:<br>**MIDDLE ATLANTIC** | 50 |
| Industry:<br>**INFRASTRUCTURE** | 49 |
| Employee Range:<br>**10-19** | 63 |
| Years in Business:<br>**6-10** | 37 |

**Notes:**

- Financial Stress statistics are derived using D&B's Stress Model. This model uses mathematical probabilities to determine the likelihood of a business experiencing financial stress within a twelve month period. Companies experiencing financial stress are those that terminate operations without paying all creditors in full, or reorganize or obtain relief from creditors under state or federal law.
- Based on 2004 failure statistics.
- Percentiles are based on a 100 point scale.
- The National Percentile reflects the relative ranking of a company among all scorable companies in D&B's file.

## CREDIT SCORE CLASS SUMMARY

Based on information in D&B's data files, the CREDIT SCORE CLASS for this business is 0. This means the company is either OPEN BANKRUPTCY, DISCONTINUED OPERATING AT THIS LOCATION, or cannot be scored. See SPECIAL EVENTS for details.

Credit Score Norms are provided in the next section to support your analysis of other accounts you may have with similar demographic characteristics as the subject company.

You may also wish to order full reports on these firms for a more thorough review of their risk profile.

There are no credit score comments for this case.

| Norms | National % |
|---|---|
| This Business | N/A |
| Region: **MIDDLE ATLANTIC** | 47 |
| Industry: **INFRASTRUCTURE** | 42 |
| Employee Range: **10-19** | 66 |
| Years in Business: **6-10** | 54 |

**Notes:**

- Credit Score predicts the likelihood of a firm paying in a severely delinquent manner (90+ Days Past Terms) over the next twelve months. It was calculated using statistically valid models and the most recent payment information in D&B's files.
- Percentiles are based on a 100 point scale.
- The percentile ranks a firm relative to other businesses. For example, a typical company located in a specific geographic region that is in the 80th percentile nationwide is a better risk than 79% of the total population of scored companies in D&B's files.

**Jump to:**

Overview    |    Scores    |    Public Filings    |    History & Operations    |    Banking & Finance

# Payments

### PAYMENTS

D&B has not received a sufficient sample of payment experiences to establish a PAYDEX score.

D&B receives nearly 400 million payment experiences each year. We enter these new and updated experiences into D&B Reports as this information is received. At this time, none of those experiences relate to this company.

**Jump to:**

Overview    |    Scores    |    Payments    |    History & Operations    |    Banking & Finance

# Public Filings

### PUBLIC FILINGS

The following data includes both open and closed filings found in D&B's database on the subject company.

| Record Type | # of Records | Most Recent Filing Date |
|---|---|---|
| Bankruptcy Proceedings | 0 | |
| Judgments | 1 | 12/06/2001 |
| Liens | 0 | – |
| Suits | 0 | – |
| UCC's | 4 | 08/03/2001 |

The following Public Filing data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

## JUDGMENTS

| | |
|---|---|
| **Judgment award:** | **$177,183** |
| **Status:** | **Unsatisfied** |
| **CASE NO.:** | 2001018903 |
| **Judgment type:** | Default judgment |
| **Against:** | SURFERNETWORK COM INC |
| **In favor of:** | SUNRISE LEASING CORPORATION SUNRISE INTERNATOINAL LEASING CORPORATION |
| **Where filed:** | HENNEPIN COUNTY DISTRICT COURT, MINNEAPOLIS, MN |
| **Date status attained:** | 12/06/2001 |
| **Date entered:** | 12/06/2001 |
| **Latest Info Collected:** | 03/15/2002 |

## UCC FILINGS

| | |
|---|---|
| **Collateral:** | Inventory including proceeds and products - Accounts receivable including proceeds and products - Account(s) including proceeds and products - Computer equipment including proceeds and products - and OTHERS |
| **Type:** | Original |
| **Sec. party:** | LANDMESSER, ROBERT MR., VERO BEACH, FL |
| **Debtor:** | SURFERNETWORK.COM, INC. |
| **Filing number:** | 1076993 0 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, DOVER, DE |
| **Date filed:** | 08/03/2001 |
| **Latest Info Received:** | 08/16/2001 |

| | |
|---|---|
| **Collateral:** | Inventory including proceeds and products - Accounts receivable including proceeds and products - Account(s) including proceeds and products - Computer equipment including proceeds and products - and OTHERS |
| **Type:** | Original |
| **Sec. party:** | ROBERT W. LANDMESSER, VERO BEACH, FL |
| **Debtor:** | SURFERNETWORK.COM, INC. |
| **Filing number:** | 2052098 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, TRENTON, NJ |
| **Date filed:** | 06/27/2001 |
| **Latest Info Received:** | 08/08/2001 |

| | |
|---|---|
| **Collateral:** | Leased Computer equipment and proceeds - Leased Equipment and proceeds |
| **Type:** | Original |
| **Sec. party:** | SUNRISE LEASING CORPORATION, GOLDEN VALLEY, MN |
| **Debtor:** | SURFERNETWORK.COM, INC. |
| **Filing number:** | 2019158 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, TRENTON, NJ |
| **Date filed:** | 01/17/2001 |
| **Latest Info Received:** | 02/12/2001 |

| | |
|---|---|
| **Collateral:** | Leased Communications equipment and proceeds - Leased Computer equipment and proceeds - Leased Equipment and proceeds |
| **Type:** | Original |
| **Sec. party:** | HEWLETT-PACKARD COMPANY FINANCE & REMARKETING DIVISION, ATLANTA, GA |
| **Debtor:** | SURFERNETWORK.COM, INC. |
| **Filing number:** | 1997942 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, TRENTON, NJ |
| **Date filed:** | 08/30/2000 |
| **Latest Info Received:** | 10/11/2000 |

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed.

**Jump to:**

Overview    |    Scores    |    Payments    |    Public Filings    |    Banking & Finance

# History & Operations

## HISTORY & OPERATIONS

D&B has researched this company and found no information available at this time.

**Jump to:**

Overview    |    Scores    |    Payments    |    Public Filings    |    History & Operations

# Banking & Finance

## BANKING & FINANCE

D&B has researched this company and found no information available at this time.

## CUSTOMER SERVICE

If you have questions about this report, please call our Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. If you are outside the U.S. contact your local D&B office.

*** Additional Decision Support Available ***

Additional D&B products, monitoring services and specialized investigations are available to help you evaluate this company or its industry. Call Dun & Bradstreet's Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. or visit our website at www.dnb.com.

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 001092728L

# D&B Comprehensive Report

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 001092728L

ATTN: **099908/00095**

Report Printed: APR 05 2007

# Overview

### BUSINESS SUMMARY

**SN AQUISITIONS LLC**
  SURFER NETWORK
**3 Goldmine Rd**
**Flanders, NJ 07836**

**D&B D-U-N-S Number:**   92-678-6476

### Rating Change

This is a **headquarters** location.
Branch(es) or division(s) exist.

| | |
|---|---|
| **Web site:** | www.broadcastamerica.net |
| **Telephone:** | 973 691-7420 |
| **Manager:** | WILLIAM GRYWALSKI, MEMBER |
| **Year started:** | 1998 |
| **Employs:** | 2 (undetermined here) |
| **Sales E:** | $300,000 |
| **History:** | CLEAR |
| **SIC:** | 8742 |
| | 8731 |
| **Line of business:** | Management consulting services/commercial physical research |

**Credit Score Class:  3**
Moderate risk of severe payment delinquency over next 12 months

**Financial Stress Class:  2**
Moderate risk of severe financial stress over the next 12 months

**12-Month D&B PAYDEX®: 78**
When weighted by dollar amount, payments to suppliers average 3 days beyond terms.

| **D&B Rating:** | **2R3** |
|---|---|
| | Formerly |
| | 2R4 |
| **Number of employees:** | 2R is **1 to 9** employees. |
| **Composite credit appraisal:** | 3 is **fair.** |

### EXECUTIVE SUMMARY

The **Financial Stress Class of 2** for this company shows that firms with this classification had a failure rate of 4.9% (490 per 10,000), which is 1.88 times higher than the average of businesses in D&B's database.

The **Credit Score class of 3** for this company shows that 14.3% of firms with this classification paid one or more bills severely delinquent, which is lower than the average of businesses in D&B's database.

| Predictive Scores | This Business | Comments |
|---|---|---|
| **Financial Stress Class** | 2 | Failure Rate 1.88 times higher than the average of businesses in D&B's database. |
| **Financial Stress Score** | 1311 | Highest Risk: 1,001; Lowest Risk: 1,875 |
| **Credit Score Class** | 3 | Probability of Severely Delinquent Payment is lower than the average of businesses in D&B's database. |
| **Credit Score** | 458 | Highest Risk: 101; Lowest Risk: 670 |

**EXHIBIT 7**

**Other Key Indicators**

| | | |
|---|---|---|
| **PAYDEX Scores** | 3 days beyond terms | Pays more slowly than the average for its industry of generally within terms |
| **Industry Median** | generally within terms | |
| **Present management control** | 9 years | |
| **UCC Filings** | UCC filing(s) are reported for this business | |
| **Public Filings** | Evidence of open suits only in the D&B database | |
| **History** | Is clear | |
| **Special Events** | Are reported for this business | |

### CREDIT CAPACITY SUMMARY

**D&B Rating:**      **2R3**
    **Number of employees:**    2R indicates **1 to 9** employees.
    **Composite credit appraisal:** 3 is **fair**.

The 1R and 2R ratings categories reflect company size based on the total number of employees for the business. They are assigned to business files that do not contain a current financial statement. In 1R and 2R Ratings, the 2, 3, or 4 creditworthiness indicator is based on analysis by D&B of public filings, trade payments, business age and other important factors. 2 is the highest Composite Credit Appraisal a company not supplying D&B with current financial information can receive. For more information, see the D&B Rating Key.

| | | | |
|---|---|---|---|
| **Sales:** | $300,000 | **Payment Activity:** | |
| **# of Employees Total:** | 2 (undetermined here) | (based on 4 experiences) | |
| | | **Average High Credit:** | $116 |
| | | **Highest Credit:** | $250 |
| | | **Total Highest Credit:** | $350 |

### SPECIAL EVENTS

04/03/2006
A Rating change has occurred on this company.

---

**Jump to:**

Overview   |   Payments   |   Public Filings   |   History & Operations   |   Banking & Finance

# Scores

### FINANCIAL STRESS SUMMARY

The Financial Stress Summary Model predicts the likelihood of a firm ceasing business without paying all creditors in full, or reorganization or obtaining relief from creditors under state/federal law over the next 12 months. Scores were calculated using a statistically valid model derived from D&B's extensive data files.

### Financial Stress Class: 2

Moderate risk of severe financial stress, such as a bankruptcy, over the next 12 months.

### Incidence of Financial Stress

Among Businesses with this Class:     4.90% (490 per 10,000)
Average of Businesses in D&B's Database: 2.60% (260 per 10,000)

**Financial Stress National Percentile: 19** (Highest Risk: 1; Lowest Risk: 100)

**Financial Stress Score: 1311** (Highest Risk: 1,001; Lowest Risk: 1,875)

The Financial Stress Score of this business is based on the following factors:

- Evidence of open suit(s) in D&B database.
- 7% of trade dollars indicate slow payment(s) are present.

**Notes:**

- The Financial Stress Class indicates that this firm shares some of the same business and financial characteristics of other companies with this classification. It does not mean the firm will necessarily experience financial stress.
- The Incidence of Financial Stress shows the percentage of firms in a given Class that discontinued operations with loss to creditors. The Average Incidence of Financial Stress is based on businesses in D&B's database and is provided for comparative purposes.
- The Financial Stress National Percentile reflects the relative ranking of a company among all scorable companies in D&B's file.
- The Financial Stress Score offers a more precise measure of the level of risk than the Class and Percentile. It is especially helpful to customers using a scorecard approach to determining overall business performance.
- All Financial Stress Class, Percentile, Score and Incidence statistics are based on sample data from 2004.

| Norms | National % |
|---|---|
| This Business | 19 |
| Region: **MIDDLE ATLANTIC** | 50 |
| Industry: **BUSINESS, LEGAL AND ENGINEERING SERVICES** | 52 |
| Employee Range: **1-9** | 38 |
| Years in Business: **6-10** | 37 |

This business has a Financial Stress Percentile that shows:

- Higher risk than other companies in the same region.
- Higher risk than other companies in the same industry.
- Higher risk than other companies in the same employee size range.
- Higher risk than other companies with a comparable number of years in business.

**CREDIT SCORE CLASS SUMMARY**

The Credit Score Class predicts the likelihood of a firm paying in a severely delinquent manner (90+ Days Past Terms) over the next twelve months. It was calculated using statistically valid models and the most recent payment information in D&B's files.

**Credit Score Class: 3**
Moderate risk of severe payment delinquency over next 12 months.

**Incidence of Delinquent Payment**

Among Companies with this Class:            14.30%
Average Compared to Businesses in D&B's Database: 20.10%

**Credit Score Percentile: 53** (Highest Risk: 1; Lowest Risk: 100)

**Credit Score: 458** (Highest Risk: 101; Lowest Risk: 670)

The Credit Score of this business is based on the following factors:

- 7% of trade dollars indicate slow payment(s) are present.
- Evidence of open suit(s) in D&B database.

**Notes:**

- The Credit Score Class indicates that this firm shares some of the same business and payment characteristics of other companies with this classification. It does not mean the firm will necessarily experience delinquency.
- The Incidence of Delinquent Payment is the percentage of companies with this classification that were reported 90 days past due or more by creditors. The calculation of this value is based on an inquiry weighted sample.
- The Percentile ranks this firm relative to other businesses. For example, a firm in the 80th percentile has a lower risk of paying in a severely delinquent manner than 79% of all scorable companies in D&B's files.
- The Credit Score offers a more precise measure of the level of risk than the Class and Percentile. It is especially helpful to customers using a scorecard approach to determining overall business performance.
- All Credit Class, Percentile, Score and Incidence statistics are based on sample data from 2004.

| Norms | National % |
|---|---|
| This Business | 53 |
| Region:<br>**MIDDLE ATLANTIC** | 47 |
| Industry:<br>**BUSINESS, LEGAL AND ENGINEERING SERVICES** | 49 |
| Employee Range:<br>**1-9** | 58 |
| Years in Business:<br>**6-10** | 54 |

This business has a Credit Score Percentile that shows:

- Lower risk than other companies in the same region.
- Lower risk than other companies in the same industry.
- Higher risk than other companies in the same employee size range.
- Higher risk than other companies with a comparable number of years in business.

**Jump to:**

Overview   |   Scores   |   Public Filings   |   History & Operations   |   Banking & Finance

# Payments

**PAYMENT TRENDS**

| Total Payment Experiences in D&B's File: 4 | | Current PAYDEX is: | **78** | equal to 3 days beyond terms |
|---|---|---|---|---|

**Payments Within Terms:** 85%
(not dollar weighted)

**Total Placed For Collection:** 0

**Average Highest Credit:** $116

**Largest High Credit:** $250

**Highest Now Owing:** $250

**Highest Past Due:** $0

**Current PAYDEX is:** **78** equal to 3 days beyond terms

**Industry Median is:** **80** equal to generally within terms

**Payment Trend currently is:** **unchanged,** compared to payments three months ago

Indications of slowness can be the result of dispute over merchandise, skipped invoices, etc. Accounts are sometimes placed for collection even though the existence or amount of the debt is disputed.

---

**PAYDEX Scores**

Shows the D&B PAYDEX scores as calculated on the most recent 3 months and 12 months of payment experiences.

The D&B PAYDEX is a unique, dollar weighted indicator of payment performance based on up to payment experiences as reported to D&B by trade references. A detailed explanation of how to read and interpret PAYDEX scores can be found at the end of this report.

| 12-Month D&B PAYDEX: **78** |
|---|
| When weighted by dollar amount, payments to suppliers average 3 days beyond terms. |

Based on payments collected over last 12 months.

---

**PAYDEX Yearly Trend**

**12 Month PAYDEX Scores Comparison to Industry**

| | 5/06 | 6/06 | 7/06 | 8/06 | 9/06 | 10/06 | 11/06 | 12/06 | 1/07 | 2/07 | 3/07 | 4/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **This Business** | UN | UN | UN | UN | UN | UN | 75 | 76 | 76 | 78 | 78 | 78 |
| **Industry Quartiles** | | | | | | | | | | | | |
| Upper | | 80 | | | 80 | | | 80 | | | 80 | |
| Median | | 80 | | | 80 | | | 80 | | | 79 | |
| Lower | | 71 | | | 72 | | | 72 | | | 71 | |

- Current PAYDEX for this Business is 78, or equal to 3 days beyond terms
- The 12-month high is **78**, or equal to 3 days beyond terms
- The 12-month low is **unavailable**

---

**PAYDEX Comparison to Industry**

Shows PAYDEX scores of this Business compared to the Primary Industry from each of the last four quarters. The Primary Industry is Management consulting services/commercial physical research, based on SIC code 8742.

## Quarterly PAYDEX Scores Comparison to Industry

Previous Year

|  | 3/05 | 6/05 | 9/05 | 12/05 |
|---|---|---|---|---|
| **This Business** | UN | UN | 63 | 62 |
| **Industry Quartiles** | | | | |
| Upper | 80 | 80 | 80 | 80 |
| Median | 79 | 79 | 79 | 79 |
| Lower | 70 | 70 | 70 | 70 |

Current Year

|  | 3/06 | 6/06 | 9/06 | 12/06 |
|---|---|---|---|---|
| **This Business** | UN | UN | UN | 76 |
| **Industry Quartiles** | | | | |
| Upper | 80 | 80 | 80 | 80 |
| Median | 79 | 80 | 80 | 80 |
| Lower | 71 | 71 | 72 | 72 |

- Current **PAYDEX** for this Business is **78**, or equal to 3 days beyond terms
- The present industry **median score** is **80**, or equal to generally within terms.

- Industry upper quartile represents the performance of the payers in the 75th percentile
- Industry lower quartile represents the performance of the payers in the 25th percentile

### Payment Habits

For all payment experiences within a given amount of credit extended, shows the percent that this Business paid within terms. Provides number of experiences used to calculate the percentage, and the total dollar value of the credit extended.

### Dollar Range Comparisons:

| $ Credit Extended | # Payment Experiences | $ Total Dollar Amount | % of Payments Within Terms |
|---|---|---|---|
| OVER $100,000 | 0 | $0 | 0 |
| $50,000 - 99,999 | 0 | $0 | 0 |
| $15,000 - 49,999 | 0 | $0 | 0 |
| $5,000 - 14,999 | 0 | $0 | 0 |
| $1,000 - 4,999 | 0 | $0 | 0 |
| Under $1,000 | 3 | $350 | 93 |

Payment experiences reflect how bills are met in relation to the terms granted. In some instances, payment beyond terms can be the result of disputes over merchandise, skipped invoices, etc.

### PAYMENT SUMMARY

The Payment Summary section reflects payment information in D&B's file as of the date of this report.

There are 4 payment experiences in D&B's file for the most recent 12 months, with 3 experiences reported during the last three month period.

Below is an overview of the company's dollar-weighted payments, segmented by its suppliers' primary industries:

| | Total Rcv'd (#) | Total Dollar Amts ($) | Largest High Credit ($) | Within Terms (%) | Days Slow <31 | 31-60 | 61-90 | 90> |
|---|---|---|---|---|---|---|---|---|
| **Top industries:** | | | | | | | | |
| Misc business service | 1 | 250 | 250 | 100 | 0 | 0 | 0 | 0 |
| Short-trm busn credit | 1 | 50 | 50 | 50 | 50 | 0 | 0 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Misc general gov't | 1 | 50 | 50 | 100 | 0 | 0 | 0 | 0 |
| **Other payment categories:** | | | | | | | | |
| Cash experiences | 1 | 0 | 0 | | | | | |
| Payment record unknown | 0 | 0 | 0 | | | | | |
| Unfavorable comments | 0 | 0 | 0 | | | | | |
| **Placed for collections:** | | | | | | | | |
| With D&B | 0 | 0 | 0 | | | | | |
| Other | 0 | N/A | 0 | | | | | |
| Total in D&B's file | 4 | | 250 | | | | | |

The highest **Now Owes** on file is $250 The highest **Past Due** on file is $0

Accounts are sometimes placed for collection even though the existence or amount of the debt is disputed. Indications of slowness can be result of dispute over merchandise, skipped invoices, etc.

### PAYMENT DETAILS

#### Detailed payment history

| Date Reported (mm/yy) | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|
| 02/07 | Ppt | 250 | 250 | 0 | | 1 mo |
| | Ppt-Slow 30 | 50 | 50 | 0 | | 1 mo |
| | (003) | 0 | 0 | 0 | Cash account | 6-12 mos |
| 06/06 | Ppt | 50 | | | | 1 mo |

**Payments Detail Key:** red = 30 or more days beyond terms
Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.

---

**Jump to:**

Overview    |    Scores    |    Payments    |    History & Operations    |    Banking & Finance

## Public Filings

### PUBLIC FILINGS

The following data includes both open and closed filings found in D&B's database on the subject company.

| Record Type | # of Records | Most Recent Filing Date |
|---|---|---|
| **Bankruptcy Proceedings** | 0 | - |
| **Judgments** | 0 | - |
| **Liens** | 0 | - |
| **Suits** | 1 | 03/15/2002 |
| **UCC's** | 1 | 10/18/1999 |

The following Public Filing data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

#### SUITS

Suit amount:      **$49,078**

| Status: | **Pending** |
|---|---|
| DOCKET NO.: | L 000890 02 |
| Plaintiff: | CIT COMMUNICATIONS FINANCE COR |
| Defendant: | SURFER NETWORK AND OTHERS |
| Cause: | CONTRACT |
| Where filed: | MORRIS COUNTY SUPERIOR COURT, MORRISTOWN, NJ |

| | |
|---|---|
| Date status attained: | 03/15/2002 |
| Date filed: | 03/15/2002 |
| Latest Info Received: | 06/25/2002 |

If it is indicated that there are defendants other than the report subject, the lawsuit may be an action to clear title to property and does not necessarily imply a claim for money against the subject.

### UCC FILINGS

| Collateral: | Inventory including proceeds and products - Accounts receivable including proceeds and products - Account(s) including proceeds and products - Computer equipment including proceeds and products - and OTHERS |
|---|---|
| Type: | Original |
| Sec. party: | ROBERT W. LANDMESSER, VERO BEACH, FL |
| Debtor: | GEODE ELECTRONICS, L.L.C. |
| Filing number: | 1936287 |
| Filed with: | SECRETARY OF STATE/UCC DIVISION, TRENTON, NJ |

| | |
|---|---|
| Date filed: | 10/18/1999 |
| Latest Info Received: | 11/22/1999 |

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed.

### GOVERNMENT ACTIVITY

**Activity summary**

| | |
|---|---|
| Borrower (Dir/Guar): | NO |
| Administrative debt: | NO |
| Contractor: | NO |
| Grantee: | NO |
| Party excluded from federal program(s): | NO |

**Possible candidate for socio-economic program consideration**

| | |
|---|---|
| Labor surplus area: | N/A |
| Small Business: | YES (2007) |
| 8(A) firm: | N/A |

The details provided in the Government Activity section are as reported to Dun & Bradstreet by the federal government and other sources.

---

**Jump to:**

Overview | Scores | Payments | Public Filings | Banking & Finance

## History & Operations

### HISTORY

The following information was reported **10/14/2005**:

**Officer(s):**     WILLIAM GRYWALSKI, MEMBER

              THE OFFICER(S)

The business is registered as a limited liability company in the state of New Jersey as of October 26, 1998.

Ownership information provided verbally by Kim Hopkins, Bookeeping, on Sep 26 2003.

Business started 1998 by the co-founders.

WILLIAM GRYWALSKI. 1998-present active here.

On, October 4, 2002, William Grywalski, President, Stated that in July of 2001, SN Aquisitions, LLC aquired all of the assets of Surfernetwork.com, Inc. Subject has assumed the operations of the aquired company.

Business address has changed from 500 International Dr Ste 155, Budd Lake, NJ, 07828 to 3 Goldmine Rd, Flanders, NJ, 07836.

### OPERATIONS

10/14/2005

**Description:** Provides management consulting services, specializing in business planning or organizing services (100%). Engaged in commercial physical research, specializing in electronic research.

Has 50 account(s). Net 30 days. Sells to radio manufacturers. Territory : International.

**Employees:** 2 which includes partners and 1 part-time. undetermined employed here.

**Facilities:** Rents 1,000 sq. ft. in a one story steel building.

**Location:** Industrial section on well traveled highway.

**Subsidiaries:** This business has one subsidiary listed below.

The extent of ownership where known, is shown in parenthesis following company name:

Surfernetwork.com Inc (97%) chartered 1999. Operates as an Internet streaming media company.

### SIC & NAICS

**SIC:**
Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.

The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

| | |
|---|---|
| 87420500 | Business planning and organizing services |
| 87319901 | Electronic research |

**NAICS:**

| | |
|---|---|
| 541618 | Other Management Consulting Services |
| | Research and Development in the |
| 541710 | Physical, Engineering, and Life Scienceses |

---

**Jump to:**

Overview | Scores | Payments | Public Filings | History & Operations

# Banking & Finance

**KEY BUSINESS RATIOS**

D&B has been unable to obtain sufficient financial information from this company to calculate business ratios. Our check of additional outside sources also found no information available on its financial performance.
To help you in this instance, ratios for other firms in the same industry are provided below to support your analysis of this business.

**Based on this number of establishments:** 27

### Industry Norms based on 27 establishments

|  | This Business | Industry Median | Industry Quartile |
|---|---|---|---|
| **Profitability** |  |  |  |
| **Return on Sales** | UN | 2.7 | UN |
| **Return on Net Worth** | UN | 18.0 | UN |
| **Short-Term Solvency** |  |  |  |
| **Current Ratio** | UN | 1.7 | UN |
| **Quick Ratio** | UN | 1.4 | UN |
| **Efficiency** |  |  |  |
| **Assets Sales** | UN | 33.6 | UN |
| **Sales / Net Working Capital** | UN | 7.1 | UN |
| **Utilization** |  |  |  |
| **Total Liabs / Net Worth** | UN | 147.6 | UN |

UN = Unavailable

 **FINANCE**

**10/14/2005**

Accountant: David Fischer & Company PA CPAs, Morristown, NJ.

Sources contacted verified information on September 30, 2005.

 **CUSTOMER SERVICE**

If you have questions about this report, please call our Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. If you are outside the U.S. contact your local D&B office.

*** Additional Decision Support Available ***

Additional D&B products, monitoring services and specialized investigations are available to help you evaluate this company or its industry. Call Dun & Bradstreet's Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. or visit our website at www.dnb.com.

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 001092728L



**Decide with Confidence**

*Company Detail*
*D&B® Family Tree® Finder*

Thursday, Apr. 5, 2007 - 10:34 AM

# Wag Acquisition LLC
# (15-124-9773)

| | |
|---|---|
| **Full Business Name:** | **Wag Acquisition LLC** |
| **Trade Style:** | **Surfernetwork** |
| **Second Trade Style:** | |
| **D&B® D-U-N-S® Number:** | **15-124-9773** |
| **Physical Address:** | **3 Gold Mine Rd** |
| **City:** | **Flanders** |
| **State:** | **New Jersey** |
| **Country:** | **USA** |
| **Location Type:** | **SINGLE** |
| **Primary SIC Code:** | **7379-0000** |
| **Primary SIC Description:** | **COMPUTER RELATED SERVICES, NEC** |
| **Employees Here:** | **6** |
| **Sales Volume (US$):** | **500,000** |
| **Global Ultimate Business Name:** | |
| **Global Ultimate D&B® D-U-N-S® Number:** | **15-124-9773** |
| **CEO Name:** | **William A Grywalski** |
| **CEO Title:** | **Member** |

| **Executive Name** | **Executive Title** |
|---|---|
| **Mr William A Grywalski** | **Member** |

© 2003 Dun & Bradstreet, Inc.

**EXHIBIT 8**



**We make
Internet
broadcasting
*easy* and <u>reliable</u>**

**Contact Us**

| Home | Customers | Services | Order | Info/FAQ | About Us |

### Thank you for your interest in SurferNETWORK.
Our hours are 8AM – 6PM, Monday through Friday





SurferNETWORK is
located in a state-of-
the-art Tier 1 data
center sitting right on
the Internet backbone



3 Gold Mine Road
Suite 104
Flanders, NJ 07836
Fax 973-691-7427

**For Sales Related Questions**
Call: 973-691-7420
Email: <u>Sales@SurferNETWORK.com</u>

**For Listener Related Questions**
Please first consult all items listed on the <u>Help Page</u>
Email: <u>PlayerInfo@SurferNETWORK.com</u>



**AUDIO**



**VIDEO**
(click the camera
to see samples)

**To Print:** In your browser under File | Page Setup, set page width margins to .5 inches.
[Home] [Customers] [Services] [Order] [Info/FAQ] [About Us]
[Contact Us] [Legal] [Press Releases]

© 2007 SurferNETWORK. All rights reserved.

**Info:**
How Streaming
Works

**EXHIBIT 9**



**We make Internet broadcasting *easy* and <u>reliable</u>**

**Our Technology**

| Home | Customers | Services | Order | Info/FAQ | About Us |



SurferNETWORK is located in a state-of-the-art Tier 1 data center sitting right on the Internet backbone



AUDIO



VIDEO
(click the camera to see samples)

Info:
How Streaming Works

# OUR *"WAY COOL"* TECHNOLOGY

**The main detractions to Internet audio are poor audio quality, and dropouts.** Dropouts are typically a result of certain locations on the Internet receiving too much traffic at a particular moment. Devices along the route will throw away data packets when they get too busy, and the design of the Internet is such that those data packets should get retransmitted and ultimately get to the end location. But if it is an audio stream that gets interrupted, you hear a "dropout". To minimize the number of dropouts that listeners will experience, technologists have implemented "buffering" -- this means that you wait for 30 seconds or so after tuning in to an audio source while your computer stores up data. When it reaches the buffer high water mark, it starts playing. When dropouts occur the amount of data in the buffer drops because it continues to play -- no incoming data while the outgoing data continues to flow (like your bank account if you are out of a job). If the interruption is long enough, the audio runs out, you hear silence, and the system starts buffering again for another 30 seconds.

**That dreaded "buffering" is the standard solution to dropouts**

## SurferNETWORK's LightningSTREAM™ Technology

SurferNETWORK has proprietary solutions to these problems at the radio station, in the network, and at the listener's PC. And we have several patents pending to protect these solutions. We can't at this time disclose the mechanisms that we use to solve the problems, but the net result is this: we are able to use a good quality codec at a mid-range data rate to give pleasant sounding audio -- our codec has been custom engineered to be optimized for this data rate so we get better audio quality than others at low and mid-range data rates; we feature "instant-on" with no pre-buffering; and, we virtually eliminate dropouts. Most of the industry didn't even believe that this was possible. [NOTE: July 2004 -- SurferNETWORK has been awarded US Patent #6,766,376 for our proprietary "Instant-On" capability for live broadcasts. See our <u>press announcement</u>.]

**Now It's Patented!!!**

## A Good Radio Station Sounds Good

There's a saying in the radio industry that a radio station is only as good as it sounds. *We make radio stations sound almost as good over the Internet as they do over the air.*

Another proprietary capability that we have is to seamlessly remove a radio station's audible ad and replace it with one that we have sold -- we then share the revenue with the broadcaster. The rationale for this is that most radio ads are local -- a lumber yard, a car dealer, and so on. Those local ads are not relevant for a large percentage of listeners on the Internet, who could be anywhere. Consequently, most local businesses will not pay any premium to put their ad on the Internet. This medium, however, is perfect for national and regional advertisers.

We also have the capability to **deliver individualized ads to each listener**, and present a banner ad on our player while the audio ad is playing. We actually create a unique audio stream for each one of our listeners, no matter how many of them may be online at the same time, and even if many

**EXHIBIT 10**

are listening to the same radio station. This means that you and I could be sitting next to each other, listening to the same radio station on our computers, and each hear different ads. When listeners download our proprietary player they are asked three questions that are painless to answer: age, gender, and zip code. These are the three demographics of most interest to advertisers, and we can deliver each unique audio stream with ads relevant to the demographics of each listener.

**With the combination of our capabilities, we offer the most powerful advertising medium in any industry -- an audible ad in which an advertiser can describe a product being displayed, with an invitation to click on the banner to go to the sponsor's web site or to a fulfillment house to place an order. This is the world's first true interactive multimedia advertising channel, and it can ultimately be driven to the level of one-to-one marketing. Read more on our <u>Advertisers</u> page.**

**To Print:** In your browser under File | Page Setup, set page width margins to .5 inches.

[Home] [Customers] [Services] [Order] [Info/FAQ] [About Us]

[Our Technology] [Our Netwk Mgmt] [Player samples] [How It Works] [Digital Rights] [Computer Rqmts] [Promoting] [WMSHelp] [Buttons] [Podcasting How-To]

© 2006 SurferNETWORK. All rights reserved.



**We make
Internet
broadcasting
*easy* and <u>reliable</u>**



Press Releases

| Home | Customers | Services | Order | Info/FAQ | About Us |



SurferNETWORK is
located in a state-of-
the-art Tier 1 data
center sitting right on
the Internet backbone



**AUDIO**



**VIDEO**
(click the camera
to see samples)

**Info:**
How Streaming
Works

**FOR IMMEDIATE RELEASE**

## Clarkson Students and Sports Fans to Benefit from Internet Broadcasting Collaboration with SurferNETWORK

FLANDERS, N.J., October 19, 2006 — **Students seeking cutting-edge professional experience in the information technology field, as well as Clarkson sports fans and other Internet video users, will benefit from a collaboration signed recently between Clarkson University and SurferNETWORK.**

SurferNETWORK, one of the leading providers of Internet broadcasting services, and Clarkson will work together on research, technology transfer, education and training projects that will benefit both organizations.

"Students from the communication, digital arts & sciences, computer science and business programs will all benefit through opportunities for more professional-level experiences," says School of Arts & Sciences Associate Dean and Eastman Kodak Center for Excellence in Communication Director Jerry Gravander. "They will compete for four internships this spring and also work on campus with SurferNETWORK to bring more Clarkson projects to the outside world."

Alumni and other sports fans are already benefiting from the Internet video broadcast service that SurferNETWORK is providing to the University through the agreement. More than 200 men's hockey fans a night enjoy live video streaming of Clarkson's home games. Broadcast of the games will continue throughout the season with expansion to other selected sports in the spring semester. The University also plans to broadcast a variety of classes and seminars, with video of weekly Chemistry Department seminars available to students this fall.

"It has been great working with the participating faculty and students at Clarkson," says SurferNETWORK President Bill Grywalski. "Clarkson has exceeded our expectations both in their enthusiasm and technical capabilities."

SurferNETWORK grew interested in working with Clarkson after hiring Vickii Bacchetta, who graduated in 2005 from the University with a double major in information systems & business processes and technical communications.

"I'm very excited to be continuing my relationship with Clarkson through the alliance," says Bacchetta. "It offers great opportunities to both sides: Clarkson can now better reach out to a world-wide Internet broadcast audience and SurferNETWORK has the support of one of the foremost technological schools in the country."

Other Clarkson student projects already underway with SurferNETWORK include creating multimedia ads, software to manage Web-based services and files, and a subscription service to view streamed broadcasts via the Internet. Possible spring projects include enhancing the experience of streaming classroom lectures with interactive slides and chat, developing technology that will offer unique features for sports broadcasting, as well as creating online Web tutorials.

**EXHIBIT 11**

"SurferNETWORK has always been a technology leader in the streaming media industry," says Grywalski. "Our alliance with Clarkson, a prestigious technological university, will help us to keep that edge."

## About SurferNETWORK

Since 1998 SurferNETWORK has been one of the leading providers of complete Internet broadcasting services. SurferNETWORK has always been recognized as a technology leader in providing every specialized feature a broadcaster might need. Serving radio stations, the faith-based community, sports teams, universities, and more, SurferNETWORK offers a high quality audio or video stream that connects instantly using patented Lightning Stream(TM) technology.

## About Clarkson University

Clarkson University, located in Potsdam, New York, is a private, nationally ranked university with a reputation for developing innovative leaders in engineering, business, the sciences, health sciences and the humanities. At Clarkson, 3,000 high-ability students excel in an environment where learning is not only positive, friendly and supportive but spans the boundaries of traditional disciplines and knowledge. Faculty achieves international recognition for their research and scholarship and connects students to their leadership potential in the marketplace through dynamic, real-world problem solving. Clarkson is on the Web at http://www.clarkson.edu. For more information, contact Michael P. Griffin, director of News & Digital Content Services, at 315-268-6716 or mgriffin@clarkson.edu.

###

## SurferNETWORK Awarded Patent for Streaming Media Buffering System

Fundamental Streaming Technology Enables "Instant-On" for Live Broadcasts

FLANDERS, N.J., August 6, 2004 — **SurferNETWORK, a leader in Internet broadcast services in the United States and Canada, has been issued a U.S. Patent for its "Streaming Media Buffering System," which it has trademarked as Lightning Stream™. The patented media buffering technology enables Instant-On capability for live broadcasts, and is the core technology underlying SurferNETWORK's "JUST LIKE RADIO" experience for Internet broadcasts.**

"SurferNETWORK introduced 'Instant-On' as a cornerstone of our proprietary webcasting solution in 2000," said Bill Grywalski, President and Co-Founder of SurferNETWORK. "SurferNETWORK was the first to introduce 'Instant-On' for live broadcasts from radio stations or similar real-time sources. Being granted a patent on this technology affirms our continuing leadership role in the streaming media industry."

SurferNETWORK's technology allows listeners to select a radio station, and the audio starts within about one second of station selection. As described in the patent, the server first builds up a buffer from the radio station, functioning much like a tape-delay. When a user connects, the server sends a torrent of stored-up audio packets to the player, enabling it to begin playing immediately and to build up a buffer in the player while the user listens.

If there are interruptions in the Internet connection to the player, the player continues to play from its buffer. If the Internet connection is restored before the buffer runs out, the server rebuilds the player's buffer in the background. All the while the listener enjoys uninterrupted audio from the moment he or she "tuned-in" the station.

## About the Patent

SurferNETWORK's US patent # 6,766,376 describes SurferNETWORK's unique method of

enabling a "JUST LIKE RADIO" experience for an uninterrupted listening experience over an internet connection. This patent covers:

- One Second Tuning from Station to Station
- No Pre-Buffering
- No Drop-Outs

**About SurferNETWORK**

SurferNETWORK, which was founded is 1998, is a leading provider of Internet broadcasting services. Through its patented Lightning Stream™ technology, the company is able to provide a "JUST LIKE RADIO" experience with instant-on, rapid station tuning, and FM quality audio features to Internet broadcasters large and small. For more information visit www.surfernetwork.com.

### 

**To Print:** In your browser under File | Page Setup, set page width margins to .5 inches.

[Home] [Customers] [Services] [Order] [Info/FAQ] [About Us]
[Contact Us] [Legal] [Press Releases]

© 2006 SurferNETWORK. All rights reserved.

# Ernest D. Buff

### Bedminster, NJ

**231 Somerville Road**
**Bedminster, NJ 07921**

Tel: 908-901-0220
Fax: 908-901-0330
Email: ebuff@edbuff.com
URL: http://www.edb-ipsolutions.com
Somerset Co.

Patents, Trademarks, Copyrights, Licensing, Intellectual Property, Strategic Alliances, Infringements, Agreements, Entertainment Copyrighting.

***Firm Profile:*** Ernest D. Buff & Associates' intellectual property attorneys have the technical skills necessary to serve the needs of industry. Our clients include software authors, publishers and distributors, manufacturers, inventors, resellers of emerging technologies, and end-users of these goods and services. Our firm assists established entities and start-up enterprises by bringing a broad base of industry experience, technical knowledge, litigation skills and business law to bear directly on clients' technology-related questions.

Our intellectual property attorneys have additional experience in the chemical, mechanical, electromechanical and metallurgical arts, including yarn texturizing systems, plastics, spectroscopic systems, amorphous and microcrystalline metals, components and processes for manufacture of amorphous metals, vehicle air cushion and seat belt safety systems, electronic article surveillance systems, industrial apparatus and process control equipment, pesticidal formulations, chromatographic separation of organic compounds, resins, pigments, adhesives, roofing and building materials, acoustical materials, insulation products, pressure sensitive tapes, wall coverings, friction materials, packings, asbestos fiber, fiberglass, spectroscopic systems, industrial wastes, environmental control systems, wax blends, safety valves, pesticides, chromatography, and molecular biology.

***Firm Size:*** 10

***Practice Areas:*** Patents, Trademarks, Copyrights, Licensing, Intellectual Property, Strategic Alliances

***Admitted:*** 1969, Massachusetts and U.S. District Court, District of Massachusetts; 1971, U.S. District Court for the District of Columbia and U.S. Court of Appeals for the Federal Circuit; 1974, New Jersey and U.S. District Court, District of New Jersey; 1976, U. S. Supreme Court; registered to practice before U.S. Patent and Trademark Office

***Biography:*** Recipient: William Berry Award. Member, President's Advisory Council for Small Business,

*Martindale Hubbell US Lawyers Fall 2006*

**EXHIBIT 12**

2003—. Member, Canadian Patent Bar, 1975.

*Member:* Morris County, New Jersey State and American Bar Associations; Intellectual Property Law Association.

*Educated:* Syracuse University (B.S., Engineering, 1966); Boston University School of Law (J.D., 1969)

*Born:* Washington, D.C., August 26, 1943

*Associations:* ABA

<u>*ISLN:*</u> 908692161

**All Biographies**

### Associates
Margaret A. La Croix '73 '04
Theodore J. Pierson '78 '03
Roger H. Criss '44 '69

### Patent Agents
Gordon E. Fish '51
Dave Narasimhan

## Ernest D. Buff
## & Associates

**Hackensack, NJ**
*(See Bedminster)*

*Practice:* Patents, Trademarks, Copyrights, Licensing, Intellectual Property, Strategic Alliances, Infringements, Agreements, Entertainment Copyrighting.

# National Comprehensive Report
**04/09/2007 - 10:59AM - Reference: 09990800095**

## Subject

HAROLD E PRICE

**SSN:** 207-50-XXXX issued in Pennsylvania between 1973 and 1974

**DOB:** 04/XX/1956

## User Supplied Information

**Last Name:** PRICE
**First Name:** HAROLD
**Middle Initial:** E
**SSN:** 207-50-XXXX
**Address 1:** 5949 PUDDING STONE LN BETHEL PARK, PA 15102

## Possible AKAs for Subject (2 Records)

| Name | SSN | Date of Birth |
|---|---|---|
| PRICE, HAROLD J | 207-50-XXXX | 04/1956 |
| PRICE, HAROLD | 207-50-XXXX | |

## Possible Addresses Associated with Subject (10 Records)

| Date Range | Address/Phone | Source | Source Reported Dates |
|---|---|---|---|
| 05/1992 - 04/2007 | ** 5949 PUDDING STONE LN BETHEL PARK, PA 15102 (412) 833-9480 | Phone Listing Consumer Bureau 2 Consumer Bureau 1 Composite Info Consumer Bureau 3 | 05/2006 - 05/2006 05/1992 - 04/2006 07/1993 - 01/2005 07/2000 - 07/2000 09/1994 - 09/1994 |
| 06/2005 - 06/2005 | 4959 PUDDING STONE LN BETHEL PARK, PA 15102 | Consumer Bureau 2 | 06/2005 - 06/2005 |
| 09/1998 - 09/1998 | 5949 PUDDING STONE LN L BETHEL PARK, PA 15102 (412) 833-9480 | Consumer Bureau 1 | 09/1998 - 09/1998 |
| 08/1998 - 08/1998 | 1550 TULIP LN BETHEL PARK, PA 15102 | Consumer Bureau 1 | 08/1998 - 08/1998 |
| 06/1983 - 10/1994 | 1211 FORD AVE REDONDO BEACH, CA 90278 | Consumer Bureau 2 Consumer Bureau 1 | 11/1988 - 10/1994 06/1983 - 06/1983 |
| 08/1994 - 08/1994 | #1 LOT BETHEL PARK, PA 15102 | Consumer Bureau 3 | 08/1994 - 08/1994 |
| 07/1994 - 07/1994 | 4 LOT BETHEL PARK, PA 15102 | Consumer Bureau 3 | 07/1994 - 07/1994 |
| 10/1978 - 10/1978 | 2110 FARRELL AVE REDONDO BEACH, CA 90278 208 COLUMBIA ST BETHEL PARK, PA 15102 2110 N 14 FARRELL AV REDONDO BEACH, CA 90278 | Consumer Bureau 1 Consumer Bureau 1 Consumer Bureau 1 | 10/1978 - 10/1978 |

**EXHIBIT 13**

** Address and phone number verified by current phone listing.

| Phone Listings for Subject's Addresses | (14 Records) |
|---|---|

### 5949 PUDDING STONE LN BETHEL PARK, PA 15102
| Name: | BEKTEK | Phone: | (412) 835-2994 |
|---|---|---|---|
| Name: | PRICE HAROLD E | Phone: | (412) 833-9480 |
| Name: | PRICE TERRY L | Phone: | (412) 833-9480 |

### 1211 FORD AVE REDONDO BEACH, CA 90278
| Name: | RODRIGUEZ RAYMOND P | Phone: | (310) 318-9658 |
|---|---|---|---|
| Name: | RODRIGUEZ LUCIA I | Phone: | (310) 318-9658 |
| Name: | RODRIGUEZ BREEANNA D | Phone: | (310) 318-9658 |

### 1 LOT BETHEL PARK, PA 15102
| Name: | FABER DOROTHY S | Phone: | (412) 833-1702 |
|---|---|---|---|
| Name: | FABER FRANCIS J | Phone: | (412) 833-1702 |

### 4 LOT BETHEL PARK, PA 15102
| Name: | INTONG EDWIN B | Phone: | (412) 851-5775 |
|---|---|---|---|
| Name: | INTONG MARILOU R | Phone: | (412) 851-5775 |

### 2110 FARRELL AVE REDONDO BEACH, CA 90278
| Name: | BOSWELL DOUG | Phone: | (310) 921-3979 |
|---|---|---|---|
| Name: | STERN K | Phone: | (310) 542-1111 |
| Name: | DEXTER STEPHEN | Phone: | (310) 371-1277 |
| Name: | HEGEDUS ERIC | Phone: | (310) 542-0705 |

| Possible Real Property Ownership and Deed Transfers | (2 Records) |
|---|---|

### 5949 PUDDING STONE LN BETHEL PARK, PA 15102
| | | | |
|---|---|---|---|
| Owner Name: | PRICE HAROLD E & TERRY L WASHINGTON MUTUAL HOME LOANS22 | | |
| Assess State: | Pennsylvania | County: | ALLEGHENY |
| Parcel Number: | 0773C00092 | Type: | SFR |
| Short Legal Description: | VISTA GLEN MANOR 14TH PLAN 1418 LOT 70 X150X70 PUDDING STONE LANE (10500 SQ FT) IMP-DESC: 2 STY BRK & ALUM HSE & GAR #5949 | | |
| Document Number: | | Recorded Date: | 06/01/1992 |
| Situs Address: | 5949 PUDDING STONE LN BETHEL PARK, PA 15102 -3335 | Book: | 008730 |
| Mailing Address: | 5949 PUDDING STONE LN BETHEL PARK, PA 15102 -3335 | Page: | 000261 |
| Assessment Year: | 2003 | Tax Year: | 2003 |
| Assessed Land Value: | $24,300 | Market Land Value: | |
| Assessed Improvements: | $148,000 | Market Improvements | |
| Total Assessed Value: | $172,300 | Total Market Value: | |
| Most Recent Sale: | $153,000 | Prior Sale Price: | |

### Pennsylvania Deed Transfer Records - County of: ALLEGHENY
| | |
|---|---|
| Parcel Number: | 0773C00092 |
| Legal Desc: | |
| Sale Price: | $153,000 |
| Loan Amount: | |
| Contract Date: | |
| Document Type: | |
| Resale/New Construction: | RE-SALE |

| | | | |
|---|---|---|---|
| **Refinance:** | YES | | |
| **Lender:** | BANK OF SAN PEDRO | | |
| **Title Co:** | | | |
| **Situs Address:** | | | |
| **Sellers:** | GIGLIOTTI CARMEN J & SHARLENE | | |
| **Buyers:** | PRICE HAROLD E & TERRY L | | |
| **Buyer Address:** | PO BOX 995 PITTSBURGH, PA 15230 | | |
| **Owner Name:** | PRICE HAROLD E & TERRY L | | |
| **Assess State:** | Pennsylvania | **County:** | ALLEGHENY |
| **Parcel Number:** | 773-C-92 | **Type:** | ONE-FAMILY DETACHED |
| **Short Legal Description:** | VISTA GLEN MANOR 14TH PLAN 1418 LOT 70 X150X70 PUDDING STONE LANE (10500 SQ FT) 2 STY BRK & ALUM HSE & GAR #5949 | | |
| **Document Number:** | | **Recorded Date:** | 06/01/1992 |
| **Situs Address:** | 5949 PUDDING STONE LANE BETHEL PARK, PA 15102 | **Book:** | 8730 |
| **Mailing Address:** | 6053 S FASHION SQ DR #200 MURRAY, UT 84107 | **Page:** | 261 |
| **Assessment Year:** | 1999 | **Tax Year:** | |
| **Assessed Land Value:** | $5,100 | **Market Land Value:** | |
| **Assessed Improvements:** | $26,500 | **Market Improvements** | |
| **Total Assessed Value:** | $31,600 | **Total Market Value:** | |
| **Most Recent Sale:** | $153,000 | **Prior Sale Price:** | |

**Possible Property Owners of Subject's Addresses**                    (2 Records)

## 1211 FORD AVE REDONDO BEACH, CA 90278

| | | | |
|---|---|---|---|
| **Owner Name:** | RODRIGUEZ RAYMOND RODRIGUEZ LUCIA | | |
| **Assess State:** | California | **County:** | LOS ANGELES |
| **Parcel Number:** | 4161017015 | **Type:** | SFR |
| **Short Legal Description:** | REDONDO VILLA TRACT # 4 | | |
| **Document Number:** | 000000954133 | **Recorded Date:** | 05/27/1992 |
| **Situs Address:** | 1211 FORD AVE REDONDO BEACH, CA 90278 -4023 | **Book:** | |
| **Mailing Address:** | 1211 FORD AVE REDONDO BEACH, CA 90278 -4023 | **Page:** | |
| **Assessment Year:** | | **Tax Year:** | 2004 |
| **Assessed Land Value:** | $258,822 | **Market Land Value:** | |
| **Assessed Improvements:** | $83,202 | **Market Improvements** | |
| **Total Assessed Value:** | $342,024 | **Total Market Value:** | |
| **Most Recent Sale:** | $275,000 | **Prior Sale Price:** | $139,000 |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4161017015 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $125,000 |
| **Contract Date:** | 10/25/2006 |
| **Document Type:** | DEED OF TRUST |
| **Lender:** | WORLD SVGS BK FSB |
| **Title Co:** | CUSTOM TITLE SOLUTIONS |
| **Situs Address:** | 1211 FORD AVE REDONDO BEACH, CA 90278 |
| **Buyers:** | RODRIGUEZ RAYMOND & LUCIA |
| **Buyer Address:** | 1211 FORD AVE REDONDO BEACH, CA 90278 |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4161017015 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $224,000 |
| **Contract Date:** | 11/12/2001 |

| Document Type: | DEED OF TRUST |
|---|---|
| Refinance: | YES |
| Lender: | E-LOAN INC |
| Title Co: | AMERICAN TITLE CO. |
| Situs Address: | 1211 FORD AVE REDONDO BEACH, CA 90278 |
| Buyers: | RODRIGUEZ RAYMOND & LUCIA |
| Buyer Address: | 1211 FORD AVE REDONDO BEACH, CA 90278 |

## California Deed Transfer Records - County of: LOS ANGELES

| Parcel Number: | 4161017015 |
|---|---|
| Legal Desc: | |
| Sale Price: | $275,000 |
| Loan Amount: | |
| Contract Date: | |
| Document Type: | |
| Resale/New Construction: | RE-SALE |
| Lender: | |
| Title Co: | |
| Situs Address: | 1211 FORD AVE REDONDO BEACH, CA 90278 |
| Sellers: | PRICE HAROLD & TERRY |
| Buyers: | RODRIGUEZ RAYMOND & LUCIA |
| Buyer Address: | 1211 FORD AVE REDONDO BEACH, CA 90278 |

## California Deed Transfer Records - County of: LOS ANGELES

| Parcel Number: | 4161017015 |
|---|---|
| Legal Desc: | |
| Sale Price: | |
| Loan Amount: | $247,500 |
| Contract Date: | |
| Document Type: | |
| Resale/New Construction: | RE-SALE |
| Refinance: | YES |
| Lender: | SEARS MTG CORP |
| Title Co: | |
| Situs Address: | 1211 FORD AVE REDONDO BEACH, CA 90278 |
| Sellers: | RODRIGUEZ LUCIA |
| Buyers: | RODRIGUEZ RAYMOND |
| Buyer Address: | 1211 FORD AVE REDONDO BEACH, CA 90278 |

## California Deed Transfer Records - County of: LOS ANGELES

| Parcel Number: | 4161017015 |
|---|---|
| Legal Desc: | |
| Sale Price: | $275,000 |
| Loan Amount: | $247,500 |
| Contract Date: | 03/1992 |
| Document Type: | |
| Resale/New Construction: | RE-SALE |
| Lender: | |
| Title Co: | NORTH AMERICAN TITLE |
| Situs Address: | 1211 FORD AVE REDONDO BEACH, CA 90278 |
| Sellers: | PRICE HAROLD E |
| Buyers: | RODRIGUEZ RAYMOND & LUCIA |
| Buyer Address: | REDONDO BEACH, CA 90278 |

## 2110 FARRELL AVE REDONDO BEACH, CA 90278

| | | | |
|---|---|---|---|
| **Owner Name:** | WITTELES ABRAHAM A WITTELES TRUST | | |
| **Assess State:** | California | **County:** | LOS ANGELES |
| **Parcel Number:** | 4150018029 | **Type:** | APARTMENT |
| **Short Legal Description:** | REDONDO VILLA TRACT B LOTS 7, 8 AND | | |
| **Document Number:** | 000000309286 | **Recorded Date:** | 03/05/1991 |
| **Situs Address:** | 2110 FARRELL AVE REDONDO BEACH, CA 90278 -1857 | **Book:** | |
| **Mailing Address:** | PO BOX 2275 PLS VRDS PNSL, CA 90274 -8275 | **Page:** | |
| **Assessment Year:** | | **Tax Year:** | 2004 |
| **Assessed Land Value:** | $1,902,964 | **Market Land Value:** | |
| **Assessed Improvements:** | $1,040,286 | **Market Improvements** | |
| **Total Assessed Value:** | $2,943,250 | **Total Market Value:** | |
| **Most Recent Sale:** | $7,021,500 | **Prior Sale Price:** | $409,000 |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4150018029 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | $3,640,000 |
| **Contract Date:** | 08/03/2006 |
| **Document Type:** | DEED OF TRUST |
| **Refinance:** | YES |
| **Lender:** | FIRST FED'L BK/CA |
| **Title Co:** | FIRST AMERICAN TITLE/LOS ANGEL |
| **Situs Address:** | 2110 FARRELL AVE REDONDO BEACH, CA 90278 |
| **Buyers:** | TOROJO |
| **Buyer Address:** | 2110 FARRELL AVE REDONDO BEACH, CA 90278 |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4150018029 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | |
| **Contract Date:** | 01/01/1999 |
| **Document Type:** | |
| **Resale/New Construction:** | RE-SALE |
| **Lender:** | |
| **Title Co:** | |
| **Situs Address:** | 2110 FARRELL AVE REDONDO BEACH, CA 90278 |
| **Sellers:** | WIRE TRUST |
| **Buyers:** | TOROJO |
| **Buyer Address:** | PO BOX 2275 PALOS VERDES PENINSULA, CA 90274 |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4150018029 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | |
| **Contract Date:** | 12/31/1998 |
| **Document Type:** | |
| **Resale/New Construction:** | RE-SALE |
| **Lender:** | |
| **Title Co:** | |
| **Situs Address:** | 2110 FARRELL AVE REDONDO BEACH, CA 90278 |
| **Sellers:** | WITTELES ABRAHAM A & KAREN G |
| **Buyers:** | WITTELES TODD B |
| **Buyer Address:** | PO BOX 2275 PALOS VERDES PENINSULA, CA 90274 |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4150018029 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | |
| **Contract Date:** | 12/31/1998 |
| **Document Type:** | |
| **Resale/New Construction:** | RE-SALE |
| **Lender:** | |
| **Title Co:** | |
| **Situs Address:** | 2110 FARRELL AVE REDONDO BEACH, CA 90278 |
| **Sellers:** | WIRE TRUST |
| **Buyers:** | WITTELES ABRAHAM A & KAREN G |
| **Buyer Address:** | PO BOX 2275 PALOS VERDES PENINSULA, CA 90274 |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4150018029 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | |
| **Contract Date:** | 04/1992 |
| **Document Type:** | |
| **Resale/New Construction:** | RE-SALE |
| **Lender:** | |
| **Title Co:** | |
| **Situs Address:** | 2110 FARRELL AVE REDONDO BEACH, CA 90278 |
| **Sellers:** | WITTELES ELEONORA M |
| **Buyers:** | THE WISH TRUST & THE SALOMON T |
| **Buyer Address:** | RANCHO PALOS VERDES, CA |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4150018029 |
| **Legal Desc:** | |
| **Sale Price:** | $7,021,500 |
| **Loan Amount:** | $1,680,000 |
| **Contract Date:** | 02/1991 |
| **Document Type:** | |
| **Resale/New Construction:** | RE-SALE |
| **Lender:** | |
| **Title Co:** | |
| **Situs Address:** | 2110 FARRELL AVE REDONDO BEACH, CA 90278 |
| **Sellers:** | STRUBBE JOSEPH H |
| **Buyers:** | WITTELESS ABRAHAM & WITTELESS |
| **Buyer Address:** | PO BOX 2275 PALOS VERDES PENINSULA, CA 90274 |

## California Deed Transfer Records - County of: LOS ANGELES

| | |
|---|---|
| **Parcel Number:** | 4150018029 |
| **Legal Desc:** | |
| **Sale Price:** | |
| **Loan Amount:** | |
| **Contract Date:** | 02/1991 |
| **Document Type:** | |
| **Resale/New Construction:** | RE-SALE |

**Lender:**
**Title Co:**
**Situs Address:**      2110 FARRELL AVE REDONDO BEACH, CA 90278
**Sellers:**            WEB SERVICE CO INC
**Buyers:**             STRUBBE JOSEPH H & JENSEN ROBE
**Buyer Address:**       REDONDO BEACH90278

**Possible Real-Time Vehicle Registrations**                        (0 Records)

***Notice*** Vehicles Registered to Last Name and Subject's Current Address
**5949 PUDDING STONE LN BETHEL PARK, PA 15102**
   Real-Time Vehicle Registrations are not offered for this state (PA)

**4959 PUDDING STONE LN BETHEL PARK, PA 15102**
   Real-Time Vehicle Registrations are not offered for this state (PA)

**Possible Business Affiliations (includes Officer Name Match)**     (1 Record)

**5949 PUDDING STONE LN BETHEL PARK, PA 15102**
   BEK TEK
   **Affilation:**          **ABI Number:**   464398379    **ABI Phone:**   (412)835-2994

*** Report section(s) with no matches:

Possible Other Social Security Numbers Associated with Subject, Possible Other Records and Names Associated with Social Security Numbers, Possible Driver Licenses, Possible High Risk Address, Possible Infractions, Possible Broward County Felonies and Misdemeanors, Possible Florida Sexual Predator, Possible Florida Felony/Probation/Parole, Possible Florida Concealed Weapon Permits, Possible Deed Transfers, Possible Vehicles Registered at Subject's Addresses, Possible Florida Accidents, Possible Criminal Offenders, Possible Broward County Traffic Citations, Possible Florida Tangible Property, Possible Florida Insurance Agents, Possible Florida Unclaimed Property, Possible Watercraft, Possible Watercraft - USCG Documented Vessels, Possible Florida Boating Citations, Possible FAA Aircraft Registrations, Possible UCC Filings, Possible Bankruptcies, Liens and Judgments, Possible Dallas County Criminal Histories, Possible Texas State Criminal History, Possible Professional Licenses, Possible FAA Pilot Licenses, Possible Marine Radio Licenses, Possible Florida Salt Water Product Licenses, Possible DEA Controlled Substance Licenses, Possible Florida Securities Dealer Registrations, Possible Florida Day Care Licenses, Possible Florida Department of Education, Possible Florida Banking and Finance Licenses, Possible Florida Handicap Parking Permits, Possible Florida Tobacco License, Possible Florida Beverage License, Possible Florida Money Transmitter Licenses, Possible Hunting and Fishing Licenses, Possible Texas Beverage Licenses, Possible U.S. Military Personnel, Possible Federal Firearms and Explosives License, Possible Oregon Beverage License, Possible Fictitious Business Names (DBA), Possible Significant Shareholders, Possible Trademarks/Service Marks, Possible Texas Trademark Registrations, Possible Florida Hotels and Restaurants, Possible Florida Worker's Compensation Claims

*Some data provided by infoUSA®, Copyright© 2005, All Rights Reserved

*Due to privacy regulations instituted by individual states, Vehicle and Watercraft data from all states may not be available.

* Option Control Number:NNNN-NATCOMP *

* BOBWPSS412/03 31709685 *

* expGate *

* * * END OF REPORT * * *

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC                                              PLAINTIFF

VS.                                             CIVIL ACTION NO. 4:07cv34-M-B

XM SATELLITE RADIO, INC. and
SIRIUS SATELLITE RADIO, INC.                                    DEFENDANTS

PLAINTIFF'S RESPONSE TO DEFENDANT,
SIRIUS SATELLITE RADIO, INC.'S,
MOTION FOR ENLARGEMENT OF TIME

NOW COMES Plaintiff, SURFER INTERNET BROADCASTING OF MISSISSIPPI,

LLC, ("Plaintiff"), by and through its undersigned counsel, and files this its Response to the Motion

for Enlargement of Time filed by Defendant, SIRIUS RADIO SATELLITE, INC., ("Defendant"),

and would show unto the Court the following:

**1.**

Defendant was served with Plaintiff's Original Complaint on March 1, 2007, and pursuant

to Federal Rule of Civil Procedure 12(a)(1)(A), Defendant's Answer and Defenses is due on or

before March 21, 2007.

**2.**

Counsel for Defendant has filed a Motion for Enlargement of Time, seeking an additional

thirty (30) days in which Defendant may serve its Answer to Plaintiff's Complaint. Counsel for the

Plaintiff was contacted by counsel for Defendant, and Plaintiff's counsel was agreeable to a ten (10)

day extension for Defendant to serve its Answer and Defenses, thereby making Defendant's

responsive pleading due on or before April 2, 2007.

EXHIBIT 14

**3.**

Counsel for Defendant represented to the Court that they were engaged to represent their client on Monday, March 19, 2007. Plaintiff notes that it has no control over when Defendant deemed it necessary to employ counsel in this case, nineteen (19) days after it was served with process. Furthermore, Plaintiff's Complaint consists of five (5) pages and sixteen (16) paragraphs and a thirty (30) day extension of time to file a responsive pleading, in addition to the time which has already elapsed, is not warranted under the circumstances. Plaintiff therefore requests that Defendant be given until April 2, 2007 to file its responsive pleading in this case.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, **SURFER INTERNET BROADCASTING OF MISSISSIPPI, LLC,** respectfully requests that this Court grant to Defendant, **SIRIUS SATELLITE RADIO, INC..,** an additional ten (10) days within in which to serve its Answer and Defenses to Plaintiff's Complaint, thereby making the Defendant's responsive pleading due on or before April 2, 2007.

**RESPECTFULLY SUBMITTED** on this the 20th day of March, 2007.

                           **SURFER INTERNET BROADCASTING**
                           **OF MISSISSIPPI, LLC, Plaintiff**



                  By:    /s/S. Todd Jeffreys
                         **S. TODD JEFFREYS**
                         State Bar No. 100042
                         E-mail: stjeffreys@bellsouth.net
                         **POVALL & JEFFREYS, P.A.**
                         215 North Pearman Avenue
                         P. O. Drawer 1199
                         Cleveland, Mississippi 38732
                         Telephone: (662) 843-9948
                         Facsimile: (662) 842-9957

**2**

**OF COUNSEL:**

John F. Ward, Esq.
E-mail: wardj@wardolivo.com
John W. Olivo, Jr., Esq.
E-mail: olivoj@wardolivo.com
**WARD & OLIVO**
New York, New York 10017
Telephone:    (212) 697-6262
Facsimile:    (212) 972-5866

Leslie D. Ware, Esq.
E-mail: lesware@airmail.net
**MONTS & WARE, L.L.P.**
1701 North Market Street, Suite 330
Dallas, Texas 75202
Telephone:    (212) 744-5000
Facsimile:    (212) 744-5013

Mike McKool, Jr., Esq.
E-mail: mmckool@mckoolsmith.com
Sam Baxter, Esq.
E-mail: sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 978-4000
Facsimile:    (214) 978-4044

Richard F. Scruggs, Esq.
708 Third Avenue
State Bar No. 6582
E-mail: dickscruggs@scruggsfirm.com
David Zachary Scruggs, Esq.
State Bar No. 100011
E-mail: zachscruggs@scruggsfirm.com
David Shelton, Esq.
State Bar No. 99675
E-mail: davidshelton@scruggsfirm.com
**SCRUGGS LAW FIRM, P.A.**
120A Courthouse Square
P.O. Box 1136
Oxford, Mississippi 38655
Telephone:    (662) 281-1212
Facsimile:    (662) 281-1312

**ATTORNEYS FOR PLAINTIFF,
SURFER INTERNET BROADCASTING
OF MISSISSIPPI, LLC**

3

## CERTIFICATE OF SERVICE

I, **S. TODD JEFFREYS**, attorney for Plaintiff, do hereby certify that I have this day

electronically filed the foregoing *Plaintiff's Response to Defendant, Sirius Satellite Radio, Inc.'s,*

*Motion for Enlargement of Time* with the Clerk of the Court using the ECF system which sent

notification of such filing to the following:

> **J. Cal Mayo, Jr., Esq.**
> **Pope S. Mallette, Esq.**
> **Paul B. Watkins, Jr.**
> **MAYO MALLETTE, PLLC**
> **P. O. Box 1456**
> **Oxford, MS 38655**
> **cmayo@mayomallette.com**
> **pmallette@mayomallette.com**
> **pwatkins@mayomallette.com**
> **Attorneys for Defendant, Sirius Satellite Radio, Inc.**
>
> **LeRoy D. Percy, Esq.**
> **TOLLISON LAW FIRM, P.A.**
> **P. O. Box 1216**
> **Oxford, MS 38655**
> **roy@tollisonlaw.com**
> **Attorney for XM Satellite Radio, Inc.**
>
> **David Zachary Scruggs, Esq.**
> **Richard F. Scruggs, Esq.**
> **David Wayne Shelton, Esq.**
> **SCRUGGS LAW FIRM**
> **P. O. Box 1136**
> **Oxford, MS 38655**
> **zachscruggs@scruggsfirm.com**
> **dickscruggs@scruggsfirm.com**
> **davidshelton@scruggsfirm.com**
> **Attorneys for Plaintiff**

**SO CERTIFIED** on this the 20th day of March, 2007.


                                   s/S. Todd Jeffreys
                                   **S. TODD JEFFREYS**



**Start:** **Budd Lake, NJ US**

**End:** **500 Pearl St**
New York, NY 10007-1316, US

**Notes:**



THE LOWEST RATE. GUARANTEED.

On our hotels ONLY AT BestWestern.com

Check Rates NOW!

Best Western

| Directions | Distance |
|---|---|
| **Total Est. Time: 55 minutes    Total Est. Distance: 46.06 miles** | |
| **1:** Start out going EAST on US-46 E toward MT OLIVE RD / CR-667. | 1.8 miles |
| **2:** Merge onto I-80 E toward SOMERVILLE / NEW YORK. | 17.6 miles |
| **3:** Keep LEFT to take I-80 EXPRESS LN E via EXIT 45. | 1.9 miles |
| **4:** Merge onto I-280 E via EXIT 47A on the LEFT toward THE ORANGES / NEWARK. | 16.5 miles |
| **5:** Take the CR-508 E exit- EXIT 17A- toward JERSEY CITY. | 0.5 miles |
| **6:** Merge onto NEWARK & JERSEY CITY TURNPIKE. | 2.3 miles |
| **7:** NEWARK & JERSEY CITY TURNPIKE becomes NJ-7 E. | 0.3 miles |
| **8:** NJ-7 E becomes US-1 9 TRUCK / US-1 TRUCK / US-9 TRUCK / US-1 & 9- TRUCK. | 0.4 miles |
| **9:** Turn SLIGHT RIGHT toward HOBOKEN / HOLLAND TUNNEL. | <0.1 miles |
| **10:** Merge onto NJ-139 E. | 1.2 miles |
| **11:** NJ-139 E becomes 12TH ST. | 0.2 miles |
| **12:** 12TH ST becomes BOYLE PLZ (Portions toll). | <0.1 miles |
| **13:** BOYLE PLZ becomes HOLLAND TUNNEL (Crossing into NEW YORK). | 1.8 miles |
| **14:** Turn SLIGHT LEFT to stay on HOLLAND TUNNEL. | 0.1 miles |

**EXHIBIT 15**

| | **15:** Take EXIT 4 toward DOWNTOWN. | <0.1 miles |
|---|---|---|
| | **16:** Turn RIGHT onto VARICK ST. | 0.1 miles |
| | **17:** Turn SLIGHT RIGHT onto W BROADWAY. | <0.1 miles |
| | **18:** Turn LEFT onto WORTH ST / JUSTICE JOHN M HARLAN WAY. Continue to follow WORTH ST. | 0.3 miles |
| END | **19:** End at **500 Pearl St** New York, NY 10007-1316, US | |

**Total Est. Time:** 55 minutes      **Total Est. Distance:** 46.06 miles



**Start:**
**Budd Lake, NJ US**

**End:**
**500 Pearl St**
New York, NY 10007-1316, US





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.





travelocity·
You'll never roam alone.™

**Great deals**
on rental cars. No hidden fees.

Book Now

**Start:** **5949 Pudding Stone Ln**
Bethel Park, PA 15102-3335, US

**End:** **500 Pearl St**
New York, NY 10007-1316, US

**Notes:**

| Directions | Distance |
|---|---|
| **Total Est. Time: 6 hours, 27 minutes    Total Est. Distance: 377.86 miles** | |
| **1:** Start out going WEST on PUDDING STONE LN toward WILSON DR. | <0.1 miles |
| **2:** Turn RIGHT onto WILSON DR. | <0.1 miles |
| **3:** Turn RIGHT onto CHERRYVIEW LN. | 0.2 miles |
| **4:** CHERRYVIEW LN becomes KINGS SCHOOL RD W. | 0.1 miles |
| **5:** Turn RIGHT onto LIBRARY RD / PA-88. Continue to follow PA-88. | 5.1 miles |
| **6:** Turn SHARP LEFT onto WASHINGTON AVE / ORANGE BELT. Continue to follow ORANGE BELT. | 0.7 miles |
| **7:** Turn RIGHT onto FINLEY-ELRAMA RD / ORANGE BELT. | 0.4 miles |
| **8:** Take the PA-43-TPKE S ramp toward CALIFORNIA. | 0.5 miles |
| **9:** Merge onto PA-43 TPKE S (Portions toll). | 12.0 miles |
| **10:** PA-43 TPKE S becomes MON-FAYETTE EXPY (Portions toll). | <0.1 miles |
| **11:** Merge onto I-70 E via EXIT 36A toward NEW STANTON. | 20.4 miles |
| **12:** Merge onto I-76 E / PENNSYLVANIA TURNPIKE via EXIT 58 toward BREEZEWOOD / NEW JERSEY (Portions toll). | 152.8 miles |
| **13:** Merge onto HARRISBURG PIKE / US-11 N via EXIT 226 toward I-81 / HARRISBURG. | 2.1 miles |
| **14:** Merge onto I-81 N toward HARRISBURG. | 37.1 miles |

**EXHIBIT 16**

| | | |
|---|---|---|
| **EAST 78** | **15:** Merge onto I-78 E via EXIT 89 toward ALLENTOWN (Crossing into NEW JERSEY). | 125.6 miles |
| **EAST 78 EXP** | **16:** Keep LEFT to take I-78 EXPRESS LN E toward EXPRESS / I-95 / NEW JERSEY TURNPIKE / HOLLAND TUNNEL / NEW YORK CITY. | 8.8 miles |
| **EAST 78** | **17:** Keep RIGHT to take I-78 E toward I-95 / NEW JERSEY TURNPIKE / US-1-9 / PORT NEWARK. | 1.0 miles |
| **58B EXIT** | **18:** Take the US-1-9 N exit- EXIT 58B. | 0.2 miles |
| **NORTH 19** | **19:** Merge onto US-1 9 N / US-1 & 9 N / US-1 N / US-9 N via the exit on the LEFT. | 5.7 miles |
| **EAST 139** | **20:** US-1 9 N / US-1 & 9 N / US-1 N / US-9 N becomes NJ-139 E. | 1.4 miles |
| | **21:** NJ-139 E becomes 12TH ST. | 0.2 miles |
| | **22:** 12TH ST becomes BOYLE PLZ (Portions toll). | <0.1 miles |
| | **23:** BOYLE PLZ becomes HOLLAND TUNNEL (Crossing into NEW YORK). | 1.8 miles |
| | **24:** Turn SLIGHT LEFT to stay on HOLLAND TUNNEL. | 0.1 miles |
| **4 EXIT** | **25:** Take EXIT 4 toward DOWNTOWN. | <0.1 miles |
| | **26:** Turn RIGHT onto VARICK ST. | 0.1 miles |
| | **27:** Turn SLIGHT RIGHT onto W BROADWAY. | <0.1 miles |
| | **28:** Turn LEFT onto WORTH ST / JUSTICE JOHN M HARLAN WAY. Continue to follow WORTH ST. | 0.3 miles |
| **END** | **29:** End at **500 Pearl St**<br>New York, NY 10007-1316, US | |

**Total Est. Time:** 6 hours, 27 minutes    **Total Est. Distance:** 377.86 miles



**Start:**
**5949 Pudding Stone Ln**
Bethel Park, PA 15102-3335, US

**End:**
**500 Pearl St**
New York, NY 10007-1316, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.





**= MAPQUEST =**

**Start:** **5949 Pudding Stone Ln**
Bethel Park, PA 15102-3335, US

**End:** **305 Main St**
Greenville, MS 38701-4047, US

**Notes:**

| Directions | Distance |
|---|---|

**Total Est. Time: 15 hours, 26 minutes    Total Est. Distance: 938.73 miles**

| | | |
|---|---|---|
| START | **1:** Start out going WEST on PUDDING STONE LN toward WILSON DR. | 0.1 miles |
| | **2:** Turn RIGHT onto GLEN HILL DR. | 0.1 miles |
| | **3:** Turn LEFT onto GLEN ORA DR. | 0.2 miles |
| | **4:** Turn LEFT onto DELFIELD DR. | 0.4 miles |
| | **5:** Turn RIGHT onto IRISHTOWN RD. | 0.2 miles |
| | **6:** Turn LEFT onto DASHWOOD DR. | 0.4 miles |
| | **7:** Turn RIGHT onto CLIFTON RD / ORANGE BELT. | 0.4 miles |
| | **8:** Turn LEFT onto MCMURRAY RD. | 6.9 miles |
| | **9:** MCMURRAY RD becomes MORGANZA RD. | 1.2 miles |
| | **10:** Turn LEFT onto WEAVERTOWN RD. | 0.1 miles |
| SOUTH 79 | **11:** Merge onto I-79 S toward WASHINGTON PA. | 6.7 miles |
| WEST 70 | **12:** Merge onto I-70 W toward WHEELING (Crossing into WEST VIRGINIA). | 26.8 miles |
| WEST 470 | **13:** Merge onto I-470 W via EXIT 5A on the LEFT toward COLUMBUS (Crossing into OHIO). | 10.6 miles |
| WEST 70 | **14:** Merge onto I-70 W via the exit on the LEFT. | 110.3 miles |

**EXHIBIT 17**

| | | |
|---|---|---|
| SOUTH 270 | **15:** Merge onto I-270 S via EXIT 108A toward CINCINNATI. | 12.4 miles |
| SOUTH 71 | **16:** Merge onto I-71 S via EXIT 55 toward CINCINNATI (Crossing into KENTUCKY). | 121.5 miles |
| SOUTH 71 | **17:** Merge onto I-71 S via EXIT 173 toward LOUISVILLE. | 71.6 miles |
| WEST 264 | **18:** Merge onto I-264 W via EXIT 5 on the LEFT. | 10.4 miles |
| SOUTH 65 | **19:** Merge onto I-65 S via EXIT 12 toward NASHVILLE (Crossing into TENNESSEE). | 169.2 miles |
| WEST 40 | **20:** Merge onto I-40 W via EXIT 84A on the LEFT toward KNOXVILLE / HUNTSVILLE. | 196.9 miles |
| WEST 240 | **21:** Merge onto I-240 W via EXIT 10A toward JACKSON MISS. | 14.0 miles |
| NORTH 55 | **22:** Keep LEFT to take I-55 N via EXIT 25A&B toward ST LOUIS / JACKSON MISS. | 0.3 miles |
| 25A EXIT | **23:** Take the I-55 S exit- EXIT 25A- toward JACKSON MISS. | 0.2 miles |
| SOUTH 240 | **24:** Merge onto I-240 S. | <0.1 miles |
| SOUTH 55 | **25:** Keep RIGHT to take I-55 S via EXIT 25A toward JACKSON MISS (Crossing into MISSISSIPPI). | 90.7 miles |
| SOUTH 7 | **26:** Merge onto MS-7 S via EXIT 206. | 29.5 miles |
| WEST 82 | **27:** Turn RIGHT onto US-82 W / MS-7 S. Continue to follow US-82 W. | 55.4 miles |
| ◆ | **28:** Turn RIGHT onto S MAIN ST. | 1.1 miles |
| END | **29:** End at **305 Main St** Greenville, MS 38701-4047, US | |

**Total Est. Time:** 15 hours, 26 minutes     **Total Est. Distance:** 938.73 miles



**Start:**
**5949 Pudding Stone Ln**
Bethel Park, PA 15102-3335, US

**End:**
**305 Main St**
Greenville, MS 38701-4047, US



© 2007 MapQuest, Inc.          ©2007 NAVTEQ

© 2007 MapQuest, Inc.; © 2007 Tele Atlas

All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.





WHY WASTE TIME LOOKING
FOR A LOW FARE?
FIND THE LOWEST.

Get our guaranteed lowest fare
at continental.com.

**Continental Airlines**

**Start:** **231 Somerville Rd**
Bedminster, NJ 07921-2615, US

**End:** **500 Pearl St**
New York, NY 10007-1316, US

**Notes:**

| Directions | Distance |
|---|---|
| **Total Est. Time: 47 minutes    Total Est. Distance: 40.76 miles** | |
| **1:** Start out going SOUTH on US-202 S toward MILLER LN. | 1.4 miles |
| **2:** Merge onto I-287 S toward I-78 / SOMERVILLE / PRINCETON. | 1.1 miles |
| **3:** Merge onto I-78 E via EXIT 21A toward NEW YORK CITY. | 17.8 miles |
| **4:** Keep LEFT to take I-78 EXPRESS LN E toward EXPRESS / I-95 / NEW JERSEY TURNPIKE / HOLLAND TUNNEL / NEW YORK CITY. | 8.8 miles |
| **5:** Keep RIGHT to take I-78 E toward I-95 / NEW JERSEY TURNPIKE / US-1-9 / PORT NEWARK. | 1.0 miles |
| **6:** Take the US-1-9 N exit- EXIT 58B. | 0.2 miles |
| **7:** Merge onto US-1 9 N / US-1 & 9 N / US-1 N / US-9 N via the exit on the LEFT. | 5.7 miles |
| **8:** US-1 9 N / US-1 & 9 N / US-1 N / US-9 N becomes NJ-139 E. | 1.4 miles |
| **9:** NJ-139 E becomes 12TH ST. | 0.2 miles |
| **10:** 12TH ST becomes BOYLE PLZ (Portions toll). | <0.1 miles |
| **11:** BOYLE PLZ becomes HOLLAND TUNNEL (Crossing into NEW YORK). | 1.8 miles |
| **12:** Turn SLIGHT LEFT to stay on HOLLAND TUNNEL. | 0.1 miles |
| **13:** Take EXIT 4 toward DOWNTOWN. | <0.1 miles |
| **14:** Turn RIGHT onto VARICK ST. | 0.1 miles |

**EXHIBIT 18**



**15:** Turn SLIGHT RIGHT onto W BROADWAY.                                    <0.1 miles

**16:** Turn LEFT onto WORTH ST / JUSTICE JOHN M HARLAN WAY. Continue    0.3 miles
to follow WORTH ST.

**17:** End at **500 Pearl St**
New York, NY 10007-1316, US

**Total Est. Time:** 47 minutes      **Total Est. Distance:** 40.76 miles



**Start:**
**231 Somerville Rd**
Bedminster, NJ 07921-2615, US

**End:**
**500 Pearl St**
New York, NY 10007-1316, US





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.



## MAPQUEST

**Start:** **Flanders, NJ US**

**End:** **500 Pearl St**
New York, NY 10007-1316, US

**Notes:**



**She Married Him??!!**

**They Have 7 Kids?!!**

Find Your Old School Here

- City -   - State -   SEARCH

classmates·com

---

| Directions | Distance |
|---|---|

**Total Est. Time: 56 minutes     Total Est. Distance: 46.56 miles**

| | Directions | Distance |
|---|---|---|
| START | **1:** Start out going NORTHWEST on NORTH RD / CR-619 toward RAILROAD AVE. | 0.2 miles |
| | **2:** Turn SLIGHT RIGHT onto MAIN ST / CR-613 / MAIN STREET FLANDERS. | 0.1 miles |
| NORTH 206 | **3:** Turn RIGHT onto US-206 N. | 2.9 miles |
| EAST 80 | **4:** Merge onto I-80 E. | 16.6 miles |
| EAST 80 EXP | **5:** Keep LEFT to take I-80 EXPRESS LN E via EXIT 45. | 1.9 miles |
| EAST 280 | **6:** Merge onto I-280 E via EXIT 47A on the LEFT toward THE ORANGES / NEWARK. | 16.5 miles |
| 17A EXIT | **7:** Take the CR-508 E exit- EXIT 17A- toward JERSEY CITY. | 0.5 miles |
| | **8:** Merge onto NEWARK & JERSEY CITY TURNPIKE. | 2.3 miles |
| EAST 7 | **9:** NEWARK & JERSEY CITY TURNPIKE becomes NJ-7 E. | 0.3 miles |
| | **10:** NJ-7 E becomes US-1 9 TRUCK / US-1 TRUCK / US-9 TRUCK / US-1 & 9-TRUCK. | 0.4 miles |
| | **11:** Turn SLIGHT RIGHT toward HOBOKEN / HOLLAND TUNNEL. | <0.1 miles |
| EAST 139 | **12:** Merge onto NJ-139 E. | 1.2 miles |
| | **13:** NJ-139 E becomes 12TH ST. | 0.2 miles |
| | **14:** 12TH ST becomes BOYLE PLZ (Portions toll). | <0.1 miles |

**EXHIBIT 19**

| | **15:** BOYLE PLZ becomes HOLLAND TUNNEL (Crossing into NEW YORK). | 1.8 miles |
| | **16:** Turn SLIGHT LEFT to stay on HOLLAND TUNNEL. | 0.1 miles |
| | **17:** Take EXIT 4 toward DOWNTOWN. | <0.1 miles |
| | **18:** Turn RIGHT onto VARICK ST. | 0.1 miles |
| | **19:** Turn SLIGHT RIGHT onto W BROADWAY. | <0.1 miles |
| | **20:** Turn LEFT onto WORTH ST / JUSTICE JOHN M HARLAN WAY. Continue to follow WORTH ST. | 0.3 miles |
| | **21:** End at **500 Pearl St**<br>New York, NY 10007-1316, US | |

**Total Est. Time:** 56 minutes    **Total Est. Distance:** 46.56 miles



**Start:**
**Flanders, NJ US**

**End:**
**500 Pearl St**
New York, NY 10007-1316, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.





**Travel more for less.**

Low prices on your favorite airlines.

cheap to travel

Go cheap. Go far.
**Go now.**

**Start:** **305 Main St**
Greenville, MS 38701-4047, US

**End:** **500 Pearl St**
New York, NY 10007-1316, US

**Notes:**

| Directions | Distance |
|---|---|

**Total Est. Time:** 20 hours, 16 minutes    **Total Est. Distance:** 1246.82 miles

| | | |
|---|---|---|
| START | **1:** Start out going SOUTHEAST on MAIN ST toward S SHELBY ST. | 1.1 miles |
| EAST 278 | **2:** Turn LEFT onto US-278 E / US-82 E / US-82 W. Continue to follow US-278 E / US-82 E. | 10.5 miles |
| NORTH 61 | **3:** Merge onto US-61 N toward CLEVELAND. | 62.6 miles |
| EAST 322 | **4:** Turn SLIGHT RIGHT onto US-49 / MS-322 E. Continue to follow MS-322 E. | 2.1 miles |
| NORTH 49 | **5:** Merge onto US-49 N via the ramp on the LEFT. | 18.7 miles |
| NORTH 61 | **6:** US-49 N becomes US-61 N (Crossing into TENNESSEE). | 52.6 miles |
| SOUTH 55 | **7:** Merge onto I-55 S toward I-240 E / NASHVILLE / JACKSON MISS. | 1.5 miles |
| EAST 240 | **8:** Keep LEFT to take I-240 E via EXIT 6A&B toward NASHVILLE. | 13.9 miles |
| EAST 40 | **9:** Merge onto I-40 E via EXIT 12C toward NASHVILLE. | 410.6 miles |
| NORTH 81 | **10:** Merge onto I-81 N via EXIT 421 on the LEFT toward BRISTOL (Passing through VIRGINIA- WEST VIRGINIA- and MARYLAND- then crossing into PENNSYLVANIA). | 526.7 miles |
| EAST 78 | **11:** Merge onto I-78 E via EXIT 89 toward ALLENTOWN (Crossing into NEW JERSEY). | 125.6 miles |
| EAST 78 EXP | **12:** Keep LEFT to take I-78 EXPRESS LN E toward EXPRESS / I-95 / NEW JERSEY TURNPIKE / HOLLAND TUNNEL / NEW YORK CITY. | 8.8 miles |
| EAST 78 | **13:** Keep RIGHT to take I-78 E toward I-95 / NEW JERSEY TURNPIKE / US-1-9 / PORT NEWARK. | 1.0 miles |

**EXHIBIT 20**

| | | |
|---|---|---|
| **58B** EXIT | **14:** Take the US-1-9 N exit- EXIT 58B. | 0.2 miles |
| NORTH **19** | **15:** Merge onto US-1 9 N / US-1 & 9 N / US-1 N / US-9 N via the exit on the LEFT. | 5.7 miles |
| EAST **139** | **16:** US-1 9 N / US-1 & 9 N / US-1 N / US-9 N becomes NJ-139 E. | 1.4 miles |
| | **17:** NJ-139 E becomes 12TH ST. | 0.2 miles |
| | **18:** 12TH ST becomes BOYLE PLZ (Portions toll). | <0.1 miles |
| | **19:** BOYLE PLZ becomes HOLLAND TUNNEL (Crossing into NEW YORK). | 1.8 miles |
| | **20:** Turn SLIGHT LEFT to stay on HOLLAND TUNNEL. | 0.1 miles |
| **4** EXIT | **21:** Take EXIT 4 toward DOWNTOWN. | <0.1 miles |
| | **22:** Turn RIGHT onto VARICK ST. | 0.1 miles |
| | **23:** Turn SLIGHT RIGHT onto W BROADWAY. | <0.1 miles |
| | **24:** Turn LEFT onto WORTH ST / JUSTICE JOHN M HARLAN WAY. Continue to follow WORTH ST. | 0.3 miles |
| END | **25:** End at **500 Pearl St** New York, NY 10007-1316, US | |

**Total Est. Time:** 20 hours, 16 minutes     **Total Est. Distance:** 1246.82 miles



**Start:**
**305 Main St**
Greenville, MS 38701-4047, US

**End:**
**500 Pearl St**
New York, NY 10007-1316, US





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **MISSISSIPPI NORTHERN** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | | Filings* | 1,321 | 1,362 | 1,651 | 1,986 | 1,492 | 1,485 | U.S. | Circuit |
| | | Terminations | 1,367 | 1,507 | 1,567 | 1,659 | 1,591 | 1,311 | | |
| | | Pending | 1,519 | 1,601 | 1,733 | 1,658 | 1,316 | 1,408 | | |
| | % Change in Total Filings | Over Last Year | | -3.0 | | | | | 39 | 4 |
| | | Over Earlier Years | | | -20.0 | -33.5 | -11.5 | -11.1 | 65 | 9 |
| | Number of Judgeships | | 3 | 3 | 3 | 3 | 3 | 3 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | .0 | 1.0 | 12.0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 441 | 454 | 550 | 662 | 497 | 495 | 41 | 7 |
| | | Civil | 376 | 398 | 484 | 614 | 445 | 456 | 25 | 3 |
| | | Criminal Felony | 51 | 44 | 52 | 41 | 46 | 39 | 70 | 8 |
| | | Supervised Release Hearings** | 14 | 12 | 14 | 7 | 6 | - | 68 | 5 |
| | Pending Cases | | 506 | 534 | 578 | 553 | 439 | 469 | 15 | 3 |
| | Weighted Filings** | | 411 | 474 | 567 | 674 | 539 | 526 | 57 | 7 |
| | Terminations | | 456 | 502 | 522 | 553 | 530 | 437 | 43 | 6 |
| | Trials Completed | | 26 | 22 | 22 | 23 | 27 | 21 | 20 | 1 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 8.6 | 8.5 | 8.2 | 6.9 | 7.1 | 7.7 | 43 | 5 |
| | | Civil** | 12.3 | 10.6 | 10.7 | 8.4 | 11.6 | 10.8 | 80 | 8 |
| | From Filing to Trial** (Civil Only) | | 24.0 | 20.0 | 19.0 | 24.0 | 21.5 | 28.5 | 37 | 6 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 286 | 58 | 46 | 39 | 28 | 44 | | |
| | | Percentage | 20.7 | 3.9 | 2.9 | 2.5 | 2.3 | 3.3 | 90 | 8 |
| | Average Number of Felony Defendants Filed Per Case | | 1.4 | 1.4 | 1.3 | 1.4 | 1.4 | 1.6 | | |
| | Jurors | Avg. Present for Jury Selection | 26.02 | 34.94 | 31.61 | 29.81 | 27.31 | 29.28 | | |
| | | Percent Not Selected or Challenged | 27.4 | 35.8 | 33.0 | 34.7 | 37.7 | 35.7 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1128 | 47 | 279 | 274 | 15 | 13 | 18 | 137 | 137 | 16 | 176 | 2 | 14 |
| Criminal* | 147 | 3 | 46 | 2 | 39 | 21 | 5 | 6 | 5 | 6 | 3 | 5 | 6 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**EXHIBIT 21**

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **NEW YORK SOUTHERN** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | Numerical Standing | | |
| OVERALL CASELOAD STATISTICS | | Filings* | 12,201 | 12,945 | 12,422 | 12,321 | 13,937 | 12,783 | U.S. | Circuit | |
| | | Terminations | 11,339 | 11,346 | 11,471 | 10,780 | 12,618 | 11,247 | | | |
| | | Pending | 20,047 | 19,302 | 17,638 | 17,275 | 16,198 | 15,818 | | | |
| | % Change in Total Filings | Over Last Year | | -5.8 | | | | | 56 | 5 | |
| | | Over Earlier Years | | | -1.8 | -1.0 | -12.5 | -4.6 | 59 | 2 | |
| | Number of Judgeships | | 28 | 28 | 28 | 28 | 28 | 28 | | | |
| | Vacant Judgeship Months** | | 2.0 | 6.3 | 8.8 | 33.3 | 15.8 | .0 | | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 435 | 462 | 444 | 441 | 498 | 457 | 43 | 3 | |
| | | Civil | 385 | 409 | 388 | 381 | 441 | 420 | 21 | 3 | |
| | | Criminal Felony | 34 | 40 | 44 | 47 | 48 | 37 | 87 | 6 | |
| | | Supervised Release Hearings** | 16 | 13 | 12 | 13 | 9 | - | 64 | 5 | |
| | Pending Cases | | 716 | 689 | 630 | 617 | 579 | 565 | 8 | 2 | |
| | Weighted Filings** | | 501 | 551 | 527 | 513 | 539 | 560 | 28 | 3 | |
| | Terminations | | 405 | 405 | 410 | 385 | 451 | 402 | 55 | 3 | |
| | Trials Completed | | 13 | 15 | 16 | 17 | 15 | 15 | 71 | 3 | |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 16.7 | 14.5 | 11.9 | 11.8 | 13.3 | 12.3 | 93 | 6 | |
| | | Civil** | 8.3 | 8.8 | 8.1 | 8.4 | 8.3 | 7.2 | 23 | 1 | |
| | From Filing to Trial** (Civil Only) | | 25.7 | 22.0 | 26.8 | 22.6 | 23.0 | 24.4 | 48 | 1 | |
| OTHER | Civil Cases Over 3 Years Old** | Number | 3,107 | 2,652 | 1,656 | 1,312 | 1,230 | 1,585 | | | |
| | | Percentage | 18.4 | 16.7 | 11.6 | 9.2 | 9.2 | 12.1 | 89 | 6 | |
| | Average Number of Felony Defendants Filed Per Case | | 1.7 | 1.9 | 1.7 | 1.5 | 1.5 | 1.6 | | | |
| | Jurors | Avg. Present for Jury Selection | 96.33 | 99.86 | 88.01 | 82.96 | 83.28 | 73.12 | | | |
| | | Percent Not Selected or Challenged | 60.4 | 62.0 | 53.1 | 54.8 | 61.9 | 53.2 | | | |

| **2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 10793 | 230 | 767 | 1147 | 88 | 38 | 945 | 2257 | 1622 | 835 | 1374 | 66 | 1424 |
| Criminal* | 943 | 5 | 269 | 170 | 111 | 225 | 29 | 28 | 11 | 24 | 24 | 9 | 38 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**EXHIBIT 22**